IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| Troy Clowdus | |
| **PLAINTIFF** | Civil Action No.: 1:21cv23155 |
| VS. | COMPLAINT FOR NEGLIGENCE, DEFAMATION, VIOLATION OF THE TICKETS ACT, AND BREACH OF CONTRACT |
| American Airlines Inc., | |
| **DEFENDANT.** | |

## INTRODUCTION

This is an action against American Airlines Inc. (hereinafter "AA") for negligence, defamation, violation of the TICKETS ACT, and breach of contract resulting from an incident that occurred on June 10, 2021 at Miami International Airport where an AA flight attendant falsely accused Mr. Clowdus of assault, resulting first in an apology by senior AA staff for the flight attendant's actions, and then a permanent flight ban for Mr. Clowdus, the revocation of his AA benefits and other damages and hardship.

## JURISDICTION & VENUE

1. This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.A. 1332 (a) (1) as to all causes of action herein.

2. Venue in this district has been selected by Plaintiff pursuant to 28 U.S.C. § 1391 (b) (2) because it is a District in the United States where the events occurred.

3. The amount in controversy in this action exceeds $75,000.

## PARTIES AND JURISDICTION

4. Plaintiff Troy Clowdus is a US citizen who is domiciled in Miami, Florida.

5. AA is a domestic corporation that is headquartered in Fort Worth, Texas.

## GENERAL ALLEGATION OF AGENCY

6. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each of the complained of agents, contractors and employees of AA was a servant of Defendant, and at all times herein mentioned, each was acting within the purpose and scope of said agency and employment.

## GENERAL ALLEGATION OF COMPLIANCE

7. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, in the course of his dealings with the Defendant, the Plaintiff complied in all respects, whether or not material, with all conditions, requirements, ordinances, and legal and contractual undertakings incumbent upon him in connection with his Contracts with Defendant AA, and with the rules and ordinances of the authorities at the airport of departure, all aircraft placards and all crew member instructions.

## FACTUAL ALLEGATIONS

8. At 6:30AM on June 10, 2021, Mr. Clowdus boarded AA Flt 1303 MIA-MEX.

9. While boarding, he noticed that the flight attendant was behaving in a loud and somewhat manic fashion.

10. As he moved to sit down, the flight attendant informed him that his satchel needed to go in the overhead bin.

11. Mr. Clowdus nodded his compliance and proceeded to sit down believing from past experience flying business class that the flight attendant meant that it needed to be stowed prior to takeoff and not immediately upon boarding.

12. During boarding, the flight attendant stood in Mr. Clowdus' row and with an aggressive cadence was exhorting passengers to "Move, Move, Move" and "Let's go, Let's go, Let's go."

13. Mr. Clowdus put in his headphones and began to compose an email on his phone.

14. Belatedly, Mr. Clowdus realized that he was being spoken to by the flight attendant, who appeared angry that he was not responded to immediately.

15. Mr. Clowdus took out his headphones to hear the flight attendant say in a loud and angry voice "give me the bag!" followed quickly by another even louder and angrier repeat of "give me the bag!"

16. It was then he realized that the flight attendant was upset that he had not placed the satchel in the overhead bin.

17. Mr. Clowdus shook his head at the unnecessary and demeaning tone being used, likely angering the flight attendant even further, but he moved to comply.

18. Lowering his head back to his phone to break eye contact and disconnect from the inexplicable fury of the flight attendant, Mr. Clowdus reached down with

his left hand and pulled the bag from under the seat and across the armrest to the seat beside.

19. He felt the bag make slight contact and thought the flight attendant was taking it from him but then realized after a moment that he was still holding it.

20. He looked up at this point and found the flight attendant glaring at him with rage as he said in a near shout "You hit me!"

21. Momentarily stunned by the onslaught, Mr. Clowdus was speechless as the flight attendant accused again even more loudly "you hit me!"

22. At this point, becoming angry himself at how this flight attendant was treating him, Mr. Clowdus asked: "what is wrong with you?"

23. Even more enraged, now the flight attendant shouted "you hit me!"

24. "No I didn't! I handed you my bag!" Mr. Clowdus replied, responding reflexively to the allegation of intent on his part to make the contact.

25. "That's it! I'm not taking your crap anymore!" said the flight attendant, who then stormed to the front.

26. A few seconds later the flight attendant returned and said Mr. Clowdus wasn't flying on "his" plane.

27. Mr. Clowdus attempted to deescalate the situation with an apology for not putting his satchel overhead immediately but was cut off with an "I don't care!" as the flight attendant walked off again.

28. Mr. Clowdus then heard the flight attendant repeatedly saying to someone up front in an elevated voice "I will not fly with him!"

29. The unusual intensity and quick rage of the flight attendant are consistent symptoms with the use of amphetamines.

30. No reasonable person would believe that Mr. Clowdus had intended his bag to make contact in an offensive manner with the flight attendant.

31. No reasonable person would characterize the slight brushing contact that was made as an "assault."

32. Shortly thereafter another AA employee approached Mr. Clowdus, apologized for the inconvenience and asked if he could speak with Mr. Clowdus off the plane.

33. Mr. Clowdus explained the situation to this new employee who had identified himself as a supervisor and the supervisor apologized but said the flight attendant was refusing to fly.

34. The AA supervisor apologized profusely and promised to put Mr. Clowdus on the very next flight and personally escort him to it.

35. Mr. Clowdus asked the supervisor if he should file a complaint against the flight attendant and the supervisor assured him that he would be filing a report about the flight attendant himself, but Mr. Clowdus could do so as well.

36. Mr. Clowdus did file a complaint through the American Airlines web site while he waited for his next flight.

37. The AA supervisor then did meet Mr. Clowdus at his next flight and escort him onto the plane, once again apologizing.

38. Shortly thereafter, several men boarded the plane, identified themselves as AA security, and instructed Mr. Clowdus in a fashion usually taken with a criminal to "follow them off the plane."

39. The flight attendant had filed a report claiming that he had been physically assaulted.

40. Once off the plane, Mr. Clowdus explained the incident to the head of security who then expressed sympathy and said that he would be filing a report and that it should be cleared up in a few days.

41. Having been accused of a Federal crime, Mr. Clowdus was terrified that the flight attendant would also file a fraudulent police report and that he would be arrested.

42. After a few days, Mr. Clowdus received an email that the investigation was complete, his benefits were revoked and he was banned for life from flying AA. No one interviewed Plaintiff or spoke with him before this action was taken

43. No avenue of contact or appeal was provided.

44. Mr. Clowdus provided AA with an affidavit, attached as Exhibit A, but AA unreasonably refused to engage or to consider his appeal, though put on clear notice that Mr. Clowdus is being defamed by AA by being labeled as a criminal and banned from flight.

45. Mr. Clowdus travels frequently to South America from Miami for business and being banned from flight on Defendant's airline has cost him greatly in both time and expense.

46. Mr. Clowdus had hundreds of thousands of miles as well as valuable status wrongly taken from him, as well as a lounge benefit for which he pays a yearly fee.

AS AND FOR A FIRST CAUSE OF ACTION FOR NEGLIGENCE

47. Paragraphs 1-46 of this Complaint, inclusive, are hereby incorporated by reference as if set forth in full herein.

48. Defendant had a duty to exercise reasonable care to avoid foreseeable harm.

49. Defendant had a heightened duty of care as a common carrier to not take actions detrimental to its passengers.

50. It was reasonably foreseeable that Defendant's flight attendant could be lying about being assaulted when a passenger of 30 years claimed otherwise, an AA supervisor on the front line clearly believed otherwise, and the uncontested facts of the incident logically pointed otherwise.

51. It was reasonably foreseeable that the failure to conduct a meaningful investigation into the incident, to include an interview of the Plaintiff, could result in an unfair outcome that would damage the Plaintiff.

52. Defendant breached its duty to the Plaintiff by failing to conduct any meaningful investigation whatsoever into the truth of the incident.

53. Defendant's failure to investigate was a breach of its duty of care – both ordinary care and the heightened care of a common carrier.

54. As a result, Plaintiff suffered monetary and emotional damages, including damage to his reputation.

## AS AND FOR A SECOND CAUSE OF ACTION FOR DEFAMATION

55. Paragraphs 1-54 of this Complaint, inclusive, are hereby incorporated by reference as if set forth in full herein.

56. Defendant accused the Plaintiff of the Federal crime of assaulting an airline employee who was engaged in performing his duties.

57. Defendant published this false accusation among its own employees when it revoked Plaintiff's benefits and banned him from flying on its airline.

58. The fact, and negative inference of being banned from Defendant's airline is de facto published to any individual who learns of Plaintiff's ban, including business associates with whom Plaintiff is now unable to travel.

59. Plaintiff has suffered direct and quantifiable damages as a result of the reputational harm inflicted upon him by Defendant, including valuable miles, valuable status, valuable privileges, the cost of his foregone ticket and replacement tickets, the cost of tickets purchased for subsequent business trips with more expensive and less convenient smaller airlines, the cost of his lost time as now travel involves many more hours and multiple layovers, and the cost of lost business as travel has become a greater impediment.

60. Plaintiff additionally seeks punitive damages in an amount to be determined at trial for the malicious actions taken by Defendant's employee, the flight attendant.

### AS AND FOR A THIRD CAUSE OF ACTION FOR VIOLATION OF THE TICKETS ACT

61. Paragraphs 1-60 of this Complaint, inclusive, are hereby incorporated by reference as if set forth in full herein.

62. Mr. Clowdus was a revenue passenger traveling on a confirmed reservation, who had checked in before the check-in deadline and had his boarding pass collected and accepted by the gate agent.

63. Mr. Clowdus was involuntarily removed from the flight and no alternate arrangements were made to carry him to his destination.

64. Mr. Clowdus had obeyed all rules and instructions, was not unruly or disruptive and presented no safety concern.

65. There was no valid reason to remove Mr. Clowdus from the flight.

66. Pursuant to 14 CFR §250.5(a)(3), Mr. Clowdus is owed $1550 by Defendant.

### AS AND FOR A FOURTH CAUSE OF ACTION FOR BREACH OF CONTRACT

67. Paragraphs 1-66 of this Complaint, inclusive, are hereby incorporated by reference as if set forth in full herein.

68. Mr. Clowdus contracted with Defendant to carry him on its flight from Miami to Mexico.

69. In consideration of the contract, Mr. Clowdus paid X for his ticket.

70. Mr. Clowdus complied with every provision in the contract and took no action triggering any exception to the contract.

71. Defendant had no valid reason to not honor its contract, but Defendant refused carriage to Mr. Clowdus, breaching the contract.

72. Mr. Clowdus suffered damages, including, but not limited to $1541.58 for the ticket that AA refused to honor or refund.

## AS AND FOR A FIFTH CAUSE OF ACTION
## FOR BREACH OF CONTRACT

73. Paragraphs 1-72 of this Complaint, inclusive, are hereby incorporated by reference as if set forth in full herein.

74. Mr. Clowdus enrolled nearly 30 years ago in Defendant's loyalty program.

75. Mr. Clowdus has fully complied with every requirement of the program and has not violated any provisions in the program contract.

76. Over 30 years, through loyal reliance upon Defendant's loyalty program and at great personal expense, Mr. Clowdus has built a valuable interest in Defendant's loyalty program, including reaching lifetime gold status, with the considerable benefits that this entails, including free upgrades, priority service, and amassing hundreds of thousands of miles, which represent valuable tickets and upgrades.

77. In breach of its loyalty program contract with Mr. Clowdus, Defendant took these valuable benefits from Mr. Clowdus for no justifiable reason.

78. Mr. Clowdus has built status in Defendant's program for many years to defray his considerable work-related travel expense, which includes many trips a year to foreign destinations from Miami, where Defendant has a stronger presence than other airlines.

79. Mr. Clowdus is now trapped in Miami, being forced to travel far out of his way, at much greater expense to conduct his business abroad.

80. He has suffered current and prospective damages in an amount to be determined at trial.

## PRAYER FOR RELEF

81. Wherefore, Plaintiff prays for relief from this Honorable Court as follows:

82. On the first cause of action for negligence, an amount to be determined at trial.

83. On the second cause of action for defamation, an amount to be determined at trial.

84. On the third cause of action for violation of the TICKETS ACT, [$1550].

85. On the fourth cause of action, for breach of contract, an amount to be determined at trial.

86. On the fifth cause of action, for breach of contract, an amount to be determined at trial.

87. For punitive damages in an amount to be determined at trial.

## JURY TRIAL

88. Pursuant to the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues so triable.

Respectfully Submitted,

| /s/ William T. Woodrow III | /s/ Rook Elizabeth Ringer |
|---|---|
| William T. Woodrow III (VSB 88122) | Rook Elizabeth Ringer, Esq. |
| Pro hac vice admission pending | Florida Bar No. 1015698 |
| | |
| Stone & Woodrow LLP | LENTO LAW GROUP, P.A. |
| 250 West Main Street, Suite 201 | 222 San Marco Ave., Ste. C |
| Charlottesville, VA 22902 | St. Augustine, FL 32084 |
| Email:  will@stoneandwoodrowlaw.com | reringer@lentolawgroup.com |
| Phone: (855) 275-7378 | 904.602.9400 (Office) |
| *Attorney for the Plaintiff* | *Attorney for the Plaintiff* |