IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

|  |  |  |
|---|---|---|
| TROY CLOWDUS | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | DOCKET NO.: 1:21cv23155 |
| v. | : | |
| | : | |
| AMERICAN AIRLINES, INC. | : | |
| | : | |
| Defendant. | : | |

## DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

**NOW COMES** Defendant, AMERICAN AIRLINES, INC., (hereinafter, "**AA**" or "**Defendant**"), by and through undersigned counsel and files this Motion for Judgment on the Pleadings ("**Motion**") seeking dismissal of every claim asserted in the Complaint filed by Plaintiff, TROY CLOWDUS, ("**Clowdus**" or "**Plaintiff**"), and in support thereof states as follows:

### INTRODUCTION

1. This lawsuit arises out of Plaintiff's refusal to comply with a uniformed flight attendant's repeated instructions for Plaintiff to stow his carry-on bag in an overhead bin on an international flight, Plaintiff's subsequent assault of that flight attendant and AA's subsequent permanent suspension of Plaintiff's flight privileges with AA. Plaintiff asserts claims for negligence, defamation, violation of the Tickets Act, and breach of contract.

2. Plaintiff's negligence claim for alleged onboard mistreatment is barred by Florida's Impact Rule. Plaintiff's claim that he was "negligently" barred from future flights with AA is barred by AA's Constitutional right not to contract with him. Plaintiff's claim that he was negligently denied transport without an investigation is pre-empted by the federal permissive removal statute. Plaintiff's defamation claim is not actionable as plead as Plaintiff has failed to

allege that any defamatory information was communicated to a third party. Plaintiff's Tickets Act claim fails as plead since Plaintiff was not denied transport because of overbooking. Plaintiff's denial of transport breach of contract claim is barred by Plaintiff's admitted prior breach. Plaintiff's breach of contract claim related to his AAdvantage™ Program account is negated by Plaintiff's own allegations and fails since Plaintiff has no justiciable interest in Program benefits which he agreed have no monetary value.

## LEGAL STANDARD

3. After the pleadings are closed but within such time as to not delay trial, any party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as a motion to dismiss under Rule 12(b)(6). *Esys Latin America, Inc. v. Intel Corp.,* 925 F. Supp. 2d 1306, 1309 (S.D. Fla. 2013) (standard of review for a motion for judgment on the pleadings is "almost identical to that used to decide motions to dismiss."). The main difference between the motions is that a motion for judgment on the pleadings is made after an answer and that answer may also be considered in deciding the motions. *Mergens v. Dreyfoos,* 166 F.3d 1114, 1116-17 (11th Cir. 1999).

4. Judgment on the pleadings is appropriate when no issues of material fact are raised in the pleadings and the movant is entitled to judgment as a matter of law. *Jones v. NordicTrack, Inc.,* 236 F.3d 658 (11th Cir. 2000). The pleadings in this case closed on December 27, 2021.[1]

## ARGUMENTS

### FIRST COUNT-NEGLIGENCE

5. Plaintiff claims that AA owned him a duty of ordinary care "to avoid foreseeable harm" and a heightened common carrier duty "to not take actions detrimental to its passengers."

---

[1] See Paperless Order Scheduling Trial [DE 12].

*See* Complaint [DE 1] ¶¶ 48-49. AA allegedly breached these duties when AA removed Plaintiff from its aircraft without investigating the flight attendant's claim of assault, and later banned him from future flights with AA without conducting a "meaningful investigation" resulting in an "unfair outcome that damage[d] the Plaintiff." *See* Complaint [DE 1] ¶¶ 20-23, 32, 38-39, 42-44, 48-49, 51-53.

### Florida's Impact Rule Bars Plaintiff's Negligence Claims

6. Plaintiff alleges that, as a result of AA's negligence, "[he] suffered monetary and emotional damages, including damage to his reputation." See Complaint [DE 1] ¶ 54.  No other damages are claimed to have resulted from AA's negligence. More importantly, Plaintiff does not allege he suffered a physical impact during his various interactions with AA personnel – whether onboard AA's aircraft or afterwards when his flight privileges were terminated. Indeed, Plaintiff alleges that all of his interactions with AA personnel were either verbal (on the day he was removed from AA's aircraft) or via email (days later when he was notified that he was banned from future flights with AA). See Complaint [DE 1] ¶¶ 9—11, 14-15, 20-28, 32-35, 37-40, 42.

7. Florida law generally does not recognize a cause of action for emotional distress, unaccompanied by physical impact, resulting from simple negligence. *See Brown v. Cadillac Motor Car Div.*, 468 So. 2d 903, 904 (Fla. 1985); *Zell v. Meek*, 665 So. 2d 1048, 1052 (Fla. 1995)(Florida Supreme Court "refused to recognize a claim for *psychic harm* alone."); *Reiser v. Wachovia Corp.*, 935 So. 2d 1236 (Fla. 5th DCA 2006) (affirming dismissal of negligent emotional distress claim where plaintiff had gun held to his head during bank robbery because "Florida does not recognize [such] a cause of action…at least in the absence of a physical impact or injury").

8. Florida law does, however, recognize a cause of action for negligently caused emotional distress unaccompanied by physical impact, but only where the Plaintiff suffered a "significant discernible physical injury" caused by psychological trauma resulting from witnessing

3

the death or physical injury of another person with whom the plaintiff had a close/family relationship. *Zell,* 665 So. 2d at 1052. See also, *Gonzalez v. Metropolitan Dade County Public Health Trust,* 651 So.2d 673, 675 (Fla. 1995). The type of significant discernible physical injury required to avoid the effect of the impact rule is generally "death, paralysis, muscular impairment, or similar objectively discernible physical impairment." *Brown*, 468 So. 2d at 904. Plaintiff has not alleged that the events made the basis of his claims involved witnessing the death of or injury to a close family member or that he suffered "significant discernible physical injury" from such an event. Plaintiff's allegations that he suffered embarrassment and disappointment[2] are insufficient as a matter of law to satisfy this threshold requirement.[3] Thus, Plaintiff's negligence claims are barred by the impact rule and must be dismissed with prejudice.

### Plaintiff's Negligent Flight Ban Claim Fails Because AA Has No Duty to, and a Constitutional Right Not to, Contract With Plaintiff

9. Plaintiff's Complaint acknowledges that his "contract" for travel with AA on the day in questions was, inter alia, the ticket issued to him by AA. *See* Complaint [DE 1] ¶¶ 68-71. While not a model of clarity, Count One of Plaintiff's Complaint could be read to include a claim that AA negligently banned him from future flights with AA - i.e., that AA negligently refuses to issue future flight tickets (contracts) to Plaintiff. Specifically, Plaintiff alleges "he was banned for life from flying AA, [that] no one interviewed Plaintiff…before this action was taken [and AA

---

[2] *See* Complaint [DE 1] ¶¶ 44, 54; *See* Ex. A to Complaint [DE 1-1] ¶ 57.
[3] *Zell*, 665 So. 2d at 1050 (insomnia, depression, memory loss, fear, blocked esophagus, fibromyalgia are not discernable physical injuries); *Elliott v. Elliott*, 58 So.3d 878, 882 (Fla. 1st DCA 2011)(reversing plaintiff's jury verdict on negligence claim, remanding with instructions to enter directed verdict for defendant and finding that headaches, diabetes, sleep apnea, stress, insomnia, anxiety, loss of appetite, hair loss and bowel trouble were not discernible physical injuries); *Ledford v. Delta Airlines, Inc.,* 658 F. Supp. 540, 542 (S.D. Fla. 1987) (temporary elevation of blood pressure, crying episodes, panic attacks, and fear of heart attack did not constitute a significant discernible physical injury); *Vasconez v. Hansell*, 2013 WL 1968640, *5, Civ. No. 6:12-cv-236-Orl (M.D. Fla. May 13, 2013)(depression, pain, sleep disorders, insomnia, headaches and paranoia did not constitute a significant discernible physical).

thereby] breached its duty [of ordinary care]<sup>4</sup> to the Plaintiff." *See* Complaint [DE 1] ¶¶ 42, 51-53. This claim is little more than a claim of negligent refusal to contract with Plaintiff in the future and is simply not actionable.

10.     As with any negligence claim, Plaintiff must allege duty, breach, damages and causation.<sup>5</sup> However, contracts are voluntary undertakings. *Okeechobee Resorts, LLC v E Z Cash Pawn, Inc.*, 145 So.3d 989, 993 (Fla. 4th DCA 2014)("Contracts are voluntary undertakings…"). The freedom to contract – and not to contract – is a constitutionally protected right and one of the "most sacrosanct rights guaranteed by fundamental law." *Lugassy v Lugassy*, 298 So.3d 657, 659 (Fla. 4th DCA 2020) ("we have held that the freedom of contract entails the freedom not to contract" except as restricted by antitrust, antidiscrimination and other statutes), citing *Miles v City of Edgewater Police Dept.,* 190 So.3d 171, 182 (Fla. 1st DCA 2016). Thus, AA has no "duty" to contract with Plaintiff now or in the future – indeed, the law is just the opposite. Without an underlying duty, Plaintiff's negligent refusal to contract claim is not actionable and must be dismissed with prejudice.

### Plaintiff's Negligent Failure to Investigate Claim Fails Because AA Had No Duty to Investigate

11.     Plaintiff claims AA was negligent when it removed him from AA's aircraft without an investigation into the veracity of the flight attendant's assault claim<sup>6</sup> after he (admittedly) refused to comply with the flight attendant's repeated instructions to stow a carry-on bag.<sup>7</sup> Since this claim arises out of Plaintiff's refusal to comply with uniformed crew member instructions

---

<sup>4</sup> The common carrier duty is only applicable while a passenger is within premises or a vehicle provided by a common carrier. *See* Florida Standard Jury Instructions in Civil Cases §401.15, citing *Atlantic Greyhound Lines v Lovett*, 184 So. 133 (Fla. 1938) and *Henderson v Tarver*, 123 So2d 369 (Fla. 2nd DCA 1960).
<sup>5</sup> *Roberts v. Victoria's Secret Stores, LLC*, No. 18-CV-61534, 2018 WL 4828448, at *4 (S.D. Fla. Sept. 7, 2018) (citing *Tsavaris v. Pfizer, Inc.,* 2016 WL 375008, at *3 (S.D. Fla. Feb. 1, 2016)). *See also*, *Mennella v American Airlines*, Case No. 17-21915-civ, 2019 WL 1429636 at *13-14 (S.D. Fla. 2019).
<sup>6</sup> *See* Complaint [DE 1] ¶¶ 20-23, 32, 38-39, 42, 51-53.
<sup>7</sup> Plaintiff concedes he did not comply with the flight attendant's instructions. *See* Complaint [DE 1] ¶¶ 10-16.

5

during the boarding process and his subsequent removal from AA's aircraft after a reported assault on a flight attendant, AA had no duty to conduct any investigation into the veracity of the report of Plaintiff's onboard conduct.

12. Air carriers are generally "absolve[d] of liability for refusal to transport a passenger if 'the carrier decides [the passenger] is, or might be, inimical to safety" under the federal permissive removal statute.[8] The permissive removal statute "confers an affirmative privilege to the airline" to remove a passenger (for non-discriminatory reasons) with impunity.[9] *Xiaoyun Lu v. Airtran Airways, Inc.,* 631 Fed. Appx. 657, 661 (11th Cir. 2015). Indeed, "there is no duty on the part of the captain to investigate recommendations by flight attendants for removal of a passenger, and the captain is entitled to take representations of flight attendants at face value." *Id*. This is true even if the removal was prompted by "a battle of the egos [with] the flight attendant making exaggerated or even false representations to the Captain." *Id*. An air carrier's discretion under the permissive removal statute is thus "very broad" so that, generally, "Section 44902(b) does not permit judicial review" of decisions to refuse transportation of a passenger. *Id*.

13. Plaintiff concedes he did not comply with repeated flight attendant instructions to stow his carry-on bag.[10] Plaintiff concedes he hit (accidentally or otherwise) the flight attendant with his carry-on bag.[11] Plaintiff concedes that the flight attendant then immediately complained aloud that he had been hit by Plaintiff's bag[12] and proceeded to the area of the aircraft cockpit[13] and that "shortly thereafter," Plaintiff was removed from the aircraft at the flight attendant's

---

[8] 49 U.S.C. § 44902(b).
[9] It is Plaintiff's burden to show that the permissive removal statute does not apply. *Xiaoyun Lu,* 631 Fed. Appx. at 661; *Carvajal v. American Airlines*, 2011 US Dist. Lexis 166319 at *10 (S.D. Fla. 2011).
[10] *See* Complaint [DE 1] ¶¶ 10-16.
[11] *See* Complaint [DE 1] ¶ 19.
[12] *See* Complaint [DE 1] ¶¶ 20-23.
[13] *See* Complaint [DE 1] ¶¶ 25-28.

6

suggestion.[14] Plaintiff's specific complaint, however, is that he was removed from the aircraft without any investigation into whether the flight attendant "could be lying about being assaulted"[15] and that "[AA's] failure to investigate was a breach of its duty of care" to Plaintiff.[16] Since (as argued above) AA had no duty to investigate the veracity of the flight attendant's assault report and since AA had a legal privilege to refuse transport to Plaintiff based on nothing other than the flight attendant's unverified assault report, Plaintiff's negligent failure to investigate claim fails and must be dismissed with prejudice.[17] *See Mennella*, 2019 WL 1429636 at *11-18 (negligence claim arising from removal from aircraft based on flight attendant false report plaintiff was intoxicated was pre-empted by the ADA).

## SECOND COUNT-DEFAMATION
### Plaintiff Fails to Plead Publication of Defamatory Information to a Third Party

14.  The elements of a valid defamation claim are: (1) the publication of a false factual statement; (2) about the plaintiff; (3) to a third party; and (4) that the falsity of the statement caused injury." *Mennella*, 2019 WL 1429636 at *7. The "publication" of the defamatory material must be to a third party – i.e., someone other than the Plaintiff and the Defendant. *Id* at *10 ("It is essential to a cause of action for defamation that the alleged slanderous…statement be made or published to some third person.") (citations omitted); *American Airlines, Inc. v. Geddes,* 960 So. 2d 830, 833 (Fla. 3rd DCA 2007)("A defamatory statement does not become actionable…until it is published…to a third person."). In addition, "to meet the standard for publication to a third party, a plaintiff must allege the identity of the particular person to whom the remarks were made with a reasonable degree of certainty…" *Mennella*, 2019 WL 1429636 at *10 (mere assertion that

---

[14] *See* Complaint [DE 1] ¶ 26-28, 32.
[15] *See* Complaint [DE 1] ¶¶ 50-52.
[16] *See* Complaint [DE 1] ¶ 53.
[17] See note 5 supra – every negligence claim must be based on, inter alia, the existence of a legal duty.

"other [first class] passengers [heard the defamatory statements] does not meet the legal requirements for publication to a third party.")(citations omitted).

15. Plaintiff alleges "Defendant accused the Plaintiff of the Federal crime of assaulting [a flight attendant and] Defendant published this false accusation among its own employees when it revoked Plaintiff's benefits and banned him from flying [on AA].[18] These allegations are the only allegations of publication in the Complaint. These allegations fail to satisfy the "publication" element for two reasons. First, these allegations fail to specifically identify anyone within AA to whom the assault report was communicated. Second, such intra-corporate communications by a defamation defendant are insufficient as a matter of law to constitute "publication" to a third party. Geddes, 960 So. 2d at 833-834 (defamatory intra-corporate communications during the course of an HR investigation were not communications to a third party; reversing jury verdict for employee). Further, the possibility that publication to a third party might occur in the future is insufficient as a matter of law to satisfy the publication element. *Klayman v. Judicial Watch, Inc.*, 22 F.Supp.3d 1240, 1251 (S.D. Fla. 2014), citing, *Pierson v. Orlando Reg'l Healthcare Sys., Inc.,* 2010 WL 1408391, at*12 n. 16 (M.D. Fla. Apr. 6, 2010).

16. Plaintiff's alternative allegation that there is a "negative inference" arising from his flight ban such that there has been a "de facto" publication of defamatory information[19] fares no better. Florida has never recognized such a theory of liability. To the extent Plaintiff is asserting he will be forced to disclose his flight ban to others, that claim is simply not actionable. *Lopez v Ingram Micro, Inc*., 1997 WL 401585 a t * 6 (S.D. Fla. 1997)(compelled self-publication of defamatory material to a third party "does not satisfy the 'publication' element."); *Valencia v*

---

[18] *See* Complaint [DE 1] ¶¶56-57.
[19] *See* Complaint [DE 1] ¶ 58.

*Citibank Int'l.*, 728 So.2d 330, 331 (Fla. 3rd DCA 1999) (same). Thus, Plaintiff's defamation claim must be dismissed with prejudice.

### THIRD COUNT-TICKETS ACT
### Plaintiff's Tickets Act Claim is Baseless as Plead

17. The Tickets Act[20] is designed to compensate individuals subject to the common industry practice of "bumping", where airlines "bump" passengers from flights they overbooked to "ensure that each flight leaves with as few empty seats as possible[.]" *Nader v. Allegheny Airlines,* 426 U.S. 290, 294-295 (1976). The Act only applies to passengers who are denied "boarding involuntarily from an oversold flight." 14 C.F.R. §250.5. "There is nothing in the regulation remotely suggesting it requires airlines to provide compensation to passengers who are involuntarily denied boarding [or removed after boarding] for any reason besides an oversold flight." *Giuffre v. Delta Air Lines, Inc.,* No. 10-CV-1462 DLI MDG, 2012 WL 3988981 at *2-3 (E.D. N.Y. Sept. 11, 2012). Federal courts have consistently refused to extend the Act outside the context of "bumped passengers." *See Papaiyawala v. Saudi Arabian Airlines,* No. 115CV01651GBLJFA, 2016 WL 11668945 (E.D. Va. Apr. 15, 2016) (Act not applicable where customer was denied boarding and ticket cancelled for suspected credit card fraud).

18. Plaintiff's Tickets Act claim is premised solely on his allegation that he was a ticketed passenger with a boarding pass who *was allowed to board* AA's aircraft[21] but was later *removed* at the request of AA's flight attendant following an *onboard* altercation with that flight attendant.[22] Plaintiff does not allege he was denied boarding, much less denied boarding because of overbooking. Since Plaintiff's Complaint admits Plaintiff boarded the aircraft and that he was deplaned for reasons other than overbooking, Plaintiff's Tickets Act claims must be dismissed

---

[20] 14 C.F.R. 250.1 *et. seq*.
[21] *See* Complaint [DE 1] ¶ 62.
[22] *See* Complaint [DE 1] ¶¶ 23-39.

with prejudice. *Giuffre,* 2012 WL 3988981 at *2 (dismissing Tickets Act claim of passenger denied boarding because of late check-in for a flight which was not oversold). Notably, Plaintiff's counsel in *Giuffre* was (and remains) the law partner of Plaintiff's counsel in this matter.

**FOURTH/FIFTH COUNTS-BREACH OF CONTRACT**
**Plaintiff's Refusal to Transport Claim is Barred by Plaintiff's Admitted Prior Breach**

19.     Plaintiff's Complaint acknowledges that his "contract" for travel with AA on the day in questions was, *inter alia*, the ticket issued to him by AA. *See* Complaint [DE 1] ¶¶ 68-71. Plaintiff's (Count Four) breach of contract claim further asserts he complied with "all conditions" of his contracts with AA and that AA breached its contract with Plaintiff when is refused to transport him on June 20, 2021. *See* Complaint [DE 1] ¶¶ 7, 71.

20.     Airlines are permitted to "incorporate by reference in any ticket or other written instrument any of the terms of the contract of carriage." *American Airlines v. Wolens,* 513 U.S. 219, 230 (1995). AA did so with respect to Plaintiff's tickets for the day in question by expressly stating on Plaintiff's tickets that they were "subject to conditions of contract." *See,* Plaintiff's tickets for the day in question, attached as Ex. 1.[23] AA's Conditions of Carriage Contract confirms "your ticket and the following Conditions of Carriage constitute the contract between you…and American Airlines." *See*, Ex. 2, AA's Conditions of Carriage at AA 00072. Further, AA's Conditions of Carriage expressly states "American may refuse to transport you, or may remove you from your flight at any point [for any reason] including [for specified reasons]." Thus, Plaintiff did not have an unconditional right to fly on his ticketed flight, and his contract with AA specified (non-exhaustive) circumstances under which AA could refuse him transport.

---

[23] This Court may consider Plaintiff's tickets and their incorporated Carriage Contract without converting this motion into a motion for summary judgment since, as an essential element of his breach of contract claim, Plaintiff alleges he contracted with AA (in the form of a ticket) and "complied with every provision in the contract." *See* Complaint [DE 1] ¶¶ 7, 68-71. *See Day v Taylor,* 400 F.2d 1272, 1276 (11th Cir. 2005) (Court may consider documents central to the plaintiff's claims and undisputed in authenticity, even if not attached to the Complaint), citing, *Horsley v. Feldt,* 304 F. 3d 1125, 1136 (11th Cir. 2002).

21. As argued above, Plaintiff's Complaint admits he did not comply with repeated flight attendant instructions to stow his carry-on bag.[24] Plaintiff concedes he hit (accidentally or otherwise) the flight attendant with his carry-on bag.[25] This conduct falls squarely within two of the specified reasons for which AA could (and did) deny him transport – he "refuse[d] to obey instructions from any flight crew member" and he engage[d] in any action, voluntary or involuntary, that might jeopardize the safety of the aircraft or any of its occupants." *See*, Ex. 2, AA's Conditions of Carriage at AA00084. Further, Plaintiff's Complaint concedes that he was removed from the aircraft only *after* he had engaged in this conduct and thus only *after* he had violated the terms of his contract with AA.[26]

22. The Texas prior breach doctrine[27] holds that when one party to a contract breaches its contractual obligations, the other party to the contract is discharged from having to perform further obligations under the contract. *Hernandez v. Gulf Group Lloyds*, 875 S.W. 2d 691, 692 (Tex. 1994); *See also, Shintech Inc. v. Grp. Constructors, Inc.*, 688 S.W. 2d 144, 151 (Tex. App.- Houston [14th Dist.]1985). Since Plaintiff's Complaint concedes his breach (i.e., failure to obey flight attendant instructions, etc.) occurred prior to AA's breach (i.e., Plaintiff's removal), his breach of contract claim arising AA's refusal to transport him.

### Plaintiff's AAdvantage™ Loyalty Membership Claim Fails

23. Plaintiff alleges he built a "valuable interest" in AA's AAvantage™ Program ("Program"), that he complied with the terms of the Program, and that AA "took these valuable benefits from [him] for no justifiable reason…in breach of its loyalty program contract with Mr. Clowdus." [28] Plaintiff's claim (Count Five) is not actionable because AA suspended Plaintiff's

---

[24] *See* Complaint [DE 1] ¶¶ 10-16.
[25] *See* Complaint [DE 1] ¶ 19.
[26] *See* Complaint [DE 1] ¶¶ 20-23, 26-28, 32.
[27] AA's contract with its passengers are governed by Texas law. *See*, Ex. 2, AA's Conditions of Carriage at AA 00095.
[28] *See* Complaint [DE 1] ¶¶ 75-77.

participation in the Program as allowed by the terms of the Program.[29] (thus, no breach) and the Program terms state Plaintiff does not own the "benefits" the subject of this claim (thus, no justiciable interest or damages).

Plaintiff's Allegations Negate Breach by AA

24. The Program Terms (i.e., the contract made the basis of Count Five) allow AA to cause "forfeiture of all award tickets and any accrued mileage in a member's account, as well as termination of the account and the member's future participation in the AAdvantage™ Program" in the event the member, *inter alia,* "violat[es] applicable rules (including but not limited to American…Conditions of Carriage…" *See,* AAvantage™ Program Terms and Conditions ("Program Terms"), attached as Ex. 3 at AA00064. As demonstrated above (paragraphs 20-22), Plaintiff's own allegations admit he violated AA's Conditions of Carriage in that he refused to obey uniformed crew member instructions to stow his carry-on bag and engaged in conduct (throwing his carry-on bag at a flight attendant) that might jeopardize the safety of the aircraft or any of its occupants. Thus, AA's suspension of Plaintiff's Program benefits was well within AA's contractual rights in light of the facts plead in Plaintiff's Complaint. Since AA did not breach the Program Terms, Plaintiff's AAdvantage™ loyalty program claim must be dismissed with prejudice.[30]

Plaintiff Has No Justiciable Interest in the Program Benefits
Which He Agreed Have No Monetary Value

---

[29] This Court may consider the Program Terms without converting this motion into a motion for summary judgment since, as an essential element of his breach of contract claim, Plaintiff alleges he complied with the terms of the Program contract which AA breached when it took Program benefits from him for no justifiable reason. *See* Complaint [DE 1] ¶¶ 7, 75-77. *See* note 33 supra.

[30] Elements of breach of contract claim under Texas law are: (1) the existence of a contract, (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant, and (4) damages incurred by the plaintiff as a result of the breach. *See Lee v. Tyco Elecs. Power Sys., Inc.*, 2005 U.S. Dist. LEXIS 7328, at *4 (N.D. Tex. Apr. 27, 2005).

25. Through Plaintiff's participation in the Program, Plaintiff agreed that: 1) "[AA] may, in its discretion, change the Program rules, regulations, travel awards…at any time with or without notice" [including] withdraw, limit, modify or cancel any award"; such that 2) his "accumulation of mileage credit [did] not entitle [him] to any vested rights with respect to such mileage credits, awards or program benefits."[31] Plaintiff further agreed that "award tickets have not cash value"[32] and that "accrued mileage credit and award tickets do not constitute property of the member."[33] In short, under the terms of the contract made the basis of Plaintiff's claim, he does not own, has not vested rights to and has no property interest in the Program miles, benefits, or participation for which he seeks compensation in Count Five of his Complaint.

26. Plaintiff cannot sue for the loss of property and benefits he never owned or in which he never had any justiciable interest.[34] *In Re Devon Energy Prod. Co., Inc.,* 321 S.W. ed 778, 783 (Tex. App.- Tyler 2010) ("when a party owns no interest in the…property that is the subject of a suit, it has no justiciable interest in the suit."); *Trimble v Onewest Bank,* 2017 WL 3666519 at *5 (Tex. App. – Hou. [14th Dist.], 2017) (same); *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 486-87 (Tex. 2019) (breach of contract claim failed where it was unambiguous and plaintiff could not rely on extrinsic evidence "to import an obligation that does not exist in the contract"); *Am. Mfrs. Mut. Ins. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003) ("[W]e may neither rewrite the parties' contract nor add to its language.") (citation omitted).

27. Accordingly, AA requests that Plaintiff's Program Benefits claim be dismissed with prejudice.

---

[31] *See*, Program Terms, attached as Ex. 3 at AA00063.
[32] *See,* Program Terms, attached as Ex. 3 at AA00064.
[33] *See*, Program Terms, attached as Ex. 3 at AA00066.
[34] Like AA's Carriage Contract, the Program Terms are governed by Texas law. *See,* Program Terms, attached as Ex. 3 at AA00065.

## **CONCLUSION**

For the reasons argued above, AA respectfully requests that this Honorable Court grant Defendant's Motion for Judgment on the Pleadings and enter judgment against Plaintiff by dismissing each of Plaintiff's claims on the grounds discussed above.

Respectfully Submitted,

**BUCHANAN INGERSOLL & ROONEY PC**
*s/ Kelly H. Kolb*
Kelly H. Kolb, Esq.
Florida Bar Number: 0343330
kelly.kolb@bipc.com
Robert D. Pecchio, Esq.
Florida Bar Number: 1005955
Robert.pecchio@bipc.com
401 East Las Olas Boulevard, Suite 2250
Fort Lauderdale, FL  33301
Telephone:     (954) 703-3944
Facsimile:      (954) 703-3939
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

  **I HEREBY CERTIFY** that on this the 7th day of March, 2022, a true and correct copy of the above and foregoing has been filed with the Clerk of Court using the CM/ECF system. I FURTHER CERTIFY that the foregoing document is being served this date, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner of those counsel or parties who are not authorized to receive electronically Notices of Electronic filing on the counsel of record or *pro se* parties identified on the attached Service List.

**SERVICE LIST:**

William T. Woodrow III
250 West Main Street, Suite 201
Charlottesville, VA 22902
Rook Elizabeth Ringer, Esq.
LENTO LAW GROUP
222 San Marco Ave., Ste. C
St. Augustine, FL 32084
Tel: (855) 275-7378
Tel: (904) 602-9400
E-mail: reringer@lentolawgroup.com
E-mail: will@stoneandwoodrowlaw.com
*Counsel for Plaintiff*

            By:  */s/ Kelly H. Kolb*

               Kelly H. Kolb