IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| Troy Clowdus <br><br> PLAINTIFF <br><br> VS. <br><br> American Airlines Inc., <br><br> DEFENDANT. | Civil Action No.: 1:21-cv-23155-MM |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff TROY CLOWDUS, by and through undersigned counsel, hereby moves this Court to affirm that the Plaintiff's Complaint sufficiently states actionable claims and to deny Defendant AMERICAN AIRLINES ("AA") Motion for Judgment on the Pleadings.

**Background and Introduction**

1. The instant matter arises from an allegation of assault against the Plaintiff by an American Airlines flight attendant, which resulted in the Plaintiff being removed from the plane and banned for life from flying with the Defendant air carrier.

2. The Plaintiff denies that he committed an assault, and has brought claims against the Defendant for defamation per se, breach of contract, violation of the TICKETS ACT, and negligence.

3. Plaintiff's defamation per se claim survives because the accusation of assaulting a flight attendant is a federal crime, discovery is underway to determine which

1

passengers overheard this accusation, American Airlines has only qualified immunity to publish this accusation amongst its employees, which is an affirmative defense not appropriately raised at this stage, and that immunity is defeated by the express malice of its employee in making the accusation, the overbroad distribution of the allegation amongst AA's employees, the self-interest served by AA adopting the defamation, and AA's complete failure to investigate the claim before distributing it throughout the organization.

4. Plaintiffs breach of contract claims survive because Plaintiff did not assault a crewmember, did not refuse to obey a crewmember, was not removed from the flight for failing to obey a crewmember, or for any other legitimate reason, nor does Plaintiff make any admissions to the contrary.  As such, he complied with every term of the conditions of carriage attached to the ticket contract, and AA improperly removed him from the flight, did not return his money, revoked his hard-earned status as a frequent flyer with American Airlines, and banned him from redeeming his earned miles for tickets or flying again with AA.

5. Plaintiff chooses not to defend his claim for damages under the Transparency Improvements and Compensation to Keep Every Ticketholder Safe Act of 2017 or "TICKETS ACT" codified in 14 C.F.R. §250.7, as upon close scrutiny the statutory construction of the recently enacted law is unclear as to remedy or private cause of action.  Though the Court could decide that it provides for both, Plaintiff elects to spend limited resources on his strongest claims.

6. For similar reasons, the Plaintiff abandons his claim for negligence, as it faces difficult headwinds under recent case law in the Eleventh Circuit.

**Legal Standard for Rule 12(c) Motion**

"A motion for judgment on the pleadings is governed by the same standard as a Rule 12(b)(6) motion to dismiss." *Guarino v. Wyeth LLC*, 823 F. Supp. 2d 1289, 1291 (M.D. Fla. 2011). "Pleadings include the complaint and answer. Written instruments that are exhibits to a pleading are considered a part of the pleading." *Pyure Brands, LLC v. Nascent Health Sci. LLC*, No. 1:18-cv-23357, 2019 WL 7945226, at *2 (S.D. Fla. Mar. 4, 2019). Judgment on the pleadings should be granted where "there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Scott v. Taylor,* 405 F.3d 1251, 1253 (11th Cir.2005) (citing *Cannon v. City of W. Palm Beach,* 250 F.3d 1299, 1301 (11th Cir.2001)). In ruling on the motion, "[a]ll facts alleged in the complaint must be accepted as true and viewed in the light most favorable to the nonmoving party." *Id.* However, "[i]f it is clear from the pleadings that the plaintiff is not entitled to relief under any set of facts consistent with the complaint, the district court should dismiss the complaint." *King v. Akima Glob. Servs., LLC*, 775 F. App'x 617, 620 (11th Cir. 2019) (citing *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002)).

When a defendant raises issues of fact in the answer and seeks judgment on that basis, the 12(c) motion "cannot be granted." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1368 (3d ed. 2007). This principle is consistent with the rule that a plaintiff is not required to negate an affirmative defense in its complaint. *Future Fibre Techs. Pty. Ltd. v. Optellios, Inc.,* 2009 WL 10669938, at *2 (M.D. Fla. May 7, 2009) (citing *La Grasta v. First Union Sec., Inc.,* 358 F.3d 840, 845 (11th Cir. 2004)).

**Legal Standard for Defamation**

To state a cause of action for defamation, in Florida, a plaintiff must allege that (1) the defendant published a false statement (2) about the plaintiff (3) to a third party and (4) that the falsity of the statement caused injury to the plaintiff. *Seropian v. Forman,* 652 So.2d 490 (Fla. 4th DCA 1995).

However, in a defamation per se action, the plaintiff does not need to show any special damages. *Alan v. Wells Fargo Bank, N.A.,* 604 F. App'x 863, 865 (11th Cir. 2015) (citing *Johnson v. Fin. Acceptance Co.,* 118 Fla. 397, 159 So. 364, 365 (1935). Per se defamatory statements are "so obviously defamatory" and "damaging to reputation" that they "give rise to an absolute presumption both of malice and damage." *Id.* (quoting *Wolfson v. Kirk,* 273 So.2d 774, 776 (Fla. 4th DCA 1973)). . A "communication is actionable *per se* ... if it imputes to another ... a criminal offense amounting to a felony" *Wolfson*, So. 2d at 776 (*citing Campbell v. Jacksonville Kennel Club,* 66 So.2d 495, 497 (Fla. 1953)).

**Legal Standard for Defendant's Affirmative Defense of Qualified Privilege**

"[t]he affirmative defense of qualified immunity presents a fact intensive issue that should ordinarily not be resolved by a motion to dismiss." *Fariello v. Gavin*, 873 So. 2d 1243, 1245 (Fla. Dist. Ct. App. 2004); see also *Randazzo v. Fayer*, 120 So. 3d 164, 165 (Fla. Dist. Ct. App. 2013); and also *Kirvin v. Clark,* 396 So.2d 1203, 1204 (Fla. 1st DCA 1981); see also *Glynn v. City of Kissimmee*, 383 So. 2d 774, 776 (Fla. Dist. Ct. App. 1980) (" Rarely is summary judgment appropriate in a defendant's favor where the existence of a qualified privilege for a defamatory statement is controverted. 'Qualified privilege' is a defense and the burden of proving it rests with the defendant.")

"When the entity alleged to have committed the defamation is a corporation, the courts have held that statements made to corporate executive or managerial employees of that entity are, in effect, being made to the corporation itself, and thus lack the essential element of publication." *Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. Dist. Ct. App. 2007). However, statements are published for purposes of defamation when they are made to non-managerial personnel and they may or may not be afforded a qualified privilege. *Id.*

"The existence of a qualified privilege vanishes if the statement is made with malice, or to too wide an audience." *Glynn* 383 So. 2d at 776.(citing *Abraham v. Baldwin*, 52 Fla. 151, 42 So. 591 (1906)); see also *Belcher v. Schilling*, 349 So.2d 185 (Fla. 3d DCA 1977); also *Arison Shipping Company v. Smith*, 311 So.2d 739, 741(Fla. 3d DCA 1975) ("Florida law has consistently held that the qualified privilege attaching to business communications is lost when the scope of an intra-company communication to those having corresponding interests and duties is exceeded.")

A qualified privilege does not attach to statements made for the purpose of a corporation serving its own interests. *Drennen v. Westinghouse Elec. Corp.,* 328 So. 2d 52, 55 (Fla. Dist. Ct. App. 1976); see also *Falic v. Legg Mason Wood Walker, Inc.,* 347 F. Supp. 2d 1260, 1267 (S.D. Fla. 2004)

A qualified privilege attaches to "a statement made by one having an interest or duty in the subject matter thereof, to another person having a corresponding interest or duty therein." *Jarzynka v. St. Thomas Univ. of Law*, 310 F. Supp. 2d 1256, 1268 (S.D. Fla. 2004) (citing *Nodar v. Galbreath*, 462 So. 2d 803, 809 (Fla. 1984).

"When statements are protected by a qualified privilege, a plaintiff has the burden of establishing by a preponderance of the evidence that the statements were 'false and uttered with

common law express malice.'" *Egwuatu v. Burlington Coat Factory Warehouse Corp.*, 2011 WL 2413833, at *5 (M.D. Fla. June 10, 2011) (quoting *Corporate Fin., Inc. v. Principal Life Ins. Co.,* 461 F.Supp.2d 1274, 1292 (S.D.Fla.2006)).

"Express malice under the common law of Florida, necessary to overcome the common-law qualified privilege, is present where the primary motive for the statement is shown to have been an intention to injure the plaintiff." *Nodar v. Galbreath*, 462 So. 2d 803, 806 (Fla. 1984). "Strong, angry, or intemperate words do not alone show express malice; rather, there must be a showing that the speaker used his privileged position to gratify his malevolence." *Id*. at 811. (internal citations removed). "The gravamen of express malice is the abuse of a privileged occasion by improper motives on the part of the speaker." *Id*. at 812. "This malice may be inferred from the language itself, or may be proven by extrinsic circumstances." *Id*. at 810.

Additionally, some sister courts have held that the failure of a corporation to investigate an allegation before disseminating it throughout the organization destroys the qualified immunity. *Wirig v. Kinney Shoe Corp.*, 461 N.W.2d 374, 380–81 (Minn. 1990)("The facts here indicate that no investigation occurred to substantiate the charges that Wirig had stolen merchandise. The managerial personnel who repeated the accusations simply believed their sources without further investigation…Therefore, we hold as a matter of law that Kinney did not enjoy a qualified privilege.").

"[t]o prove an abuse of the qualified privilege, the plaintiff must show a direct intention to injure another, or a reckless disregard of [the defamed party's] rights and of the consequences that may result to him." *Kuwik v. Starmark Star Mktg. & Admin., Inc.,* 156 Ill. 2d 16, 30, 619 N.E.2d 129, 135–36 (1993) ("Thus, an abuse of a qualified privilege may consist of any reckless act which shows a disregard for the defamed party's rights, *including the failure to properly*

*investigate the truth of the matter*, limit the scope of the material, or send the material to only the proper parties.") (emphasis added).

### The Plaintiff Has Pled a Viable Claim for Defamation Per Se

The Plaintiff alleged in his Complaint that Mr. Merino, and subsequently American Airlines, falsely accused him of assaulting a flight attendant (Compl. ¶¶s 20-24, 39, 56-57), a crime which is a felony and punishable by up to 20 years in prison. See 49 U.S.C.A. § 46504 (West); See also *Ruta v. Delta Airlines, Inc.,* 322 F. Supp. 2d 391 (S.D.N.Y. 2004)( hn. 20. "Gate agent's alleged comment, made in front of other travelers, that passenger kicked him while he walked down aisle of airplane, supported passenger's claim of slander against airline; passenger's purported actions, if true, could constitute assault.") Falsely accusing someone of committing a felony is defamation per se. See *Wolfson, supra.* As such, the Plaintiff's damages are presumed and need not be proven with specificity.

Defendant alleges in his motion for judgment on the pleadings that the Plaintiff cannot prove (or has not sufficiently alleged) that the defamatory allegation was published to a third party, and thus Plaintiff's claim must be dismissed. However, this is inaccurate. Plaintiff proceeds upon five theories of publication, four of which are unnecessary to argue until the Defendant raises its affirmative defenses at a later stage, but all five are articulated below:

### *An unknown number of passengers in business class overheard the defamatory statement or possibly were told it directly after the Plaintiff was removed.*

Plaintiff did not specifically allege in his complaint that other business class passengers overheard the defamatory allegation because he had no way of knowing at that time whether any

7

of them had overheard it.[1]  However, the likelihood of other passengers overhearing it is strongly inferred from the facts that Plaintiff alleged.[2]

Discovery is ongoing and passengers are in the process of being deposed to learn what exactly they heard (or may have been told after the fact).  In *Mennella v. Am. Airlines, Inc.,* 824 F. App'x 696, 702 (11th Cir. 2020), the Plaintiff ran out of time to depose passengers to ascertain what they overheard, so he lost a summary judgment motion.  This is not summary judgment, and the Plaintiff has not run out of time to collect his evidence.

### *Flight Attendant Merino knew he had not been assaulted and published the defamatory claim with malice, defeating any qualified privilege he had to do so.*

The Plaintiff has pled facts sufficient to conclude, if taken in the light most favorable to the Plaintiff, that Mr. Merino's primary motive in accusing Mr. Clowdus of assault was to cause him injury.[3]  He used his privileged position as a flight attendant, knowing the near-absolute power his word had in that environment, to gratify his malevolence.  This malice can be inferred from the very fact that he accused Mr. Clowdus of a felony – punishable by up to 20 years in prison and the loss of the right to vote or possess a gun – for what he knew was a harmless accident.  Compl. ¶¶s18-20.  That is what the complaint alleges, and that is the truth.[4]

---

[1] If the Court considers this a pleading deficiency, Plaintiff requests leave to amend.

[2] Compl., ¶ 20, "He looked up at this point and found the flight attendant glaring at him with rage as he said in a near shout "You hit me!"; ¶21, "Momentarily stunned by the onslaught, Mr. Clowdus was speechless as the flight attendant accused again even more loudly "You hit me!"; ¶23, " Even more enraged, now the flight attendant shouted "You hit me!"

[3] Compl., ¶30, "No reasonable person would believe that Mr. Clowdus had intended his bag to make contact in an offensive manner with the flight attendant."; ¶ 31, "No reasonable person would characterize the slight brushing contact that was made as an "assault."; ¶50, "It was reasonably foreseeable that Defendant's flight attendant could be lying about being assaulted…"; ¶60, "Plaintiff additionally seeks punitive damages in an amount to be determined at trial for the malicious actions taken by Defendant's employee."

[4] If the Court considers it a pleading deficiency to have not used the words "express malice," Plaintiff again respectfully requests leave of the Court to amend the Complaint.

Any presumption of qualified immunity Mr. Merino could claim (in a later proceeding) based upon "having an interest or duty in claiming he was assaulted" and having only conveyed that claim to someone who had "an interest or duty" in hearing the claim is defeated if he shared the defamation beyond the scope of the privilege, and defeated more broadly by the common law express malice that can be inferred from viewing the facts as pled in the Complaint in their most favorable light.

And American Airlines is vicariously liable for Mr. Merino's defamation and the express malice behind it because Mr. Merino was acting within the scope of his employment when he made the allegation.  See *Valeo v. E. Coast Furniture Co.,* 95 So. 3d 921, 925 (Fla. Dist. Ct. App. 2012); see also *Holtzman v. B/E Aerospace, Inc.,* 2008 WL 214715, at *4 (S.D. Fla. Jan. 24, 2008) ("[i]t is well settled in Florida, as elsewhere, that a corporation, just as an individual, may be liable for defamation by its employees…If the employee was an agent of the corporation acting within the scope of his employment, then the employer may be held liable.) (internal citations omitted).

### *American Airlines has distributed the statement beyond employees who had a qualified privilege to hear it.*

Defendant complains that Plaintiff did not allege who, with specificity, in American Airlines had heard the defamation.  What a convenient argument.  How could the Plaintiff possibly know the answer to that prior to discovery?  Discovery is underway now to determine who among Defendant's employees were relayed the allegation of assault at the time, and who among Defendant's employees have access to the allegation of assault today.  See *Glynn, Arison, supra*.

***American Airlines destroyed any qualified privilege it may have possessed by failing entirely to investigate the incident before republishing it companywide.***

Discovery is also ongoing into whether American Airlines did anything to investigate Mr. Merino's claim or just took it at face value. There is a very plausible "set of facts consistent with the Complaint" whereby American Airlines did nothing to investigate the felony allegation, ignored any evidence to the contrary, and made a rush to perfunctorily stamp the allegation as true. See *Wirig, Kuwik, supra*.

***American Airlines destroyed any qualified privilege it may have possessed by serving its own purpose in republishing the defamation against Mr. Clowdus.***

In rushing to reaffirm the allegation that the plaintiff assaulted the flight attendant, AA was serving its own purpose: it was more important to AA that it be seen company-wide as providing strong support for its flight attendants than it was for AA to learn the facts of what occurred. It had no interest in potentially vindicating a customer at the expense of having to punish an employee and suffer the potential criticism and morale degradation amongst employees who had heard only a distorted version of the events – especially in the time of COVID and news stories about harried flight attendants enforcing mask mandates. AA declined to meaningfully investigate the incident and adopted the defamation without question in order to avoid any potential detriment to employee morale and to reap its own positive rewards of goodwill from watchful employees, who might feel more "valued" and "protected" by their employer after watching a loyal customer get discarded without a second glance in favor of "protecting" an employee. As such, AA lost its privilege, and with it the requirement that the Plaintiff show it acted with malice. See *Drennen, Falic, supra*.

**The Plaintiff Has Pled a Viable Claim For Breach of Contract**

Beginning with the very first sentence of the introduction to Defendant's motion and continuing liberally throughout, Defendant repeatedly mischaracterizes Plaintiff's Complaint in an effort to claim that it somehow admits to conduct justifying removal, but the Defendant's arguments are unconvincing.

The Complaint alleges that the Plaintiff was removed from the flight for the allegation that he assaulted a flight attendant. Compl., ¶¶s 19-28.  Defendant cannot, in his motion to dismiss, introduce new facts claiming that the Plaintiff was *actually* removed for refusing to follow crewmember instructions.  That never happened, it was not the reason he was removed, and the Complaint makes no admissions to infer that it was.  Defendant only now tries to retroactively manufacture that rationale.  At best, this is offering new facts, inappropriate for a 12(c) motion; at worst, it is dishonest.

And even accepting the Defendant's post facto rationalization, the Defendant's argument fails completely.  The Complaint records two interactions with the flight attendant regarding the bag:  First, as Mr. Clowdus "moved to sit down" and was told "his satchel needed to go in the overhead bin," (Compl., ¶10.) to which he "nodded his compliance." (Compl., ¶11).  The Complaint does not say that the flight attendant commanded him to "put the bag up above this very instant," and no frequent air traveler would have interpreted his instruction in that way.  The Plaintiff had not yet sat down.  He had not had time to remove what he wanted from the bag.  He had no reason to believe that the flight attendant was attempting to prevent him from doing so, and he had no reason to believe that the instruction meant anything other than: "You are in a bulkhead seat.  The bag has to be above for takeoff."  As such, he nodded, "OK," with the full intent to comply.

The second and final interaction involving the bag begins with the Plaintiff listening to earbuds and not hearing the flight attendant speaking to him. Compl., ¶14. Presumably, this is the second "refusal" to follow instructions that the Defendant claims the Complaint "admits." Mr. Clowdus takes his headphones out when he realizes he is being addressed, and hears two rapid-fire commands to "Give me the bag!" Compl., ¶15. Presumably this is the third and fourth "refusal" to follow instructions that the Defendant hopes the Court also "sees." However, far from refusing to obey, Mr. Clowdus immediately "moved to comply" as soon as he understood what was being asked of him. Compl., ¶17.

No reasonable person reads a refusal to obey instructions from these facts. The facts of the Complaint, taken in the light most favorable to the Plaintiff provide no justification for the Defendant to have breached the ticket contract – either the first or the second ticket contract. The ground security coordinator who removed the Plaintiff from the first flight at the insistence of the flight attendant knew the facts alleged, knew the flight attendant claimed to have been assaulted, knew that he was removing the Plaintiff for the allegation of assault, but he still made the decision to book the Plaintiff on the next available flight and to personally escort him to it and see that he was seated. Compl., ¶¶s32-38. As such, any claim that AA had to remove the Plaintiff from the second flight based upon the alleged breach of assault was waived by the actions taken by Defendant's employee, who had the authority to make such waiver. See *Tenneco Inc. v. Enter. Prod. Co.*, 925 S.W.2d 640, 643 (Tex. 1996)("The affirmative defense of waiver can be asserted against a party who intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right.")(citing *Sun Exploration & Prod. Co. v. Benton,* 728 S.W.2d 35, 37 (Tex.1987)).[5] By removing the Plaintiff for the false allegation of

---

[5] This waiver argument was not raised in the Complaint. The Plaintiff believes that Fed. R. Civ. P. 15 allows that Plaintiff with the Court's leave to conform the pleadings to the evidence and the scope of the Ground

assault and then waiving the alleged breach by seating the Plaintiff on a subsequent flight, Defendant breached both ticket contracts.

Since the Complaint alleges that the Plaintiff did not violate the terms of the contract of carriage, the Defendant had no justification to remove the Plaintiff from its frequent flyer rewards program, breaching that contract as well.

After the Complaint was filed, the Defendant made much noise about the fact that it had not (yet) erased the Plaintiff's miles, as the Plaintiff had believed and alleged in the Complaint. As if somehow that undermined the entire substance of the claim.[6]  Whether or not, the Plaintiff can still access his mileage account, and use it for magazine subscriptions or car rentals, the fact is that the Defendant has taken away the only use that the Plaintiff had for it, and the only reason that the Plaintiff ever joined the program.  The Plaintiff is a very frequent traveler and he spent a lifetime building status with the Defendant to make travel as painless as possible:  free upgrades, priority boarding, free baggage check, lounge privileges, and more.  He invested his years in the Defendant's program, rather than a competitor's, and the Defendant took it all away with no cause.  As such, Defendant breached his contract with the Plaintiff.  Quantifying damages is less than straightforward for this claim, but a jury can decide what the lost perks are worth and how much value remains to the miles collecting dust in the Plaintiff's mileage account as well.

AA further argues that it had the right under the terms of the loyalty program to change the terms unilaterally for any reason, and that may be true, but that is merely license to make a

---

Security Coordinator's authority to waive an alleged breach was not understood until his deposition.  If necessary, the Plaintiff requests leave of the Court to amend.

[6] Defendant grandstands about this fact in an intended Rule 11 motion that attempts to bully the Plaintiff into dropping all of his claims entirely.  If the Court finds any merit in Defendant's argument about the miles, Plaintiff asks leave of the Court to amend the Complaint for clarification.

business decision which changes the terms of the program for all passengers – it is not allowance to cancel the earned membership interest of one passenger for no reason.

Similarly, it is one thing to agree that your earned benefits have no "cash-out" or otherwise resale value, but it is something different for AA to argue that cancelling a member's benefits, when they have spent many years cultivating their worth to himself under the terms of the contractual agreement, does no damage.

## Conclusion

For the reasons argued above the Plaintiff respectfully asks this Court to deny the Defendant's Motion for Judgment on the Pleadings with respect to Plaintiff's claims for defamation per se and breach of contract. The Plaintiff voluntarily relinquishes his claims under the TICKETS ACT and for simple negligence; not because the Plaintiff believes they are not viable claims, but in an effort to promote judicial efficiency and to streamline expenses into the most productive channels.

Respectfully Submitted,

*[signature]*
_____

William T. Woodrow III (*pro hac vice*)
Stone & Woodrow LLP
250 West Main St. Suite 201
Charlottesville, VA 22902
will@stoneandwoodrowlaw.com
Phone: 855-275-7378
Attorney for Plaintiff

Rook Ringer (Fla Bar ID #1015698)
reringer@lentolawgroup.com
Lento Law Group, P.A.
222 San Marco Ave., Ste. C
St. Augustine, FL 32084
(904) 602- 9400
*Local Counsel for the Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served upon the following attorneys of record by CM/ECF on this 21th day of March, 2022.

    Kelly Kolb
    Robert D. Pecchio
    Labor & Employment Practice Group
    401 East Las Olas Boulevard
    Suite 2250
    Ft. Lauderdale, FL 33301
    954 703 3900 (office)
    954 703 3944 (direct)
    kelly.kolb@bipc.com
    robert.pecchio@bipc.com

*[signature]*
_____
William T. Woodrow III