IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| Troy Clowdus<br><br>PLAINTIFF<br><br>VS.<br><br>American Airlines Inc.,<br><br>DEFENDANT. | Civil Action No.: 1:21-cv-23155-MM |

**PLAINTIFF'S REPLY – MOTION TO COMPEL DISCOVERY FROM DEFENDANT AMERICAN AIRLINES**

Plaintiff TROY CLOWDUS, by and through undersigned counsel, hereby submits this Reply in Support of his Motion to Compel Discovery from Defendant American Airlines ("AA") and asks for the court to award costs and attorney's fees for necessitating this motion.

**Background of Defendant's Litigation Tactics**

It is not the undersigned's practice to seek attorney's fees from the other side during the normal course of litigation, but American Airlines has bullied the Plaintiff and his counsel through every step of this litigation, including threatening to make a bar report against Plaintiff's counsel for no good cause (Ex. A), pushing early mediation only for the purpose of threatening the Plaintiff and his attorney with seeking costs and fees (Ex. B), serving a frivolous rule 11 motion on the Plaintiff (Ex. C), and now seeking its own costs for a discovery dispute that AA has unreasonably necessitated.

**Plaintiff's Discovery Requests are Timely, and Plaintiff Made Every Effort to Resolve the Dispute Without Seeking the Court's Intervention**

1. On 12-14-22, the parties signed a confidentiality agreement that covers all of the contested discovery herein. (Ex. D).

2. Defendant served its first answers to Plaintiffs first discovery requests on 12-17-2021. In them, Defendant objected to Plaintiff's blanket request for the personnel file of the flight attendant (FA) central to the claim of defamation in this litigation. (D. Resp., Ex. 1, DE 21-1)

3. On 1-06-2022, the parties conferred, and the Plaintiff narrowed his request of the FA personnel file to "disciplinary actions, performance reviews, or customer complaints that provide insight into personality, volatility, or honesty." (Ex. E).

4. In response to this overture, AA said it would review the last three years of the personnel file for "similar events reported." The definition of "similar" was left vague. Plaintiff agreed to accept this as a first step but disagreed that it was enough. (Ex. E).

5. On 01-12-2022, Plaintiff still had not heard from AA, but was still hopeful of reaching eventual compromise so, with plenty of time left in discovery, Plaintiff decided to "push" the issue of the personnel file by reissuing a drastically pared-down request for only conflict-related issues from the FA personnel file in his second request for documents. (Ex. F).

6. On 1/21/2022, counsel for AA, finally responded and informed the Plaintiff that he was been unable to get anything newer than 2013 from the FA personnel file, so he would be unable to provide any potential discovery from the personnel file before the deposition of the flight

attendant. (Ex. G). The FA deposition was scheduled to occur on 2-04-22, nearly two weeks later.[1] (Ex. H)

7. There were five depositions scheduled in a block over the first week in February, so Plaintiff elected to continue as planned, question the flight attendant about his personnel file, and compare his answers with the subsequent discovery responses.

8. On 2-10-2022, Defendant responded to Plaintiff's second request for production of the very limited portion of the personnel file with exactly the same objections as before and refused production of anything beyond the Defendant's narrow parameters within a 3-year period. (P. Motion, Ex. 1, DE 18-1).

9. On 2-10-2022, the Plaintiff asked counsel for AA when he was available to confer on the updated personnel file request and other requested discovery. (Ex. I).

10. On 2-14-2022, the Plaintiff submitted his third request for production to the Defendant for all reports filed by the FA via the Corporate Events Reporting System (CERS reports). (Ex. J).

11. On 2-17-2022, the parties had a phone call to confer and Plaintiff sent a summary of the call, stating they were unable to come to agreement on the personnel file. (Ex. K).

12. On 3-4-2022 Defendant responded to Plaintiffs third request for documents and refused to produce any CERS reports. (P. Motion, Ex. 2, DE 18-2).

13. On, Wednesday, 3-9-2022, the Plaintiff emailed counsel for AA to see if he was of the opinion that there would be value in another phone call to confer on the outstanding issues. (Ex. L).

---

[1] Five months into litigation, counsel for AA had apparently still not reviewed the flight attendant's file and felt confident that he wouldn't be able to in the two weeks running up to the flight attendant's deposition.

14. The parties did have a phone call on 3-9-2022, where counsel for AA indicated that he would not produce the CERS reports and he would probably produce the personnel records that were requested, to the full breadth that were requested, for five years. (D. Resp., Ex. 2, DE 21-2).

15. The Plaintiff was willing to agree to this compromise on the personnel records, but was worried this could be a tactic to delay the Plaintiff into missing the filing deadline. *Id*.

16. By the close of business on Friday, 3-11-2022, with Monday being the filing deadline, the Plaintiff asked counsel for defense if he intended to produce the documents. *Id.*

17. AA responded ambiguously. *Id.*

18. Plaintiff's counsel reaffirmed what he wanted and his understanding of Wednesday's call, saying "the deadline is Monday to file, so I will need a firm response quickly." *Id.*

19. AA never responded, so Plaintiff filed his motion to compel.

20. AA cites *RTG Furniture Corp. v. Indus. Risk Insurers*, 2008 WL 11331987, at *1 (S.D. Fla. June 3, 2008) for the very uncharitable proposition that the Plaintiff's request for the personnel record is untimely; however, that case involved a Plaintiff who waited five months to bring a motion less than a week before the close of discovery. As the court in that case opined: "The obvious purpose of the rule is 'to ensure that discovery motions are filed when ripe and not held until shortly before the close of discovery or the eve of trial.' 1998 Comments, S.D. Fla. L. R. 26.1."

21. AA's string citation of other cases to support this argument similarly contains rulings within the context of discovery cut-off. Discovery does not close in this case until June 25, 2022.

22. The Plaintiff drastically reduced the scope of his discovery request from the flight attendant's entire personnel record to just those entries pertaining to interpersonal conflict. This was an

attempt to head off a discovery fight, while using the time available, not some effort to game the system as AA implies.

23. That AA served the identical objection in response to Plaintiff's good faith effort to sharply tailor his request and avoid bothering the Court, is what is truly objectionable.

## The Plaintiffs Requests are Relevant.

24. Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 451 (1978).

25. Courts are required to accord discovery a broad and liberal scope. *Milianazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 695 (S.D. Fla. 2007); see also *Rosenbaum v. Becker & Poliakoff, P.A.*, 708 F. Supp.2d 1304, 1306 (S.D. Fla. 2010).

26. "[g]enerally, the party resisting discovery bears the burden of demonstrating that the requested discovery falls outside the scope of relevancy under Rule 26." *S.E.C. v. BankAtlantic Bancorp, Inc.*, 285 F.R.D. 661, 666 (S.D. Fla. 2012).

27. Employee shortcomings, discipline, customer complaints, peer reviews, performance reviews and sanctions have all been deemed relevant by Florida courts in other litigation. See, e.g., *Kafie v. Northwestern Mutual Life Ins. Co.*, 2011 WL 4636889, at *2 (S.D. Fla. Oct. 6, 2011) (finding personnel documents discussing employee's job performance, compensation, evaluation, discipline, training, educational background, work duties, and hours of work to be relevant); *Turner v. Geico Indem. Co.*, 2011 WL 11769047, at *2 (S.D. Fla. Sept. 8, 2011) (finding personnel files about employee's training, supervision, competence, abilities, shortcomings, and performance standards to be relevant); *Mancuso v. Florida Metropolitan University, Inc.*, 2011 WL 13213836, at *3 (S.D. Fla. Jan 31, 2011) (finding files relating to

employment evaluations, peer reviews, sanctions, complaints grievances and reports to be relevant, while documents relating to medical, financial and personal background were not relevant); *Hacking v. United States*, 2020 WL 9173087, at *3 (S.D. Fla. July 28, 2020) (Portions of personnel files, including job appraisals and performance evaluations deemed relevant for six nurses and two doctors).

28. The requested discovery is relevant for a number of reasons: The Plaintiff has accused American Airlines' flight attendant of defamation. Untruthfulness – an untrue statement – is an essential element of a claim for defamation. "When character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may be made of specific instances of that person's conduct." See Fla. Stat. Ann. § 90.405 (West).

29. The requested discovery could potentially be used for impeachment.

30. The requested discovery could be used if the flight attendant offers evidence of his good character. For example that he is a peacemaker, who avoids conflict, and never has problems with passengers or co-workers.

31. A history of conflicts with co-workers could lead to the admissible evidence of co-workers who would provide reputation testimony. See Fla. Stat. Ann. § 90.609 (West) ("A party may attack or support the credibility of a witness, including an accused, by evidence in the form of reputation, except that: (1) The evidence may refer only to character relating to truthfulness.")

32. The flight attendant may have been disciplined for untruthfulness or mistreating passengers.

33. The flight attendant may remove passengers so frequently that it could be characterized as being a habit or otherwise be anomalous.

34. The flight attendant's pattern of mistreating passengers could show proof of motive or absence of mistake.  This could support a finding of malice – one way to defeat the affirmative defense of qualified immunity.

35. Evidence of employee discipline, customer complaints, and CERS reports can point to foreseeability and support vicarious liability for AA.

36. Evidence of employee discipline, customer complaints, and CERS reports, can be used as evidence to support the rejection of the affirmative defense of qualified immunity by supporting the argument that AA conducted absolutely no investigation into the incident before adopting the defamation. See *Wirig v. Kinney Shoe Corp.*, 461 N.W.2d 374, 380–81 (Minn. 1990); see also *Kuwik v. Starmark Star Mktg. & Admin., Inc.*, 156 Ill. 2d 16, 30, 619 N.E.2d 129, 135–36 (1993).

37. These inquiries are abundantly relevant.  The Defendant has stone-walled the Plaintiff on these particular discovery responses *precisely because* the Defendant knows how potentially relevant these particular discovery responses are to the Plaintiff successfully vindicating himself. That is why the Defendant should be sanctioned for necessitating this motion – *especially considering that this discovery is subject to an operative confidentiality agreement, and any discovery given at this stage will still be subject to an admissibility determination before being allowed in as evidence in the case.*

## The Plaintiff's Requests are not Overbroad

38. The Plaintiff had been willing to agree to limit the scope of his requests to a span of recent years, but the flight attendant changed that with his testimony claiming that he has never been reprimanded for his interaction with a passenger, he has never had a passenger

7

complain about him, and he has never asked the Captain to remove another passenger. The requested timeframes are now relevant for purposes of impeachment.

39. While somewhat humbling to admit, this revelation did not come upon the undersigned until preparing this motion.

40. AA cries foul because the Plaintiff seeks more years of discovery in his motion than he was willing to agree upon if no motion was required. But this should be no surprise: the Plaintiff was willing to negotiate (after the fact with the personnel file items, and in the initial request with the CERS reports) if it would avoid the need for a motion fight. Now that the need for a motion fight is required, the Plaintiff will let the Court decide how many years of production is reasonable, in light of the circumstances, for both items requested.

41. AA cries foul because we did not meet and confer as to whether AA would provide 24 years of CERS reports after AA had already refused to provide 5 years. This is not a convincing argument. The answer, obviously, would have been an even more resounding NO.

42. AA cries foul, saying the Plaintiff never requested the discovery. Should the Plaintiff have issued a new discovery request for 24 years of CERS reports after five years was already rejected? The discovery request was made. The Plaintiff did not request anything new – he, in fact, shrank the substantive scope, while extending the temporal. The Court frequently arbitrates the scope of years requested. The court can choose on its own to expand or limit the temporal scope of a discovery request.

43. Contrary to what AA would have the Court believe in its Response, the flight attendant *did not say* that he could not recall whether the various incidents occurred or otherwise. Plaintiff combines and re-attaches his original exhibits here for the Court's convenience. (Ex. M).

44. AA should not feel proud asking the court to scrutinize the deposition transcripts that Plaintiff attached as exhibits to his motion as they show non-stop interruptions and witness interference, but the Court can decide for itself which party is mischaracterizing the testimony. *Id.*

45. AA attempted to stop the flight attendant from continuing in his string of providing definite answers by saying: "you are asking him to recall 24 years of service." To which the question was amended: "If you recall." And the flight attendant replied: "Just your client, sir. The best of my recall, like you say." The last sentence, directed at AA counsel. *Id.*

46. AA implies that CERS reports are numerous and wide-ranging, covering more than just reports of misconduct. This is not the understanding that the Plaintiff has been given through conversation with counsel for AA or from depositions taken.

47. Another, uninvolved, flight attendant of 24 years that was deposed in this action responded to the question: "Have you ever filed a CERS report?" with the answer: "No, never. I'm the kind of guy that I don't really get in trouble or I'm not into trouble. I don't -- I'm very low -- they say, fly under the radar, and that's what I do. I go there, do my job and come back home to my family." (Ex. N).

48. He didn't hesitate. It sounded like, for him, filing a CERS report would have been akin to calling 911 or filing a police report against someone – the sort of thing you would remember doing, even after many years had passed. And, from his response, his understanding of CERS reports was that they contemplated only conflict and misconduct. *Id.*

49. If AA's flight attendant is not lying, then expanding the scope of years in this motion will produce nothing, so this is a fight over nothing. But if it produces something, then it brings with it its own relevance for purposes of impeachment.

50. For the foregoing reasons, the Plaintiff respectfully requests the Court to order the Defendant, American Airlines, to produce the contested discovery and to pay what reasonable attorneys' fees and costs as the Court deems appropriate.

Respectfully Submitted,

_____

William T. Woodrow III (*pro hac vice*)
Stone & Woodrow LLP
250 West Main St. Suite 201
Charlottesville, VA 22902
will@stoneandwoodrowlaw.com
Fax:    646 873-7529
Voice: 855-275-7378
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing document was served upon the following attorneys of record by CM/ECF on this 4th day of April, 2022.

Kelly Kolb
Robert D. Pecchio
Labor & Employment Practice Group
401 East Las Olas Boulevard
Suite 2250
Ft. Lauderdale, FL 33301
954 703 3900 (office)
954 703 3944 (direct)
kelly.kolb@bipc.com
robert.pecchio@bipc.com

_____
William T. Woodrow III