IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

- - -

| | | |
|---|---|---|
| TROY CLOWDUS, | : | NO. 1:21-cv-23155-MM |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| AMERICAN AIRLINES, INC., | : | |
| | : | |
| Defendant. | | |

- - -

VIDEOCONFERENCE DEPOSITION OF FERNANDO BASTOS

MONDAY, MARCH 28, 2022

1:04 P.M.

- - -

REPORTED BY:

Jean M. Walker, Court Reporter - Notary Public

APPEARING REMOTELY FROM CAMDEN COUNTY, NEW JERSEY

| | | |
|---|---|---|
| 1 | A. | One of -- |
| 2 | Q. | -- Gonzalez?  Does that sound familiar? |
| 3 | A. | If I'm not mistaken, yes. |
| 4 | Q. | Did it recount what Mr. Henriquez, the GSC |
| 5 | | on the plane, had observed that morning? |
| 6 | A. | I'm not sure. |
| 7 | Q. | Okay.  How long have you worked for |
| 8 | | American Airlines, Mr. Bastos? |
| 9 | A. | This is my 24th year. |
| 10 | Q. | Twenty-fourth year? |
| 11 | A. | This 23, 24, yeah. |
| 12 | Q. | In that time, how many flights have you |
| 13 | | taken with Carlos Merino? |
| 14 | A. | Several.  I don't remember, but several. |
| 15 | | I think he's from '98 and I'm from '97, so we've |
| 16 | | been working, kind of, together for that amount of |
| 17 | | time, 23 years, you know, three, four, five times, |
| 18 | | ten times a year.  It's a long time. |
| 19 | Q. | Okay. |
| 20 | A. | Several times a year. |
| 21 | Q. | Do you consider yourself to be friends |
| 22 | | with Mr. Merino? |
| 23 | A. | We don't go to each other's house or |
| 24 | | anything.  Whenever we fly together, we're friends. |
| 25 | | We talk and we confide things with each other, |

```
 1      Q.        Okay.  Are you aware of other incidents
 2   where Mr. Merino has occasioned the removal of a
 3   passenger from a flight?
 4      A.        I don't understand the question.  If there
 5   were other incidents?
 6      Q.        Yeah, in the course of your years working
 7   with Mr. Merino, can you remember any other times
 8   where he's asked the captain to remove a passenger?
 9      A.        No, not that I know of.  No.
10      Q.        Have you ever asked the captain to remove
11   a passenger?
12      A.        No.
13      Q.        In 24 years, never once?
14      A.        No.  No.  I've already told passengers
15   what the FARs are.  If they continue doing
16   something, I can request -- but no, never.  I've
17   told passengers, hey, listen, you cannot do this.
18   It's Federal Air Regulations.  If you continue
19   intimidating or doing things like you're doing, you
20   know, I'm going to call the captain, but I've never
21   actually done it.
22              I tell passengers not to continue, if
23   they're doing something wrong.  If they're breaking
24   the FAR, I tell them, if you continue doing this I
25   might tell the captain, you know, that, you know,
```

```
1     you're breaking Federal Air Regulations and you
2     might have to be removed.  Then they're very
3     compliant with me.  I'm very polite to them, very
4     soft spoken.
5            I've worked with another airline before.
6     That's why they hired me, because I treat -- I treat
7     people the way I like to be treated.  Let's put it
8     this way.  I never had a problem.  I never had to --
9     I never had really to remove anybody.
10    Q.       Okay.  Have you ever given a witness
11    statement that was supporting another flight
12    attendant's request to remove a passenger?
13    A.       No, never.  No.
14    Q.       Have you ever filed a CERS report?
15    A.       No, never.  I'm the kind of guy that I
16    don't really get in trouble or I'm not into trouble.
17    I don't -- I'm very low -- they say, fly under the
18    radar, and that's what I do.  I go there, do my job
19    and come back home to my family.
20    Q.       That's great.
21    A.       Yeah.
22    Q.       Let me ask a question in a different vein.
23    Explain to me how flight attendants divide
24    responsibility for the cabin when there are four
25    positions.
```

Page 30

1  MR. WOODROW: Mr. Bastos, I have
2  no further questions.
3           THE WITNESS: You don't?
4           MR. KOLB: We will reserve ours
5  until the time of trial. He'll read and
6  sign.
7           THE COURT REPORTER: Send it to
8  your office?
9           MR. KOLB: Yes.
10          THE COURT REPORTER:
11 Mr. Woodrow, you need a copy, I assume?
12          MR. WOODROW: Yes, please.
13          THE COURT REPORTER: Does
14 anybody need anything expedited?
15          MR. WOODROW: No.
16          MR. KOLB: No.
17          (Deposition concluded at 1:37
18 p.m.)

Page 31

1          C E R T I F I C A T I O N
2
3          I, Jean M. Walker, do hereby
4  certify:
5          That prior to being examined,
6  the witness in the foregoing proceedings
7  was by me duly sworn to testify to the
8  truth, the whole truth, and nothing but
9  the truth;
10         That said proceedings were taken
11 remotely before me at the time and place
12 therein set forth and were taken down by
13 me in shorthand and thereafter transcribed
14 into typewriting under my direction and
15 supervision;
16         I further certify that I am
17 neither counsel for, nor related to, any
18 party to said proceedings, not in anywise
19 interested in the outcome thereof.
20         In witness thereof, I have
21 hereunto subscribed my name.
22
23 Dated:  March 28, 2022

Page 32

*Jean Walker*
------------------------
Court Reporter - Notary Public

(The foregoing certification of
this transcript does not apply to any
reproduction of the same by any means,
unless under the direct control and/or
supervision of the certifying reporter.)

Page 33

1          INSTRUCTIONS TO WITNESS
2
3          Please read your deposition over
4  carefully and make any necessary
5  corrections. You should state the reason
6  in the appropriate space on the errata
7  sheet for any corrections that are made.
8          After doing so, please sign the
9  errata sheet and date it. You are signing
10 same subject to the changes you have noted
11 on the errata sheet, which will be
12 attached to your deposition.
13         It is imperative that you return
14 the original errata sheet to the deposing
15 attorney within thirty (30) days of
16 receipt of the deposition transcript by
17 you. If you fail to do so, the deposition
18 transcript may be deemed to be accurate
19 and may be used in court.