UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:21-cv-23155-KMM

TROY CLOWDUS,

      Plaintiff,

v.

AMERICAN AIRLINES, INC.,

      Defendant.

_____/

### ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS

THIS CAUSE came before the Court upon Defendant American Airlines, Inc.'s ("Defendant" or "AA") Motion for Judgment on the Pleadings. ("Mot.") (ECF No. 17). Plaintiff Troy Clowdus ("Plaintiff") filed a response in opposition. ("Resp.") (ECF No. 20). Defendant filed a reply. ("Reply") (ECF No. 22). The Motion is now ripe for review.

## I.    BACKGROUND[1]

This case arises from an incident that occurred at Miami International Airport on June 10, 2021. *See generally* Compl. At 6:30 AM that morning, Plaintiff boarded American Airlines flight No. 1303 from Miami, Florida to Mexico City, Mexico. *Id.* ¶ 8. As Plaintiff moved to sit down, the flight attendant—who was "behaving in a loud and somewhat manic fashion"—informed him that his satchel needed to go in the overhead bin. *Id.* ¶¶ 9–10. Plaintiff nodded his head in

---

[1] The background facts are taken from the Complaint. ("Compl.") (ECF No. 1). All material facts alleged in the Complaint are accepted as true and must be viewed in the light most favorable to the non-moving party. *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014). Additionally, the Court may consider documents attached to a Rule 12(c) motion so long as "the documents are (1) central to the [plaintiff's] claim and (2) their authenticity is not challenged." *Ramey v. Interstate Fire & Cas. Co.*, 32 F. Supp. 3d 1199, 1203 (S.D. Fla. 2013) (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)).

acknowledgement, sat down, put on his headphones, and began composing an email on his phone while the flight attendant directed other passengers to their seats. *Id.* ¶¶ 11–13.

Plaintiff subsequently "realized that he was being spoken to by the flight attendant, who appeared angry that he was not responded to immediately." *Id.* ¶ 14. As he removed his headphones, the flight attendant twice told Plaintiff to give him the bag in a loud and angry voice. *Id.* ¶ 15. After shaking his head at the unnecessary and demeaning tone being used, Plaintiff "[l]ower[ed] his head back to his phone to break eye contact and disconnect from the inexplicable fury of the flight attendant, [Plaintiff] reached down with his left hand and pulled the bag from under the seat and across the armrest to the seat beside." *Id.* ¶¶ 17–18. It was then that he felt the bag make slight contact with the flight attendant—which Plaintiff assumed was a result of the flight attendant taking the bag from him. *Id.* ¶ 19. However, Plaintiff soon realized that he was still holding the bag. *Id.*

"[Plaintiff] looked up at this point and found the flight attendant glaring at him with rage as he said in a near shout 'You hit me!'" *Id.* ¶ 20. The flight attendant twice repeated his accusation before Plaintiff, who was "stunned by the onslaught," denied doing so. *Id.* ¶¶ 21–24. The flight attendant then stormed to the front of the plane, returned, and said that Plaintiff was not flying on "his" plane. *Id.* ¶¶ 25–26. Plaintiff attempted to deescalate the situation by apologizing, but the flight attendant soon returned to the front where Plaintiff heard him say in an "elevated voice" that he would not fly with Plaintiff onboard. *Id.* ¶¶ 27–28. "Shortly thereafter another AA employee approached [Plaintiff], apologized for the inconvenience and asked if he could speak with [Plaintiff] off the plane." *Id.* ¶ 32.

Plaintiff explained what happened to this employee, who was a supervisor. *Id.* ¶ 33. The supervisor apologized profusely, told Plaintiff that the flight attendant was refusing to fly with him

onboard, and promised to get Plaintiff onto the next flight and personally escort him to the gate. *Id.* ¶¶ 33–34. "[Plaintiff] asked the supervisor if he should file a complaint against the flight attendant and the supervisor assured him that he would be filing a report about the flight attendant himself, but [Plaintiff] could do so as well." *Id.* ¶ 35. Plaintiff filed a complaint with Defendant while he waited for his next flight. *Id.* ¶ 36.

The supervisor later escorted Plaintiff to his next flight. *Id.* ¶ 37. "Shortly thereafter, several men boarded the plane, identified themselves as AA security, and instructed [Plaintiff] in a fashion usually taken with a criminal to 'follow them off the plane.'" *Id.* ¶ 38. The flight attendant on Plaintiff's first flight had filed a report alleging that Plaintiff physically assaulted him. *Id.* ¶ 39. Plaintiff again explained the incident to the head of security, who "expressed sympathy and said that he would be filing a report and that it should be cleared up in a few days." *Id.* ¶ 40. A few days later, Plaintiff received an email from Defendant that the investigation was complete, his frequent flier program benefits were revoked, and he was banned from flying with Defendant for life. *Id.* ¶ 42. No one interviewed or spoke with Plaintiff beforehand, and he was not provided with any contact information or way to appeal the decision. *Id.* ¶¶ 42–43.

Before his lifetime ban, Plaintiff had acquired "lifetime gold status" and amassed hundreds of thousands of frequent flier miles in airline benefits since he frequently flew with Defendant from Miami to South America for business. *Id.* ¶¶ 45–46, 76. Plaintiff alleges that he complied "with all conditions, requirements, ordinances, and legal and contractual undertakings incumbent upon him in connection with his Contracts with Defendant AA, and with the rules and ordinances of the authorities at the airport of departure, all aircraft placards and all crew member instructions." *Id.* ¶ 7.

Plaintiff filed the Complaint on August 31, 2021, which seeks compensatory and punitive damages, and alleges five counts against Defendant: negligence ("Count I"), *id.* ¶¶ 47–54; defamation ("Count II"), *id.* ¶¶ 55–60; violation of the Transparency Improvements and Compensation to Keep Every Ticketholder Safe Act of 2018 ("TICKETS Act"), Pub. L. No. 115–254, Div. B, Title IV, § 425, 132 Stat. 3338 ("Count III"), *id.* ¶¶ 61–66; breach of contract for failing to honor Plaintiff's ticket and provide him carriage to Mexico City ("Count IV"), *id.* ¶¶ 67–72; and breach of contract for violating its loyalty program contract with Plaintiff ("Count V"), *id.* ¶¶ 73–80.

Plaintiff is a Florida resident. *Id.* ¶ 4.  Defendant is a Texas corporation with its principal place of business in Fort Worth, Texas. *Id.* ¶ 5.  Plaintiff alleges an amount in controversy exceeding $75,000.00. *Id*. ¶ 3.  Thus, Plaintiff has properly invoked the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Venue is proper in the Southern District of Florida, under 28 U.S.C. §1391(b)(2), because a substantial part of the events giving rise to Plaintiff's claims occurred in the district. *Id*. ¶ 2.

Now, Defendant moves for the Court to enter judgment against Plaintiff and dismiss every claim asserted in the Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(c). *See generally* Mot.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001).

Generally, a Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss. *Moraes v. New Horizons of the Treasure Coast, Inc.*, No. 12-cv-14155-KMM, 2013 WL 4009438, at *2 (S.D. Fla. Aug. 5, 2013). Thus, to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). This requirement "give[s] the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and alteration omitted). Further, all material facts alleged in the non-moving party's pleading are accepted as true and must be viewed in the light most favorable to the non-moving party. *Perez*, 774 F.3d at 1335. "If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied." *Id*.

## III.   DISCUSSION

In its Motion, Defendant argues that (1) Florida's impact rule bars Plaintiff's negligence claims; (2) Plaintiff's negligent flight ban claim fails "because AA has no duty to, and a constitutional right not to, contract with Plaintiff"; (3) Plaintiff's negligent failure to investigate claim fails because Defendant had no duty to investigate; (4) Plaintiff fails to plead publication of defamatory information to a third party; (5) Plaintiff's TICKETS Act claim is baseless as pled; (6) Plaintiff's refusal to transport claim is barred by Plaintiff's admitted prior breach; and (7) Plaintiff's AAdvantage loyalty membership claim fails because his allegations negate breach by Defendant and he has no justiciable interest in the program benefits "which he agreed have no monetary value." Mot. at 3–13.

In response, Plaintiff contends that he has pled a viable claim for defamation *per se* and breach of contract. Resp. at 7–14. Additionally, Plaintiff affirmatively abandons his claims for negligence and his claim under the TICKETS Act, instead "elect[ing] to spend limited resources on his strongest claims." *Id.* at 2; *see also id.* at 14 ("Plaintiff voluntarily relinquishes his claims under the TICKETS ACT and for simple negligence."). Plaintiff also requests leave to amend his complaint several times throughout his Response. *See id.* at 8 n.1, n.4; *id.* at 13 n.5, n.6.

Defendant argues in reply that (1) "Plaintiff's theories do not salvage the insufficiency of his defamation allegations"; (2) Plaintiff's response fails to defend either of his breach of contract claims; and (3) Plaintiff's request for leave to amend and/or for discovery should be denied.[2] Reply at 3–10.

### A.      Plaintiff Has Failed to Adequately Allege a Claim for Defamation.

Defendant contends that Plaintiff's defamation claim should be dismissed with prejudice because (1) the Complaint fails to adequately allege publication to a third party on Plaintiff's flight; (2) Plaintiff's allegations do not "specifically identify anyone within AA to whom the assault report was communicated"; (3) intra-corporate communications by a defendant are insufficient as a matter of law to constitute publication to a third party; and (4) Plaintiff's alternative allegation regarding a "'negative inference' arising from his flight ban" is not actionable. Mot. at 7–9.

Plaintiff responds that he has pled a viable claim for defamation *per se*[3] because "[a]n

---

[2]  Defendant also argues that Plaintiff's negligence and TICKETS Act claims should be dismissed as abandoned. Reply at 3. The Court agrees. Count I and Count III of Plaintiff's Complaint are dismissed with prejudice.

[3]  Count II of Plaintiff's Complaint does not specifically allege a claim for defamation *per se*, however, the allegations contained therein can be read to allege both general defamation and defamation *per se*. *Compare* Compl. ¶ 56 ("Defendant accused the Plaintiff of the Federal crime of assaulting an airline employee who was engaged in performing his duties."), *with id.* ¶ 59 (alleging "direct and quantifiable damages" because of Defendant's statements). Nevertheless,

unknown number of passengers in business class overheard the defamatory statement or possibly were told it directly after Plaintiff was removed."[4]  Resp. at 7.

In reply, Defendant argues that Plaintiff concedes that he has not adequately pled publication regarding any comments made to unknown passengers on the airplane.  Reply at 3. Additionally, Defendant maintains that Plaintiff's "conclusory allegation of intra-corporate communication fails as a matter of law because it does not adequately allege publication to a third party (as required by Florida law), and because it fails to assert publication beyond a need to know basis insufficient to plead actionable defamatory intra-corporate communication."  *Id.* at 4–6.

"Slander per se, defamation based on a spoken statement, requires that: '(1) the defendant publish a false statement; (2) about the plaintiff; (3) to a third party; and (4) that the falsity of the statement cause injury to another.'"  *Mennella v. Am. Airlines, Inc.*, No. 17-21915-CIV, 2019 WL 1429636, at *3 (S.D. Fla. Mar. 29, 2019), *aff'd*, 824 F. App'x 696 (11th Cir. 2020).  "*Per se* defamatory statements are 'so obviously defamatory' and 'damaging to one's reputation' that they 'give rise to an absolute presumption both of malice and damage.'"  *Id.* (citing *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1247 (S.D. Fla. 2014)).

---

Plaintiff's Response only argues that Plaintiff has alleged a viable claim for defamation *per se*. Resp. at 7–10.  Plaintiff also neglects to respond to Defendant's arguments concerning his theory of defamation stemming from the "negative inference" of his lifetime ban.  *See generally* Resp; Compl. ¶ 58.  Thus, the Court considers these claims to be waived.  *See Melford v. Kahane & Assocs.*, 371 F. Supp. 3d 1116, 1126 n.4 (S.D. Fla. 2019) ("[A] 'litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point.  The court will not do his research for him." (quoting *Phillips v. Hillcrest Med. Ctr.,* 244 F.3d 790, 800 n.10 (10th Cir. 2001)).

[4]  Plaintiff also includes four other theories of publication in his response related to Defendant's expected affirmative defense of qualified privilege.  Resp. at 7–10 ("Plaintiff proceeds upon five theories of publication, four of which are unnecessary to argue until the Defendant raises its affirmative defenses at a later stage, but all five are articulated below[.]").  Because Plaintiff has failed to adequately allege a claim for defamation *per se*, the Court does not reach these superfluous arguments.

"It is essential to a cause of action for defamation that the alleged slanderous . . . statement be made or published to some third person." *Id.* at \*4 (citations omitted); *American Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. Dist. Ct. App. 2007) ("A defamatory statement does not become actionable . . . until it is published . . . to a third person."). Moreover, "[t]o meet the standard for publication to a third party, a plaintiff must allege the identity of the particular person to whom the remarks were made with a reasonable degree of certainty[.]" *Mennella*, 2019 WL 1429636, at \*4.

Here, it is apparent from the Complaint that Plaintiff has failed to adequately allege publication—both for Defendant's statements onboard the flight and Defendant's intra-corporate communications. *See generally* Compl. Plaintiff concedes as much in his response. *See* Resp. at 7–8 ("Plaintiff did not specifically allege in his complaint that other business class passengers overheard the defamatory allegation because he had no way of knowing at that time whether any of them had overheard it."); *id.* at 9 (asking how Plaintiff "could possibly know" which AA employees "heard the defamation" prior to discovery). A strong inference of publication is insufficient to state a claim for defamation *per se*. *See* Resp. at 9 ("[T]he likelihood of other passengers overhearing [the defamatory allegation] is ***strongly inferred*** from the facts that Plaintiff alleged.") (emphasis added); *Mennella*, 2019 WL 1429636, at \*4 (noting that "a plaintiff must allege the identity of the particular person to whom the remarks were made with a reasonable degree of certainty").

Further, for similar reasons as above, Defendant's argument regarding the actionability—or lack thereof—of its intra-corporate communications as a matter of law is persuasive. *See Geddes*, 960 So. 2d at 833 ("When the entity alleged to have committed the defamation is a corporation, the courts have held that statements made to corporate executive[s]

8

or managerial employees of that entity are, in effect, being made to the corporation itself, and thus lack the essential element of publication.") (citing *Lopez v. Ingram Micro, Inc.*, No. 95–2004–CIV–NESBITT, 1997 WL 401585 (S.D. Fla. Mar 18, 1997)).

In addition to failing to properly plead publication, the Complaint also fails to adequately allege that the defamatory statement was published to any employee other than an executive or manager such that the statement was not made to the corporation itself. *See* Compl. ¶ 57 ("Defendant published this false accusation ***among its own employees*** when it revoked Plaintiff's benefits and banned him from flying on its airline." (emphasis added)). Accordingly, as presently pled, Plaintiff's defamation *per se* claim as to Defendant's intra-corporate communications fails as a matter of law.

However, the Court will give Plaintiff one opportunity to amend his complaint to state a plausible claim for defamation *per se*. *Hendershott v. Ostuw*, No. 9:20-CV-80006, 2020 WL 3000211, at *3 (S.D. Fla. June 4, 2020) (giving the plaintiff "one final opportunity to plead a plausible claim" where the complaint failed to allege sufficient factual allegations).

For these reasons, Count II of the Complaint is dismissed without prejudice.

**B.      Defendant is Entitled to Judgment on Plaintiff's Breach of Contract Claims.**

In its Motion, Defendant argues that both of Plaintiff's breach of contract claims fail.[5] Mot. at 10–13.  First, Defendant argues that Plaintiff's failure to comply with flight crew instructions and admitted physical contact with the flight attendant bars his refusal to transport claim. *Id.* at 10–11.  Next, Defendant asserts that Plaintiff's AAdvantage loyalty membership claim fails

---

[5]  Defendant's contracts with its passengers are governed by Texas law. *See* ("Conditions of Carriage") (ECF No. 17-2) at 24.

because (1) Plaintiff's own allegations negate any breach by Defendant and (2) "Plaintiff has no justiciable interest in the program benefits which he agreed have no monetary value." *Id.* at 11–13.

Plaintiff argues in his Response that he has pled a viable claim for breach of contract. Resp. at 11. Specifically, Plaintiff maintains that (1) "[t]he Complaint alleges that the Plaintiff was removed from the flight for the allegation that he assaulted a flight attendant"; (2) "even accepting the Defendant's post facto rationalization," Plaintiff's alleged conduct cannot reasonably be considered a refusal to obey instructions; (3) Defendant waived any claim it had to remove Plaintiff from the second flight due to its employee, the ground security coordinator, booking Plaintiff on a the second flight despite the flight attendant's allegations;[6] and (4) the Complaint alleges that Plaintiff did not violate the terms of the contract, so "Defendant had no justification to remove Plaintiff from its frequent flyer rewards program." *Id*. at 11–14.

Defendant contends in reply that Plaintiff's Response fails to defend either of his breach of contract claims because (1) according to Plaintiff's own allegations, Defendant's refusal to transport either constituted a permissible act under the contract, or, alternatively, followed conduct that constituted a prior breach; (2) Plaintiff does not respond to Defendant's argument that "Plaintiff cannot sue for the loss of property and benefits he never owned, in which he never had any justiciable interest and which he agreed have no monetary value;" and (3) "Plaintiff's waiver theory dies on his own pleadings, and, as a matter of law, should be disregarded." Reply at 6–9.

A breach of contract claim under Texas law requires: (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant, and (4) damages incurred by the plaintiff because of the breach. *See Lee v. Tyco Elecs.*

---

[6] Plaintiff expressly acknowledges that "[t]his waiver argument was not raised in the Complaint" but, again, requests leave to amend his Complaint to add a waiver allegation. Resp. at 12–13 n.5.

*Power Sys., Inc.*, 393 F. Supp. 2d 429, 434 (N.D. Tex. 2005). "A fundamental principle of contract law is that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform." *Hernandez v. Gulf Grp. Lloyds*, 875 S.W. 2d 691, 692 (Tex. 1994).

### 1.      Refusal to Transport Claim.

To begin, the Parties do not dispute that their contract consists of the terms of Plaintiff's ticket on the day of travel, as well as the terms of Defendant's Conditions of Carriage. *See* (ECF No. 17-1); *see also* Conditions of Carriage at 1 ("Your ticket and the following Conditions of Carriage constitute the contract between you, the passenger, and American Airlines, Inc. ('American') and apply to all transportation provided by American . . . between points in the United States[.]"). Thus, a valid contract existed. Next, relevantly, the Conditions of Carriage provide a non-exhaustive list of reasons that Defendant may rely on when refusing to transport passengers or removing them from its aircraft. Conditions of Carriage at 13. Some examples of these reasons include: (1) attempting to interfere with any member of the flight crew; (2) refusing to obey instructions from any flight crew member; and (3) engaging in any action, voluntary or involuntary, that might jeopardize the safety of the aircraft or any of its occupants. *Id.*

While the Parties disagree on how the Court should construe the allegations in the Complaint, there appears to be no genuine material dispute of facts. *See* Mot. at 10–13; Resp. at 11–14; Reply at 6–9. For instance, the Parties agree that Plaintiff did not immediately stow his bag in the overhead compartment after being instructed to do so by the flight attendant. Compl. ¶¶ 10–11, 13–16. Additionally, they agree that Plaintiff, or his bag, made physical contact with the flight attendant—whether incidental or not. *Id.* ¶¶ 18–19 ("He felt the bag make slight contact

—

and thought the flight attendant was taking it from him but then realized after a moment that he was still holding it.").

Taking the facts in the Complaint as true and viewing them in the light most favorable to Plaintiff, *see Perez*, 774 F.3d at 1335, the Court cannot conclude that Plaintiff's alleged conduct affirmatively breached any of Plaintiff's contractual obligations such that Defendant was discharged of its own duties under the contract. *See Hernandez*, 875 S.W. 2d at 692 (discussing a contracting party's ability to discharge its contractual performance based on the other party's nonperformance). However, the Court similarly does not find that Defendant's failure to transport Plaintiff to his destination constituted a breach because Defendant's conduct was permitted under the contract. Indeed, the Conditions of Carriage give Defendant wide latitude to remove passengers for any number of reasons, which do not require any "breach" by a passenger. *See, e.g.*, Conditions of Carriage at 13 ("American may refuse to transport you, or may remove you from your flight at any point, for one or several reasons, including but not limited to . . . [c]ompliance with government requisition of space [and] [a]ction necessary or advisable due to weather, or conditions beyond American's control."). As noted above, the Complaint alleges that Plaintiff did not comply with the flight attendant's instruction and then subsequently made contact with the flight attendant. Compl. ¶¶ 10–11, 13–16, 18–19. On these facts, Defendant was well within its right under the contract to remove Plaintiff from the first flight.

Further, the Court declines to consider Plaintiff's argument that Defendant waived its right to refuse transport to Plaintiff—which was not pled in the Complaint—by booking him on a second flight. *See* Resp. at 12–13 n.5 ("This waiver argument was not raised in the Complaint."); *see generally* Compl. Nor will the Court permit Plaintiff to amend his Complaint to add this entirely new claim after the pleadings have closed. Based on Plaintiff's own alleged conduct and for the

same reasons as above, the Parties' contract expressly permitted Defendant to remove Plaintiff from the second flight and refuse him transport.  Conditions of Carriage at 13.

Consequently, Defendant is entitled to judgment on the pleadings for Count IV of the Complaint.

### 2.    AAdvantage Loyalty Membership Claim.

Plaintiff's breach of contract claim premised on the suspension of his AAdvantage loyalty membership also fails.  Again, the Parties appear to agree that the relevant contract consists of the AAdvantage Program Terms and Conditions ("Program Terms") (ECF No. 17-3) and the Conditions of Carriage.  Specifically, the Program Terms state that Defendant may terminate a member's account for violations of Defendant's Conditions of Carriage.  *See* Program Terms at 2 ("Such action may include, without limitation, the forfeiture of all award tickets and any accrued mileage in a member's account, as well as termination of the account and the member's future participation in the AAdvantage program.").

Moreover, the Program Terms make it clear that AAdvantage members "[do] not own, [have] vested rights to [or] property interest in the Program miles, benefits, or participation." Mot. at 13 (citing Program Terms at 1).  The Program Terms expressly provide that Defendant "may, in its discretion, change the AAdvantage program rules, regulations, travels awards, and special offers at any time with or without notice," including the withdrawal, limitation, modification, or cancellation of any award.  Program Terms at 1.  Additionally, the Program Terms state that "[a]ccrued mileage credit and award tickets do not constitute property of the member." *Id.* at 4.

Under Texas law, "when a party owns no interest in the . . . property that is the subject of a suit, it has no justiciable interest in the suit." *In Re Devon Energy Prod. Co., Inc.*, 321 S.W.3d 778, 783 (Tex. App. 2010); *see also Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590

S.W.3d 471, 486–87 (Tex. 2019) (holding that a plaintiff's breach of contract claim failed where the contract was unambiguous and the plaintiff could not rely on extrinsic evidence "to import an obligation that does not exist in the contract"); *Am. Mfrs. Mut. Ins. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003) ("[W]e may neither rewrite the parties' contract nor add to its language." (citation omitted)).

As noted above, Plaintiff's conduct provided the basis for Plaintiff's removal from his flights and Defendant's refusal to transport him. *Supra* Section III.B.1. The same alleged conduct also provided Defendant with the right to suspend Plaintiff's AAdvantage membership under the Program Terms. *See* Program Terms at 2. Plaintiff's allegations that he "fully complied with every requirement of the program and has not violated any provisions in the program contract," Compl. ¶¶ 7, 75, are merely "legal assertion[s] couched as a factual allegation[s] and should not be deemed admitted." *See Perez*, 774 F.3d at 1340 (citing to Georgia statute in finding that contract construction is a question of law for the court); *see also Walden v. Affiliated Comput. Servs., Inc.*, 97 S.W.3d 303, 327 (Tex. App. 2003) ("Construction of a contract is a question of law.").

Plaintiff provides no legal authority in support of his arguments that Defendant was unjustified in suspending his AAdvantage account or that he has some vested property interest in his frequent flier benefits. *See generally* Resp. This Court will not do his research for him. *See Melford*, 371 F. Supp. 3d at 1126 n.4 ("[A] 'litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point." (quoting *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001)). Again, Defendant's conduct was expressly permitted by the Parties' contract and therefore does not constitute a breach in the first place—even if Plaintiff ***did*** have some justiciable interest in his AAdvantage account.

Accordingly, Defendant is entitled to judgment on the pleadings as to Count V of the Complaint.

## IV.    CONCLUSION

UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Defendant's Motion for Judgment on the Pleadings (ECF No. 17) is GRANTED IN PART and DENIED IN PART.  Count II is DISMISSED WITHOUT PREJUDICE and Count I, Count III, Count IV, and Count V are DISMISSED WITH PREJUDICE.

The Clerk of Court is INSTRUCTED to ADMINISTRATIVELY CLOSE this case.  All pending motions, if any, are DENIED AS MOOT.

Pursuant to Federal Rule of Civil Procedure 15(a)(2), the Court gives Plaintiff leave to file an Amended Complaint by no later than **May 13, 2022**.  Defendant may respond to the Amended Complaint within **fourteen (14) days** of the date of filing of the Amended Complaint.  The Court will reopen this matter upon the filing of an Amended Complaint in compliance with this Order.

DONE AND ORDERED in Chambers at Miami, Florida, this 29th day of April, 2022.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record

15