UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| TROY CLOWDUS,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN AIRLINES, INC.,<br><br>Defendant. | Case No.: 1:21-cv-23155-KMM |

**DEFENDANT'S *EXPEDITED* MOTION FOR SANCTIONS PURSUANT TO RULE 30(d)(2) AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Pursuant to Fed. R. Civ. P. 30(d)(2), Defendant, American Airlines, ("**Defendant**" or "**AA**"), by and through undersigned counsel, hereby moves this Court to assess sanctions against Plaintiff, Troy Clowdus, ("**Plaintiff**" or "**Clowdus**") and his counsel, based on their frustration of the fair examination of multiple, unrepresented witnesses. **Defendant requests a ruling on this expedited motion prior to Friday, May 13, 2022**, as Plaintiff intends to take the deposition of one of these unrepresented witness, Angelica Cookson, on that date,[1] and Plaintiff's counsel's violative conduct described in the instant motion relates to that impending deposition.

**I.     PRELIMINARY STATEMENT**

1.     This lawsuit arises out of Plaintiff's refusal to comply with a uniformed flight attendant's repeated instructions for Plaintiff (a first-class passenger) to stow his carry-on bag in

---

[1] On May 5, 2022, Plaintiff's counsel forwarded to Defendant's counsel a copy of what he represented as the Notice of Deposition for Ms. Cookson, with a date of intended deposition as May 13, 2022.

an overhead bin on an international flight (the "**Flight**"), Plaintiff's subsequent assault of that flight attendant, and AA's subsequent permanent suspension of Plaintiff's flight privileges with AA.

2. On March 22, 2022, unrepresented, non-party, foreign national witness, Federico Quintana ("**Quintana**"), provided deposition testimony stating that he was a passenger on the Flight and observed what he perceived to be Plaintiff's intentional assault Defendant's flight attendant. Prior to and during Mr. Quintana's deposition, Plaintiff's counsel engaged in behavior far exceeding the bounds of professional conduct and intended to inhibit the fair examination Mr. Quintana. Specifically, prior to the deposition, Plaintiff's counsel accused Mr. Quintana of dishonesty and offered his own negative opinions of Mr. Quintana's credibility; during the deposition and thereafter, Mr. Quintana was threatened with and accused of perjury on multiple occasions, and to multiple parties and non-parties including Mr. Quintana's mother. Such conduct violates Rule 30(d)(2) and prejudices Defendant.

3. Undeterred, Plaintiff's counsel has now (contrary to Rule 30(d)(2)) turned his attention to threatening and intimidating Mr. Quintana's mother ("**Ms. Cookson**"), as punishment for Mr. Quintana's deposition testimony – <u>explicitly emailing Ms. Cookson "your son brought this on you, not us…[since he] provided testimony against our client."</u> Ms. Cookson was not on the Flight and is not alleged to be involved in any aspect of the claims or defenses in this lawsuit. Instead, she purchased a "buddy pass" ticket for her son to travel on the Flight, utilizing her life time buddy pass flight benefits as the surviving widow of a deceased AA mechanic. Under the wildly speculative pretext of obtaining *impeachment* evidence against Mr. Quintana, Plaintiff's counsel has served Ms. Cookson with a Deposition Duces Tecum Subpoena[2] for the purpose of

---

[2] Plaintiff's counsel initially served Ms. Cookson with the subpoena for a deposition and document production to occur on April 25, 2022 – having never cleared this date with Ms. Cookson. Plaintiff's counsel then agreed to reschedule the deposition to May 2, 2022 but did not advise Ms. Cookson that he was cancelling the deposition until 58 minutes before it was to occur.

2

discovering what health insurance, credit union, pension and flight benefits she has with AA and whether Mr. Quintana discussed the lawsuit or his deposition testimony with Defendant.

4. Plaintiff's counsel has: 1) accused Ms. Cookson (in writing) of failing to cooperate, "stonewalling" and intending to ignore the Deposition Duces Tecum Subpoena; 2) threatened her with contempt and other "legal trouble"; 3) stated that her son "was less than truthful in his deposition [which] has damaged our case"; 4) overtly stated that unless she produces the documents sought in the Deposition Duces Tecum Subpoena (regardless of whether she has anything responsive) Plaintiff's counsel will subpoena her to appear "across town" for an in-person deposition when none of the other twelve deponents in this case have been required by Plaintiff's counsel to appear for an in person deposition; and 5) "encouraged" Ms. Cookson to Google the "US legal system" lest she fail to comply with the Deposition Duces Tecum Subpoena. Notably, she has not failed (nor been required, as yet) to comply with any subpoena ever served upon her by Plaintiff's counsel.

5. Based on the foregoing, Defendant respectfully requests that this Court enter an order imposing any measures it deems necessary and effective to address the conduct of Plaintiff's counsel, pursuant to Rule 30(d)(2). Further, Defendant requests that this Court apply necessary measures to ensure that Plaintiff's counsel can no longer inhibit and/or frustrate the fair examination of future witnesses and deponents, such as, for example, the appointment of a special magistrate to oversee Ms. Cookson's deposition and all future communications[3] between Plaintiff's counsel and any witness in this lawsuit.

II. **MEMORANDUM OF LAW**

    A. **Legal Standard**

---

[3] Defense counsel need not be privy to those communications, in Plaintiff counsel's discretion.

6. Fed. R. Civ. P. 30(d)(2) provides that "the court may impose an appropriate sanction—including the reasonable expenses and attorney's incurred by a party—on a person who impedes, delays, or frustrates the fair examination of the deponent." Rule 30(d)(2) authorizes this Court to, among other things, impose the cost resulting from obstructive tactics, unprofessional conduct, and threatening behavior. *See Horton v. Maersk Line, Ltd.,* 294 F.R.D. 690, 697 (S.D. Ga. 2013); *Mechanical Marketing Inc. v. Sixxon Precision Machinery Co.,* 2013 WL 1563251 at *2 (N.D. Cal. 2013); *Plaquemines Holdings, LLC v. CHS, Inc.,* 2013 WL 1526894 at *2 (E.D. La. 2013). The movant need only identify the language or behavior that "impeded, delayed, or frustrated the fair examination of the deponent" and identify "an appropriate sanction." *Dunn v. Wal-Mart Stores, Inc.,* 2013 WL 5940099, at *5 (D. Nev. 2013). While courts will sometimes consider whether misconduct was undertaken in bad faith, bad faith is not a requirement for the imposition of sanctions under Rule 30(d)(2). *Hylton v. Anytime Towing*, 2012 WL 3562398, at *2 (S.D. Cal. Aug. 17, 2012); *Layne Christensen Co. v. Bro-Tech Corp.*, No. 09-2381-JWL-GLR, 2011 WL 6934112, at *2 (D. Kan. Dec. 30, 2011) (holding that Rule 30(d)(2) does not require a finding of bad faith before sanctions may be imposed).

7. In *Horton,* for example, the Court found good cause under Rule 30(d)(2) to "muzzle" an attorney who "frustrated the fair examination" of a witness by threatening the witness with criminal charges ("one reminder that the laws of perjury apply is quite enough") and peppering the witness with "arrogant, irrelevant, accusatory questions and caustic comments" that "no witness, let alone a young man with no legal training, should have to endure." 294 F.R.D. at 697. Further, the Court found that the "abusive" practices of the attorney, which violated ethical and professional norms of the jurisdiction, provided "ample public policy grounds" to "give standing to a party, whose claims or defenses may well be adversely impacted as a result." *Id.*

4

8.      Plaintiff's counsel's conduct here resembles that of the attorney engaging in "dog-attack tactics" in *Horton*. The Court should likewise "muzzle" Plaintiff's counsel from future tactics designed to frustrate the fair examination of witnesses and unjustly prejudice Defendant's case. *See Horton,* 294 F.R.D. at 699 (Court "muzzled" abusive lawyer and instructed the lawyer to cease "threatening [witness] with prosecution for perjury"; cease providing opinion narrative regarding the witness's testimony; and demanding that the witness be "shown respect").

### B. Counsel's Professional Obligations upon Pro Hac Vice Appearance

9.      In filing his Motion to Appear *Pro Hac Vice* [DE 7], Plaintiff's counsel certified that he had "studied the Local Rules of the United States District Court for the Southern District of Florida[.]"

10.     Plaintiff's counsel therefore certified that he had read and studied the portion of the Rules regulating the professional conduct of attorneys practicing in this District. Local Rule 11.1(b) specifically states that "the standards of professional conduct of members of the Bar of this Court shall include the current Rules Regulating The Florida Bar" and that for any "violation of any of these canons in connection with any matter pending before this Court, an attorney shall be subjected to appropriate disciplinary action."

11.     Chapter 4 of the Rules Regulating the Florida Bar ("**Florida Bar Rules**") governs the Rules of Professional Conduct and Lawyer's Responsibilities. Within Chapter 4's Preamble, it is stated that a "lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others."[4] The Florida Bar Rules also state that an attorney must not "threaten to present criminal charges solely to obtain an advantage in a civil matter,"[5] and, with respect to third persons, "a lawyer may not use means that have no substantial purpose other than to

---

[4] *See* Florida Bar Rules Chapter 4 at Preamble.
[5] *See* Rule 4-3.4(g).

5

embarrass, delay, or burden a third person or knowingly use methods of obtaining evidence that violate the legal rights of such a person."[6]

12.     By filing his Motion to Appear *Pro Hac Vice,* Plaintiff's counsel certified that he had read and understood the regulations, such as those obligations stated in the foregoing paragraph, governing his professional conduct in this District.

### C.  Plaintiff's Counsel's Unprofessional Conduct Related to Quintana

13.     Since discovering that Mr. Quintana's testimony was/is "damaging to his client's case," Plaintiff's counsel has embarked on a campaign of conduct violative of the rules regulating attorneys in this District and frustrating of the fair examination of this vital witnesses.

14.     First, starting with his preliminary email correspondence with Mr. Quintana (an unrepresented, non-party, *foreign national*), Plaintiff's counsel engaged in a series of threatening, accusatory, and caustic tactics, meant to intimidate a **future deponent** and frustrate his fair examination by Defendant.[7]

15.     For example, counsel's email to Mr. Quintana explicitly disparages Defendant's counsel by stating that AA is engaging in "bullying tactics" for taking the legitimate position (which is supported by this Court)[8] that witness statements taken in anticipation of litigation are protected work product.[9]

16.     Counsel's email then directs a series of improper personal opinions about Mr. Quintana's anticipated testimony and about his credibility. By way of example, counsel states that he does not believe Quintana has any probative contribution to make to the case (despite what

---

[6] *See* Rule 4-4.4(a).
[7] *See* Plaintiff's correspondence to Federico Quintana of March 9, 2022, ("**Quintana email**") attached hereto as **Exhibit A**.
[8] *See Bridgewater v. Carnival Corp.,* 286 F.R.D. 636, 644 (S.D. Fla. 2011) ("A witness statement taken by a party's attorney or agent in anticipation of litigation is protected work product.")
[9] *See* Quintana email.

Quintana had informed AA) because he (personally) does not believe that from Quintana's "position in Seat 4A you [Quintana] could have observed much of value." The only reasonable interpretation of such remarks (which are strictly prohibited in trial by Rule 4-3.4(e)) is that they were intended to influence Quintana's upcoming testimony, which Plaintiff's counsel admittedly anticipated as potentially damaging to his client's case.

17.     Finally, in conjunction with these remarks disparaging Defendant's counsel and improperly opining on Quintana's credibility/testimony, counsel's email closes with multiple threats (both veiled and direct) directed at Quintana. Specifically, Plaintiff's counsel remarks *in italics* that he has "*no desire to make your* [Quintana's] *life miserable by subpoenaing you for a deposition*" and that, if Quintana complies with his demands, it will be "far less of an inconvenience to you [Quintana]."[10] The implication of these remarks, of course, is that if Quintana failed to testify/comply as Plaintiff sees fit, counsel would in turn "inconvenience" Quintana and "make [his] life miserable."

18.     This is precisely the sort of conduct that the rules regulating this District and Fed. R. Civ. P. 30(d)(2) seek to prevent. Plaintiff counsel's remarks, in anticipation of extracting favorable or heading off unfavorable testimony from Quintana, were meant to intimidate Mr. Quintana and frustrate his fair examination, simply because he perceived Mr. Quintana was prepared to provide testimony harmful to Plaintiff's claims. Plaintiff counsel's pre-deposition communications had the desired effect on Mr. Quintana, as he stated during his deposition that he felt threatened/intimidated by Plaintiff's counsel—prior to even having the opportunity to so testify.[11]

---

[10] *Id.*
[11] *See* excerpts from Deposition of Federico Quintana, ("**Quintana Deposition**"), 22:1-7, attached as **Exhibit B**.

19. Plaintiff's counsel continued the intimidating tactics that colored his pre-deposition communication during Mr. Quintana's deposition. Specifically, after Mr. Quintana testified to observing the assault, Plaintiff's counsel threatened Mr. Quintana with accusations of perjury by stating that he desired to "**make you [Quintana] aware that perjury comes with a penalty of up to five years in jail and it is a felony** . . ."[12] Plaintiff's counsel then proceeded into a prolonged line of inquiry where, among other things, he accused Mr. Quintana (a foreign national) of being unreasonable for feeling threatened or accused him of dishonesty prior to his deposition.[13] In response, Mr. Quintana testified that he felt the questioning by Plaintiff's counsel was "hostile" and stated "I [Quintana] don't like the way you're [Plaintiff's counsel] speaking to me."[14]

20. In summation, with regard to Mr. Quintana, the foregoing conduct displays multiple violations of Rule 30(d)(2) and the professional/ethical obligations assigned to attorneys in this District. Even more egregiously, the timing of this conduct—following the revelation of Mr. Quintana's observations—supports the conclusion that Plaintiff's counsel initiated this campaign because of his perception that Mr. Quintana's testimony was damaging to his client's case.[15] Plaintiff's counsel's actions against this unrepresented, non-party witness, were meant to intimidate Mr. Quintana, and Plaintiff's counsel's actions will continue to impact, frustrate, and delay these proceedings if they are not brought to an end.

21. Accordingly, pursuant to its inherent powers, this Court should assess sanctions on Plaintiff and his counsel for this violative conduct and take specific action necessary to prevent the continuation of these tactics with Mr. Quintana and future witnesses.

---

[12] *Id.,* 23:1-11.
[13] *Id.,* 31:1-43:22; 46:24-50:14.
[14] *Id.,* 52:5-7.
[15] It bears mentioning that Plaintiff's counsel has admitted as much in correspondence with Mr. Quintana's mother, as will be discussed later in this brief.

### D. Plaintiff's Counsel's Unprofessional Conduct Related to Ms. Cookson

22. Unfortunately for Mr. Quintana, Plaintiff's punitive tactics did not and have not ceased following his deposition. Unsatisfied with the results of the foregoing tactics, Plaintiff's counsel has doubled down on his efforts to intimidate and embarrass Mr. Quintana, this time through repeating the same tactics with his *mother*.

23. As stated above, during his deposition, Mr. Quintana stated that his deceased step-father (his mother's former spouse) was a former employee (mechanic) of AA.[16] For reasons unknown, Plaintiff's counsel never followed up on this testimony for more details. Instead, Plaintiff's counsel has targeted Ms. Cookson. He has sought to subpoena her for deposition and production of documents pertaining to her and her deceased spouse's private financial and health information, solely for the speculative possibility that the documents *might* serve to show that Mr. Quintana perjured himself for an AA "buddy pass." However, neither Ms. Cookson nor her deceased husband are alleged to have any connection to any claim or defense in this matter. Plaintiff's counsel's conduct therefore demonstrates not only a complete disregard for proportionality/scope of discovery, but it also demonstrates his continued disregard for his Rule 30 and ethical/professional obligations.

24. Specifically, in his communications with Ms. Cookson (again, an unrepresented, non-party, *non-witness*), Plaintiff's counsel has continued to use threats against Ms. Cookson and her son, Mr. Quintana, to intimidate and obtain an advantage over Defendant in this matter. For example, in a lengthy email to Ms. Cookson regarding his desire to depose her,[17] Plaintiff's counsel scolds Ms. Quintana and accuses her of not intending to "obey the subpoena" and demanding that

---

[16] Quintana deposition, 27: 2-17.
[17] *See* Plaintiff's counsel's correspondence to Angelica Cookson of May 2, 2022, ("**Cookson email**") attached as **Exhibit C**.

she "not make that mistake."[18] As in his correspondence to Mr. Quintana, he suggests that he has "no desire to cause you [Cookson] legal trouble," which suggests that indeed he will cause her "legal trouble" or create for her "an unpleasant experience" if she does not abide by his demands.[19] He then threatens her with "contempt by the Court"; he suggests that she "Google" some research on the "US legal system" to understand the severity of compliance with his subpoena; and he then again accuses Mr. Quintana of perjury. "We [Plaintiff and counsel] believe that your son was less than truthful in his deposition; **it has damaged our case**; and we would like to know why."[20] Finally, he disparages her son, by blaming Mr. Quintana for his having to "inconvenience" her ("your son brought this on you, not us").[21] This is highly inappropriate communication to an unrepresented party that Plaintiff's counsel intends to depose.

25. Indeed, this is precisely the type of conduct that Rule 30(d)(2) and the professional/ethical guidelines of this District were designed to prevent.[22] Ms. Cookson should never have had to endure these attacks and the threats of criminal prosecution against her and her son. *See Horton,* 294 F.R.D. at 697. Further, Plaintiff's counsel has engaged in these tactics of intimidation in conjunction with the aforementioned intrusive and inappropriate requests for disclosure of Ms. Cookson and her deceased spouse's private health and financial information.[23] Neither Ms. Cookson nor her deceased husband have any involvement in any claim or defense in this matter, and none of these discovery requests have probative value—they are simply designed to embarrass and intimidate Mr. Quintana. Plaintiff's counsel violated his ethical/professional

---

[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] It bears mentioning that Plaintiff's counsel sent this correspondence to Ms. Cookson one hour prior to her scheduled deposition, despite deciding to cancel this deposition three days prior—with no notice provided to Ms. Cookson. Upon receipt of this email, Ms. Cookson simply responded that she "had every intention to appear", which Plaintiff's counsel uncharitably labeled "a terse response" and a product of her "stone-walling" him. *Id.*
[23] *See* Plaintiff's Fifth Request for Production and Third Set of Interrogatories, attached as **Exhibit D**.

obligations and also violated Rule 30(d)(2) by engaging in the foregoing tactics in preparation for Ms. Cookson's anticipated deposition. Doing so necessarily frustrated her fair examination and further prejudiced Defendant.

### III.   CONCLUSION

26.   Therefore, in conclusion, Defendant respectfully requests that this Honorable Court bring Plaintiff's continued misconduct and abusive tactics to end and enter an order assessing sanctions against Plaintiff and counsel for same, including, but not limited to, the assessing upon Plaintiff the costs/expenses/fees that resulted from the conduct that frustrated these examinations and prompted the instant motion. Further, Defendant requests that this Court take action necessary to prevent the intimidation of witnesses by Plaintiff's counsel, including the assignment of a special magistrate to oversee Ms. Cookson's planned deposition and any future communication by Plaintiff's counsel with Ms. Cookson, Mr. Quintana, or any unrepresented party.

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7(a)(3)

Undersigned counsel hereby certifies that he conferred with counsel for Plaintiff on May 6, 2022, in an effort to resolve the issues presented in this Motion. In response, Plaintiff's counsel stated that does not oppose Defendant's counsel bringing the instant motion, and that he would be "more than happy" to have the Magistrate Judge review his communication with Quintana or Cookson, as he considers such communication as "professional an[d] cordial."

Dated: May 9, 2022

By:   */s/Kelly H. Kolb*

Kelly H. Kolb, Esq.
kelly.kolb@bipc.com
Buchanan Ingersoll & Rooney, PC
401 E Las Olas Boulevard, Suite 2250
Fort Lauderdale, FL 33301
Tel: 954-468-2300
Fax: 954-527-9915
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this the 9th of May 2022, a true and correct copy of the above and foregoing has been filed with the Clerk of Court using the CM/ECF system. I FURTHER CERTIFY that the foregoing document is being served this date, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner of those counsel or parties who are not authorized to receive electronically Notices of Electronic filing on the counsel of record or *pro se* parties identified on the attached Service List.

By:   */s/Kelly H. Kolb*
      Kelly H. Kolb

**SERVICE LIST:**

William T. Woodrow III
250 West Main Street, Suite 201
Charlottesville, VA 22902

Rook Elizabeth Ringer, Esq.
LENTO LAW GROUP
222 San Marco Ave., Ste. C
St. Augustine, FL 32084
Tel: (855) 275-7378
Tel: (904) 602-9400
E-mail: reringer@lentolawgroup.com
E-mail: will@stoneandwoodrowlaw.com
*Counsel for Plaintiff*