**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

| | |
|---|---|
| TROY CLOWDUS | : |
| | : |
| | : CIVIL ACTION |
| Plaintiff, | : DOCKET NO.: 1:21cv23155 |
| v. | : |
| | : |
| AMERICAN AIRLINES, INC. | : |
| | : |
| Defendant. | : |
| | : |

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

NOW COMES Defendant, AMERICAN AIRLINES, INC., (hereinafter, "**AA**" or "**Defendant**"), by and through undersigned counsel and files this Rule 12(b)(6) Motion to Dismiss ("**Motion**") the Amended Complaint (DE 40) filed by Plaintiff, TROY CLOWDUS, ("**Clowdus**" or "**Plaintiff**"), and in support thereof states as follows:

## I.     INTRODUCTION

1.      Following Plaintiff's abandonment and/or this Court's dismissal of his other claims, Clowdus' sole remaining claim is one for defamation *per se.* However, even this claim must be dismissed because none of the statements at issue are capable of being defamatory *per se* since they are not factual, but rather opinions and beliefs, which cannot be proven true or false without resort to context, extrinsic facts, innuendo, or inferences. Second, Clowdus' publication allegations are still fatally defective since: (a) Clowdus relies on the "strong inference of publication" argument this Court explicitly rejected in its dismissal order (DE 32, p. 8); (b) his allegations confirm that the internal recipients of the alleged defamatory statements fall within the ambit of qualified privilege; and (c) his conclusory malice allegations are legally insufficient to overcome the qualified privilege his Amended Complaint anticipates.

## II.   **LEGAL STANDARD**

2.       Pursuant to Fed. R. Civ. P. 12(b)(6), a court may dismiss an action that fails to state a claim to relief that is plausible on its face.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   Under this plausibility standard, the factual allegations in complaint "must be enough to raise a right to relief above the speculative level" such that the "factual content allows the court to draw a reasonable inference [without reading additional facts into the Complaint] that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. See also, *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1094 (11th Cir. 2017)(quoting *Twombly*, 550 U.S. at 555). It is not enough that the allegations simply allow the court to infer the possibility of defendant's liability or that the allegations are merely consistent with defendant's liability. *Iqbal*, 556 U.S. at 678.

3.       Although all *factual* allegations contained in the Amended Complaint are assumed to be true, this tenet is "inapplicable to *legal* conclusions." *Iqbal*, 556 U.S. at 678. Thus, a complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' ... [n]or does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id* (quoting *Twombly*, 550 U.S. at 555, 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678

## III.   **PLAINTIFF'S AMENDED COMPLAINT**

4.       Distilled to its essence, Plaintiff's Amended Complaint asserts a single claim for defamation *per se* premised on three statements by flight attendant Merino ("**Merino**") one of which AA is alleged to have "adopted" internally. Merino is alleged to have exclaimed "you hit

me"[1] immediately after Clowdus' bag hit him and later to have said "I don't know why people have to behave like that."[2] The Amended Complaint is intentionally vague as to which if any passengers heard either statement.  In addition, Merino is alleged to have reported to AA that he was the victim of a "deliberate assault" by Clowdus.[3] AA is alleged to have internally repeated Merino's assault claim during the course of AA's investigation of that claim.[4]

## IV.   **ARGUMENT**

### A.   **Plaintiff's Claim Fails as a Matter of Law Because It is Premised on Opinion and Not a False Statement of Fact**

5.     All four statements made the basis of Plaintiff's defamation *per se* claim are premised on an *opinion as to Clowdus' intent* - not a "false statement of fact" which is the "*sine qua non* for recovery in a defamation action." *Hallmark Builders, Inc. v. Gaylord Broad, Co.,* 733 F.2d 1461, 1464 (11th Cir. 1984).  Specifically, the material facts underlying Plaintiff's defamation *per se* claim are undisputed - Clowdus admits his bag under his control struck Merino.[5] The only thing in dispute – and the crux of Clowdus' claim - is whether the impact was **intentional or accidental**.  Clowdus argues that he did not "intend" to "make contact [with Merino] in an offensive manner."[6] Merino (Clowdus alleges) had a different opinion based on the *same undisputed facts* - that the contact was intentional.[7] In this manner, Clowdus frames his purported defamation claim, not on *false statement of fact* (the facts are undisputed)*,* but on each party's *subjective opinions of the facts*—i.e. whether the strike was intentional. Indeed, Plaintiff's

---

1 (DE 40), ¶¶ 19-22.

2 (DE 40), ¶79.

3 (DE 40), ¶¶ 49, 64- 66, 68, 83.

4 (DE 40), ¶¶ 83, 89-90.

5 (DE 40), ¶¶ 17-18, 43-44.

6 (DE 40), ¶¶ 17-21, 43-44.

7 (DE 40), ¶¶ 18-22, 43-44.

Amended Complaint explicitly concedes his claim is about the parties' differing *beliefs* as to whether Clowdus intended to hit Merino with his bag.[8]

6.      A statement is potentially defamatory only if the "statement is objectively verifiable as true or false" and/or "subject to empirical proof." *Turner v. Wells,* 198 F. Supp. 3d 1355, 1369 (S.D. Fla. 2016)(the "critical question" is whether the statement is objectively verifiable). A statement (including a statement of opinion) which is not objectively verifiable, cannot be defamatory. *Hoon v. Pate Const. Co., Inc.,* 607 So. 2d 423, 429 (Fla. 4th DCA 1992)("[O]pinions cannot be defamatory."). S*ee also Turner v. Wells,* 879 F.3d 1254, 1263 (11th Cir. 2018) (opinions are "protected from defamation actions"). Thus, since statements about "an individual's morality or immorality are not subject to empirical proof," they are non-actionable statements of opinion. *Keller v. Miami Herald Pub. Co.,* 778 F.2d 711, 718 (11th Cir. 1985). More to the point, statements concerning another's state mind, or statements about another's intent, are not objectively verifiable and are therefore considered opinions—not fact. *Turner,* 198 F. Supp. 3d at 1369-70 ("an individual's state of mind at a particular point in time 'is not subject to empirical proof'"). Whether a statement is fact or opinion is a **question of law for the court**. *Keller v. Miami Herald Pub. Co.,* 778 F.2d 711, 715 (11th Cir. 1985).

7.      In *Turner v. Wells,* this Court dismissed an NFL coach's defamation claims premised on accusations made about him in a publicized workplace investigation. 198 F. Supp. 3d at 1355. At-issue were the investigators' comments/conclusions that the coach had given a player a male blow-up doll as a "homophobic taunt." *Id.* at 1367-70. Notably, the coach did not dispute the fact that he gave the player the blow-up doll; rather, he claimed it was intended as an

---

8 DE 40), ¶¶ 43-44 – "no reasonable person would believe that Clowdus had intended his bag to make contact [with Merino, or] characterize the…contact… as an assault."

innocent (and not harassment) "gift" and thus took issue with the investigator's belief/conclusion that the gift was intended as "homophobic taunting" of the player.   He sued, claiming the investigator's conclusion was "necessarily a false statement of fact." *Id.*   This Court, and the Eleventh Circuit on appeal, disagreed.

8.      The Court held, and the Eleventh affirmed, that the investigators' conclusion about the coach's state of mind (i.e. his intent) was a "subjective assessment of [the coach's] conduct and [was] not readily capable of being proven true or false." *Turner,* 879 F. 3d at 1264.   The notion (as argued by the coach) that he, or a different investigator, could reach a different conclusion if given the same facts, bolstered the Court's finding that the statement was opinion, not fact.  *Turner,* 198 F. Supp. 3d at 1370 ("Turner's allegation that he intended the male blow-up doll as a 'gift' for Player 1 rather than a 'taunt' is not capable of being proven true or false, because an **individual's state of mind at a particular point in time 'is not subject to empirical proof."**) (emphasis added).

9.      Likewise, Clowdus frames his pleadings, not on some challenged falsity of fact, but rather on his disagreement with the opinions/conclusions that Merino (and AA) are alleged to have reached regarding his intent.   Clowdus asserts that he did not intend to strike Merino in an offensive manner, and alleges that Merino (and AA) should have reached the same conclusion.[9]   Notably, like the coach in *Turner,* Clowdus does not accuse Merino of propagating false *facts;* Clowdus just does not like Merino's *beliefs and opinion* as to Clowdus' intent.[10]   This is not the "stuff" of a defamation claim.  *Rasmussen v. Collier Cnty. Publ'g Co.,* 946 So. 2d 567, 571 (Fla. 2d DCA 2006) (commentary or opinion on facts is not "the stuff" of defamation).  Like the coach in *Turner,*

---

9 (DE 40), ¶¶ 43-44.

10 (DE 40)*,* ¶¶ 43-44, 67-68, 81, 82, 89.

Clowdus' disagreement with Merino's (or AA's) opinion as to his intent is not the stuff of actionable defamation. *Turner,* 198 F. Supp. at 1367.

10.     Thus, Clowdus' defamation claim must fail as a matter of law.  Nevertheless, in the event that this Court deems Plaintiff to have alleged some falsity of fact, and not opinion, (which is not apparent on the face of the pleadings), Plaintiff's defamation *per se* claim is still deficient, for a host of other reasons.

### B.  The Allegations Surrounding the Statement "You Hit Me" Fail to Establish a Defamation *Per Se* Claim

11.     To construct his *per se* defamation claim, Plaintiff relies heavily on Merino's alleged "You hit me" statement to Clowdus aboard the aircraft.[11]  This statement is insufficient to give rise to a defamation *per se* claim because, within its "four corners," it lacks (1) sufficient falsity of fact; (2) sufficient elements to rise to defamation *per se*; and (3) sufficient allegations of publication.

### 1.  The "You hit me" statement lacks sufficient falsity of facts

12.     First, the statement "You hit me" lacks the requisite falsity to constitute defamation *per se.*  As discussed above, the material fact of Merino being "hit" is not in dispute. Clowdus admits, in numerous paragraphs, that he hit Merino with his bag.  The statement, "You **hit** me" therefore lacks sufficient **falsity** to constitute a claim of defamation *per se* because it is literally true.  *Cape Publ'n, Inc. v. Reakes,* 840 So. 2d 277, 279-80 (Fla. 5th DCA 2003) ("Stated differently, if the **statements are true, the required element of a false statement is not present**.").  Falsity exists only if the statement is "substantially and materially false, not just if it is technically false." *Turner,* 198 F. Supp. 3d at 1365.  Due to this lack of falsity, Clowdus cannot

---

11 (DE 40), ¶¶ 19-22.

establish a claim for common law defamation, let alone defamation *per se* by relying on this statement.

### 2.   "You hit me" is not defamatory *per se*

13.     Second, "You hit me" is not actionable as a defamatory statement since, on its face, it falls below the high threshold that statements must meet to be defamatory *per se*.  Florida law makes a profound distinction between claims of common law defamation and the more rigorous defamation *per se.*   Common law defamation claimants may call upon a statement's context to "demonstrate [its] defamatory meaning or that the plaintiff is the subject of the statement." *Afalo v. Weiner,* 2018 WL 3235529, *1 (S.D. Fla. 2018) (internal citations omitted).  Defamation *per se* claims, however, are only actionable if the *precise* words spoken are actionable on their face, leaving nothing to inference. *Paulson v. Cosm. Dermatology, Inc.,* No. 17-cv-20094, 2017 WL 2484197, *3 (S.D. Fla. June 8, 2017) (injurious nature of the statement must be "apparent from the words in the statement itself").  The analysis is limited to the "four corners" of the specific statement alleged, without consideration of context, extrinsic facts, innuendo, or inferences. *Id.* at *4; *see also Scobie v. Taylor,* 2013 WL 3776270, *4 (S.D. Fla. 2013) ("In a *per se* action, consideration is given only to the 'four corners' of the publication and the language used should be interpreted as the 'common mind' would normally understand it.")

14.     Clowdus' underlying/plead theory is that the "you hit me" statement falsely accused him of a felony.[12]  To establish a claim for *per se* defamation under this theory, he must plead a specific statement that, on its "four corners" and without relying on any context, extrinsic facts, inferences, or innuendo, imputes a specific felony to his specifically identified person.  *Klayman v. Judicial Watch,* 22 F. Supp. 3d. 1240, 1247-48 (S.D. Fla. 2014) (". . .whether the underlying

---

12 *See, e.g.* (DE 40), ¶¶ 51, 64, 67.

facts actually support a felony offense is not relevant"—in order to qualify as defamatory *per se,* the statement must specifically "accuse a person of a felony.") If extrinsic facts are needed to support the felonious nature of the offense, the statement does not qualify as defamation *per se*. *Id.; see also Bellemead, LLC v. Stoker,* 280 Ga. 635, 639, 631 S.E.2d 693 (2006) ("Should extrinsic facts be necessary to establish the defamatory character of the words, the words may constitute slander, but they do not constitute slander *per se* . . . the *negative inference a hearer might take from the words does not subject the speaker for liability for slander per se*.")(emphasis added).

15.    This Court has held defamation *per se* pleadings traveling under this theory to a rigorous standard, most notably in *Aflalo..* 2018 WL 3235529 at 3. The plaintiff in *Aflalo* complained that the statement that he"[took] advantage of a old 94plus sick man elder abuse [sic]" amounted to defamation *per se* as it accused him of the serious crime of elder abuse. *Id.* at *1. However, the Court held even *that* statement fell below the threshold for *per se* defamation because, while implying a felony crime, the "four corners" did not include an identification of the felonious conduct nor the specific felony crime committed for the benefit of the "common mind":

> "Accordingly, the common mind must read the "four corners" of the Statement— "[Plaintiff] took advantage of a old 94plus sick man elder abuse"—and understand it to mean that **not only was Defendant accusing Plaintiff of some form of physical or psychological injury or neglect of an elderly person,** *but that he was specifically referring to [] Florida laws* **[prohibiting elder abuse, as referenced in the pleading].***"* *Id.* at *3.

16.    Merino's alleged "You hit me" statement, while much less provocative than an accusation of "elder abuse," nonetheless suffers from the same deficiency identified in *Aflalo*. It does not "on its face" and within its "four corners" impute a specific "criminal offense amounting to a felony." *Klayman,* 22 F. Supp. 3d at 1247-48. Nowhere within the "four corners" of "You hit me" does Merino reference a crime, let alone a specific felony crime as would be understood by a "common" third-party listener. To even *approach* this standard, Clowdus would need to

8

greatly supplement this alleged statement with extrinsic facts, context, and inferences which he is prohibited from doing in connection with his defamation *per se* action.  "You hit me" is, thus, not actionable for this reason, as well.

### 3.  Publication of "You hit me" is inadequately plead

17.     Despite being granted leave to adequately plead publication, Plaintiff's Amended Complaint still fails to do so. "It is essential to a cause of action for defamation that the alleged slanderous . . . statement be made or published to some third person." *Mennella v. Am. Airlines, Inc.,* No. 17-21915-CIV, 2019 WL 1429636, at *3 (S.D. Fla. Mar. 29, 2019), *aff'd,* 824 F. App'x 696 (11th Cir. 2020); *American Airlines, Inc. v. Geddes,* 960 So. 2d 830, 833 (Fla. Dist. Ct. App. 2007) ("A defamatory statement does not become actionable . . . until it is published . . . to a third person").  An inference, even a strong inference, of publication is *insufficient* to state a claim for defamation *per se. Id.* ("To meet the standard for publication to a third party, a plaintiff "must allege the identity of the particular person to whom the remarks were made with a **reasonable degree of certainty[.]**").  The Amended Complaint fails to adequately allege the publication of this statement to any passenger or to the only AA-affiliated individual identified, Ground Security Coordinator ("GSC") Jose Henriquez ("**Henriquez**").

18.     First, with regard to passengers, Clowdus again attempts to travel under a theory of "publication by inference" that this Court decidedly struck down in Plaintiff's Original Complaint.[13] Ignoring this ruling, Clowdus again asks the Court to "**infer**" that "**at least some** of the passengers in business class overhead the allegedly defamatory "you hit me" statement."[14] However, since Clowdus has once again failed to identify any specific passenger who heard this

---

[13] *See* Order on Defendant's Motion to Dismiss (DE 32) at 8 ("A strong inference of publication is insufficient to state a claim for defamation *per se*.")

[14] (DE 40), ¶ 80.  It should be noted that no witnesses deposed by Plaintiff has testified to hearing any "shout."

specific statement,[15] his allegations (again) fail to satisfy the "reasonable degree of certainty" standard used by this Court for adequacy of publication.[16] *Mennella,* 2019 WL 1429636, at *4.

19.     Second, as to the intra-corporate communication of the "You hit me" statement, Merino's purported publication of the statement to Henriquez is also insufficient to survive a motion to dismiss.[17]   As this Court has previously noted, when "the entity alleged to have committed the defamation is a corporation," intra-corporate communication made to executive and managerial employees is not publication, but rather the corporation speaking to itself.[18]  Clowdus provides no factual support for his conclusory allegation that the statement was published to non-managerial employee Henriquez.[19]   Indeed, Clowdus has plead detailed facts demonstrating just the opposite as discussed immediately below.

20.     Specifically, Clowdus alleges that: (1) AA rules "dictate" that a GSC (like Hernandez) "interview the targeted passenger…to determine whether the appropriate action is to remove the passenger from the flight;"[20] (2) "Henriquez had the authority to decide whether to rebook Clowdus… based upon his evaluation of the incidence of removal;"[21]  and that (3) he would

---

15 Plaintiff states in conclusory fashion that Merino "published" this statement to "every passenger" in business class. *See* (DE 40), ¶ 76.  As discussed above, this conclusory statement provides no reasonable particularity as to any passenger who actually heard this statement.  Plaintiff has likely plead in this manner because no passenger's testimony has supported this theory, and no passenger has testified that they heard this alleged statement.

16 Plaintiff makes a cursory, and ambiguous, reference to a "defamatory accusation" discussed in the "deposition of passenger seated in 3A." (DE 40), ¶ 79.  Plaintiff's odd decision to forego stating the specific statement alluded to here (and subject it to *per se* analysis), is likely best explained because the referenced passenger testified to nothing of the sort.  Please see the excerpt of the referenced deposition at Exhibit A. Deposition of Passenger 3A, 15:5-8 (**Question "[D]id you at any point ever hear the flight attendant say, 'You hit me'?" Passenger 3A "I don't recall that.**").  As Plaintiff has referenced this deposition, and it is undisputed/central to the claims for which it was referenced, its incorporation herein shall not convert the instant motion to a motion for summary judgment. *Horsely v. Feldt,* 304 F.3d 1125, 1134 (11th Cir. 2002).

17 (DE 40), ¶¶ 31-32.

18 *Geddes,* 960 So. 2d at 833.

19 (DE 40), ¶ 75.

20 (DE 40), ¶¶ 34, 57.

21 (DE 40), ¶ 38.

provide a "valuable perspective" on the removal since he is authorized to "mediate" such situations between passengers and crew members.[22]  Thus, Clowdus' factually naked conclusory allegation that Henriquez is a "non-managerial" employee (which this Court is not bound to accept as true is belied by his more factually specific allegations to the contrary – allegations which this Court must accept as true. *Iqbal*, 556 U.S. at 678.  Accordingly, Clowdus' allegations are insufficient (yet again) to allege publication to Henriquez.

21.     Moreover, and most importantly, these same allegations confirm the applicability of the qualified privilege to Merino's "You hit me' statement to Henriquez and the propriety of dismissal of Clowdus' claims related to that statement.[23]  Specifically, the Amended Complaint confirms (in factual detail) Henriquez had authority to interview passengers slated for removal, mediate crew/passenger disputes particularly those involving passenger removal, and determine whether to re-book a removed passenger depending on his "evaluation of the incidence [sic] of removal."[24] These factually detailed allegations (which this Court must accept as true) confirm that Merino's "You hit me" statement to Henriquez was the type of statement Henriquez was required to act on and thus the applicability of the qualified privilege to that statement. *See, Thomas v. Tampa Bay Downs, Inc.*, 761 So. 2d 401, 404 (Fla. 2d DCA 2000) (an employee's conduct is "immune from an action for defamation if it is the type of conduct that the employee is hired to

---

22 (DE 40), ¶ 57.

23 Since Clowdus' Amended Complaint anticipates (DE 40 ¶¶ 85, 86, 90) AA's assertion of the qualified privilege defense, this Court may evaluate whether that defense bars Clowdus' recovery as a matter of law. *See Quiller v. Barclays American/Credit, Inc.,* 727 F.2d 1067, 1069 (11th Cir. 1984) (A complaint may be dismissed under Rule 12(b)(6), without turning the motion to dismiss into a motion for summary judgment, when the complaint's "own allegations indicate the existence of an affirmative defense[.]"); *Nodar v. Galbreath,* 462 So. 2d 803, 810 (Fla. 1984) (a court may dismiss a defamation claim where the four corners of the complaint show that the affirmative defense of qualified privilege bars the plaintiff's ability to recover); *Jarzynka v. St. Thomas University of Law,* 310 F. Supp. 2d 1256, 1267 (S.D. Fla. 2004) (granting defendant's motion to dismiss as to the defamation claim based on qualified privilege). Notably, the existence of a qualified privilege is a question of law for this Court to decide. *Thomas,* 761 So. 2d at 404.

24 (DE 40), ¶¶ 34, 38, 57.

perform . . . and the conduct is activated at least in part by the employee's purpose to serve his or her employer."). Clowdus' defamation *per se* claim related to Merino's "You hit me" statement to Henriquez must, therefore, be dismissed.

### C.  The Allegations Surrounding the Statement "I don't know why people have to behave like that" Fail to Establish a Defamation *Per Se* Claim

22.     Merino's "I don't know why people have to act like that" comment falls gravely short of defamation *per se*. (DE 40), ¶ 79.  The statement is not factual, and thus cannot be objectively proven to be true or false.[25] The statement does not accuse Clowdus of a felony within its four corners and without innuendo, inference or reference to extrinsic facts or context.[26]  Thus, Clowdus' defamation *per se* claim related to this statement must be dismissed.

### D.  The Allegations Surrounding Merino's CERS Report and AA's Internal IRL Fail to Establish a Defamation *Per Se Claim*
.
23.     Clowdus' effort to plead a viable defamation *per se* claim based on Merino's Corporate Event Reporting System ("**CERS**") report and AA's "adoption" of that CERS report in AA's Internal Refuse List ("**IRL**")[27] fares no better. Clowdus does not allege *any* publication of these items to any *specifically identified person* outside of AA whatsoever.  He therefore concedes that these items were restricted to the intra-corporate realm.[28]

24.     Pleading intra-corporate defamation in federal court is no easy task.  This Court demands more than mere communications to **corporate executives and/or managerial employees** to establish a *prima facie* case**.  *Lopez v. Ingram Micro, Inc.,* 1997 WL 401585, *6 (S.D. Fla. March 18, 1997) ("communications by [defendant corporation's] agents, i.e. the

---

25 See discussion supra at ¶¶ 6-10.

26 See discussion supra at ¶¶ 13-16.

27 (DE 40), ¶¶ 81-83, 89-90.

28 (DE 40), ¶¶ 81-83.

investigators, to [] management personnel do not satisfy the 'publication' element").   The Supreme Court, for its part, has held that a defamation claim cannot spring from a corporation's internally stored documentation/data, even if the data is defamatory *and* even if there is a *risk* of dissemination to a third-party in the future. *TransUnion, LLC v. Ramirez,* 141 S. Ct. 2190, 2210 (2021):

> "The mere presence of an inaccuracy in an internal [] file, if it is not disclosed to a third party, causes no concrete harm. **In cases such as these where allegedly inaccurate or misleading information[29] sits in a company database, the plaintiffs' harm is roughly the same, legally speaking, as if someone wrote a defamatory letter and then stored it in her desk drawer. A letter that is not sent does not harm anyone, no matter how insulting the letter is.**"

25.     Indeed, federal court precedent regarding intra-corporate defamation claims presents a high hurdle for Clowdus—a customer complaining about a communication made entirely within AA's own four walls.  The allegations surrounding the CERS report and the IRL fail to clear this hurdle.  They are either irrelevant or insufficient for defamation *per se,* and, on their face, they fail to establish any communication exempted from qualified privilege.

### 1.  The deficient allegations pertaining to the CERS report

26.     As to the CERS report, Clowdus alleges that Merino "published his [unspecified] defamatory accusation" to only two identified recipients, Corporate Security investigators Aristides Maldonado ("**Maldonado**") and, "upon information and belief" Chris Reddig ("**Reddig**").[30] As an initial matter, this Court has consistently held that conclusory allegations

---

29 In *TransUnion,* the alleged defamatory material inaccurately accused multiple customers of a connection to "terrorists, drug traffickers, and other serious criminals." 141 S.Ct. at 2197.

30 (DE 40), ¶¶ 81-82.  Plaintiff makes a reference to an unspecified "false allegation" made to flight attendant Deon Gray wherein Merino allegedly "asked [Gray] to corroborate his account."(DE 40), ¶ 74. Plaintiff, however, once again fails to allege what Merino actually said to Gray, if it was true or capable of being objectively shown to be true or false, or if it was defamatory *per se* - likely because Gray testified to nothing of the sort. Regardless, Plaintiff's allegations as to Gray are nothing more than "labels and conclusions" that fail to raise his claim above "a speculative level." *Twombly,* 550 U.S. at 1959.

"made upon information and belief" fail to "meet the *Twombly* standard." *Scott v. Experian Information Solutions, Inc.,* 2018 WL 3360754, *6 (S.D. Fla. 2018) (dismissing an amended complaint "replete with conclusory allegations, made upon 'information and belief'").[31] The purported publication to Reddig, on "information and belief" and without any factual support, should therefore be disregarded as well. However, even assuming publication of some statement to Reddig, Clowdus fails to allege what exactly what was stated in the CERS report allegedly shown to Maldonado/Reddig, which *once again* prevents any analysis of the whether the statement is factual or can be objectively proven to be true or false, [32] or whether the statement accuses Clowdus of a felony within its four corners and without innuendo, inference or reference to extrinsic facts or context. [33] These allegations do not even allow this Court to "infer the possibility of AA's liability…[without reading additional facts into the Complaint], and thus they fail "to raise Plaintiff's right to relief above the speculative level." *Iqbal*, 556 U.S. at 678. This aspect of Clowdus' claim must, therefore, be dismissed.

27.     Moreover, Clowdus provides no factual support for his legal conclusion[34] that Reddig and/or Maldonado's are "non-managerial" employees of AA.  As discussed above,[35] this Court is not bound to accept (and indeed cannot accept) as true Clowdus' factually naked legal conclusion that Reddig and Maldonado are "non-managerial" employees.  As such, Clowdus has

---

31 For this reason, the Court should disregard Plaintiff's conclusory allegation that an (unspecified) "defamatory statement" was "published" to "every non-managerial ticketing agent, customer service agent, and gate agent companywide through American Airlines' internal computer system." (DE ¶ 83).  Not only is this conclusory statement insufficiently plead on "information and belief", it further suffers from the deficiencies stressed in *Mennella* (third-party must be identified with "reasonable particularity") and *TransUnion* (internal storage of data does not give rise to a defamation claim).  *See Mennella,* 2019 WL 1429636, *4; *TransUnion,* 141 S. Ct. at 2210.

32 See discussion supra at ¶¶ 6-10.

33 See discussion supra at ¶¶ 13-16.

34 (DE 40), ¶¶ 81-82.

35 See discussion supra at ¶¶ 3 & 20.

failed to allege that the statements (whatever they are) contained in Merino's CERS report would be considered anything but the corporation speaking to itself.  *Geddes,* 960 So. 2d at 833 (communication with managers is not publication but rather the corporation speaking to itself).

28.     Finally, Clowdus' *own* allegations demonstrate that the statements contained in Merino's CERS report are entitled to qualified privilege.  Clowdus admits that CERS reports are used by investigators to analyze interactions between passengers and crew.[36] He further admits that Maldonado and Reddig were "corporate security" investigators tasked with this responsibility when they received and acted on the CERS report.[37]  Thus, Clowdus' own detailed factual allegations (which this Court must accept as true) confirm that Merino's CERS report was the type of statement Reddig and Maldonado were required to act on and thus that the communication of the CERS report to them falls squarely within qualified privilege. *See, Thomas,* 761 So. 2d at 404 (an employee's conduct is "immune from an action for defamation if it is the type of conduct that the employee is hired to perform . . . and the conduct is activated at least in part by the employee's purpose to serve his or her employer.").[38] *See also Jarzynka,* 310 F. Supp. 2d at 1267 ("Dr. Soifer's comments were made as part of an investigation into accusations against the Plaintiff.  The Court[] finds that the remarks made by Dr. Soifer were privileged as a matter of law.").  Thus, Clowdus' defamation claim related to the alleged publication of the undisclosed statements in the CERS report must be dismissed.

## 2.  The deficient allegations pertaining to the IRL

29.     As to the IRL, stepping back, it seems preposterous that a corporate airline's internal IRL (essentially its flight restriction list) could be the "stuff" of a defamation claim,

---

36 (DE 40), ¶¶ 54-55.

37 (DE 40), ¶¶ 81-82.

38 See discussion supra at ¶ 21.

especially as Plaintiff alleges no publication of the internally-stored IRL to *any* individual, inside or outside AA. *TransUnion,* 141 S.Ct. at 2210 (no defamation from internally stored documents);[39] *see also Granda-Centeno v. Lara,* 489 So. 2d 142, 143 (Fla. 3d DCA 1986) (a plaintiff most show that an alleged defamatory document was "actually received and read"—the allegation that "defamatory writing was sent is insufficient[.]").

30.     As for Clowdus' allegations surrounding the IRL, they are obviously fatally deficient because they are premised on nothing other than AA's alleged "adoption" of Merino's (non-actionable) "defamatory statements." Specifically, Clowdus alleges "[AA] ratified Merino's defamatory statements" when it determined "passenger Clowdus physically assaulted FA1 Carlos Merino…"[40]   However, as argued above, Merino's alleged "defamatory statements" are not actionable as defamation per se and, contrary to Clowdus' allegations, AA's purported "adoption" of Merino's *beliefs and opinion* (regarding Clowdus' intent) does not transform those otherwise non-actionable *beliefs and opinions* to actionable *factual* defamation per se.  *Turner,* 879 F.3d at n. 3 ("adopting and publishing another's **opinion** does not, by itself, make that opinion false.").

31.     Third, and finally, the lone paragraph referring to the IRL (paragraph 89) displays one of the many deficiencies pervading Plaintiff's Amended Complaint — there is no hint as to *what specific statement was actually* made in the IRL, to whom it was made, or how it was defamatory *per se.*   To characterize these allegations as "labels"[41] would be an overstatement. Because this Court is literally left to guess as to whether anything in the IRL was defamatory *per*

---

[39] As with prior conclusory statements, the Court should disregard Plaintiff's "information and belief" that "any ticketing agent, gate agent, or customer service agent" could access "Mr. Clowdus' record. (DE 40), ¶ 90.  *See Scott,* 2018 WL 3360754, *6 ("information and belief" insufficient); *Mennella,* 2019 WL 1429636, *4 (recipient must be identified with reasonable particularity).

[40] (DE 40), ¶ 89. (AA "ratified Merino's defamatory statements . . . stating as fact . . .").

[41] *Iqbal*, 556 U.S. at 678 (a complaint "that offers 'labels and conclusions' …will not do").

*se,* these allegations fall far short of the satisfying the *Iqbal* plausibility standard and must be dismissed. *Iqbal*, 556 U.S. at 678 (the factual allegations in complaint "must be enough to raise a right to relief above the speculative level").

### E. The Allegations Suggesting Malice and an Incomplete Investigation Are Insufficient to Overcome the Deficiencies of the Defamation *Per Se* Claim

32.     Clowdus alleges Merino behaved with "malice" towards Clowdus and that AA conducted an incomplete investigation (resulting in Clowdus' AA flight ban) into Merino's complaint. [42] Ostensibly, these allegations are intended to pierce the qualified privilege[43] attaching to the communications made the basis of his defamation *per se* claims.[44] These allegations are irrelevant to the basis of this Motion since (as discussed above) the statements made the basis Clowdus' defamation *per se* claim are simply not defamatory *per se*. Nevertheless, in an abundance of caution, Defendant addresses the deficiencies immediately below.

#### 1. Plaintiff has not adequately plead malice nor rebutted the good faith presumption.

33.     Clowdus alleges that Merino made an (unspecified) "defamatory statement" with "common law express malice because the primary motive of his making the false and defamatory statement was an intention to injure Mr. Clowdus" and "to gratify [Merino's] malevolence."[45] As an initial matter, these allegation do not identify what statement was made with malice and thus they are facially insufficient to properly allege malice or pierce qualified privilege. *Iqbal*, 556

---

42 (DE 40), ¶¶ 42, 46, 56-57, 72, 85, 90.

43 (DE 40), ¶¶ 85-86.

44 Plaintiff also attempts to construct an allegation of publication to an "unnecessarily wide audience" for this purpose. (DE 40), ¶ 90.  However, Plaintiff again fails to identify the specifics of the "accusation" made and the identity of the members of this "wide audience" other than by "information and belief."  On the face of his own pleadings, Plaintiff's "unnecessarily wide audience" theory dies on the vine.  *Mennella,* 2019 WL 1429636, *4 (third-party must be identified with reasonable particularity); *TransUnion,* 141 S. Ct. at 2210 (no standing when defamation claim is based solely on the risk of future *access* to internally stored documents).

45 (DE 40), ¶¶  72-73.

U.S. at 678 (the factual allegations in complaint "must be enough to raise a right to relief above the speculative level").

34.     Second, the conclusory malice allegations contain no non-conclusory factual support whatsoever, such as why Merino was motivated by an intent to injure Clowdus, what malevolence Merino held for Clowdus or why, or any other fact or circumstance supporting such a conclusory allegation.  Instead, Clowdus has simply alleged a "threadbare recital" of the Florida definition of malice – i.e., conduct primarily "motivated by . . . a desire to harm the person defamed[.]"  *Nodar,* 462 So. 2d 803, 811 (Fla. 1984).  The malice allegation is (literally) the type of "unadorned" conclusory allegation which is insufficient to meet the *Twombly* plausibility standard, and its deficiency is especially glaring given the high standard a plaintiff must meet to demonstrate express malice.[46]  *Id.* (express malice requires a showing of more than a defamer's "[s]trong, angry, or intemperate words," "hostility or ill will toward the plaintiff," or "personal feelings of indignation[.]") (internal citations omitted).

35.     Third, allegations surrounding malice must rebut the presumption of good faith that cloaks qualifiedly privileged communications. *Thomas,* 761 So. 2d at 404 (statements made with qualified privilege are "cloaked with a legal presumption of good faith"); *Nodar,* 462 So. 2d at 810 (a "presumption of good faith" attaches to statements made with qualified privilege, which eliminates any presumption of malice and "places upon the plaintiff the burden" of rebutting this good faith presumption). Clowdus' pleadings fail to provide this "heft" necessary to rebut this good faith presumption.  *Stephens, Inc.,* 500 F.3d at 1282.  He provides no factual support, for example, for the conclusory allegations[47] that Merino controlled whether Clowdus was removed

---

46 See discussion supra at ¶¶ 2-3.

47 (DE 40) ¶¶ 25, 37 – "Henriquez attempted to convince Merino to allow Mr. Clowdus to remain on the flight."

from the aircraft, [48] or whether Merino controlled Clowdus' placement on AA's no-fly list.[49] Whether singularly or collectively, Clowdus' malice allegations are facially insufficient to properly allege malice or overcome qualified privilege.  *Iqbal*, 556 U.S. at 678 ("labels and conclusions [or] formulaic recitations of the elements of a cause of action will not do ... [n]or does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (quoting *Twombly*, 550 U.S. at 555, 557).

### 2.  Plaintiff's incomplete investigation theory is irrelevant to the defamation per se claim and insufficient to pierce qualified privilege.

36.     Clowdus suggests that AA's investigators should have reviewed Henriquez' CERS report, Clowdus' customer complaints and other materials, and provided Clowdus with an "avenue" for appeal, before placing him on AA's no-fly list.[50] Plaintiff's dissatisfaction with the extent of AA's investigation is irrelevant to the basis of this motion, not only because the statements made the basis Clowdus' defamation *per se* claim are simply not defamatory *per se* (as discussed above), but also because the investigation is relevant only to the no-fly determination which AA has a constitutional right to make regardless of the accuracy of any underlying investigation. *Lugassy v Lugassy*, 298 So.3d 657, 659 (Fla. 4th DCA 2020) ("we have held that the freedom of contract entails the freedom not to contract" except as restricted by antitrust, antidiscrimination and other statutes).

---

48 As successfully argued in AA's Motion for Judgment on the Pleadings (DE 17, at p. 6, ¶12), the federal permissive removal statute confers sole authority for passenger removal on the flight captain, not a flight attendant.

49 Clowdus' allegations confirm just the opposite – that the no fly determination was made by other AA personnel, not Merino. (DE 40), ¶¶ 42, 46, 54-57, 89, 91.

50 (DE 40), ¶¶ 46, 53, 54, 57, 90.

## V.    CONCLUSION

For the reasons argued above, AA respectfully requests that this Honorable Court grant Defendant's Motion to Dismiss Plaintiff's Amended Complaint in its entirety with prejudice, enter judgment against Plaintiff and award AA its taxable costs and expenses against Plaintiff.


Respectfully Submitted,

BUCHANAN INGERSOLL & ROONEY PC
s/ Kelly H. Kolb
Kelly H. Kolb, Esq.
Florida Bar Number: 0343330
kelly.kolb@bipc.com
Robert D. Pecchio, Esq.
Florida Bar Number: 1005955
Robert.pecchio@bipc.com
401 East Las Olas Boulevard, Suite 2250
Fort Lauderdale, FL  33301
Telephone:     (954) 703-3944
Facsimile:     (954) 703-3939
Attorneys for Defendant


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this the 2nd day of June 2022, a true and correct copy of the above and foregoing has been filed with the Clerk of Court using the CM/ECF system.  I FURTHER CERTIFY that the foregoing document is being served this date, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner of those counsel or parties who are not authorized to receive electronically Notices of Electronic filing on the counsel of record or *pro se* parties identified on the attached Service List.

**SERVICE LIST:**

William T. Woodrow III
250 West Main Street, Suite 201
Charlottesville, VA 22902
E-mail: will@stoneandwoodrowlaw.com

Rook Elizabeth Ringer, Esq.
LENTO LAW GROUP
222 San Marco Ave., Ste. C
St. Augustine, FL 32084
E-mail: reringer@lentolawgroup.com

David Pollack
POLLACK LAW FIRM
75 Valencia Avenue, Suite 100
Coral Gables, FL 33134
Tel: (305) 372-5900
Tel: (855) 275-7378
Tel: (904) 602-9400
E-mail: david@davidpollacklaw.com
*Counsel for Plaintiff*

By:    */s/ Kelly H. Kolb*
          Kelly H. Kolb