IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Troy Clowdus

PLAINTIFF

vs.

American Airlines Inc.,

DEFENDANT.

Civil Action No.: 1:21-cv-23155-MM

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff TROY CLOWDUS, by and through undersigned counsel, files his Response in Opposition to Defendant AMERICAN AIRLINES' ("AA") Motion to Dismiss Plaintiff's Amended Complaint.

### Introduction

AA has filed a motion to dismiss that argues with one foot firmly planted in summary judgment. It cites the Supreme Court's rulings in *Twombly/Iqbal*[1] in support of its positions, but it uses them in a profoundly mistaken way. AA chants mantras of "conclusory allegation" and "mere speculation" to demand that the Plaintiff articulate in his Amended Complaint every fact and every detail necessary to winning his case – *prior to discovery being completed*. But *Twombly* and *Iqbal* require no such thing. Fed.R.Civ.P. 8 requires only "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Contrary to AA's apparent interpretation, *Twombly/Iqbal* simplified and streamlined the requirements for a well-pled complaint; it did not heighten them. Clowdus has amply pled a claim that sufficiently crosses

---

[1]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

1

the line "from conceivable to plausible." *Iqbal*, 556 U.S. at 677-80. In fact, Clowdus has pled more than that: if the facts alleged in his Complaint are true (and, of course, at this stage they are presumed to be), he has not just pled a plausible claim: he has pled a probable claim.

AA's foray into the law of defamation in Florida fares no better. It frequently misapplies the facts to the law, and it even occasionally misstates the law entirely. But what its motion lacks in substance, it makes up for in enthusiasm. Fortunately for the Plaintiff, AA's "strong opinion" is not enough to defeat a claim for defamation.

In his Response, Clowdus will first address AA's misunderstanding of notice pleading and its consequent attempt to impose an improperly heightened standard of scrutiny upon his Complaint, partially by way of using poorly articulated language from *Mennella v. Am. Airlines, Inc.*, 2019 WL 1429636 (S.D. Fla. Mar. 29, 2019), aff'd, 824 F. App'x 696 (11th Cir. 2020) to argue for an undue level of specificity, where the well-established body of Florida case law requires less.

He will then address AA's argument that flight attendant Merino was merely offering a non-defamatory opinion with his words and actions by first pointing again to the pleading standard and then by explaining the Florida law applying to mixed statements of fact and opinion.

Next, his Response will explain the distinction between libel per se and slander per se. A quick peek ahead: "the 4 corners of a statement" doctrine does not apply to oral defamation, and as to the libel per se in the written report, AA's arguments are entirely premature.

Clowdus will then explore the intra-corporate communication doctrine, AA's misapplication of *Geddes* and the circumstances under which a corporation is deemed to be "speaking to itself," followed by an explanation of when the assertion of a qualified immunity is properly raised, Fed. R. Civ. P. 9, and the sufficiency of the "express malice" pled by the Plaintiff in his Complaint.

**Legal Standard**

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8. "Factual allegations must be enough to raise a right to relief above the speculative level…on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 554–57. The pleading standard does "not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677–80 (internal citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. (internal citations removed). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Determining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

**The Plaintiff Has Pled Sufficient Facts for the Court to Reasonably Infer AA's Liability**

**Facts:** Merino accused the Plaintiff of assault. First Amended Complaint ("FAC"), DE 40, ¶¶s 65-70. Merino knew that the Plaintiff had not intentionally hit him, so he knew that he had not been assaulted.[2] FAC, ¶¶s 44-45, 68. Merino was aware when he made the accusation that it is a felony to strike a flight attendant. FAC, ¶67. Merino lied and told everyone in earshot that he was assaulted. FAC, ¶¶s 20-21, 23, 66-68. Merino lied and told flight attendant Gray that he was assaulted when he asked her to write him a statement. FAC, ¶70. Merino lied

---

[2] If this were a motion for summary judgment, Clowdus would introduce, among other things, seemingly outrageous embellishments from Merino's account of the incident that are at odds with statements from other witnesses and from which a jury could conclude that Merino was lying: the Plaintiff's supposed fury, the firm eye contact while the Plaintiff deliberately knocked the wind out of Merino by hurling the bag into his stomach, the Plaintiff then standing menacingly and laughing at Merino mockingly and refusing to apologize. At this stage of the proceedings, however, Clowdus is only required to allege that Merino knew that Clowdus had not deliberately assaulted him.

The reason that these facts are merely alleged in a footnote and not offered as exhibits to the complaint such as the one that AA attached to its motion to dismiss is that these facts *were developed during ongoing discovery*. These facts are not appropriately or necessarily introduced now. These facts were not needed in Plaintiff's "short and plain statement." The Plaintiff alleged facts in his Amended Complaint that made the discovery of these facts "plausible." Plaintiff's Amended Complaint plausibly pointed to the discovery of many facts that have strengthened his claim, but that does not mean that he is required to supplement his pleading with each one as it is uncovered.

and told the captain he had been assaulted. FAC, ¶74. Merino lied and told GSC Henriquez that he had been assaulted. FAC, ¶¶s37-38, 75. After the plane departed, Merino lied and told a passenger he had been assaulted. FAC, ¶77. Merino filed a report with AA that was seen by non-managerial employees Aristides Maldonado and Chris Reddig where he lied and said that he had been assaulted. FAC, ¶¶s 50, 80-81. As a result of the false accusation of committing a felony, the Plaintiff suffered per se damages (as well as a lifetime ban from flying with AA). FAC, ¶¶s 53, 89-90. Merino knew his report would inflict tremendous harm on the Plaintiff – getting him banned for life – and he did it anyways, out of malice. FAC, ¶¶s 69-72. Merino desired to and he did, in fact, cause a disproportionate amount of harm out of malice. FAC, ¶¶s 69-72.

These are the facts that the Plaintiff has pled, and that can be reasonably inferred from the Complaint. These are the facts that make out "the short and plain statement" that shows the Plaintiff is "entitled to relief." Fed. R. Civ. P. 8. Discovery is ongoing and the Plaintiff has amassed – and continues to amass – facts to prove his case beyond this short and plain statement. AA may hope to produce facts that undercut the Plaintiff's claim, but for now, the Plaintiff's facts are considered the truth and are sufficient to proceed.

**The Plaintiff Has Adequately Identified to Whom the Defamation Was Published.**

AA relies heavily upon *Mennella,* 2019 WL 1429636, at 3, to argue that the Plaintiff has not identified with sufficient particularity the third-party recipients of the defamatory words. However, AA uses this unpublished opinion to thoroughly misstate the well-established law of defamation in Florida, which expressly holds that a jury may infer publication where a statement is spoken in a loud voice in the presence of others.[3] *See Lombardi v. Flaming Fountain, Inc.*, 327 So. 2d 39, 40 (Fla. Dist. Ct. App. 1976) ("We hold, therefore, that in a slander action it is not necessary to produce witnesses who heard the slanderous words spoken. The jury may well infer publication if it is shown that the words were uttered in a loud voice in the presence of others and

---

[3] At this stage Clowdus could rest his entire argument regarding *Mennella* on the fact that *Mennella* was decided upon summary judgment, whereas here, the Plaintiff is not yet finished with discovery. Arguments about failing to identify individuals with exacting particularity are not yet ripe, even if they were valid. But for the sake of efficiency, the Plaintiff addresses the further flaws in AA's arguments now.

under conditions and circumstances in which a loud voice would likely be heard."); *American Ideal Management, Inc. v. Dale Village, Inc..*, 567 So.2d 497, 499 (Fla. 4th DCA 1990).

*Lombardi* is in line with the majority of jurisdictions that have addressed this issue. *Wal-Mart Stores, Inc. v. Dolph*, 825 S.W. 2nd 810, 812 (Ark 1992)(citing *Lombardi* with approval for the proposition that statements accusing plaintiff of shoplifting made within a few feet of check-out counter in heavily trafficked area raised a reasonable inference of publication); *M & R Inv, Co., Inc. v. Mandarino*, 748 P.2d 488 (Nev. 1987)(citing *Lombardi* for the proposition that publication may be proven by evidence that defamatory statement was comprehensible to and uttered in the presence and hearing of a third person); *Food Lion, Inc. v. Melton*, 458 S.E.2d 580, 585 (Va. 1995)(citing *Lombardi* with approval, along with cases from Rhode Island, North Carolina, South Carolina and Maryland, and noting that "courts of other jurisdictions have held that circumstantial evidence alone may be sufficient to prove publication of the defamatory remarks")

Furthermore, even if *Mennella* correctly stated the law regarding publication in Florida—which it does not—*Mennella* is distinguishable on other grounds. In *Mennella*, the Plaintiff claimed to overhear the flight attendant speaking defamatory words to the Captain over the galley phone, but both the flight attendant and the Captain denied that the words were said. *Id*. The Plaintiff never deposed any passengers – not just to see if they heard the words, *but to provide confirmation that the words were even spoken*. *Id*. The *Mennella* Court likely had this fact in mind when it quoted case law saying that: "[a] plaintiff must allege the 'identity of the particular person to whom the remarks were made with a reasonable degree of certainty' to afford the defendant 'enough information to determine affirmative defenses.'" *Id.* at 4 (citing *Aflalo v. Weiner*, 2018 WL 3235529, at *3-4 (S.D. Fla. July 2, 2018) (citing *Ward v. Triple Canopy, Inc.*, 2017 WL 3149431, at *4 (M.D. Fla. July 25, 2017)).

*The Mennella* Court was citing the *Aflalo* Court, which used those words to rule that a post to one's own Facebook Wall was not, by itself, publication – facts not particularly helpful to the present analysis. However, the *Aflalo* Court was citing the *Ward* Court, and the *Ward* Court's opinion is more illuminating. Directly after repeating the above-cited legal maxim, the *Ward* Court went on to conclude: "The Court finds that the Department of State and the Department of Energy are sufficiently identified in the amended complaint. However, Ward's

5

allegations as to the 'law enforcement agencies' and other 'entities and/or prospective employers' are deficient." *Ward*, at 3.

*The Department of State* and *The Department of Energy* were the "persons" identified "with a reasonable degree of certainty to afford the defendant enough information to determine affirmative defenses." This makes sense because the point of the required specificity is not to make the Plaintiff prove his case in his Complaint: it is *to give the Defendant the opportunity to begin preparing his defense.*[4]

The Plaintiff in this case has identified the passengers as having heard the defamation. *Any affirmative defense that applies to one passenger, applies to all*. Unlike the facts in *Mennella*, there is no dispute about whether the allegedly defamatory words were spoken or whether they were able to be overheard by passengers: GSC Henriquez heard them spoken loudly enough from his position on the jet bridge that he came inside to see what was happening. FAC, ¶76. It is an incorrect interpretation of *Mennella*, under Florida defamation law, to argue that these pled facts are insufficient to state a claim of publication.[5]

Charitably, the problem with *Mennella* is that the Court "short-handed" its analysis: there was doubt whether the words had been spoken and there was doubt whether, if they had been spoken, anyone would have been likely to overhear them. The Court dismissed the claim on that basis. Uncharitably, the *Mennella* Court just misstated the law in Florida regarding publication.

---

[4] The "affirmative defense" language cited to by the *Ward* Court originated with *Buckner v. Lower Fla. Keys Hosp. Dist.*, 403 So. 2d 1025, 1027–28 (Fla. Dist. Ct. App. 1981) ("Since a separate defamation occurs with respect to each publication, a defendant should be afforded enough information to determine affirmative defenses including but not limited to res judicata. In the present case, the defamatory remarks were allegedly made to 'numerous third parties on numerous occasions.'"). The *Buckner* Court begins this train of legal precedent by citing to the more inchoate proposition of the 19th century Florida Supreme Court in *Burnham v. State*, 37 Fla. 327, 329 (1896)( "One objection urged to the information is that it does not aver that the alleged defamatory words were spoken to or in the presence of any person.").

[5] If this were summary judgment, the need for this argument would be mooted by the fact that Clowdus has obtained a statement from the specific passenger referenced in ¶77 of the FAC that he heard the defamation at the time and had it repeated to him by Merino again after the plane departed.

6

The Court need not look hard to reinforce where the body of Florida defamation law rests:

> At the outset, the Court rejects Defendants' contention that the Complaint's defamation claim lacks the requisite level of specificity, in particular, because it does not identify the individual to whom the statement was made. The Complaint details the content of the statements made by Defendant Luther to particular identified contractors and the time frame when the statements were made. No more is required at this stage.

*Taslidzic v. Luther,* 2018 WL 3134419, at *7 (S.D. Fla. May 21, 2018); see also *Walter v. Jet Aviation Flight Servs., Inc*., 2016 WL 7116641, at *1 (S.D. Fla. Dec. 7, 2016) (finding allegation that defendant acted with malicious ill will to ruin plaintiff's reputation with a critical third party was sufficient to state a defamation claim; "[p]laintiff has alleged enough factual content to raise his right to relief above a speculative level" and gave defendant "fair notice of what the claim is and the grounds upon which it rests")

### "YOU HIT ME!" Was Not Pled as Opinion

Clowdus does not dispute that true statements, statements that are not readily capable of being false, and statements of pure opinion are protected from defamation actions by the First Amendment. *Turner v. Wells*, 879 F.3d 1254 (11th Cir. 2018). However, that proposition of law has no bearing on this case because the statements Merino allegedly published about Clowdus on the plane and in his reports – namely, "You Hit Me" and that he assaulted a flight attendant – are not statements of opinion.

Courts distinguish between pure expressions of opinion and mixed expressions. *Music with Mar, LLC v. Mr. Froggy's Inc, LLC,* 2020 WL 7768941 (M.D. Fla., Dec. 30, 2020), at * 4. "Pure opinion" is a statement based on facts set forth in the publication or which are otherwise known or available to the reader or listener as a member of the public. *Id.* By contrast, "[m]ixed expression of opinion occurs when an opinion or comment is made which is based upon facts regarding the plaintiff or his conduct that have not been…assumed to exist by the parties to the communication." *Madsen v. Buie*, 454 So. 2d 727, 729 (Fla. Dist. Ct. App. 1984) (internal citation omitted); see also *Smith v. Taylor Cnty. Pub. Co*., 443 So. 2d 1042, 1047 (Fla. Dist. Ct. App. 1983) ("Mixed expression of opinion exists when a published statement containing an

7

opinion is made and is not based on…assumed facts and, therefore, implies the existence of some other undisclosed facts on which the opinion is based."). In determining an expression is one of fact or opinion, a court must consider the circumstances surrounding the statement. *Sequiera v. Gate Safe, Inc.,* 2017 WL 6568196 (S.D. Fla., Oct. 27, 2017), at * 2; *O'Boyle v. Sweetapple*, 2015 WL 13574304, at *4 (S.D. Fla. June 4, 2015)("[T]he test to be applied in determining whether an allegedly defamatory statement constitutes an actionable statement of fact requires that the court examine the statement in its totality and the context in which it was uttered or published.")(citing *From v. Tallahassee Democrat, Inc.*, 400 So. 2d 52, 57 (Fla. Dist. Ct. App. 1981); see also *Hoch v. Rissmon, Weisberg, Barrett*, 742 So.2d 451, 460 (Fla. 5th DCA 1999); *LRX, Inc. v. Horizon Associates Joint Venture ex rel. Horizon-ANF, Inc.*, 842 So. 2d 881, 885 (Fla. Dist. Ct. App. 2003). An important factor in analyzing whether a comment is opinion is determining whether the speaker accurately presented the underlying facts of the situation before making the allegedly defamatory remarks. *Zambrano v. Devanesan*, 484 So.2d 603, 606 (Fla. 4th DCA 1986). Moreover, when a statement is susceptible of two reasonable interpretations, one of which is defamatory, a jury should determine whether the statement is defamatory. *Hallmark Builders, Inc. v. Gaylord Broadcasting Co.*, 733 F.2d 1461, 1463 (11th Cir.

There is no question that the statement "You Hit Me" is susceptible to a defamatory meaning in the context in which it occurred in this case. The Plaintiff alleges that both he and Mr. Merino understood very well what the bag's contact meant – it was careless but accidental. FAC, ¶44-45. The Plaintiff also alleges that Mr. Merino chose to lie – to claim that he had been assaulted when he knew perfectly well that he had not. In other words, "Merino knew that he was making a false accusation." FAC, ¶68. A reasonable passenger hearing those words uttered onboard an aircraft in the manner alleged in the Amended Complaint could readily conclude, as could a reasonable juror, that at the time Merino uttered those statements he was accusing Clowdus of assaulting him. They could also conclude that he had done something unlawful, since intentionally hitting a flight attendant is a felony. And they could reasonably conclude based on the allegations in the Amended Complaint that Merino meant that Clowdus had hit him intentionally, particularly since the Amended Complaint alleges that he shouted it in a loud voice and repeated it three times.

There is no room for a mistaken opinion in this pleading. By saying that it was a mere "difference of opinion," AA is asking the Court to improperly ignore the multiple straight-forward facts pled by the Plaintiff and to give *AA's spin on a select few facts* the presumption of truth. Unfortunately for AA, that is not the law. *Anson v. Paxton Commn. Corp.*, 736 So.2d 1209, 1211 (Fla. 4th DCA 1999)(labeling statements as opinion does not necessarily shield defendants from defamation action); *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19, 110 S.Ct. 2695, 111 L.Ed. 2d 1 (1990)("Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact.")

AA argues that the facts in this case are analogous to those in *Turner v. Wells*, 198 F.Supp.3d 1355, (S.D. Fla. 2016), aff'd, 879 F.3d 1254 (11th Cir. 2018). In *Turner*, a coach for the Miami Dolphins sued an investigator for defamation for statements contained in a report he prepared for the team to determine whether a gay football player was subjected to a climate of harassment. The report accused the coach of participating in the "homophobic taunting" of a gay football player by, among other things, giving the player a male blow up doll. The district court held that the statement "homophobic taunting" did not constitute actionable defamation because the reason the coach gave the player the blow up doll -- as a joke or to taunt him-- was not objectively verifiable, and that the claims that the coach sent "inappropriate text messages" and "used poor judgment" were opinions. The court also pointed to the fact that the report contained several cautionary statements that inform a reasonable reader that the statements were opinions and not factual determinations, including *"[t]he opinions* set forth in the findings and conclusions below and elsewhere in this Report are our own"; *"[i]n our opinion*, the factual records supports the following findings"; "[t]he Report presents the independent opinions of Mr. Wells and his colleagues*." (emphasis added).

The situation here is in no way analogous to *Wells*. Whether or not Clowdus assaulted Merino by swinging his bag at Merino with force sufficient to "knock the wind" out of him, as Merino claimed, while glaring directly at him, as opposed to looking down away from him and attempting to place the bag in Merino's hand, rather than hurling it at him, is objectively verifiable. Indeed, it is precisely because it is objectively verifiable that AA sought to, and did obtain, statements from passengers and flight attendants onboard to <u>objectively prove</u> that Clowdus assaulted Merino. Whether Clowdus did so in the manner Merino claimed, which

9

Clowdus and several witnesses dispute, or whether Merino knowingly lied about what occurred, is not only capable of proof, but clearly a question that is not properly decided on a motion to dismiss. *Johnson v. Clark*, 484 F. Supp. 2d 1242, 1247 (M.D. Fla. 2007) (where statement "is of mixed opinion and fact and reasonably capable of defamatory interpretation, then a jury issue is presented").

Indeed, as any prosecutor knows, "I didn't mean to do it" is not a bulletproof defense to a charge of assault. People lie about their intent – just as people can lie about the intent of others. The crime of assault is determined by the set of observable facts that removes room for an untrue, self-serving "opinion" from the accused. Similarly, observable facts can show that the "opinion" regarding the allegation of assault is also a lie. Clowdus has pled the existence of facts from which a reasonable reader and listener could conclude that Merino accused him of assaulting him and that he knew at the time he published those statements that they were untrue. Specifically, the Amended Complaint alleges that the Plaintiff attempted to apologize,[6] FAC, ¶25, that no other flight attendants witnessed what occurred[7], FAC, ¶40-42 and that the Plaintiff was looking down and did not see his bag contact Merino[8]. FAC, ¶¶s 18-20. No more is required for him to survive a motion to dismiss.

---

[6] An apology is an indication of an accident. If Merino rejected an apology but later denied one was made, a jury could conclude that Merino knew he had not been assaulted, and that he lied about it.

[7] The Amended Complaint alleges that AA employee (Henriquez) who witnessed the aftermath of the incident and spoke with both Merino and the Plaintiff did not believe Merino's claim of assault, and based upon his location, he stated that no other flight attendants witnessed what occurred because he observed them all to be in the back of the plane in the immediate moments following "YOU HIT ME!" *Id.* A reasonable inference from this pleading is that Henriquez believed Merino induced another flight attendant to lie for him by filing a statement claiming to be a firsthand witness account. A jury could agree and conclude therefore that Merino lied about being assaulted

[8] If the Plaintiff was looking Merino in the eyes when the bag made contact, a reasonable juror will be more likely to decide that an assault occurred. However, a jury may decide from the evidence that the Plaintiff was not looking at Merino when the contact occurred. In that case, if Merino testified that the Plaintiff was looking him right in the eyes with a hateful glare and that he flung his bag into Merino's stomach with enough force to knock the wind out of him the jury could decide that such a narrative is not supported by other testimony and is implausible. As such, the jury could conclude that Merino *is a liar* – not just wrongly opinionated. *Lipsig v. Ramlawi*, 760 So. 2d 170, 184 (Fla. Dist. Ct. App. 2000)( "a speaker cannot invoke a 'pure

### The Requirements of Defamation Per Se Are Sufficiently Pled.

*"YOU HIT ME!" was actionable slander per se*

AA devotes multiple pages in its Motion to Dismiss about the need to only look at the literal words, the prohibition against using innuendo or extrinsic facts to support the defamation, and the restriction of a defamation plaintiff to the "four corners of the statement." However, AA is describing the law of libel per se, not that of slander per se.

When it comes to slander per se, "[t]he circumstances, time, and place of the defamatory statement and the situation of the person defamed should always be considered in determining what the average person who heard the remarks thought upon hearing them. *That does not make a per se slander per quod.*" *Hood v. Connors*, 419 So. 2d 742, 743 (Fla. Dist. Ct. App. 1982) (emphasis added).

The Florida Supreme Court modified the law of slander per se in 1953, overturning aspects of its own prior doctrine, and broadening application of the tort in recognition of the expanding reach of oral communications. It has never been modified and it is cited below at length as being dispositive:

> It is established in most jurisdictions that an oral communication is actionable per se is, without a showing of special damage—if it imputes to another (a) a criminal offense amounting to a felony, or (b) a presently existing venereal or other loathsome and communicable disease, or (c) conduct, characteristics, or a condition incompatible with the proper exercise of his lawful business, trade, profession, or office, or (d) the other being a woman, acts of unchastity.
>
> But it is not true, as contended by the appellee, that the character of the defamation—whether per se or only per quod—must be determined solely by reference to the words actually used.
>
> Insofar as the cause of action is concerned, the only practical difference between words which are actionable per se and those which are actionable only per quod (that is, only upon an allegation and proof of special damage) lies in the proof of the resulting injury.

---

opinion' defense, if the facts underlying the opinion are false or inaccurately presented."); *ThermoLife Int'l LLC v. Vital Pharmaceuticals, Inc.*, 2020 WL 409594 (S.D. Fla., Jan. 24, 2020), at * 5 (denying motion to dismiss where there was question as to speaker's motive in making defamatory statements; the relevant question is "whether the speaker accurately presented the underlying facts of the situation before making the allegedly defamatory remarks")(citing *Zambrano v. Devanesan*, 484 So.2d 603, 606 (Fla. 4th DCA 1986).

11

> …
>
> If the defamatory remarks have the effect of imputing to the person defamed any of the conduct or characteristics defined above as 'actionable per se,' then it makes no difference whether such defamation is accomplished directly by words which prima facie impute such conduct or characteristics, or by indirection—the injury to the reputation of the person defamed is the same in either case and the same damages must be presumed to result therefrom. In the latter case—that is, if the words have the slanderous meaning alleged, not by their own intrinsic force, but by reason of the existence of some extraneous fact or facts, the plaintiff must set them out in the 'inducement.' And, as stated in Newell on Slander and Libel, 4th Ed., Section 529, page 574: 'The fact then must be averred in a traversable form, with a proper colloquium, to wit, an averment that the words in question are spoken of and concerning such usage, or report, or fact, whatever it is, which gives the words, otherwise indifferent, the particular defamatory meaning imputed to them. Then the word 'meaning' or 'innuendo' is used with great propriety and effect in connecting the matter thus introduced by averments and colloquia with the particular words laid, showing their identity, and drawing what is now the legal inference from the whole declaration, including the averments and colloquia, that such was, under the circumstances thus set out, the meaning of the words used.'
>
> Innuendo may be 'properly used to point the meaning of the words alleged to have been spoken, in view of the occasion and circumstances, whether appearing in the words themselves, or extraneous prefatory matters alleged in the declaration.' *McLaughlin v. Fisher*, 136 Ill. 111, 116, 24 N.E. 60, 62. And as stated in *Mishkin v. Roreck,* 202 Misc. 653, 115 N.Y.S.2d 269, 274: 'Should there be some unexpressed base and vile meaning to words superficially innocent, innuendo may be supplied to give the full impact of the accusation.'
>
> If, then, the effect of the decision of this court in *Commander v. Pedersen*, 116 Fla. 148, 156 So. 337, is as contended by appellee—that is, that 'words that are not on their face defamatory per se cannot be aided by innuendoes and extrinsic facts and circumstances, so as to make them defamatory or slanderous per se'—then we hereby recede from that portion of our opinion in *Commander v. Pedersen*, supra; and we hold that even though the full impact of an alleged defamatory communication must be shown by allegations of inducement, colloquium and innuendo, it is nonetheless actionable per se, without the necessity of showing special damage, if the defamation falls within any of the classifications above noted.

*Campbell v. Jacksonville Kennel Club*, 66 So. 2d 495, 497–98 (Fla. 1953); see also *Diplomat Elec., Inc. v. Westinghouse Elec. Supply Co., Div. of Westinghouse Elec. Corp.*, 378 F.2d 377, 385 (5th Cir. 1967);

*See also*:

> In construing the language used in a slander, the court is not limited to the words themselves, but may consider extrinsic facts and circumstances to the extent that they might reasonably give meaning to the language used…To this extent, the construction of a slanderous statement is somewhat different from the construction of a libel. The Florida cases have held that written defamation must be construed as per se or per quod without reference to anything except the words used.

Wolfson v. Kirk, 273 So. 2d 774, 777–79 (Fla. Dist. Ct. App. 1973)

The Amended Complaint alleges that flight attendant Merino exclaimed "YOU HIT ME!" three times and immediately thereafter, the Plaintiff was escorted from the plane. FAC, ¶¶s20-21, 23, 26, 29. There is no ambiguity that Merino was accusing the Plaintiff of assault to anyone who overheard the allegation. Merino knew that he was accusing the Plaintiff of a felony and the average listener would have known that it is a felony – a federal crime – to strike an aircraft crewmember. Any remaining ambiguity that can be argued from these facts and circumstances are unquestionably for a jury to decide. *Wolfson v. Kirk*, 273 So. 2d 774, 777–79 (Fla. Dist. Ct. App. 1973) ("Where, however, a communication is ambiguous and is reasonably susceptible of a meaning which is defamatory, it is for the trier of fact to decide whether or not the communication was understood in the defamatory sense.")

The Plaintiff has pled an actionable claim for slander per se. *See also Taslidzic v. Luther*, 2018 WL 3134419, at *7 (S.D. Fla. May 21, 2018); *Hoch v. Rissman, Weisberg, Barrett*, 742 So. 2d 451, 457 (Fla. Dist. Ct. App. 1999); *Teare v. Loc. Union No. 295 of the United Ass'n of Journeymen & Apprentices of Plumbers & Pipe Fitters Indus. of U.S. & Canada*, 98 So. 2d 79, 83 (Fla. 1957).

### *The Amended Complaint plausibly alleges additional slander per se*

The Plaintiff has also pled plausible facts such that AA could reasonably anticipate additional slander per se being spoken after the flight departed when Merino told a passenger that he had been assaulted. FAC, ¶77. The Plaintiff did not obtain this statement until after filing his Amended Complaint, but, even if he had, he would not have needed to include it as an exhibit at that time because the allegations satisfy the requirements of notice pleading.

13

### *The Plaintiff pled plausible facts sufficient to infer that the CERS report was libelous per se*

AA's claim that the CERS report does not sufficiently allege defamation per se because the Plaintiff did not include it verbatim in his complaint is similarly flawed. Plaintiffs almost never will be able to produce detailed evidence such as this at the notice pleading stage: no discovery has yet occurred. However, the existence of a felony accusation in the written report is very *plausibly inferred* from the facts alleged in the Plaintiff's Complaint: most generally, that he was banned for life from flying with AA; more specifically, that he was personally informed that the flight attendant had filed a report of assault when he was removed from the subsequent flight. FAC, ¶¶s 49-51.

As Judge Rosenberg explained in denying a Motion to Dismiss in another aviation case:

> Defendants also argue that the statements at issue are not cognizable for a defamation claim because Defendants were protected by a qualified privilege to speak about aircraft safety matters. The Court cannot evaluate this argument, however, because as discussed above at present the Court does not know precisely what statements were uttered. **That is a matter that must be developed in discovery**. Once evidence is available pertaining to just what was said, and to whom, the Court can determine whether the statements were protected under an applicable privilege. Defendants' argument on this point is therefore rejected as premature.

Walter v. Jet Aviation Flight Servs., Inc., 2016 WL 7116641, at *2 (S.D. Fla. Dec. 7, 2016) (emphasis added); *See also O'Boyle v. Sweetapple*, 2015 WL 13574304, at *4 (S.D. Fla. June 4, 2015) (denying motion to dismiss because the court could not evaluate the context of the alleged statements); *Dibble v. Avrich*, 2014 WL 5305468, at *4 (S.D. Fla. Oct. 15, 2014) (denying motion to dismiss because unable to determine that statements were "incapable of being interpreted as false facts" rather than expressions of opinion)

### **AA Was Not Speaking to Itself**

AA does not comprehensively state the law of defamation in Florida with respect to intra-corporate communications. Not surprisingly, the Plaintiff's claim stands solidly within the gaps of missing doctrine.

It is uncontested law in Florida that managerial or executive individuals, speaking to each other, are deemed to be the "corporation speaking to itself." See e.g., *Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. Dist. Ct. App. 2007). However, it is also established law that the speech of managerial employees to non-managerial employees is considered to be publishing

14

to a third party, though it may be protected by a qualified privilege. *Id*. At 834.  Moreover, "It is well settled in Florida, as elsewhere, that a corporation, just as an individual, may be liable for defamation by its employees." *Diplomat Elec., Inc. v. Westinghouse Elec. Supply Co., Div. of Westinghouse Elec. Corp*., 378 F.2d 377, 381 (5th Cir. 1967); *see also Southern Bell Telephone & Telegraph Co. v. Barnes*, 443 So. 2d 1085, 1085 (Fla. Dist. Ct. App. 1984) (citing authority for the proposition that intra-corporate communications can satisfy the publishing requirement of defamation); *Arison Shipping Company v. Smith*, 311 So. 2d 739 (Fla. Dist. Ct. App. 1975) (noting the same); *Glynn v. City of Kissimmee*, 383 So.2d 774 (Fla. 5th DCA 1980).

  The law is less clear with respect to speech from non-managerial employees directed to managerial.  AA cites *Lopez v. Ingram Micro, Inc*., 1997 WL 401585, at *6 (S.D. Fla. Mar. 18, 1997) for the proposition that such speech is the corporation speaking to itself, and *Lopez*, in turn, cites *Advantage Pers. Agency, Inc. v. Hicks & Grayson, Inc*., 447 So. 2d 330, 331 (Fla. Dist. Ct. App. 1984).  However, the case most clearly analogous to the present claim is *Walter v. Jet Aviation Flight Servs., Inc*., 2016 WL 7116641, at *1 (S.D. Fla. Dec. 7, 2016), in which Judge Rosenberg noted that "**the Court is unaware of any case that stands for the proposition that a low-level employee, acting with malicious intent, cannot publish a defamatory statement by uttering that statement to corporate officers**.") (emphasis added).

  The apparent variance of the holdings in these opinions can be harmonized by the differing fact patterns:  *Advantage* was a case where the alleged slander was spoken to a corporate executive, and the corporation, itself, wanted to bring the cause of action for defamation.  In essence, an insult to one's own face is not defamation.  *Lopez* was a situation where corporate management hired investigators after a theft of inventory and a corporate manager was in the room when the investigators accused the Plaintiff of the theft.  The Plaintiff sued the corporation for defamation because the manager heard the defamatory accusation.  But management – thus the corporation – had been involved from the beginning, in effect speaking the accusation first by hiring the investigators.  The corporation made the accusation, and its agents restated the accusation to the corporation.  The corporation was speaking to itself.

  *Walter* was different, and it applies directly to this case.  Unlike *Lopez*, which was decided on summary judgment, *Walter* was a motion to dismiss.  In *Walter,* the defamatory accusation was malicious, and it originated with a low-level employee.  The accusation was spoken to corporate officers, and it resulted in the Plaintiff's termination and loss of reputation.

The Court's opinion on the matter was dicta because the Plaintiff's pleading did not require it, but the essence of the Court's rationale was that a low-level malicious employee can publish defamation for which the corporation is vicariously liable. It makes no difference who the publishing targets or whether the resulting damage is caused by the corporation's own actions. The malicious employee was not speaking as the corporation when he uttered the defamation: he was speaking as himself and causing the corporation vicarious liability for his personal words. As such, the malicious employee published to the corporation: the corporation did not speak to itself.

In the present case, the foregoing analysis is entirely academic and only suited for summary judgment. The Plaintiff has satisfied the requirements of notice pleading, and it is entirely inappropriate to put the burden on the Plaintiff at this stage to prove that the individuals that the Plaintiff has pled to be non-managerial are so. If the Plaintiff had pled that the CEO of American Airlines was non-managerial, then the Court could rule otherwise as a matter of law. In this case, the individuals that the Plaintiff has pled to be non-managerial either clearly are not managerial, or else the determination of whether they are managerial is a contested question of fact, as is the question of whether they were recipients of the publishing.

*Deon Gray* – flight attendant. Flight attendants are non-managerial. The Plaintiff's Complaint alleges that she did not witness the incident. By filing a report claiming that she witnessed an assault, the Complaint plausibly alleges that defamatory per se words were spoken to her by flight attendant Merino. FAC, ¶70.

*Mr. Lakhani* – Captain. Lakhani made the decision to remove the Plaintiff. The Complaint plausibly alleges that he made that decision because defamatory per se words were spoken to him. Whether or not a pilot is managerial is a question of fact.[9] FAC, ¶74.

*Mr. Henriquez* – Ground Security Coordinator. The Plaintiff pled that Henriquez was non-managerial, and whether he is turns on a mixed question of fact and law. FAC, ¶75. AA attempts a summary judgment argument – an incredibly weak one – that because Henriquez has

---

[9] For example: Pilots join unions; Corporate management does not.

authority to take certain actions, the Court must override the Plaintiff's explicit pleading and presume him to be managerial.[10]  Under that reasoning, every police officer is a manager.

*Chris Reddig* -- Corporate Security Employee*; Aristides Maldonado* – Investigator.  The Complaint has pled both these individuals to be non-managerial and has pled no facts to induce the Court to legally conclude otherwise.  FAC, ¶¶s80-81.

*Other unidentified ticketing agent, customer service agent, and gate agent.*  The Plaintiff has pled that these classes of employees are non-managerial and has pled no facts to induce the Court to legally conclude otherwise.  FAC, ¶82.  The Plaintiff has identified these employees with reasonable particularity sufficient for AA to prepare its affirmative defenses.  *See Ward, supra*. The Plaintiff has plausibly alleged that any of these individuals could determine the reason for the Plaintiff's ban if they accessed his file, and thus become a recipient of defamatory publishing.[11]  Summary judgment may prove otherwise.  Notice pleading has been satisfied.

### Qualified Privilege Is an Affirmative Defense – Inappropriate for a Motion to Dismiss

"[t]he affirmative defense of qualified immunity presents a fact intensive issue that should ordinarily not be resolved by a motion to dismiss." *Fariello v. Gavin*, 873 So. 2d 1243, 1245 (Fla. Dist. Ct. App. 2004); see also *Randazzo v. Fayer*, 120 So. 3d 164, 165 (Fla. Dist. Ct. App. 2013); and also *Kirvin v. Clark,* 396 So.2d 1203, 1204 (Fla. 1st DCA 1981); see also *Glynn v. City of Kissimmee*, 383 So. 2d 774, 776 (Fla. Dist. Ct. App. 1980) (" Rarely is summary judgment appropriate in a defendant's favor where the existence of a qualified privilege for a defamatory statement is controverted. 'Qualified privilege' is a defense and the burden of proving it rests with the defendant.")

"When all the essential facts and circumstances are not conceded, the existence or non-existence of the privilege should be determined by the jury from all the facts and circumstances

---

[10]To belabor the illustration of how inappropriate AA's arguments are at this stage:  at summary judgment, the Plaintiff will attach a deposition excerpt where Henriquez testifies that no AA employees report to him.

[11]AA reliance upon *TransUnion, LLC v. Ramirez*, 141 S. Ct. 2190, 2210 (2021) for the premise that the defamation of assault in the company's internal refuse list (IRL) is likened to a defamatory letter "stored in a drawer" is inapposite.  The defamation accusing the Plaintiff of assault is not forgotten in a drawer.  It is alive and active, having operative effect throughout the company, and the damaging effects of the defamation on the Plaintiff is ongoing.

of the case, under proper instructions of the court applicable to the case." *Arison Shipping Co. v. Smith*, 311 So. 2d 739, 741 (Fla. Dist. Ct. App. 1975)( citing *Hartley & Parker, Inc. v. Copeland*, 51 So.2d 789, 790. (Fla.1951).

Discovery has not yet fully explored where and how the allegation of assault against the Plaintiff can be accessed.  These facts will bear upon whether too wide a publication defeats any asserted privilege.  *See Teare v. Local Union No. 295 of the United Association of Journeymen and Apprentices of the Plumbers and Pipe Fitters Industry of the United States & Canada*, 98 So.2d 79, 83 (Fla.1957) ("Florida law has consistently held that the qualified privilege attaching to business communications is lost when the scope of an intra-company communication to those having corresponding interests and duties is exceeded.")

***The Plaintiff pled express malice:  mooting any argument for qualified privilege at this stage.***

"When statements are protected by a qualified privilege, a plaintiff has the burden of establishing by a preponderance of the evidence that the statements were 'false and uttered with common law express malice.'" *Egwuatu v. Burlington Coat Factory Warehouse Corp.*, 2011 WL 2413833, at *5 (M.D. Fla. June 10, 2011) (quoting *Corporate Fin., Inc. v. Principal Life Ins. Co.*, 461 F.Supp.2d 1274, 1292 (S.D.Fla.2006)).

"Express malice under the common law of Florida, necessary to overcome the common-law qualified privilege, is present where the primary motive for the statement is shown to have been an intention to injure the plaintiff." *Nodar v. Galbreath*, 462 So. 2d 803, 806 (Fla. 1984).

"Strong, angry, or intemperate words do not alone show express malice; rather, there must be a showing that the speaker used his privileged position to gratify his malevolence." *Id*. at 811. (internal citations removed).  "The gravamen of express malice is the abuse of a privileged occasion by improper motives on the part of the speaker." *Id*. at 812.  "This malice may be inferred from the language itself, or may be proven by extrinsic circumstances." *Id*. at 810.

"[M]alice can be proved in the absence of direct evidence ... by proving a series of acts which, in their context or in light of the totality of surrounding circumstances, are inconsistent with the premise of a reasonable man [or woman] pursuing a lawful objective, but rather indicate a plan or course of conduct motivated by spite, ill-will, or other bad motive.") *Sultan v. Walgreen Co.*, 324 So. 3d 563, 564 (Fla. Dist. Ct. App. 2021), reh'g denied (Aug. 18, 2021)( citing *Perry v. Cosgrove*, 464 So. 2d 664, 666 (Fla. 2d DCA 1985))

18

The Plaintiff pled that Merino was motivated by express common law malice in his Complaint (FAC, ¶71), and he pled the series of acts which, "in their context…indicate…ill will or other bad motive" in the surrounding paragraphs.  See, supra, *Sultan*; FAC, ¶¶s 65-72.  Malice, unlike Fraud or Mistake, does not need to be pled with particularity, rather "it may be alleged generally." Fed. R. Civ. P. 9.

It is for the trier of fact to determine whether accusing the Plaintiff of a felony as punishment for a trivial interaction – knowing that this accusation would have a lifetime of ramifications upon the Plaintiff – was so disproportionately punitive that it indicated ill will or bad motive.  Malice has been sufficiently alleged for purposes of notice pleading.

## Conclusion

For all the foregoing reasons, AA's Motion to Dismiss the Amended Complaint should be denied.


Respectfully Submitted,

/s/ William T. Woodrow III
William T. Woodrow III (*pro hac vice*)
Stone & Woodrow LLP
250 West Main St. Suite 201
Charlottesville, VA 22902
will@stoneandwoodrowlaw.com
Phone: 855-275-7378
Attorney for Plaintiff

/s/ David H. Pollack
THE LAW OFFICE OF
DAVID H. POLLACK, LLC
Fla. Bar No. 0955840
75 Valencia Avenue, Suite 100
Coral Gables, FL   33134
Tel:  305-372-5900

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing document was served upon the following attorneys of record by CM/ECF on this 15th day of June, 2022.

Kelly Kolb
Robert D. Pecchio
Labor & Employment Practice Group
401 East Las Olas Boulevard
Suite 2250
Ft. Lauderdale, FL 33301
954 703 3900 (office)
954 703 3944 (direct)
kelly.kolb@bipc.com
robert.pecchio@bipc.com

           /s/ William T, Woodrow
           William T. Woodrow III