IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

|  |  |  |
|---|---|---|
| TROY CLOWDUS | : : : | CIVIL ACTION |
| Plaintiff, | : | DOCKET NO.: 1:21cv23155 |
| v. | : : |  |
| AMERICAN AIRLINES, INC. | : : |  |
| Defendant. | : : |  |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS, AND CROSS-MOTION FOR SANCTIONS**

**NOW COMES** Defendant, AMERICAN AIRLINES, INC. (hereinafter, "**AA**" or "**Defendant**") by and through undersigned counsel and files this Response to Plaintiff's Motion for Sanctions [DE 55] and Cross-Motion for Sanctions and states as follows:

**INTRODUCTION**

1. His lawsuit having been read last rights and his sole remaining claim on life support facing a pending dispositive motion [DE 51], Plaintiff seeks to accomplish through sanctions practice what he has been unable to accomplish on the merits – the imposition of liability on AA for the foreseeable consequences of his own conduct. With one exception, the entire factual premise of Plaintiff's Motion consists of nothing other than perceived discovery slights having nothing to do with this Court's May 24, 2022 instructions to counsel, and scandalous conspiracy theories – all laid bare below. The one fact that is accurately recited in Plaintiff's Motion is insufficient for the imposition of any sanctions, must less the death penalty sanction requested. Viewed in the bright light of an accurate factual record, this Court will conclude that Plaintiff's counsel has paid no more attention to the factual and legal basis of Plaintiff's Motion than he has paid to the legal viability of the claims he has been forced to abandon or which this Court has dismissed, warranting sanctions under 28 U.S.C. §1927 – even according to the authorities cited in Plaintiff's Motion.

2. Further, Plaintiff's Motion provides solid record proof that Plaintiff's counsel (through his Mexican "criminologist" affiliated with multiple Mexican and U.S. governmental entities) has convinced previously cooperative witnesses to discontinue cooperation with

Defendant, thus denying Defendant access to relevant and material witness testimony. This effort follows this Court's comments at the May 24, 2022 hearing that AA lacked any testimony from non-AA affiliated witnesses to support its version of the events at issue, thus telegraphing to Plaintiff's counsel the importance of forestalling AA's access to those witnesses. Pursuant to this Court's inherent authority, Defendant requests that the jury be instructed that Plaintiff's counsel has obstructed AA's ability to depose relevant and material witnesses and that, therefore, the declarations (draft or signed) obtained by AA from those witnesses are admissible over any hearsay or other objections pursuant to Fed.R.Civ.P. 37(b)(2)(A)(i) and (ii) and binding authority in this District.

### PLAINTIFF'S MOTION IS PREMISED ON FACTUAL "INACCURACIES"
### Juan Hernandez- Ramirez

3. Plaintiff's first effort to demonstrate the propriety of death penalty sanctions focuses on texts between Mauricio Fernandez ("**Fernandez**") – an associate at a Mexican law firm enlisted to assist AA's defense counsel[1] – and passenger Hernandez-Ramirez.[2] Plaintiff's first misstep appears in the discussion of Fernandez' June 2, 2022 text seeking to discuss an "important matter" where Plaintiff erroneously represents to the Court that Mr. Hernandez-Ramirez did not respond to Fernandez' text.[3] As reflected by the complete text string, Hernandez-Ramirez stated he was busy and asked Fernandez to leave a voice message.[4]

4. Plaintiff's next effort focuses on a June 6, 2022 text from Fernandez to Hernandez-Ramirez. Fernandez' authority was to reach out to Hernandez-Ramirez and another passenger, Jairo Espinoza ("**Espinoza**"), to determine if Hernandez-Ramirez would agree to sit for deposition and to arrange for the deposition Espinoza had previously agreed to sit for with AA.[5] Fernandez had no other authority, and was not authorized to make any statements about the parties' claims or contentions.[6] Indeed, any such commentary was unnecessary since defense counsel's office had previously obtained Hernandez-Ramirez' version of events months earlier in a February 28, 2022

---

[1] Kolb declaration attached as Ex. A.
[2] Plaintiff's Motion [DE 55] at pp. 4-6.
3 Plaintiff's Motion [DE 55] at pp. 4-6.
4 The complete text string between Hernandez-Ramirez and Fernandez with an English translation is attached as Ex. B.
5 Mauricio Fernandez declaration attached as Ex. C; Pecchio declaration attached as Ex. D; Ernesto Velarde-Danache declaration attached as Ex. N.
6 *Id*.

interview[7] and had provided him a draft declaration to sign on March 1, 2022 accurately stating his recounting of those events.[8] Nevertheless, Fernandez's June 6 text contains a largely inaccurate summary of his understanding of AA's contentions in this lawsuit – including contentions that AA has never asserted in this lawsuit such as that the flight attendant was injured and filed charges. Fernandez did not pre-clear his text with defense counsel before sending it to Hernandez-Ramirez.[9]

5.  Plaintiff next turns to a June 7, 2022 text from Fernandez following up on his June 6 text, to which Hernandez-Ramirez responds that he is busy and did not want to be involved.[10] However, as Plaintiff's Motion lays out, Hernandez-Ramirez was deeply involved with Plaintiff's criminologist at that time, having sat for interviews with the criminologist between May 8 and May 27, 2022,[11] having provided an affidavit on May 27, 2022[12] and having provided his text messages with Fernandez on June 8.[13] Nevertheless, Hernandez-Ramirez felt compelled to conceal that deep involvement from AA's Mexican counsel, despite his unfettered cooperation with AA *just months earlier*.[14] The only known intervening circumstance which could plausibly explain his newfound lack of cooperation is his contact by and communications with Plaintiff's criminologist, whose background and involvement are discussed below.

6.  Stripped of its conspiracy laden innuendo, Plaintiff's Motion presents a single improper communication by an associated counsel in Mexico (Fernandez) who had no reason or authorization to discuss AA's contentions in this lawsuit with Hernandez-Ramirez. Similarly, AA's counsel had no reason to instruct or permit such a communication since Hernandez-Ramirez's and Espinoza's version of events was known months earlier and since Fernandez' communication misstated AA's contentions altogether. Thus, Plaintiff's Motion fails to deliver on its promise of "egregious attempts to influence witness testimony"[15] such that no sanctions are warranted or supported by the factual record before this Court.

7.  **Witness tampering**: Plaintiff's Motion posits that Hernandez-Ramirez did not sign AA's draft declaration "because it did not accurately reflect what he told the representative from

---

[7] Plaintiff's Motion [DE 55] at p. 5; Pecchio declaration attached as Ex. D.
[8] March 1, 2022 email (and translation) to Hernandez-Ramirez attached as Ex. E.
[9] Kolb declaration attached as Ex. A; Pecchio declaration attached as Ex. D; Mauricio Fernandez declaration attached as Ex. C.
[10] Text string between Hernandez-Ramirez and Fernandez with an English translation is attached as Ex. B.
[11] Plaintiff's Motion [DE 55], Ex. C [DE 55-3], ¶¶ 5-6.
[12] Plaintiff's Motion [DE 55], Ex. C [DE 55-3], ¶ 7 and Ex. B.
[13] Plaintiff's Motion [DE 55], Ex. C [DE 55-3], ¶ 10.
[14] Pecchio declaration attached as Ex. D.
[15] Plaintiff's Motion [DE 55] at p. 6.

American."[16] Plaintiff's Motion concedes Hernandez-Ramirez never told defense counsel anything of the sort;[17] Hernandez-Ramirez' affidavit obtained by Plaintiff's criminologist says no such thing;[18] and his email statement to Plaintiff's criminologist fails to identify a single material inaccuracy or omission.[19] In fact, a side by side comparison[20] of Hernandez-Ramirez' June 8, 2022 email statement to Plaintiff's criminologist (summarizing his recollection of events on the flight),[21] with AA's March 1, 2022 draft declaration[22] and the signed affidavit obtained by Plaintiff's criminologist[23] reveals that, with respect to the material facts of the incident, AA's draft declaration is virtually identical to the email statement, both of which sharply and materially deviate from the affidavit obtained by Plaintiff's criminologist.

8.  Notably, AA's draft declaration was provided to Hernandez-Ramirez on March 1, 2022 and his (consistent) email summary was provided to Plaintiff's criminologist on June 8, 2022, yet his *intervening* May 27, 2022 affidavit provided to Plaintiff's criminologist is materially inconsistent with both statements. More importantly, the inconsistency of the May 27, 2022 is on issues directly germane to this Court's April 29, 2022 Dismissal Order [DE 32] in which the Court held (at p. 8) "Plaintiff has failed to adequately allege publication- both for Defendant's statements onboard the flight and Defendant's intra-corporate communications." Again, the only known circumstance between Hernandez-Ramirez's March 1, 2022 receipt of AA's draft declaration and his May 27, 2022 execution of the affidavit provided to Plaintiff's criminologist is the criminologist's contact with and communications with Hernandez-Ramirez.

9.  Plaintiff's criminologist – Dr. Eduardo Muriel Melero ("**Muriel**") - claims to be registered with and/or working for the U.S. Embassy in Mexico City[24] - the U.S. governmental agency with authority to revoke U.S. travel visas for Mexican nationals including Espinoza and Hernandez-Ramirez. His website[25] reveals he is a *nationally known* criminologist who has worked with *multiple Mexican governmental agencies and authorities*, investigating kidnappings,

---

[16] Plaintiff's Motion [DE 55] at p. 5, and Ex. C [DE 55-3], ¶ 10.
[17] Plaintiff's Motion [DE 55] at p. 5 – "he decided not to reply" to AA's transmission of the draft affidavit. See also, Pecchio declaration attached as Ex. D and Kolb declaration attached as Ex. A.
[18] Plaintiff's Motion [DE 55], Ex. B [DE 55-2].
[19] Plaintiff's Motion [DE 55], Ex. D [DE 55-4].
[20] Side by side comparison attached as Ex. F.
[21] Plaintiff's Motion [DE 55], Ex. D [DE 55-4].
[22] Draft Hernandez-Ramirez declaration, attached as Ex. G.
[23] Plaintiff's Motion [DE 55], Ex. B [DE 55-2].
[24] Plaintiff's Motion [DE 55], Ex. C [DE 55-3] at ¶1.
[25] https://www.detectivesmuriel.com/Detectives_Investigadores_English.html. Last accessed June 29, 2022.

murders, and organ trafficking and that he is a "security advisor" for major business interests in Mexico. He touts his *major press and media coverage* for his work on behalf of various Mexican governmental entities investigating mass murders and trafficking. For example, his work investigating *kidnappings, rapes by local police, mutilations and murders* along the Texas/Mexico border for the *Attorney General of the Mexican State of Chihuahua* was chronicled in "The Daughters of Juarez: A True Story of Serial Murder South of the Border".[26] As recounted in the book, "unlike the FBI investigators, *much fanfare surrounded the arrival of Dr. Muriel and his team*." Similar to how Fernandez described his law firm and defense counsel's law firm (i.e., "important" and "prestigious") in his June 6 text to Hernandez-Ramirez,[27] Muriel describes his company as the "First and Most Prestigious Investigation Agency" in Mexico.[28] Thus, Plaintiff's argument that Hernandez-Ramirez would have been intimidated by Fernandez's similar description of his firm and defense counsel's firm is hard to take seriously.[29] His history with and connections to the Mexican and US governments are easily discovered with a simple Google search if not through print, radio and television media.

10. Muriel's contact with Hernandez-Ramirez occurred before the May 24, 2022 hearing before this Court, but within the time frame during which Plaintiff's counsel was forcing his theories of the case on and threatening unrepresented non-party witnesses including Federico Quintana, Angelica Cookson, and Elja Keizer.[30] He was also disparaging defense counsel during the same time frame to those unrepresented non-party witnesses. There is no reason to believe the communications by Plaintiff's criminologist with Hernandez-Ramirez were substantively different.

11. Further, Hernandez-Ramirez and Espinoza were traveling together[31] and are apparently close friends or business associates. Plaintiff's Motion specifically complains about a

---

[26] Electronic copy of this book can be found at https://books.google.com/books?id=6Nl4J20zy0QC&pg=PA150&lpg=PA150&dq=eduardo+muriel+%2B+was+invited+to+ciudad+juarez+in+the+winter+of+1999&source=bl&ots=6Q345oWZVn&sig=ACfU3U0qh7gYqrE_fR1M5xbBcMgf-N5lng&hl=en&sa=X&ved=2ahUKEwix7qiTpNP4AhUgmYQIHcr9BYsQ6AF6BAgCEAM#v=onepage&q&f=false Last accessed on June 29, 2022.
[27] Plaintiff's Motion [DE 55], Ex. A [DE 55-1] at p. 8.
[28] Muriel advertisement, attached as Ex. H.
[29] Plaintiff's Motion [DE 55] at p. 14.
[30] March 9, 2022 email from Plaintiff's counsel to Federico Quintana, May 2 & 4, 2022 emails from Plaintiff's counsel to Angelica Cookson and March 8, 2022 email from Plaintiff's counsel to Elja Keizer, attached as composite Ex. I.
[31] Kolb declaration attached as Ex. A.

perceived delay in being provided Espinoza's contact information,[32] and the affidavit of Plaintiff's criminologist concedes he was retained to locate Mr. Espinoza.[33] While the criminologist's affidavit does not mention making contact with Espinoza, it does not state that no such contact was made either. Any communications between Plaintiff's criminologist and Espinoza would be just as troublesome as the criminologist's communications with Hernandez-Ramirez. Even if no such troublesome communications occurred, it is a certainty that Hernandez-Ramirez related his communications with Plaintiff's criminologist to Espinoza given their close relationship. Regardless, just as Hernandez-Ramirez has discontinued his cooperation with defense counsel following his communications with Plaintiff's criminologist, so has Espinoza who had earlier agreed (in March 2022) with AA's counsel to sit for deposition.[34]

12. Of the thousands of attorneys and investigators available in Mexico, Plaintiff chose the most high profile, well known "criminologist" investigator in Mexico - and one with close ties to both the US and Mexican governments in investigating mass murders, mutilations, rapes by law enforcement officers and disappearances. It does not strain credulity to conclude that the simple fact of Muriel's introduction to Hernandez-Ramirez and Espinoza (without more) would have been sufficient impetus for these previously cooperative young witnesses to: 1) to discontinue cooperation with AA; 2) to cause Hernandez-Ramirez to misrepresent his desire not to be involved; and 3) to cause Hernandez-Ramirez to change his story 180 degrees on the one issue (publication) critical to the thin survival of Plaintiff's remaining claim.

### Federico Quintana

13. While unrelated to the stated legal basis of Plaintiff's Motion (i.e., the Court's May 24, 2022 admonitions to counsel), Plaintiff posits the remarkable argument (unsupported by a single case much less common sense) that allowing a witness[35] complete freedom to edit a draft

---

[32] Plaintiff's Motion [DE 55] at fn 2 and p. 15.
[33] Plaintiff's Motion [DE 55], Ex. C [DE 55-3] at ¶3,
[34] Pecchio declaration attached as Ex. D.
[35] Plaintiff's related argument that Elja Keizer's edits to his draft declaration somehow evince an impropriety (Plaintiff's Motion [DE 55] at fn 1) is particularly specious since he made what can only be called non-substantive changes to his draft declaration when describing the flight attendant's demeanor - deleting the phrase "courteous, calm and professional" and substituting "normal." When compared to the affidavit obtained by Plaintiff's criminologist which is inconsistent with the witness's own email summary provide 10 days later on the issue most critical to Plaintiff's claims (publication), the absurdity of Plaintiff's argument becomes obvious.

6

declaration[36] is equivalent to influencing the witness.[37] Specifically, Plaintiff suggests that Quintana's deletion of a statement that he saw Plaintiff's face and facial expressions from a draft declaration evinces witness influencing. It goes without saying that Plaintiff's proffered speculative reasons for the deletion are not evidence and thus this aspect of Plaintiff's Motion provides no record evidentiary support for any relief, much less death penalty sanctions. Any explanations offered by defense counsel would be equally speculative and thus non-probative particularly since Plaintiff's Motion asks AA to prove a negative – ignoring that it is Plaintiff's burden to present a non-speculative evidentiary basis in support of his request for death penalty sanctions.

14. Again ignoring the stated legal basis of Plaintiff's Motion (i.e., the Court's May 24, 2022 admonitions to counsel), Plaintiff's Motion argues that perceived discrepancies between Quintana's *declaration* and his *deposition* testimony[38] should have compelled defense counsel (who does not represent Mr. Quintana) to have "advise[d] the Court…that he was being untruthful."[39] For example, Plaintiff's Motion claims Quintana's declaration did not mention the flight attendant asking Plaintiff to put on his mask, but did mention that instruction in his deposition testimony even though the flight attendant did not mention mask instructions in his deposition. Factually, Plaintiff's argument is misplaced as there is no inconsistency. The flight attendant was never asked in his deposition if he had conversations with Plaintiff about his mask, and Plaintiff presents no evidence that he was. Second, Quintana testified in his deposition that, because Plaintiff was not properly wearing his mask (thus, the flight attendant instructions), he could see the left side of his face and a little less than one-half of his body.[40] The legal basis for Plaintiff's novel disclosure argument is also wanting. *Nix v Whiteside*, 475 U.S. 157, 168-169 (1986), Plaintiff's sole support for his disclosure argument, concerned anticipated false *trial* testimony of the sponsoring attorney's *client* – not deposition testimony or declarations from a non-party and non-client which are not presented in or to the Court. *Id*, at 161.

### (Mis)Perceived Discovery Slights

15. Straying even farther afield of the stated legal basis of Plaintiff's Motion (i.e., the

---

[36] Lest this Court have any concerns with defense counsel's preparation of draft declarations for witnesses, the affidavit of Plaintiff's criminologist concedes he too engaged in this same routine, non-controversial and entirely proper process in drafting the May 27, 2022 affidavit for Hernandez-Ramirez. Plaintiff's Motion [DE 55], Ex. C [DE 55-3] at ¶6.
[37] Plaintiff's Motion [DE 55] at pp. 6-7.
[38] Plaintiff's Motion [DE 55] at pp. 7-8.
[39] Plaintiff's Motion [DE 55] at p. 9.
[40] Quintana deposition excerpts attached as Ex. J.

Court's May 24, 2022 admonitions to counsel), Plaintiff's Motion grouses about various discovery issues with no basis in fact.

16. Plaintiff claims to be "troubled" by "AA's delay in providing…Mr. Quintana's contact information" in response to discovery requests[41] - ignoring (that AA did not have Mr. Quintana's physical address when served with Plaintiff's discovery requests, [42] and ignoring the fact that Plaintiff's counsel never requested through discovery the additional contact information he now claims AA delayed providing. First, Plaintiff's assertion that his First Request for Production sought "contact information for all business class passengers" is a flat misrepresentation. The Request sought production of each passenger's PNR which contains flight histories, AAdvantage numbers, payment histories and a host of additional non-discoverable information as outlined in AA's objection.[43] Plaintiff never sought to challenge the objections. Second, with respect to Plaintiff's First Set of Interrogatories, the only contact information requested was the *physical address* for the business class passengers – a detail Plaintiff's Motion fails to concede.[44] Plaintiff's related complaint that no physical address was provided for passenger Espinoza is misplaced for the same reason – the flight information available to defense counsel did not include his address.[45] Plaintiff's Motion provides no evidence to the contrary and fails to claim any resulting harm or prejudice.

17. Third, confirming the inadequacy of Plaintiff's own discovery requests discussed above, Plaintiff's Motion concedes Plaintiff's counsel then made an informal request for passenger phone numbers on January 6, 2022.[46] *The phone numbers were provided 6 days later*.[47] Plaintiff's complaint that this delay is of any consequence is difficult to take seriously, particularly given that the information was never requested in discovery and when it was informally requested it was immediately provided without the necessity of further discovery requests. Further, and tellingly, even though Plaintiff's counsel was provided the passenger phone numbers on January 12, 2022 (in an email from AA's counsel at 4:04 pm), *Plaintiff's counsel delayed almost 60 days to reach*

---

[41] Plaintiff's Motion [DE 55] at fn 2.
[42] Quintana's flight information does not show a physical address for Quintana or his mother, Cookson, nor a phone number for Quintana; Kolb declaration attached as Ex. A.
[43] Plaintiff's Motion [DE 55], Ex. J [DE 55-10] at p. 16.
[44] Plaintiff's First Set of Interrogatories, definition #6 of "identify," attached as Ex. K at p. 2
[45] Kolb declaration attached as Ex. A.
[46] Plaintiff's Motion [DE 55], Ex. M [DE 55-13] at p. 3.
[47] Plaintiff's Motion [DE 55], Ex. O [DE 55-15].

*out to Quintana on March 8, 2022 by phone*[48] – a salient fact not disclosed in Plaintiff's Motion.

18.     Fourth, for similar reasons, Plaintiff's complaint that an incorrect phone number was provided for passenger Espinoza is misplaced. Defense counsel provided the only phone number it had for Espinoza and Hernandez-Ramirez, which turned out to be Mr. Hernandez-Ramirez' phone number.[49] Defense counsel had no contrary information until defense counsel's office interviewed Mr. Hernandez-Ramirez on February 28, 2022.[50]  Defense counsel then immediately provided the phone number and email for Espinoza in AA's 5th Amended Disclosures served March 2, 2022.[51] Plaintiff's Motion provides no evidence to the contrary and fails to claim any resulting harm or prejudice.

19.     Fifth, again confirming the inadequacy of Plaintiff's own discovery requests discussed above, Plaintiff's counsel next informally requested email addresses for the business class passengers on February 10, 2022.[52] Production was agreed to (again, without the necessity of an additional discovery request) on February 17[53] and the emails were produced on February 24, 2022 following authorization from AA.  However, Plaintiff complains that an incorrect email address was provided for Quintana and no email address was provided for Espinoza.[54] Plaintiff is correct that, through a typographical error, an incorrect email address was provided for Quintana.[55] The correct email address was provided on March 9, 2022, and Plaintiff's counsel successfully emailed Quintana that same day.[56] As demonstrated above, AA did not have an email address for Espinoza until February 28, and it was disclosed immediately thereafter on March 2. Had Plaintiff's counsel made time to call Mr. Hernandez-Ramirez at his phone number disclosed on January 12, he would have obtained the same additional information and clarifications at the same time and in the same manner as AA's counsel. Plaintiff's Motion provides no evidence to the contrary and fails to claim any resulting harm or prejudice.

## PREMISED ON FACTUAL "INACCURACIES PLAINTIFF'S LEGAL ARGUMENTS FAIL

---

[48] March 8, 2022 text from Plaintiff's counsel to Quintana, attached as Ex. M.
[49] Kolb declaration attached as Ex. A.
[50] Plaintiff's Motion [DE 55] at p. 5; Pecchio declaration attached as Ex. D.
[51] AA's 5th Amended Disclosures, attached as Ex. L.
[52] Plaintiff's Motion [DE 55] at fn 2 and Ex. P [DE 55-16] at p. 2.
[53] Plaintiff's Motion [DE 55], Ex. Q [DE 55-17].
[54] Plaintiff's Motion [DE 55] at fn 2.
[55] The email address provided was fed*e*us3@gmail.com whereas the correct address is fedus3@gmail.com; Pecchio declaration attached as Ex. D.
[56] March 8, 2022 text thread between Plaintiff's counsel and Quintana, attached as Ex. M.

9

20. Reduced to its accurate factual recitations, Plaintiff's request for death penalty sanctions for failure to adhere to this Court's May 24, 2022 admonitions is premised entirely on a single communication by an associated counsel in Mexico (Fernandez) who had no reason or authorization to discuss AA's contentions in this lawsuit with Hernandez-Ramirez. Further, not a single case cited in Plaintiff's Motion[57] authorizes such draconian relief under such benign circumstances.

<u>Rule 37(b) Cases</u>

- *Malautea v Suzuki Motor Co., Ltd*: involved violations of three court orders for document production, prejudicial delay in producing deposition transcripts from related cases and concealment of relevant documents sought in discovery
- *In Re Walker*: involved multiple frivolous motions to disqualify counsel premised on "scandalous accusations" which disrupted the litigation; this case had nothing to do with violations of Court orders
- *Aztec Steel Co. v Fla. Steel Corp.*: involved a party's six year pattern of failing to comply with discovery requests
- *Goforth v Owens:* involved a party's abandonment of the case by failing to submit a court ordered statement of claim, failure to appear for a scheduling conference and failure to appear at trial
- *Betty K Agencies, Ltd. v M/V Monada:* involved the simple failure to file an answer to a counter-claim; the 11th Circuit reversed the trial court's order striking pleadings for such a benign omission

<u>Rule 41(b) Cases</u>

- *Holland v Westside Sportsbar & Lounge, Inc.*: involved violation of an order to produce documents, failure to attend court ordered mediation, an award of fees to the plaintiff following violation of a second discovery order, a warning in a Magistrate Judge's Report and Recommendation that further disobedience would result in striking defendant's pleadings, followed by the failure to pay the court ordered attorney's fees; pleadings were stricken only after the denial of two motions for contempt, an opportunity to show cause as to a third motion for contempt and

---

[57] Plaintiff's Motion [DE 55] at pp. 10-13.

defendant's non-opposition to a fourth motion for contempt

- *Tine v Boca Leche, Inc*.: involved the defendant's failure to appear for deposition, followed by a court order to appear for deposition or risk entry of a default judgment – which the defendant also violated, followed by another court order to explain the second failure to appear which again warned of the risk of the entry of a default judgment –which the defendant violated

- *Ireland v Noso, Inc*.: involved defendant's failure to comply with an order to file a verified statement of hours worked by the plaintiff, the withdrawal of defense counsel, the failure of defendant to retain new counsel after 30 days, and defendant's failure to attend a hearing on plaintiff's motion to strike pleadings

- *Coupling Solutions v Davidson*: involved a party's refusal to participate in court ordered mediation, continued emails to chambers after being instructed to stop, failure to follow various court orders, and a refusal to provide opposing counsel his mailing address for service of court documents

- *Pharma Funding, LLC v FLTX Holdings, LLC*: involved failure to comply with an order to produce documents in which the defendant was warned that further non-compliance would result in the entry of a default judgment, defendant's failure to respond to a summary judgment motion, a prior order awarding plaintiff attorneys fees against the defendant for discovery abuse, and a two month delay in complying with that order which the Court found to be a pattern of non-compliance with court orders such that lesser sanctions would not be effective – noting that the "Eleventh Circuit has warned that 'sanctions as draconian as [entry of a default judgment] for discovery violations under Rule 37 must be preceded by an order of the court compelling discovery, the violation of which might authorize such sanctions"

- *Adolph Coors Co. v Movement Against Racism and the Klan*: involved a defendant who was provided multiple repeated opportunities to avoid default after they "made clear they would divulge only that information they deemed discoverable" regardless of what the Court ordered

- *KLX, Inc. v Your Container Solutions, Inc*.: another abandonment case in which the defendant failed to participate "in any meaningful way in [the] litigation" after the withdrawal of defendant's counsel; defendant was provided multiple opportunities

to avoid default including two orders warning that the Court would strike the defendant's pleading if it failed to comply with the orders

- *Mitchel v VegasSportsConsultants.com:* yet another abandonment case in which the defendant refused to participate in the litigation, violated a court order to appear for deposition with no explanation, and violated other court orders over five months after being warned of the possibility of the entry of a default judgment, which severely disadvantaged the Plaintiff's prosecution of his claims

- *Immuno Vital, Inc. v Telemundo Grp., Inc.* (Judge Moore): involved the defendant's: 1) frivolous assertion of attorney client privilege after the defendant sought leave to assert the "advice of counsel" defense; 2) concealment of the defendant's former CEO as a person with relevant knowledge for 10 months; 3) refusal to facilitate the deposition of the former CEO; 4) refusal to attend court ordered mediation; and 5) violation of several orders compelling production of documents coupled with shifting explanations, all of which compelled the Court to conclude that the defendant's conduct was willful and prejudiced the Plaintiff since it could not depose relevant witnesses, and that a jury instruction would not adequately remedy that prejudice

- *Chambers v Nasco, Inc.*: Not a Rule 41(b) case but one discussing the Court's inherent power to reach conduct that, while not violating any rule, was a fraud on the Court; the defendant fraudulently transferred property beyond the Court's reach, withheld information from the Court, filed frivolous motions and continued its mis-conduct after being warned of the possibility of the entry of a default judgment

28 U.S.C. §1927 Cases

- *Peer v Lewis*: involved the Court's exercise of its inherent power to address bad faith pursuit of a discrimination claim

- *Bertin v Zadock Real Estate Holdings, LLC*: involved the denial of inherent authority sanctions where there was no evidence that a frivolous Motion to Vacate was submitted in bad faith

- *Kleiner v First Nat'l Bank of Atlanta*: involved a bank's campaign (along with assistance of counsel) to persuade class members to opt out of a class action by

threatening the denial of future loans.

21.     Thus, the impropriety of the death penalty sanctions requested in Plaintiff's Motion is made obvious by Plaintiff's own cases. Death penalty sanctions are only sustainable with a record of willfulness or bad faith demonstrated by a clear pattern of delay and discovery abuses, AND only where lesser sanctions have shown to be insufficient as shown by a record of violations of multiple court orders compelling discovery warning the non-compliant party that continued violations might result in entry of a default judgment. Plaintiff's Motion identifies only one incident of (at best) a negligent failure to comply with this Court's May 24, 2022 admonitions to counsel and is devoid of any record evidence of bad faith or willfulness. Plaintiff's Motion fails to identify any actual pattern of discovery abuse and indeed fails to identify a single incidence of discovery abuse or delay, much less any resulting harm or prejudice. Moreover, and dispositive of Plaintiff's request for death penalty sanctions, such sanctions are generally only "appropriate in a case where a party, as distinct from counsel, is culpable." *Betty K Agencies, Ltd. v M/V Monada*, 432 F.3d 1333, 1338 (11th Cir. 2005).

22.     In light of the objectively baseless (factually and legally) nature of Plaintiff's Motion, AA requests that it recover its attorney's fees and costs for responding the Plaintiff's Motion, for any hearings thereon, and for any objections to or appeals of any Report and Recommendation this Court might issue. 28 U.S.C. §1927.[58] Further, because Plaintiff's Motion is premised in part on Federal Rule of Civil Procedure 37, an award of fees and costs to AA is mandatory (absent record proof sufficient to sustain a conclusion that Plaintiff's Motion was substantially justified) pursuant to Federal Rule of Civil Procedure 37(a)(5)(B).[59]

## CROSS-MOTION FOR SANCTIONS

23.     Put in its proper context, Plaintiff's Motion paints a clear picture of Plaintiff's obstruction of AA's access to previously cooperative witnesses with relevant and material knowledge through the intervention of Plaintiff's criminologist. Indeed, Plaintiff's Motion

---

[58] "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. §1927.

[59] If the [Rule 37] motion is denied, the court may issue any protective order authorized under Rule 26(c) and **must**, after giving an opportunity to be heard, **require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees**. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust. Federal Rule of Civil Procedure 37(a)(5)(B).

demonstrates that Plaintiff's criminologist was so "effective" that he was able to have one witness sign an affidavit that is materially inconstant with the witness' own recounting of events attached to Plaintiff's Motion.

24. The record before this Court is undisputed that: 1) Hernandez-Ramirez and Espinoza were previously cooperating witnesses for AA with Espinoza even providing a signed declaration and agreeing to sit for deposition at AA's request;[60] 2) Hernandez-Ramirez and Espinoza now (just 90 days after cooperating) have discontinued all communications with AA's defense counsel;[61] 3) Hernandez-Ramirez has (less than 90 days after cooperating) changed his recollection of events from "I did not hear anything" (confirmed in his June 8, 2022 email to Plaintiff's criminologist) to "I heard 'you hit me' and I heard the passenger apologize;[62] 4) the only intervening circumstance between the time period during which both witnesses were cooperating with AA and their current refusal to communicate with AA's defense counsel it the intervention of Plaintiff's criminologist;[63] 5) Plaintiff's criminologist made contact with (at least) Hernandez-Ramirez during a time period in which Plaintiff's counsel was forcing his theories of the case on and threatening unrepresented non-party witnesses and disparaging defense counsel;[64] and 6) of the thousands of investigators available to assist Plaintiff's counsel in speaking with these witnesses, Plaintiff's counsel chose the most intimidating investigator that money could buy – one with psychological and psychiatric expertise, one with close ties to and a history of working for multiple Mexican and U.S. Governmental agencies investigating mass murders, mutilations, rapes, disappearances, human trafficking, cartel murders, etc., and one with a high public profile. In other words, an investigator who need not have uttered a single coercive word to either witness to achieve the desired effect of obstructing AA's access to these relevant and material witnesses.

25. Unlawfully obstructing another party's access to evidence relevant to a pending action, or assisting another to do so, is a violation of Rule 4-3.4(a)[65] of the Rules Regulating the

---

[60] See paragraphs 7-8 and 11, supra.
[61] See paragraphs 5 and 11, supra.
[62] See paragraphs 5, 8 and 11, supra, and Ex. G.
[63] See paragraphs 5 and 8, supra.
[64] See paragraphs 10-11, supra.
[65] A lawyer must not: (a) unlawfully obstruct another party's access to evidence or otherwise unlawfully alter, destroy, or conceal a document or other material that the lawyer knows or reasonably should know is relevant to a pending or a reasonably foreseeable proceeding; nor counsel or assist another person to do any such act. Rules Regulating the Florida Bar, Rule 4-3.4.

Florida Bar, and ABA Model Rule 3.4(f).[66] It is undisputed that Espinoza and Hernandez-Ramirez have relevant and material testimony relating to this pending action. It is undisputed that, following the intervention of Plaintiff's criminologist, both witnesses have discontinued communicating with and cooperating with AA's defense counsel, thus obstructing AA's ability to access their testimony. It is undisputed, therefore, that Plaintiff's counsel have violated Florida Rule 4-3.4 and Model Rule 3.4 for which this Court retains the inherent power to fashion an appropriate remedy even in the absence of a finding of bad faith. *Harlan v Lewis, et. al,* 982 F.2d 1255, 1260 (8th Cir. 1993). Regardless, where a Court concludes that a party has obstructed an adversary's access to relevant and material evidence, a finding of bad faith is implicit. *Id*.

26. Defendant believes the least severe remedies for Plaintiff's witness tampering and obstruction of AA's access to Espinoza and Hernandez-Ramirez are: 1) preclude Plaintiff's use of the any declarations or affidavits obtained by from either witness by Plaintiff, Plaintiff's counsel or Plaintiff's criminologist;[67] 2) an adverse jury instruction that Plaintiff's counsel has obstructed AA's access to relevant and material witnesses Espinoza and Hernandez-Ramirez;[68] 3) an order allowing AA to introduce, over any hearsay or other objections, the signed declaration it obtained from Espinoza and the unsigned Hernandez-Ramirez declaration; and 4) such other remedial measures this Court deems appropriate under its inherent power.

## CONCLUSION

For the reasons argued above, AA respectfully requests that this Honorable Court deny Plaintiff's Motion and grant Defendant's Cross-Motion for Sanctions.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7(a)(3)

Undersigned counsel hereby certifies that he conferred with both counsel for Plaintiff by telephone on July 6, 2022, in an effort to resolve the issues presented in this Cross-Motion. No agreement could be reached and, therefore, this Motion is presented as a contested Motion.

---

[66] A lawyer shall not…(f) request a person other than a client to refrain from voluntarily giving relevant information to another party unless… ABA Model Rule 4.3.

[67] *Immuno Vital, Inc. v Telemundo Group, Inc.*, 203 F.R.D. 561, 566-567 (S.D. Fla. 2001, Judge Moore) ("In addition, courts have stricken affidavit testimony where a party gives affidavit testimony but refuses to allow deposition questioning to test the veracity of the affidavit"; striking witness whose deposition sanctioned party declined to facilitate).

[68] Id, at p. 574 ("In addition, some courts have decided to instruct the jury as to negative inferences that should be drawn from violation of discovery orders, in lieu of striking the infracting party's pleadings. However, courts and commentators have noted that 'adverse inference instructions are one of the least severe sanctions which the court can impose and, therefore, often have very little deterrent effect.'").

Respectfully Submitted,

        **BUCHANAN INGERSOLL & ROONEY PC**

        *s/ Kelly H. Kolb*
        Kelly H. Kolb, Esq.
        Florida Bar Number: 0343330
        kelly.kolb@bipc.com
        Robert D. Pecchio, Esq.
        Florida Bar Number: 1005955
        Robert.pecchio@bipc.com
        401 East Las Olas Boulevard, Suite 2250
        Fort Lauderdale, FL  33301
        Telephone:     (954) 703-3944
        Facsimile:      (954) 703-3939
        *Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this the 6th of July 2022, a true and correct copy of the above and foregoing has been filed with the Clerk of Court using the CM/ECF system. I FURTHER CERTIFY that the foregoing document is being served this date, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner of those counsel or parties who are not authorized to receive electronically Notices of Electronic filing on the counsel of record or *pro se* parties identified on the attached Service List.

**SERVICE LIST:**

William T. Woodrow III
250 West Main Street, Suite 201
Charlottesville, VA 22902
Rook Elizabeth Ringer, Esq.
LENTO LAW GROUP
222 San Marco Ave., Ste. C
St. Augustine, FL 32084
Tel: (855) 275-7378
Tel: (904) 602-9400
E-mail: reringer@lentolawgroup.com
E-mail: will@stoneandwoodrowlaw.com


David H. Pollack, Esq.
THE LAW OFFICE OF DAVID H. POLLACK, LLC
75 Valencia Avenue, Suite 100
Coral Gables, FL 33134
Tel. No. 305-372-5900
Fax No. 305-372-5904
david@davidpollacklaw.com

*Counsel for Plaintiff*


By: ___/s/ Kelly H. Kolb_____
       Kelly H. Kolb