# EXHIBIT J

Page 1

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-CV-23155 (MM)
CIVIL ACTION

TROY CLOWDUS,

    Plaintiff,

vs.

AMERICAN AIRLINES, INC.,

    Defendant.
_____/

Thursday, June 9, 2022
10:00 a.m. - 11:12 a.m.
Miami, Florida

DEPOSITION OF HILDA MINAYA

Taken via Zoom before Rinele Abramson, Notary Public in and for the State of Florida at Large, pursuant to Notice of Taking Deposition filed in the above cause.
- - - - - - -

Job No. CS5269448

Page 49

1      that information.  It's too early.  We don't.  And there
2      no way I can print a ticket that he already has.
3 BY MR. WOODROW:
4      Q.   Okay.
5           Have you ever worked outside the Admirals Club in --
6 as gate agent or ticketing or any other role?
7      A.   No.  I was the managing director assistant for many
8 years for customer service.  That was basically it.  Then I
9 changed to the Admirals Club.
10     Q.   Okay.  So as the managing director of customer
11 service, if someone came up to you and they were on the
12 internal refuse list and they wanted to book a ticket or
13 something, how would you discover that you shouldn't be
14 booking them a ticket?
15          MR. PECCHIO:  Hold on.  Hold on.  Before you answer,
16     Hilda.
17          Rinele, let's go off the record for a second.
18          (A discussion was held off the record.)
19          MR. WOODROW:  Rinele, can you mark this portion of
20     the deposition, because it is going in front of the judge.
21          MR. PECCHIO:  Okay.  We can go back on the record.
22     I've said what I needed to say.
23          MR. WOODROW:  Rinele, can you please read back my
24     last question?
25          (Thereupon, a portion of the record was read by the

Page 50

```
 1            reporter.)
 2               MR. PECCHIO:  Object to form.
 3       BY MR. WOODROW:
 4          Q.   You can answer, Ms. Minaya.
 5               I apologize for that.
 6               MR. PECCHIO:  Don't apologize to my client.  Thank
 7       you.
 8               THE WITNESS:  That's not a problem.
 9               But it is true, I do feel that my prior position
10       does not have nothing to do with the Admirals Club at all.
11       I did not have to do nothing with ticketing or no flight
12       list or anything with passengers.  I actually did not work
13       with passengers at all.
14               So I do feel kind of out of, you know, I shouldn't
15       be asked a question like this.  But it's fine, if you want
16       me to tell you, I'll tell you.  I did not have no type --
17       actually I didn't have no type of relationship or any type
18       of access to no passenger.
19               My job scope did not -- I didn't have to do anything
20       with that at all.  So I would not even -- I would not even
21       know how to book a passenger at all being customer
22       service.
23               So I do feel that it's out of -- you know, out of --
24       it shouldn't be part of your question.  But it's fine that
25       I can answer.
```

```
                                                          Page 51
 1      BY MR. WOODROW:
 2           Q.    Thank you.
 3           A.    Okay.
 4                 MR. PECCHIO:    Hilda, you can answer.
 5      BY MR. WOODROW:
 6           Q.    You can answer.  And please don't take any sort
 7      of --
 8           A.    I do feel -- because my prior position has nothing
 9      to do with this.
10           Q.    Correct.  And that --
11           A.    Actually, it's even uncomfortable that I'm here with
12      someone I had nothing to do with.
13           Q.    I understand.  And we wouldn't have called you for
14      this.  And we don't think that you have much to do with this
15      case, frankly.
16                 MR. PECCHIO:    Object to that inside --
17      BY MR. WOODROW:
18           Q.    And your prior experience is -- I'm asking for what
19      it's worth.
20                 And what Robert is misunderstanding is your
21      testimony is not binding on the company.  I'm just asking in
22      your own personal experience.  I'm trying to just find facts.
23                 This is a fact-finding exercise, and it's not --
24      it's not out of line to ask you the question I did.  Let's
25      just say that.
```

Page 52

```
 1              MR. PECCHIO:  Objection.
 2              THE WITNESS:  I did feel uncomfortable at that
 3      moment.  I don't think that it should come into play, my
 4      previous position at all.
 5   BY MR. WOODROW:
 6      Q.   Sure.  And that's for us lawyers to decide.  We will
 7   ask you the questions, and just answer as best you can.
 8           Are you familiar with American Airlines' internal
 9   refuse list?
10      A.   No.
11      Q.   Do you know what it is?
12      A.   No.
13      Q.   Are you aware that a American Airlines bans certain
14   people from flying with them?
15              MR. PECCHIO:  Object to form.
16              THE WITNESS:  No.  I mean, we don't know any details
17      of any passenger that would -- that would be refused.  We
18      don't get that information.  We don't have that
19      information with us to know.
20   BY MR. WOODROW:
21      Q.   That's not what I just asked.
22           I just asked:  Are you aware that American Airlines
23   does ban certain people from flying with them?
24              MR. PECCHIO:  Object to form.  Go ahead, Hilda.  You
25      can answer.
```

```
                                                        Page 53
 1            THE WITNESS:  I mean, yes, I know that they ban.  I
 2       just don't know how to find the -- I don't have access to
 3       that information.
 4   BY MR. WOODROW:
 5       Q.   Okay.  So if someone were to -- if someone who is on
 6   the list, if someone was banned from flying with American
 7   Airlines, how would they be prevented from purchasing a
 8   ticket, if you know?
 9            MR. PECCHIO:  Object to form.
10            THE WITNESS:  No, I can't elaborate.  I can't
11       elaborate.  That's not my scope.
12            MR. WOODROW:  Robert, this is going to be
13       interesting in front of the judge because you just shut
14       this witness down entirely inappropriately.
15            MR. PECCHIO:  Absolutely did not.
16            MR. WOODROW:  Yeah, you did.
17   BY MR. WOODROW:
18       Q.   Ms. Minaya, are you familiar with a CERS report,
19   with what they are?
20       A.   I'm sorry.  With what?
21       Q.   Are you familiar with the CERS reporting system?
22       A.   No.
23       Q.   You are not familiar with the CERS reporting system?
24       A.   No.
25       Q.   Do you know what a CERS report is?
```

Page 54

```
 1        A.   No.
 2             MR. WOODROW:  Okay.  I have no further questions.
 3                      REDIRECT EXAMINATION
 4   BY MR. PECCHIO:
 5        Q.   Ms. Minaya, you were asked whether you remember
 6   everybody in the room by counsel, if you remember everybody
 7   who was in the room when you overheard Mr. Clowdus speaking to
 8   Ron; correct?
 9        A.   Correct.
10        Q.   Okay.  Did you, at any point, ever remember every
11   single person in the room while you were working for American
12   Airlines?
13        A.   No.  It's impossible to remember every day with so
14   many passengers.
15        Q.   In your testimony, you said you never overheard Ron
16   gasp; correct?
17        A.   I don't recall him gasping.
18        Q.   Okay.  You were asked by counsel about a CERS
19   report.
20             CERS reports are customer event reports filed by
21   flight attendants about incidents that happen on airlines.
22   Generally speaking.  That's not a precise definition.
23             Would you have access to any flight attendant
24   reports filed to American Airlines?
25        A.   Not at all.
```