IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| Troy Clowdus | |
| PLAINTIFF | Civil Action No.: 1:21-cv-23155-MM |
| VS. | |
| American Airlines Inc., | |
| DEFENDANT. | |

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO HIS MOTION TO COMPEL DISCOVERY FROM DEFENDANT AMERICAN AIRLINES**

Plaintiff TROY CLOWDUS ("Clowdus"), by and through undersigned counsel, hereby submits his Reply in Support of his Motion to Compel Discovery from Defendant American Airlines, Inc. ("AA")[D.E. 64].

**I.      The Plaintiff's Discovery Request was Timely.**

On April 13, 2022, this Court held a hearing on Plaintiff's Motion to Compel "CERS" reports from AA. At that hearing, AA similarly told the Court what it "must" do with respect to L.R. 26.1(g)(1) and the Court was not convinced. Clowdus made the same argument then as he does now: there is no authority cited by AA to suggest that a discovery request, properly re-issued with sufficient time remaining to be answered and narrowed in scope to blunt prior objections, is not renewed in every respect, including the time to respond to objections. The spirit of the rule – that is captured in every case that AA cites – is that a party should not let objections sit indefinitely before bringing them after the close of discovery. That is simply not what occurred here. Clowdus took a request that asked for every place his name appeared in

1

AA's database, which AA had since the beginning of the case, and narrowed it to every place his name occurred *where the allegation of assault is recorded in AA's database*. When AA still refused to answer this request, he made a timely motion to compel. Under these circumstances, the application of L.R. 26.1(g)(1) AA advocates would be illogical and defeat the purpose of the rule. *See O'Boyle v. Sweetapple*, 2016 WL 3647599 (June 30, 2016, S.D. Fla.), at * 3.[1]

## II. The discovery is relevant to the scope of damages and to the defense of qualified privilege.

AA alternatively argues that the Court should deny the Motion to Compel because the discovery sought is irrelevant because it does not establish prior publication, which is an element of defamation *per se*. But AA ignores the fact that in addition to Clowdus, passenger Juan Hernandez-Ramirez has provided evidence to establish publication of the defamatory statement: he heard flight attendant Carlos Merino say "you hit me," and Merino later told him explicitly of the "assault."

AA's reliance on *Transunion, LLC v. Ramirez*, 141 S.Ct. 2190, 210 L.Ed.2d 568 (2021), is misplaced for several reasons. First, the issue in *Transunion* was whether the plaintiff had Article III standing to bring a claim under the Fair Credit Reporting Act. It was not a defamation case and the reference to defamation in the decision was an analogy, not the articulation of a new rule of defamation law. Second, the Court in *Transunion* held that where a false statement was

---

[1] AA has consistently done as little as possible to respond to every one of Clowdus's discovery requests rather than putting its cards on the table and letting them fall how they may. Even now, where there is a pending Motion for Sanctions before this Court involving communications AA had with unrepresented non-party witnesses, AA has attempted to elevate form over substance to avoid producing communications that are not privileged and are squarely relevant to the pending motion. One would think that AA would have been quick to provide the evidence of its good behavior to support the blanket assertions in its declarations: the underlying communications of engagement, as the Plaintiff did voluntarily because the allegations made warrant full disclosure. AA, however, has also objected to producing those documents as well on the grounds that the requests are timely.

disseminated to third parties, as it was in this case (i.e., to passenger Hernandez-Ramirez), the plaintiff did, in fact, have standing to sue under Article III. *Id.* at 2209. Third, and more importantly, the court distinguished situations in which a plaintiff is exposed to a future harm but no harm has occurred, such as a reckless driver who does not actually hit someone, from cases involving defamation *per se*, where publication is presumed to cause a harm, but the harm is non-quantifiable. *Id.* at 2211. ("But there is a significant difference between (i) an actual harm that has occurred but is not readily quantifiable, as in cases of libel and slander *per se*, and (ii) a mere risk of future harm.").

Finally, *Transunion* involved a class of thousands of plaintiffs, many of whom were not even aware of the fact that false information was contained in its database. Here, by contrast, Clowdus was not only aware that the information was contained in AAs database, but its ability to harm in the future because its very existence prevents him from ever flying again on any future American Airlines flight. The information about Clowdus in AA's database is not forgotten in a drawer: it is written into its operating system. It operates as an active command to all employees who access the system now and in the future if Clowdus ever tries to book a flight with AA or board a plane. For this reason, AA's reliance on language from the opinion likening information stored in a database to an individual writing a defamatory letter and putting in his desk, or a tree falling in a forest, is misplaced.

Furthermore, evidence of where and how the assault can be viewed in AA's database, and by whom, is relevant to damages, since it demonstrates how broadly the defamatory statement was, and is capable of being, disseminated. The extent of the publication is also relevant to defense of qualified immunity and whether AA exceeded the scope of the privilege. *See, e.g., Gall v. Rogers,* 453 So.2d 1146, 1147 (Fla. 3rd DCA 1984); *Pollock v. Albertson's, Inc.*, 458

So.2d 74, 76 (Fla. 5th DCA 1984).  In other words, it is one thing for AA to hand a letter containing a defamatory statement about an employee to a fellow employee.  It is another thing entirely for AA to post that defamatory letter on the wall in the company break room, where thousands of individuals can walk by daily and read it.

Respectfully Submitted,

| | |
|---|---|
| /s/ William T. Woodrow | /s/ David Pollack |
| William T. Woodrow III (*pro hac vice*) | David Pollack, Esq. |
| Stone & Woodrow LLP | Law Offices of David Pollack, LLP |
| 250 West Main St. Suite 201 | 75 Valencia Avenue, Ste. 100 |
| Charlottesville, VA 22902 | Coral Gables, FL 33134 |
| will@stoneandwoodrowlaw.com | David@davidpollacklaw.com |
| Fax:    646 873-7529 | Fax: (305) 372-5904 |
| Voice: 855-275-7378 | Voice: (305) 372-5900 |
| *Attorney for Plaintiff* | *Attorney for Plaintiff* |

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing document was served upon the following attorneys of record by CM/ECF on this 26th day of July, 2022.

Kelly Kolb
Robert D. Pecchio
Labor & Employment Practice Group
401 East Las Olas Boulevard
Suite 2250
Ft. Lauderdale, FL 33301
954 703 3900 (office)
954 703 3944 (direct)
kelly.kolb@bipc.com
robert.pecchio@bipc.com

                                                        /s/ William T. Woodrow
                                                        William T. Woodrow III