IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

|  |  |  |
|---|---|---|
| TROY CLOWDUS | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | DOCKET NO.: 1:21cv23155 |
| v. | : | |
| | : | |
| AMERICAN AIRLINES, INC. | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, Defendant, AMERICAN AIRLINES, INC. ("**AA**" or "**Defendant**"), files this Motion for Partial Summary Judgment as to Plaintiff, TROY CLOWDUS' ("**Clowdus**" or "**Plaintiff**"), claim for defamation *per se*, to the extent that this claim relies on the theory of libel *per se,* and in support thereof states as follows:

### I.   INTRODUCTION

Plaintiff has conceded he has no evidence that any allegedly written defamatory material concerning him was published to third party external to AA. His allegations and the summary judgment evidence confirm that all recipients of the written materials had a duty to review and/or transmit them internally within AA and/or act on them either in initiating an investigation, conducting the investigation or making determinations based on the investigation – thus, they were within the scope of AA's qualified privilege to internally transmit such materials. Plaintiff's conclusory allegations to the contrary "on information and belief" are insufficient to create a fact issue precluding summary judgment.

Further, there is no record evidence, external to the written materials, that the flight attendant or anyone in AA's corporate security department were personally motivated to intentionally injure Plaintiff – indeed, no one but the flight attendant had ever met him. There is

no record evidence that the written materials were ever published to anyone outside the scope of AA's qualified privilege. Plaintiff's conclusory allegations to the contrary "on information and belief" are insufficient to create a fact issue precluding summary judgment.

Plaintiff's allegations "on information and belief" that the written materials might someday under some unknown circumstances be published to and read by some unknown person within AA do not create a fact issue precluding summary judgment. Defamation does not occur and is not actionable until and unless defamatory material is actually published to and read by an identifiable third party or person outside the scope of persons covered by qualified privilege.

## II.     STATEMENT OF UNDISPUTED FACTS[1]

1. Plaintiff, an AA business class passenger, boarded AA's Flt 1303 from Miami to Mexico City on June 10, 2021 ("**the Flight**"), and was seated in the first row bulkhead seat.[2]

2. Plaintiff was aware that passengers seated in the bulkhead seat must stow their bags in the overhead compartment. Upon boarding, however, Plaintiff did not stow his bag in the overhead compartment.[3]

3. AA's flight attendant Carlos Merino ("**Merino**") advised Plaintiff that he needed to stow his bag in the overhead bin. Although Plaintiff heard Merino's instruction, Plaintiff did not stow his bag, or move to stow his bag in the overhead compartment, and instead placed his bag at his own feet.[4]

---

[1] The Statement of Undisputed Material Facts will be referred to as "SUMF" throughout this Motion.
[2] Amended Complaint (DE 40), ¶¶ 8, 10.
[3] Deposition of Plaintiff, 53:14-24; 54:5-12; 56:3-10, 61:24-62:6. [For the purposes of this Motion, deposition transcripts shall be cited as "Name of Deponent, Page Number: Line Number."] **The cited excerpts from Plaintiff's Deposition is attached to this Motion as Exhibit C.**
[4] Amended Complaint (DE 40), ¶¶ 10, 11; *see also* Deposition of Plaintiff, 53:14-24; 54:5-12; 56:3-10, 61:24-62:6; Deposition of Merino, 10:18-11:11. **The cited excerpts from Merino's Deposition are attached to this Motion as Exhibit D.**

4. Later, in response to being confronted by Merino for not stowing his bag, Plaintiff "swung" his bag toward Merino and struck Merino with the bag.[5]

5. After striking Merino, Plaintiff was removed from the aircraft. Merino did not remove Plaintiff from the aircraft, and Merino had no authority to remove Plaintiff from the aircraft. The Flight Captain made the decision to remove Plaintiff from the aircraft.[6]

6. AA's Corporate Event Reporting System ("**CERS**") Manual requires that the flight attendants "most involved" in such events complete a CERS Report "providing as much details as possible" about the event.[7]

7. In compliance with the CERS Manual, flight attendant Merino filed a CERS Report detailing his observations of the incident.[8]

8. AA Corporate Security Investigator, Aristides Maldonado ("**Maldonado**"), received and reviewed Merino's CERS Report as part of his duties conducting the investigation of the incident.[9]

9. Maldonado compiled other documents with Merino's CERS Report into an Internal Refuse List packet ("**IRL Packet**") which he forwarded to AA Regional Corporate Security Manager of Investigations, John Kirby ("**Kirby**") as required by AA practices.[10]

10. Kirby is responsible for reviewing *all* such investigatory reports for American Airlines companywide and worldwide.[11] Kirby made the determination to place Plaintiff on the

---

[5] Deposition of Plaintiff, 66:24-67:3; Deposition of Merino, 11:12-15.
[6] Deposition of Merino, 12:10-13:3; Deposition of Plaintiff, 84:20-22.
[7] Declaration of John Kirby ¶ 5-6. **The Declaration of John Kirby ("Kirby") is attached to this Motion as Exhibit A.**
[8] Deposition of Merino, 52:9-13; Declaration of Kirby ¶ 10.
[9] Deposition of Maldonado, 13:5-21; 82:1-16. **The cited excerpts from Maldonado's Deposition are attached to this Motion as Exhibit E.**
[10] Deposition of Maldonado, 14:16-15:5; 42:5-7; Declaration of Kirby ¶¶ 9-12.
[11] Deposition of Maldonado, 15:1-5; Declaration of Kirby ¶ 4; Deposition of Kirby, 14:14-15:7. **The cited excerpts from Kirby's Deposition are attached hereto as Exhibit F.**

IRL (AA's internal no-fly list) which permanently banned Plaintiff from flying on future AA flights.[12]

11. Despite his placement on the IRL, AA has not terminated Plaintiff's AAdvantage program membership (AA's rewards program), nor has AA forfeited or voided Plaintiff's accrued rewards mileage.[13]

12. AA does not share its IRL list with external third parties.[14]

### III.  LEGAL STANDARD

13. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A moving party that does not bear the burden of persuasion at trial can obtain summary judgment without disproving the non-movant's case, by simply pointing to the absence of evidence supporting **at least one element** of the non-movant's case. *Bedford v. Doe,* 880 F.3d 993, 996, 997 (8th Cir. 2018) ("[I]f the nonmoving party must prove *X* to prevail [at trial], the moving party at summary judgment can either produce evidence that *X* is not so or point out that the nonmoving party *lacks the evidence to prove X.*") (emphasis added).

14. If the movant satisfies its burden, the non-movant may not rest on his pleadings, but instead must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial" to avoid summary judgment. *Celotex Corp.,* 477 U.S. at 324. Issues of fact

---

[12] Deposition of Kirby, 10:3-16; 31:1-5; 14:21-15:3; Deposition of Plaintiff, 108:24-109:3; Declaration of Kirby ¶ 12.
[13] Deposition of Plaintiff, 123:20-25.
[14] Deposition of Plaintiff, 148:16-149:2; **Defendant's Answer to Plaintiff's Interrogatory No. 16, Plaintiff's First Set of Interrogatories attached to this Motion at Exhibit B;** Declaration of Kirby ¶ 13.

are "genuine" only if a reasonable jury, considering the evidence presented, could find for the non-movant. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 249 (1986). Facts are "material" only if they will affect the outcome of the trial under governing law. *Id*. at 248; *Hickson Corp. v. Northern Crossarm, Co.*, 357 F.3d 1256, 1259-1260 (11th Cir. 2004)

## IV. ARGUMENT

15. Plaintiff's defamation *per se* claim is premised on three alleged defamatory communications: (1) Merino's verbal on-board statement to Clowdus "You hit me"; (2) Merino's written CERS Report; and (3) AA's IRL. Defendant seeks entry of summary judgment as to (2) Merino's written CERS Report and (3) AA's IRL[15] which are both written (alleged) defamatory communications and therefore must be evaluated under Florida's libel *per se* standard.

16. To prevail on his libel *per se* claim, Plaintiff must prove that the written communications consisted of: (1) a false written statement of fact about Plaintiff; (2) that the false written statement accused Plaintiff of committing a felony; and (3) that there was an **actual publication** of the false written statement to a **third party**. *Aflalo v. Weiner,* 2018 WL 3235529, *1-2 (S.D. Fla. 2018). In a libel *per se* action, (as opposed to a libel *per quod*), consideration is only given to the "four corners" of the publication, without the aid of any additional facts, context, inferences or innuendo. *Id.* As argued in AA's pending 12(b)(6) Motion to Dismiss, these elements are not present in the alleged defamatory remarks in Merino's CERS Report and in AA's IRL[16] In addition, regardless of the alleged defamatory content,[17] AA is entitled to summary judgment since the CERS Report and IRL were published in a privileged context. *Jarzynka v. St.*

---

[15] Defendant's 12(b)(6) Motion to Dismiss (DE 40), which remains pending, dealt with the deficiency of Plaintiff's slander *per se* claim as to the statement "You hit me."
[16] *See* Defendant's 12(b)(6) Motion to Dismiss (DE 40) discussing how the alleged remarks in the CERS and IRL do not rise to the level of libel *per se* because they do not "on their four corners" and without extrinsic facts, inferences and innuendo, accuse Plaintiff of a felony. *Aflalo,* 2018 WL 3235529 at *1-2.
[17] *See* supra note 16.

*Thomas University,* 310 F. Supp. 2d 1256, 1270 n. 5 ("In Florida, a statement made subject to qualified privilege is not defamatory, even though the statement may be false and otherwise actionable.").

17. The undisputed facts (and Plaintiff's own allegations) demonstrate that there has been *no* publication of either the CERS Report or the IRL to a third party external to AA.[18] Therefore, Plaintiff's libel *per se* claim relies entirely on **alleged intra-corporate publication**, which enjoys a broad qualified privilege under Florida law. *Thomas v. Tampa Bay Downs, Inc.*, 761 So. 2d 401, 404 (Fla. 2d DCA 2000) (conduct within the scope of one's employment is generally immune from an action for defamation if "it is the type of conduct that the employee is hired to perform . . ."); *Johnston v. Borders,* 2018 WL 8244336, *4 (M.D. Fla. 2018) (statements made "by employees to other employees generally are subject to 'qualified privilege'"). Where the circumstances surrounding the defamatory communication are undisputed, the question of whether qualified privilege applies is a question of law for the Court.[19] Accordingly, because the undisputed record evidence shows that the CERS Report and IRL intra-corporate communications were subject to qualified privilege, the Court should enter summary judgment dismissing Plaintiff's libel *per se* claim as argued below.

**A. The Intra-Corporate Publication of the CERS Report to CERS Investigator Maldonado (and Allegedly to Corporate Security's Reddig) Was Subject to Qualified Privilege.**

18. Plaintiff has alleged that the CERS Report was published to two AA Corporate Security investigators Aristides Maldonado ("**Maldonado**") and, "upon information and belief,"

---

[18] SUMF # 12.
[19] *Nodar v. Galbreath,* 462 So. 2d 803 (Fla. 1984). *Egwuatu v. Burlington Coat Factor Warehouse Corp.,* 2011 WL 2413833, *5 (M.D. Fla. 2011) (granting summary judgment based on statements that were qualifiedly privileged); *see also Shaw v. R.J. Reynolds Tobacco, Co.,* 818 F. Supp. 1539, 1542 (M.D. Fla. 1993), *aff'd* 15 F.3d 1097 (11th Cir. 1994) (granting summary judgment based on qualified privilege).

Chris Reddig ("**Reddig**").[20] As an initial matter, Plaintiff's allegation that there was a publication to Chris Reddig "upon information and belief" is insufficient to create a genuine issue of material fact.[21] Regardless, even if Plaintiff *could* prove actual publication to *both* Reddig and Maldonado, this publication is still subject to qualified privilege. In Florida, a statement made by one having an interest or duty in the subject matter thereof to another person having a corresponding interest or duty therein is qualifiedly privileged, even if the statement is otherwise false or actionable. *Jarzynka,* 310 F. Supp. 2d at 1270 n. 5.

19.     With regard to the publication of the CERS Report to Maldonado, Maldonado was the AA security official charged with investigating and acting on such CERS reports.[22] The parties do not dispute that Maldonado received and reviewed the CERS Report pursuant to the CERS Manual and as part of his investigation into the incident on-board the Flight.[23] Thus, he reviewed the Report within the course and scope of his employment with AA, and in the interest of serving his employer. It is, therefore, unquestionable that Maldonado's receipt of the CERS Report is subject to qualified privilege. *Tampa Bay Downs,* 761 So. 2d at 404 (security officer was "immune from an action for defamation" where his transmission of allegedly defamatory material was only to those with a need to know and transmitting same was the sort of conduct he was hired to perform for the employer).

---

[20] Amended Complaint (DE 40), ¶¶ 81-82.
[21] *See Ellis v. England,* 432 F.3d 1321, 1326 (11th Cir. 2005) (statements that are based "in part, upon information and belief," rather than personal knowledge, "cannot raise genuine issues of fact, and thus also cannot defeat a summary judgment motion"); *see also Granda-Centeno v. Lara*, 489 So. 2d 142 (Fla. 3rd DCA 1986) (trial court erred in instructing that publication was simply sending material—publication requires that the documents be "**actually received and read**"—the fact that a defamatory writing was merely sent is insufficient to prove publication); *Owner's Adjustment Bureau, Inc. v. Ott*, 431 So. 2d 695, 696 (Fla. 3rd DCA 1983) (no publication in a libel action where the plaintiff failed to show that the libelous letter had been **actually "received or read by any other person"**).
[22] Deposition of Maldonado, 12:8-19; Amended Complaint (DE 40), at ¶¶ 54, 81-82.
[23] SUMF #7-8.

20. As to Reddig, Plaintiff's own allegations demonstrate that any alleged communication of the CERS Report to Reddig was subject to qualified privilege. Plaintiff alleges that AA Corporate Security's Reddig received the CERS Report after it was submitted by Merino, and that Reddig forwarded that CERS Report to Maldonado for investigation.[24] Accordingly, Reddig, like Maldonado, is alleged to have received and acted on the CERS Report within the course and scope of his duties to conduct such investigations for AA Corporate Security.[25] Reddig is a Corporate Security officer who works out of AA's Corporate Security Dallas Bureau, who receives the automatically transmitted CERS Reports when filed, and whose job duties include transmitting CERS Reports to the Investigator in the region from where the report originated for investigation.[26] Plaintiff's allegations (supported on only "information and belief") as to Reddig's receipt and transfer of the CERS Report to Maldonado describe nothing more than the normal course of the investigative process and thus are insufficient to create a fact issue precluding summary judgment.

21. The qualified privilege applicable to the CERS Report is not lost simply because Plaintiff alleged (in conclusory terms) that Merino exhibited malice when he submitted the Report.[27] *Jarzynka,* 310 F. Supp. 2d at 1267.

22. First, it is undisputed that Merino filed his CERS Report as part of his required job duties and as required by AA's CERS Manual.[28] Plaintiff's conclusory allegations of undefined malice and ill will without any stated reason or motivation are insufficient to establish malice. *Lefrock v. Walgreens Co.,* 77 F. Supp. 3d 1199, 1202 (M.D. Fla. 2015), *aff'd* 644 F.App'x 898

---

[24] Amended Complaint (DE 40) ¶¶ 81-82.
[25] As established above, Plaintiff has not produced *any evidence* of publication of the CERS Report other than to Maldonado, and he has not *even alleged* that anyone other than Reddig received the CERS. *See* Amended Complaint (DE 40) ¶¶ 81-82.
[26] Declaration of Kirby ¶ 14-16.
[27] It is Plaintiff's burden to demonstrate express malice, as explained below. *Nodar,* 462 So. 2d at 803.
[28] SUMF #6-8.

(11th Cir. 2016) (granting defendant's summary judgment motion because at-issue statements "were protected by privilege and Plaintiff cannot overcome this qualified privilege because he has no evidence whatsoever that the statements were made with express malice").

23.   Second, and most importantly, Plaintiff's demonstration of Merino's malice would still mandate summary judgment for AA since AA has no *respondeat superior* liability for the actions of employees engaged in intentional torts, pursuing personal purposes or otherwise not activated by a purpose to serve AA's interests. *City of Miami v. Simpson,* 172 So. 2d 435, 437 (Fla. 1965). Thus, AA's potential liability for publication of the CERS Report is unaffected by the existence of the flight attendant's malice. *Id.*

**B.  Publication of the CERS Report to Other Individuals Within AA Corporate Security.**

24.   As Maldonado and Reddig are the only two individuals even *alleged* to have received the CERS report, the Court's inquiry into the CERS Report should end. Nevertheless, Defendant will address the subsequent transmission of the CERS Report to AA's Regional Manager, Kirby.

25.   First, the inclusion of the CERS Report in the IRL packet sent to AA's Regional Corporate Security Manager Kirby was not a "publication."[29] It is well-established under Florida law that, where the entity accused of defamation is a corporation, communication of even defamatory material *to* a managerial or executive member of a corporation is *not* considered publication. *Lopez v. Ingram Micro, Inc.,* 1997 WL 401585, *6 (S.D. Fla. March 18, 1997); *American Airlines, Inc. v. Geddes,* 960 So. 2d 830, 833 (Fla. Dist. Ct. App. 2007). Kirby is a managerial employee, who is responsible for reviewing all such reports, companywide and

---

[29] SUMF #9.

worldwide.[30] Thus, transmission of the CERS Report and the IRL Packet *to* Kirby by an AA employee with a duty to transmit those materials (Maldonado) was not a "publication" particularly since Kirby's receipt and review of those materials was part of his job duties as Regional Corporate Security Manager. *Id.*

26. Second, there is no evidence (or allegation) that the CERS Report was published to any other individual other than Maldonado and Reddig. Plaintiff's Amended Complaint simply alleges "upon information and belief" that "the [unspecified] defamatory statement" was published to unidentified, non-managerial employees.[31] Setting aside the reality that there is no evidence of such a publication, this allegation is insufficient as a matter of law to allege actionable publication of defamatory material. *Mennella v. Am. Airlines, Inc.,* No. 17-21915-CIV, 2019 WL 1429636, at *3 (S.D. Fla. Mar. 29, 2019), *aff'd,* 824 F. App'x 696 (11th Cir. 2020) (granting summary judgment based on plaintiff's inability to identify "with a reasonable degree of certainty" a third party to whom the publication was made); *Lefrock,* 77 F. Supp. 3d at 1201 (defamation claim must include "the identity of the speaker, the identity of the person spoken to, the substance of the statements, and a time frame when the statements were made"); *see also Aflalo,* 2018 WL 3235529 at *3-4 (allegation that a statement was posted on Facebook failed to identify with "reasonable degree of certainty" those persons to whom the Facebook post was actually published [received and read]).

27. Plaintiff has also failed to identify the "non-managerial" employees who received and read the CERS Report and there is no evidence of such a publication of the Report. Plaintiff's speculative and conclusory allegations to the contrary are insufficient to preclude summary

---

[30] SUMF #9-10.
[31] Amended Complaint (DE 40), ¶ 83.

judgment.[32] *Mennella,,* 2019 WL 1429636 at *3 (third-party must be identified with "reasonable particularity") and *Transunion LLC v. Ramirez,* 141 S. Ct. 2190, 2210-11 (2021) (no harm exists for *potential* dissemination of defamatory material that has not yet occurred).

### C. AA Is Not Liable for Libel *Per Se* as to the IRL.

28. The portion of Plaintiff's claim dedicated to the IRL fares no better. Again, the parties do not dispute that the IRL has not been published outside of AA and, therefore, Plaintiff's claim related to the IRL must focus on intra-corporate publication. In this regard, ostensibly, Plaintiff is claiming either that: (1) Maldonado's transfer of the IRL Packet to Kirby was libel *per se*; and/or (2) the IRL *could at some time in the future* be accessed by some *unknown* AA employee, which would then (in the future) give rise to a be libel *per se* claim. Neither theory is actionable.

29. As to the first theory, Kirby is a managerial employee who is responsible for reviewing all IRL investigative packets throughout AA's worldwide operations.[33] Communication of the IRL to Kirby is, thus, not a publication (as argued above) and, regardless, is still within AA's qualified privilege.

30. As for the second theory, the risk or possibility of future publication of allegedly defamatory material is not actionable since, without publication, a defamation claim has not accrued. As argued above, Plaintiff's libel *per se* claim cannot survive the motion for summary judgment stage if he cannot identify the individuals to whom the alleged publication was *already* made with reasonable particularity. *Geddes,* 960 So. 2d at 833; *Lopez,* 1997 WL 401585 at *6. He cannot prove publication (especially *unprivileged* publication) by inference. *Id. See also,* Order

---

[32] *See Bald Mountain Park, Ltd. v. Oliver,* 863 F.2d 1560, 1563 (11th Cir. 1989) (mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment); *Ellis v. England,* 432 F.3d at 1326; *Cordoba v. Dillard's , Inc.,* 419 F. 3d 1169, 1181 (11th Cir. 2005) ("unsupported speculation . . . does not meet a party's burden of producing some defense to a summary judgment motion. Speculation does not create a *genuine* issue of fact[.]")
[33] SUMF #9-10.

on Motion for Judgment on the Pleadings [DE 32] at p. 8 ("A strong inference of publication is insufficient to state a claim for defamation *per se*" citing *Mennella,* 2019 WL 1429636 at *4)). There is no evidence that *any* IRL material satisfying the libelous *per se* standard (on its four corners imputing a felony, without inference or innuendo)[34] was *ever* published to a non-managerial employee and/or an employee who was outside the general need-to-know qualified privilege parameters.

31. Accordingly, the possibility that some unidentified non-managerial AA employee might at some time in the near or distant future receive unidentified defamatory material in the IRL if (hypothetically) Plaintiff were to attempt to book a flight with AA, is simply not actionable – at least not at present. Potential future publication is irrelevant to Plaintiff's defamation per se claim since his allegation of possible future publication is made only "upon information and belief"[35] and since a defamation claim is not actionable until and unless there is an actual publication to an identifiable person, as argued above. *Granda-Centeno,* 489 So. 2d at 142. Plaintiff has *no standing* to bring a defamation claim for potential future publication of any defamatory material in the IRL. *Transunion LLC v. Ramirez,* 141 S. Ct. at 2210-11.[36]

**D. AA's Qualified Privilege Was Not Lost or Abused.**

32. In light of the foregoing, Plaintiff is relegated to reliance on his conclusory allegation that AA's qualified privilege attached to the CERS Report and the IRL but was lost or abused.[37] To pierce qualified privilege, however, Plaintiff must produce sufficient *evidence* to

---

[34] *Aflalo,* 2018 WL 3235529 at*1-2.
[35] Amended Complaint (DE 40), ¶ 90.
[36] "The mere presence of an inaccuracy in an internal [] file, if it is not disclosed to a third party, causes no concrete harm. **In cases such as these where allegedly inaccurate or misleading information sits in a company database, the plaintiffs' harm is roughly the same, legally speaking, as if someone wrote a defamatory letter and then stored it in her desk drawer. A letter that is not sent does not harm anyone, no matter how insulting the letter is.**" *TransUnion,* 141 S.Ct. at 2210.
[37] *See,* e.g. Amended Complaint (DE 40), ¶ 90.

rebut the good faith *presumption* that attaches to qualified privileged communications. *Nodar,* 462 So. 2d at 803. He must demonstrate with admissible evidence that the privileged statements were either published in an unprivileged context ("too wide an audience") or that they were published with "common law express malice." *Lefrock,* 77 F. Supp. 3d at 1202 (granting defendant's summary judgment motion because plaintiff had produced "no evidence whatsoever that the statements were made with express malice"). Plaintiff cannot meet either of these thresholds.

### *There is no Evidence of Publication to Too Wide an Audience*

33. Notwithstanding his conclusory allegations that the CERS Report and IRL were published to too "wide an audience,"[38] there is no *evidence* that the CERS Report or the IRL were *published* (**actually sent, read, and received**[39]) outside the *qualified privilege context*—let alone a sufficiently wide audience to demonstrate malice, etc. As outlined above, statements made to managerial or executive employees are not actionable because such statements are not a "publication." *Geddes,* 960 So. 2d at 833. *Lopez,* 1997 WL 401585 at *6. Additionally, even if a published material is defamatory, no liability will attach to the alleged publisher if it was published on an occasion that makes it qualifiedly privileged. *Tampa Bay Downs, Inc.,* 761 So. 2d at 404 (granting summary judgment as to security officer's allegedly defamatory security report).

34. For example, in *Tampa Bay Downs,* the plaintiff appealed the entry of summary on his defamation claim, arguing that a security report sent to others by a security officer was not subject to qualified privilege. *Id.* Florida's Second DCA rejected the plaintiff's argument and affirmed the trial court's determination that the publication of the security report by the security

---

[38] Amended Complaint (DE 40), ¶ 90.
[39] *See also Granda-Centeno,* 489 So. 2d at 142; *Owner's Adjustment Bureau,* 431 So. 2d at 696; *Aflalo,* 2018 WL 3235529 at *4; *TransUnion v. Ramirez,* 141 S.Ct. at 2190.

officer was subject to qualified privilege—even assuming *arguendo* that it contained defamatory content.

> As security director at one member racetrack, **it was his [security officer's] duty to communicate to the other members of the Bureau conduct by persons involved in racetracks and racing that is detrimental to the interests of Bureau members**. As the report was sent only to Bureau members, **it was properly published to a limited group of interested parties.** *Id.*

35. Likewise, in *Shaw v. Reynolds Tobacco,* the Middle District (affirmed by the Eleventh Circuit) dismissed the plaintiff's defamation claim finding the defamatory statement by defendant's employee was subject to qualified privilege as a matter of law. 818 F. Supp. at 1542. The court rejected the plaintiff's inferred publication argument—i.e., that the defendant "must have published the information" to others because of the circumstances – finding that "these allegations are classic examples of hearsay, and have not been considered by this Court since they are incompetent evidence with respect to this crucial element." *Id.*

36. Plaintiff faces the same insurmountable obstacles here. The known recipients of the CERS Report and IRL are all clearly within the scope of qualified privilege, as they are all corporate security personnel duty-bound to review and act on such materials, and there is no evidence that any other identifiable persons without a need to know of the materials ever received or read those materials. *See Shaw,* 818 F. Supp. at 1542; *Tampa Bay Downs,* 761 So. 2d at 404. Plaintiff's conclusory, speculative allegation that the CERS/IRL are accessible ("upon information and belief") to any "unidentified ticketing agent" etc. accessing Clowdus' record in the future is also of no moment.

### *There is no Evidence of Express Malice*

37. As argued above, the qualified privilege attached to the CERS Report and the IRL gives rise to a "presumption of good faith" that Plaintiff can only rebut with evidence "proving

express malice." *Nodar,* 462 So. 2d at 810 (when qualified privilege attaches to a publisher's statements, the "burden of proof is changed, and, in order for the plaintiff to recover, he is called upon affirmatively and expressly to show malice in the publisher"). Proving express malice is a "very high standard to meet." *Shaw,* 818 F. Supp. at 1542; *Nodar,* 462 So. 2d at 810 (express malice requires a **showing of more than a defamer's** "[s]trong, angry, or intemperate words," "hostility or ill will toward the plaintiff," or "personal feelings of indignation[.]"). The Supreme Court of Florida has unequivocally established that, to reach this "high standard," all three elements of express malice **must be shown**—(1) **ill will *and* (2) hostility *and* (3) an evil intention to injure.** *Nodar,* 462 So. 2d at 812 n. 8. Neither incidental gratification of indignation *nor* feelings of "hostility or ill will toward the plaintiff" are sufficient to defeat privilege if the alleged speaker is motivated by a privileged duty or interest. *Id.* at 811-812.

38. In *Nodar*, the Supreme Court held that plaintiff's evidence was insufficient as a matter of law to carry the burden of proving express malice and, therefore, reversed the underlying jury verdict with directions to enter a directed verdict for defendant. The court found that despite the speaker stating (1) that plaintiff was "unqualified" to teach, (2) that she had *harassed and verbally abused* his son, and (3) that her performance as a teacher *was "victimizing" his* son, the plaintiff had not provided sufficient evidence of malice. *Nodar,* 462 So. 2d at 812. The *Nodar* court also rejected the contention that defendant's pre-remark conduct, (including, for example, many months of personal conversations, telephone calls, and letters to the plaintiff's superiors), demonstrated express malice. There is no evidence in the instant case sufficient to meet this standard of proof.

### 1. *No Express Malice as to the CERS Report*

39. With regard to the CERS Report, there is no evidence that the flight attendant's submission of the Report was done with express malice. Flight attendants are required to file CERS reports for *all* safety, security or medical events, including passenger disruption—*all* must be reported via CERS by the involved flight attendant.[40] Merino had no choice but to file the CERS Report. His CERS Report was prompted solely by AA's protocol and nothing else,[41] and he had no option but to submit his CERS Report to fulfill his duties for AA. *See Shaw,* 818 F. Supp. at 1543; *Tampa Bay Downs,* 761 So. 2d at 405 (plaintiff failed to provide sufficient evidence showing express malice where security officer who made defamatory report during course of employment "had a duty to report [such] negative incidents"). As discussed above, Plaintiff cannot satisfy his burden by, *on one hand*, arguing that Merino was acting on AA's behalf when he filed the CERS, while also arguing, *on the other hand*, that Merino was *primarily* motivated by some purpose other than performing his duties.[42]

40. Further, Plaintiff cannot satisfy his burden by merely regurgitating his disagreement with the statements and conclusions contained in Merino's CERS Report. *Nodar,* 462 So. 2d at 810 (a plaintiff cannot simply rely on the untruthfulness of the remarks to prove express malice). Express malice cannot be imputed by the mere words themselves—Plaintiff must provide **extrinsic evidence** as to **why** Merino would be motivated by an "improper purpose" and **why** his *primary motive* was an *evil intent to injure* Plaintiff when he submitted his CERS Report as mandated by AA protocol. *Jarzynka,* 310 F. Supp. at 1268; *Lefrock,* 77 F. Supp. 3d at 1202; *Lozada v. Hobby Lobby Stores, Inc.,* 702 Fed. Appx. 904 (11th Cir. 2017) (granting summary

---

[40] Declaration of Kirby ¶ 5-6.
[41] SUMF #6-7.
[42] *See*, *supra* paragraph 23; *City of Miami v. Simpson,* 172 So. 2d 435, 437 (Fla. 1965).

16

judgment as to intra-corporate defamation claim because employee's coworker did not act with express malice when he stated that plaintiff "intended to shoot up" the store and kill himself). There is no such extrinsic evidence. Indeed, Plaintiff's own deposition testimony reveals that he cannot support the existence of express malice as to Merino. He testified that (1) he does not know Merino ("I couldn't tell you what he looked like if I saw him today"); (2) that he "barely interacted" Merino, "like five seconds"; (3) and that he was not even certain he or Merino understood what each other was "thinking or saying" when they interacted on the aircraft.[43]

41.  In conclusion, there is no evidence that Merino's statements in his CERS Report or his submission of the Report as mandated by AA procedures was *primarily motivated* by the requisite three elements of express malice. For his part, Merino (even in the face of abusive questioning by Plaintiff's counsel in deposition) testified that he did not know Clowdus' name during the incident; that he was "not focusing on one passenger" and that he had "to focus on a lot of people on board."[44] Merino also testified that he was not "sad" nor "glad" about AA's subsequent decisions regarding Clowdus because he was "just doing [his] job."[45] No evidence points to express malice sufficient to rebut the good faith assumption as to the CERS Report. Absent such a showing, summary judgment as to the CERS report is proper.[46] *Water & Sewer Util. Const., Inc. v. Mandarin Utilities, Inc.,* 440 So. 2d 428 (Fla. Dist. Ct. App. 1983) (granting summary judgment where plaintiff had not presented sufficient evidence of express malice to overcome qualified privilege).

---

[43] Deposition of Plaintiff, 12:7-14; 53:7-13.
[44] Deposition of Merino, 111:10-21.
[45] Deposition of Merino, 64:22-65:2; 66:12-67:7. Plaintiff's counsel admitted to getting "frustrated" that, despite asking Merino multiple times, he could not get Merino to change his answer to the question whether he would be "glad" that AA had banned Plaintiff from future flights. *Id.*
[46] Defendant's pending 12(b)(6) Motion to Dismiss (DE 40) also deals with Plaintiff's failure to support with facts his barebones recitation of only the elements of malice.

### 2. *No Express Malice as to the IRL*

42. Plaintiff's theory as to the IRL—that the mere existence of AA's IRL and/or Maldonado's transmission of his IRL Packet to Kirby proves express malice—is an even weaker argument.

43. First, the record evidence demonstrates that all alleged *publications* related to the IRL were limited to obvious safety concerns, mandated by AA policies and conducted within the scope of the investigation of the CERS reports.[47] There is no evidence that this activity was undertaken express malice towards Clowdus who Maldonado, Reddig and Kirby had never even met. The evidence demonstrates that Kirby and Maldonado acted only in regard to their investigatory and security duties, and only when prompted by protocol, their job responsibilities, etc. No evidence can prove express malice as to their communication.

44. Second, as to the theory that the IRL's storage in AA's database is done with express malice, this argument can also be dismissed easily. The idea of express malice is inapposite/irrelevant to materials that have not been published. *Granda-Centeno,* 489 So. 2d at 142; *Transunion LLC v. Ramirez,* 141 S. Ct. 2190, 2210-11 (2021). Plaintiff has provided no evidence that any defamatory *per se* material in the IRL was published outside AA or even outside the managerial and/or executive class. Any argument reading future publication's express malice is of no moment to Plaintiff's plead claim.

### V. CONCLUSION

For the reasons argued above, AA respectfully requests that this Honorable Court grant Defendant's Motion for Summary Judgment as to Plaintiff's libel *per se* claims.

---

[47] SUMF#9-10.

Respectfully Submitted,

                                  **BUCHANAN INGERSOLL & ROONEY PC**
                                  *s/ Kelly H. Kolb*
                                  Kelly H. Kolb, Esq.
                                  Florida Bar Number: 0343330
                                  kelly.kolb@bipc.com
                                  Robert D. Pecchio, Esq.
                                  Florida Bar Number: 1005955
                                  Robert.pecchio@bipc.com
                                  401 East Las Olas Boulevard, Suite 2250
                                  Fort Lauderdale, FL  33301
                                  T:     (954) 703-3944 - F:     (954) 703-3939
                                  *Attorneys for Defendant*

<u>**CERTIFICATE OF SERVICE**</u>

      **I HEREBY CERTIFY** that on this the 5th of August 2022, a true and correct copy of the above and foregoing has been filed with the Clerk of Court using the CM/ECF system.  I FURTHER CERTIFY that the foregoing document is being served this date, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner of those counsel or parties who are not authorized to receive electronically Notices of Electronic filing on the counsel of record or *pro se* parties identified on the attached Service List.

**SERVICE LIST:**

William T. Woodrow III
250 West Main Street, Suite 201
Charlottesville, VA 22902
E-mail: will@stoneandwoodrowlaw.com

Rook Elizabeth Ringer, Esq.
LENTO LAW GROUP
222 San Marco Ave., Ste. C
St. Augustine, FL 32084
E-mail: reringer@lentolawgroup.com

David Pollack
POLLACK LAW FIRM
75 Valencia Avenue, Suite 100
Coral Gables, FL 33134
Tel: (305) 372-5900 / Tel: (855) 275-7378
Tel: (904) 602-9400
E-mail: david@davidpollacklaw.com
*Counsel for Plaintiff*

                                  By:    */s/ Kelly H. Kolb*
                                          Kelly H. Kolb