John Kirby
March 14, 2022

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

------------------------x

TROY CLOWDUS,            *

     Plaintiff,      *

VS.                      *    Civil Action No.:

AMERICAN AIRLINES, INC.  *    1:21-cv-23155-MM

     Defendant.      *

------------------------x

DEPOSITION OF JOHN KIRBY

APPEARING REMOTELY FROM

LOS ANGELES, CALIFORNIA

March 14, 2022

12:56 p.m.

REPORTED BY:

Dawn L. Halcisak, CLR

APPEARING REMOTELY FROM MILLERSVILLE, MARYLAND

U.S. Legal Support | www.uslegalsupport.com

**EXHIBIT "F"**

Page 2

1  REMOTE APPEARANCES
2
3  ON BEHALF OF PLAINTIFF, CLOWDUS:
4      WILLIAM T. WOODROW, ESQUIRE
5      PRO HAC VICE
6      STONE & WOODROW LLP
7      250 West Main Street, Suite 201
8      Charlottesville, Virginia 22902
9      (855) 275-7378
10     will@stoneandwoodrowlaw.com
11
12
13 ON BEHALF OF DEFENDANT, AMERICAN AIRLINES:
14     KELLY KOLB, ESQUIRE
15     LABOR & EMPLOYMENT PRACTICE GROUP
16     401 East Las Olas Boulevard, Suite 2250
17     Ft. Lauderdale, Florida 33301
18     (954) 703 3944 (direct)
19     kelly.kolb@bipc.com
20
21
22

Page 3

               INDEX
Name of Witness                    Page
JOHN KIRBY
Examination
BY MR. WOODROW                     6, 122
BY MR. KOLB                        115


              EXHIBITS
        (Attached to the Transcript.)
Exhibit                            Page
No. A   IRL Packet                 32
No. B   Letter Ban                 38
No. C   Clowdus Complaint          49
No. D   Witness Reports            68
No. E   Customer Service Manual (CSM)  59
No. F   Tour Report                72

Page 4

1  REMOTE PROCEEDINGS
2      IT IS HEREBY STIPULATED AND AGREED that
3  the reading and signing of this deposition are
4  not waived.
5      THE REPORTER: Good afternoon,
6  everyone.
7      The attorneys participating in this
8  deposition acknowledge that I am not physically
9  present in the deposition rooms and that I will
10 be reporting this deposition remotely. They
11 further acknowledge that, in lieu of an oath
12 administered in person, the witness will
13 verbally declare his or her testimony in this
14 matter is under penalty of perjury. The parties
15 and their counsel consent to this arrangement
16 and waive any objections to this manner of
17 reporting.
18     Please indicate your agreement by
19 stating your name, whom you represent, and your
20 agreement on the record, beginning with counsel
21 noticing the deposition.
22     MR. WOODROW: William Woodrow, I

Page 5

1  represent the Plaintiff Troy Clowdus and I agree
2  to that.
3      MR. KOLB: Kelly Kolb for the Defendant
4  American Airlines, we agree as well.
5      THE REPORTER: Okay. Great.
6      THE WITNESS: John Kirby, American
7  Airlines, I agree, as well.
8      THE REPORTER: Okay. Great. Thank you
9  for that.
10     And now for the witness.
11 Will the witness kindly present his or her
12 government-issued identification by holding it
13 up to the video monitor for verification?
14     (Whereupon, at 12:57 p.m., the witness
15 presents government-issued identification and
16 identity verified.)
17     THE REPORTER: Yes. Thank you very
18 much. I'll give you a moment to put that down.
19 That looks like you.
20     And can I ask you to raise your right
21 hand.
22         JOHN KIRBY,

John Kirby
March 14, 2022

Page 6

1  having been duly sworn, was examined, and did
2  testify as follows:
3         THE WITNESS: I do.
4         THE REPORTER: Please state your name,
5  sir, and spell your name for the record.
6         THE WITNESS: John Kirby, J-O-H-N,
7  K-I-R-B-Y.
8         THE REPORTER: Thank you, very much.
9         Please begin, Counsel. I'm going off
10 the video monitor, but I am here.
11         DIRECT EXAMINATION BY COUNSEL FOR
12              PLAINTIFF, CLOWDUS
13 BY MR. WOODROW:
14     Q.  Thank you. Good morning, Mr. Kirby.
15 My name is, Will Woodrow. I'm here on behalf of
16 Troy Clowdus, a passenger who you had reason to
17 provide input on an investigation that was done
18 into him last year. Let me ask you have you
19 ever given a deposition taken before?
20     A.  I have.
21     Q.  Okay. Well, just make sure you let me
22 finish my questions. Make sure you understand

Page 7

1  them before you answer. The reporter needs
2  verbal responses. And just answer to the best
3  of your ability, okay?
4     A.  Okay.
5     Q.  Are you on medication today that might
6  affect your testimony?
7     A.  No.
8     Q.  Okay. So, from the time, if you have
9  given a deposition before, I'm sure you're
10 aware, but like when I ask you questions
11 Mr. Kolb may object. And if he does, that's
12 just to create a record for the judge later.
13 Unless he instructions you specifically not to
14 answer, which would only be if I asked you about
15 privileged information, which I don't intend to
16 do, you just ignore the objection and answer to
17 the best of your ability, okay?
18     A.  Okay.
19     Q.  Okay. I'm going to start just asking a
20 little bit about your background.
21         Did you go to college?
22     A.  I did.

Page 8

1     Q.  Where did you go?
2     A.  I've gone to numerous colleges both
3  in Missouri and in California.
4     Q.  Studied?
5     A.  Law degree criminal justice.
6     Q.  Okay. And did you work in that field?
7     A.  Yep.
8     Q.  Where'd you begin?
9     A.  Well, where to begin? So I worked
10 in the law enforcement field for
11 approximately 30 years, where I retired from
12 that field and started a career in corporate
13 security with American Airlines.
14     Q.  Okay. What did you do in your capacity
15 in law enforcement?
16     A.  In my capacity in law enforcement, I
17 started out in patrol. I worked in jails, I
18 worked investigations. I spent about a third
19 of my career on the joint terrorist task
20 force working with the FBI. I worked on
21 numerous task forces throughout my career
22 span. And the end of my career -- toward the

Page 9

1  end of my career working with the FBI, I
2  spent time working aviation security at the
3  airports.
4     Q.  Okay. What year did you begin with
5  American?
6     A.  2016.
7     Q.  Okay. And what did American hire you
8  to do?
9     A.  I was hired to be the investigator
10 for American Airlines in corporate security.
11     Q.  And is that the position -- is the
12 position that you have today is that the same
13 position that they hired you in, to do?
14     A.  It was not.
15     Q.  So am I correct in understanding that
16 you began in a role similar to Mr. Maldenaldo
17 and now you have risen to be supervisor?
18     A.  I -- not exactly. So I started out
19 in a position such as Mr. Maldenaldo as an
20 investigator. I'm now a regional manager,
21 but not in his region. He's in the Miami
22 region. I'm in the L.A. region.

Page 10

1       (Off record discussion.)
2  BY MR. WOODROW:
3       Q.   So as the regional -- you say you are a
4  regional manager?
5       A.   That's correct.
6       Q.   What do your duties entail?
7       A.   I oversee a region that consists of
8  Chicago, all the airports near there.
9  Phoenix all those airports. L.A. all those
10 airports, and Asia-Pacific, which basically a
11 large portion of Asia and the South Pacific.
12      Q.   And by oversee, what do your duties
13 entail?
14      A.   I oversee a group of investigators
15 who overlook my investigations for those
16 areas.
17      Q.   And what is the subject matter of those
18 investigations? Are those just customer
19 misconduct?
20      A.   You cut out just a little bit. Can
21 you repeat that question, please?
22      Q.   What is the subject matter of those

Page 11

1  investigations? Are those just customer
2  misconducts or broader?
3       A.   No, it's broader.
4       Q.   What sorts of investigations do you do?
5       A.   We look at customer misconduct, we
6  deal government agencies as far as
7  interaction with the airlines and government
8  agencies, such as the CSA. We also oversee
9  the investigations involving any employees
10 who might have done something that would be
11 against American Airlines' policies.
12      Q.   Okay. So if an employee engages in
13 misconduct, you would investigate that, as well?
14      A.   My team would. That's correct.
15      Q.   Okay. And in your role today, what
16 training have you received from American
17 Airlines?
18      A.   On-the-job training from the very
19 get-go. And other than that, we don't have a
20 whole lot of training. We have some legal
21 training from time to time, but there is not
22 a lot of training that the company has

Page 12

1  provided regarding that.
2       Q.   Have you received any training in how
3  to conduct investigations?
4       A.   Throughout my law enforcement
5  career, I conduct hundreds and hundreds of
6  investigations.
7       Q.   American Airlines hasn't provided any
8  such training?
9       A.   I don't believe so, no.
10      Q.   Does American Airlines provide training
11 to the investigators who work for you?
12      A.   We have some training, but it's
13 not -- I don't think so. No. There is some
14 training that we have but it's not
15 necessarily to do our investigations. Most
16 of folks that work for us have all got prior
17 investigative experience.
18      Q.   Okay. Who do you report to?
19      A.   I report to a director in Dallas.
20      Q.   And what's their name?
21      A.   His name is Phil Gilbert.
22      Q.   And in the course of our

Page 13

1  investigations, do you ever have occasion to
2  interact with American's legal department?
3       A.   I do sometimes, yes.
4       Q.   And do you have a counterpart in the
5  legal department?
6       A.   Not necessarily a counterpart, no.
7       Q.   If there's noise, I apologize. There's
8  construction going on in the suite next to mine.
9  So.
10      (Off record discussion.)
11 BY MR. WOODROW:
12      Q.   Do you ever consult with the legal
13 department before taking actions based upon
14 reports that you receive?
15      A.   I do basically let them know what
16 we're looking at, yes.
17      Q.   And do they ever provide input in how
18 they would like to see something handled?
19      A.   They sometimes ask questions, but
20 input, not necessarily.
21      Q.   As an investigator, are you cognizant
22 of assessing legal liability as a component of

John Kirby
March 14, 2022

Page 14

1  your investigation and decisions?
2      A.   Can you ask the question again,
3  please?
4      Q.   Are you cognizant of potential legal
5  liability to American Airlines as you conduct
6  investigations and decide how to proceed?
7      A.   I believe so, yes.
8      Q.   Okay.  All right.  How many
9  investigators report to you?
10     A.   Currently, five.
11     Q.   Okay.  And Mr. Maldonado is not one of
12 those investigators?
13     A.   He is not, no.
14     Q.   How is it that you had occasion to
15 review one of his reports then?
16     A.   I review all of the reports that are
17 submitted to me that deal with the internal
18 refuse list.
19          (Off record discussion.)
20 BY MR. WOODROW:
21     Q.   Okay.  So help me understand that.  Are
22 you saying that for all of American Airlines you

Page 15

1  are in charge of internal refuse list, but you
2  are a regional manager otherwise?
3      A.   Correct.
4      Q.   Okay.  So are you the individual who
5  makes the final decision on whether or not to
6  ban all customers who end up getting banned?
7      A.   I am.
8      Q.   Okay.  Now, when you're investigating
9  that allegation of a felony, do you or do you
10 instruct your investigators to take extra care
11 to determine that you get the results of the
12 investigation, correct?
13     A.   I would say yes.  It would matter if
14 it was felony or misdemeanor, though.  So all
15 of their information should be correct.
16     Q.   Okay.  So if you were to take extra
17 care in investigating a conclusion that a
18 passenger committed a felony, what might that
19 look like?
20          MR. KOLB:  Object to the form.
21          THE WITNESS:  I'm sorry?
22          MR. KOLB:  No, I've made an objection

Page 16

1  to the form of the question.  You can go ahead
2  and answer it, though.
3          THE WITNESS:  Can you please repeat the
4  question?
5  BY MR. WOODROW:
6      Q.   Sure.  If you were to take extra care
7  in an investigation, due to the fact that you
8  were the investigating the allegation of a
9  felony, what would that look like?
10     A.   Well, the investigators should
11 collect every piece of information they have
12 available to them to investigate that case.
13 And once they complete that investigation,
14 they should make a recommendation or at least
15 take that investigation and determine what
16 they need to do next.
17     Q.   Okay.  Describe to me the standard
18 protocol of an investigation into a passenger
19 incident.
20     A.   Are we talking about a passenger who
21 is suspected of something?
22     Q.   Passenger misconduct?

Page 17

1      A.   Yes.
2      Q.   Yes.
3      A.   Okay.  So the first thing that
4  happens is generally those cases go to our
5  security operations bureau in Dallas.  They
6  receive reports in Dallas that allow those
7  cases to be passed out to the correct region.
8  And that region will ensue and start an
9  investigation as to what occurred on that
10 flight or at the gate or in the airport or
11 whatever it might have taken place.
12     Q.   And do you provide any direct input
13 into those investigations?
14     A.   Normally, no.
15     Q.   And do you ever reject the recommended
16 action in the reports that you receive?
17     A.   Can you repeat that again?
18     Q.   When you receive a report, an IRL
19 packet from an investigator, do you ever reject
20 the recommended action of the investigator?
21     A.   Yes.
22     Q.   Give me an example.

John Kirby
March 14, 2022

Page 30

1  passenger PNRs?
2  A. I don't know who all those people
3  who -- they are -- I'm sure it's a long list.
4  Q. So once you've determined that a
5  passenger has committed an assault or some
6  other -- or for some other reason has been
7  banned, where do you document that determination
8  so that he will not be sold a ticket?
9  A. I do not do that. That's not part
10 of my role.
11 Q. Do you know if a travel agency
12 attempted to purchase a ticket, on behalf of a
13 banned customer, if they would be refused?
14 A. If they're on our internal refuse
15 list, I don't know how that process -- I
16 can't answer to that process.
17 Q. Okay. So you don't know at what point
18 in the process that the passenger would be
19 flagged?
20 A. I don't. No.
21 Q. Okay. So what did you do -- what did
22 you do personally in this instance when you

Page 31

1  received Mr. Maldonado's report?
2  A. I reviewed his report and made a
3  determination that Mr. Clowdus belong on our
4  internal refuse list based on his conduct by
5  what he did to the flight on the aircraft.
6  Q. Okay. And what documents did you
7  review in preparation for your deposition today?
8  A. IRL checklist that was sent to me.
9  Q. Is that it?
10 A. I also reviewed, with our attorney,
11 a few other documents that he showed me.
12 Q. And what were those documents?
13 A. One was some type of response that
14 was sent to the company, while the client --
15 your client was in the adverse cart
16 (phonetic), and I can't remember the other
17 two.
18 Q. Okay. When you received the report
19 from Mr. Maldenaldo, did you take any steps to
20 independently investigate that report?
21 A. No.
22 Q. And did anybody other than

Page 32

1  Mr. Maldonado take any steps to investigate it
2  before you made a decision to do ban
3  Mr. Clowdus?
4       MR. KOLB: Objection to form.
5       THE WITNESS: To my knowledge, no.
6  BY MR. WOODROW:
7  Q. Okay. All right. So we're -- I'm
8  going to figure this screen sharing out here.
9  We're going to go to Exhibit A, which is the IRL
10 packet, so you should be familiar with it.
11      (KIRBY Exhibit A marked for
12 identification and attached to the transcript.)
13 BY MR. WOODROW:
14 Q. Okay. Just a couple of questions on
15 this. Do you recognize this?
16 A. Yes.
17 Q. Okay. Is this IRL packet that you
18 reviewed for Mr. Clowdus?
19 A. That's a portion of it, yes.
20 Q. Okay. Is this the first page?
21 A. I don't know if it's the first page
22 or what page it is. But that's the first of

Page 33

1  what I'm looking at.
2  Q. Okay. Is this -- is this the first
3  page of a form that you would see when an
4  investigator completes an IRA packet?
5       What I'm saying is this: Is this the
6  opening -- the opening page in a form that you
7  would fill out?
8  A. It could be? I don't always see it
9  in this typed format.
10 Q. Okay. Could you -- could you read at
11 the top what time this was first published?
12 A. June 10 of 2021, at 12:29 p.m.
13 Q. Okay. And I'm going to go down to the
14 last page. And is this -- is this the -- what
15 is this page?
16 A. That is the internal refuse
17 checklist.
18 Q. Okay. And can you see at the bottom
19 what time this page was generated?
20 A. June 5, 2021 at -- I'm sorry
21 June 11, 2021, at 11:24:02.
22 Q. So this -- is it reasonable to conclude

John Kirby
March 14, 2022

Page 130

1  MR. KOLB: Yes, ma'am.
2  THE REPORTER: Four on the page?
3  MR. KOLB: Yeah, a mini script is fine.
4  THE REPORTER: Yeah. And the exhibits
5  are going to be attached, if you can give them
6  to me.
7  (Whereupon, at 3:21 p.m., the remote
8  deposition of JOHN KIRBY was concluded.)
9           * * * * *

Page 131

1          ACKNOWLEDGMENT OF DEPONENT
2       I, JOHN KIRBY, do hereby acknowledge
3  that I have read and examined the foregoing
4  testimony, and the same is a true, correct and
5  complete transcription of the testimony given by
6  me, and any corrections appear on the attached
7  Errata sheet signed by me.
8
9
10     (DATE)              (SIGNATURE)

Page 132

1  CERTIFICATE OF SHORTHAND REPORTER-NOTARY PUBLIC
2       I, Dawn L. Halcisak, Court Reporter and
3  Notary Public in and for the State of Maryland,
4  the officer before whom the foregoing Remote
5  Deposition was taken, do hereby certify that the
6  foregoing transcript is a true and correct
7  record of the testimony given; that said
8  testimony was taken by me stenographically and
9  thereafter reduced to typewriting under my
10 direction and that I am neither counsel for,
11 related to, nor employed by any of the parties
12 to this case and have no interest, financial or
13 otherwise, in its outcome.
14      IN WITNESS WHEREOF, I have hereunto set
15 my hand and affixed my notarial seal this 28th
16 day of March 2022.
17
18 My commission expires:
19 August 4, 2023
20
21 NOTARY PUBLIC IN AND FOR THE
22 STATE OF MARYLAND

Page 133

1            E R R A T A   S H E E T
2       IN RE: CLOWDUS V. AMERICAN AIRLINES, INC.
3  RETURN BY:
4  ==================================================
5  PAGE    LINE     CORRECTION AND REASON
6  ==================================================
22     (DATE)              (SIGNATURE)