UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| TROY CLOWDUS | : | |
| | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | DOCKET NO.: 1:21cv23155 |
| v. | : | |
| | : | |
| AMERICAN AIRLINES, INC. | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE CERTAIN EVIDENCE
AND INCORPORATED MEMORANDUM OF LAW**

Defendant, American Airlines, Inc. ("**AA**"), through its undersigned counsel, files this Motion in Limine to Exclude Certain Evidence and Incorporated Memorandum of Law to prohibit Plaintiff, Troy Clowdus, and his attorneys and witnesses (collectively, "**Clowdus**"), from presenting evidence to the jury or commenting to the jury regarding certain evidence that is not relevant or is unfairly prejudicial. In support, AA states:

**INTRODUCTION**

1.    This lawsuit arises out of Plaintiff's refusal to comply with a uniformed flight attendant's repeated instructions for Plaintiff (a business class passenger) to stow his carry-on bag in an overhead bin on an international flight, Plaintiff's subsequent assault of that flight attendant with his carry-on bag, and AA's subsequent permanent suspension of Plaintiff's flight privileges with AA. Clowdus' Amended Complaint asserts a single cause of action for defamation *per se* arising out three comments: 1) the flight attendant's on-board comment "you hit me"; 2) the flight attendant's internal AA CERS report (essentially a witness statement)

1

recounting Plaintiff's conduct; and 3) AA's internal communications placing Plaintiff on AA's permanent no-fly list.

2. It is anticipated Clowdus will attempt to introduce certain irrelevant, inflammatory, prejudicial or otherwise inadmissible evidence to support his claim. As detailed below, AA requests the Court to exclude that evidence for the following reasons.

## MEMORANDUM OF LAW

3. Federal Rule of Evidence 401 defines "**relevant evidence**" as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The Eleventh Circuit has held that the resolution of the relevancy question lies firmly within the discretion of the trial judge. *Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 750 F. 2d 1516, 1524 (11th Cir. 1985); *Copeland v. Gulf Oil Corp.*, 672 F. 2d 867, 871 (11th Cir. 1982). If evidence is not relevant, it is not admissible. *See* Fed.R.Evid. 402.

4. Even if evidence may be characterized as relevant, the evidence may still be inadmissible under Federal Rule of Evidence 403. **Rule 403** provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Evidence is prejudicial under Rule 403 where it appeals to an illegitimate basis for persuasion, and thereby goes beyond proving the fact or issue it is offered to prove. *United States v. 0.161 Acres of Land in Birmingham, Ala.*, 837 F.2d 1036, 1041 (11th Cir. 1988). The phrase "unfair prejudice" means an "undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 (Advisory Committee's Notes); S*ee also, Old*

*Chief v. United States*, 519 U.S. 172, 180-81 (1997) (stating that the term "unfair prejudice" concerns the capacity of some relevant evidence "to lure the fact finder into declaring guilt on a ground different from proof specific to the offense charge").

5. As discussed more fully below, Clowdus should be prohibited from testifying, presenting evidence, or referring to evidence that is not relevant to his pleaded claim and/or which unfairly prejudices AA or confuses or misleads the jury. In this regard, the Court should preclude the following evidence and arguments:

### Plaintiff's Untimely Deposition Corrections

6. The transcript of Plaintiff's deposition was provided to Plaintiff's counsel on February 14, 2022. Federal Rule of Civil Procedure 30(e) allowed Plaintiff thirty days – or until March 16, 2022 – within which to make corrections to his deposition transcript. Plaintiff failed to do so by that deadline and his deposition transcript was certified by the court reporter as complete on March 23, 2022. Thereafter, Plaintiff submitted an errata sheet on April 15, 2022, which was untimely. AA served its objection to Plaintiff's errata sheet on April 19, 2022. Plaintiff has not since sought leave to submit an untimely errata sheet.

### References to Flight Attendant Merino Knowing any Passengers on the Flight

7. Plaintiff's counsel has persistently pursued the theory (in depositions, motions, etc.) that the passengers are providing testimony favorable to AA because they are friends with or know Flight Attendant Merino – the flight attendant involved in the incident at issue. Plaintiff has himself propagated this theory in text messages with his Mexican "criminologist" investigating the passengers and Merino [DE 72-1, at page 42 of 77]. Merino and all passengers who have been deposed have denied any such relationship and there is no other evidence of such

a relationship. To suggest such a relationship, therefore, would be for an improper purpose – to mislead the jury.

### References to Flight Attendant Merino Acting as if on Amphetamines

8. Plaintiff's Original Complaint alleged (Plaintiff's Original Complaint [DE 1] at ¶29) that "the unusual intensity and quick rage of the flight attendant are consistent symptoms with the use of amphetamines." Plaintiff's deposition testimony confirmed that he has not expertise with using or assessing persons under the influence of amphetamines (other than his sense that everyone in Miami uses amphetamines) and Plaintiff has not designated any expert witness qualified to provide such an opinion. In addition, Plaintiff has deleted this allegation from his Amended Complaint. There is, therefore, no sound legal or evidentiary basis to permit such testimony, and any such argument would have the irreparable effect of inflaming and prejudicing the jury.

### Any Suggestion or Argument that Flight Attendant Merino Removed Plaintiff

9. Plaintiff has alleged, Plaintiff's counsel has persistently pursued the theory (in depositions, motions, etc.), that Plaintiff was removed from the first aircraft by flight attendant Merino. *See*, Plaintiff's Amended Complaint [DE 40] at ¶¶ 37 and 73. This theory is unsupported by any testimony or evidence. For example, flight attendant Merino has testified that the flight captain made the decision to remove Plaintiff from the aircraft, as the flight captain will testify to at trial. Further, federal law Further, AA's policies and procedures do not authorize a flight attendant to remove a passenger, as the flight captain retains sole authority to make that decision. See, AA Customer Service Manual §4.03(G)(7)(a)(5) - (AA 48-55). Any suggestion to the contrary would be inaccurate, misleading and an improper attempt to attribute to flight attendant Merino decisions which were not his.

### References to Other Passenger Incidents Involving Flight Attendant Merino

10.   This court previously determined that prior remote passenger incidents involving flight attendant Merino were not discoverable [DE 29].  Since those incidents were not discoverable, they are clearly inadmissible and thus any argument regarding or reference as to those incidents would be improper and for an improper purpose of introducing clearly inadmissible evidence.

### Any Suggestion That the AA Flight Attendants Merino and Gray Are Social Friends or Conspired to Write Supporting CERS Reports

11.   Plaintiff has alleged (Plaintiff's Amended Complaint [DE 40] at ¶71) "on information and belief" that "flight attendant Merino enlisted another flight attendant (Deon Gray) to provide a statement supporting his false allegation by providing a corroborating CERS report…" Plaintiff's counsel pursued this same theory in witness depositions including depositions of Merino and Gray, who have denied engaging in such conduct and have denied being social friends. Plaintiff's counsel has also explicitly accused Gray of perjury in her deposition and in Merino's deposition in further pursuit of this theory. The sole support for this theory consists of: 1) variations in the CERS reports submitted by Merino and Gray on non-material aspects of the assault; and 2) a statement from another AA employee (Henriquez) - who did not witness the assault - that he did not see Gray in the area at the time he entered the aircraft, which he addressed in his deposition by stating that he was not looking to see if Gray was in the area at the time and was focused only on Clowdus. In addition, both flight attendants stationed in the rear of the aircraft have testified that Gray never left business class prior to departure. Lastly, the fact that two witness statements show variations in what each recalled from an incident is not evidence of perjury, conspiracy or any other nefarious actions, but reflective of the reality of witness recollection. Thus, while Plaintiff's counsel will certainly focus on these discrepancies,

any argument that they are evidence of a conspiracy to commit perjury is baseless and inflammatory.

### Any Suggestion that Ground Security Coordinator Henriquez Observed the Assault

12. Plaintiff's counsel has erroneously questions various witnesses in deposition using the presumption that the assault was observed by Henriquez. There is no evidence that Mr. Henriquez observed Plaintiff's assault of AA's flight attendant. Mr. Henriquez has testified that he did not observe the assault, but rather entered the aircraft afterwards. Any argument or suggestion to the contrary is without evidentiary basis and would be calculated to mislead the jury and witnesses.

### References to Passenger Federico Quintana Fearing Loss of His Mother's Flight Benefits

13. Plaintiff's counsel has persistently pursued the theory (in depositions, motions, etc.) that Federico Quintana provided testimony favorable to AA because he was flying on his mother's (Ms. Cookson) lifetime AA flight benefits and he feared his mother would lose those benefits if he did otherwise. There is no evidence that Quintana knew anything about the terms and conditions of his mother's flight benefits or that he harbored any concerns that his mother would lose those benefits if he did not support AA in his deposition. The evidence is that Ms. Cookson's lifetime AA flight benefits could not be revoked or impacted in any way by such tangential matters as her son's deposition testimony. Any suggestion to the contrary would be calculated to mislead the jury.

### Any Suggestion That the Flight Attendants' Rushed Departure of the Flight Because Their Pay Commences at Push Back

14. Plaintiff's counsel has pursued the theory that flight attendant Merino was rushing passengers onto the Flight and otherwise being short with them because his pay for the flight did not commenced until all passengers have boarded and the plane pas pushed back from the jet

bridge. Plaintiff has testified in his deposition that he "read this in an article somewhere." Every flight attendant on the flight has testified that their pay is not dependent on when if ever the aircraft pushes back from the jet bridge. Indeed, such a theory is non-sense since whether the flight departs on time or late, the flight is the same duration and thus on time departures have no effect on flight attendant pay. To suggest otherwise, would be to mislead the jury with incompetent evidence.

### Impeachment of Witnesses on Collateral Matters

15. Plaintiff has endeavored to collect "impeachment" evidence as to passenger Federico Quintana on issues collateral to the substance of his relevant testimony, such as his address and citizenship. *See* DE 71-1 at pp. 29, 31, 44-45 of 77. Plaintiff has endeavored to collect "impeachment" evidence as to flight attendant Merino on issues collateral to the substance of his relevant testimony, such as whether he graduated college and whether he works for a Mexican television station. *See* DE 71-1 at pp. 30-32. This Court has previously ruled [DE 29] that evidence purporting to impeach a witness on collateral issues is not discoverable and thus not admissible. *See also*, *Gamble v. United States*, 901 A.2d 159, 172 (D.C. 2006) ("a party may not introduce extrinsic evidence to impeach a witness on collateral issues.").

### Any Suggestion that AA's Counsel has Sought to Bribe or Influence Any Witness

16. Plaintiff has pursued a theory with his Mexican "criminologist" (which Plaintiff's counsel has adopted) that the efforts of defense counsel to contact witnesses in Mexico included efforts to bribe those witnesses. *See,* DE 71-1 at p. 67 of 77. There is no evidence of such an effort and the prejudicial effect of a suggestion that such activity was undertaken would far exceed its probative value.

**Evidence of the Completeness of AA's Investigation Prior to Permanently Banning Plaintiff**

17. Plaintiff has alleged that AA's investigation into his conduct on the flight in question was incomplete. *See* Plaintiff's Amended Complaint [DE 40] at ¶¶ 46, 53-57 and 90. While possibly relevant to his now dismissed negligence and breach of contract claims, these allegations (and any evidence supporting them) are irrelevant to his sole remaining defamation *per se* claim and AA's qualified privilege to that claim. The completeness of the investigation would not tend to make a fact of consequence to that claim more or less probable since it would not speak to the publication of any defamatory material internal contained within the investigative packet, whether any publication was beyond a need to know circle of AA personnel or whether the comments in the investigative packet were made with express malice. Simple mistakes or negligence are not evidence of malice. *Lozada v. Hobby Lobby Stores, Inc.*, 702 Fed. Appx. 904, 915 (11th Cir. 2017)(mistaken statements do not support inference of malice or intent to injure); *Nodar v. Galbreath*, 462 So. 2d 803 (Fla. 1984) (express malice requires proof of intent to injure).

**Evidence Relevant Only to Plaintiff's Dismissed Claims**

18. Plaintiff may seek to introduce evidence of the (im)propriety of his removal from two aircraft on the day at issue, the emotional distress he allegedly suffered from those removals, AA's refusal to honor his ticket for the flight at issue and the emotional distress he allegedly suffered from that circumstance, the economic impact (i.e., lost business opportunities, more expensive travel, etc.) he has allegedly suffered because he is no longer able to fly on AA, and the alleged loss of his accrued American Advantage™ miles. See for example Plaintiff's Amended Complaint [DE 40] at ¶ 61 and foot note 1 – "Plaintiff has had hundreds of thousand

of miles nullified - he cannot use them for flights… - valuable status in AA's loyalty program revoked…")

19. The propriety of his removal and any associated emotional distress are irrelevant to his defamation per se claim, which is based solely on reputational harm from one on-board flight attendant statement and two written statements maintained internally by AA -–the CERS report and the IRL, which Plaintiff was not even aware of until after this lawsuit was filed. Further, Plaintiff's removal was authorized by AA's Customer Service Manual §4.03(G)(7)(a)(5) - (AA 48-55) and was lawful under the Federal permissive removal statute, 42 U.S.C. §44092(b) which "absolves air carriers of liability for refusal to transport a passenger if 'the carrier decides [the passenger] is, or might be, inimical to safety." The permissive removal statute "confers an affirmative privilege to the airline" to remove a passenger (for non-discriminatory reasons) with impunity.[1] *Xiaoyun Lu,* 631 Fed. Appx. at 661. Indeed, "there is no duty on the part of the captain to investigate recommendations by flight attendants for removal of a passenger, and the captain is entitled to take representations of flight attendants at face value." *Id.* This is true even if the removal was prompted by "a battle of the egos [with] the flight attendant making exaggerated or even false representations to the Captain." *Id.* An air carrier's discretion under the permissive removal statute is thus "very broad" so that, generally, "Section 44902(b) does not permit judicial review" of decisions to refuse transportation of a passenger. *Id.*

20. AA's refusal to honor Plaintiff's ticket and any associated emotional distress are relevant only to his now dismissed breach of contract claims.

21. Similarly, the economic impact he has allegedly suffered from being placed on AA's no-fly list is relevant only to his now dismissed breach of contract and negligence claims.

---

[1] It is Plaintiff's burden to show that the permissive removal statute does not apply. *Xiaoyun Lu,* 631 Fed. Appx. at 661; *Carvajal,* 2011 U.S. Dist. LEXIS at *10.

Further, AA has a constitutionally protected right (and one of the "most sacrosanct rights guaranteed by fundamental law") to decline to contract with anyone, save and except for discriminatory or anti-trust reasons which are not at issue in this lawsuit. *Lugassy v Lugassy*, 298 So.3d 657, 659 (Fla. 4th DCA 2020) ("we have held that the freedom of contract entails the freedom not to contract" except as restricted by antitrust, antidiscrimination and other statutes), citing *Miles v City of Edgewater* Police Dept., 190 So.3d 171, 182 (Fla. 1st DCA 2016). Further, Plaintiff has testified that he (individually) does not engage in any business via flights with AA, and that his company has no business interests impacted by Plaintiff's placement on AA's no-fly list – a fact confirmed by Plaintiff's counsel in a January 6, 2022 email.

22.     There is no evidence Plaintiff's American Advantage™ miles were cancelled or revoked and Plaintiff remains an active member of AA's Advantage™ Program continuing to accrue mileage credits. In fact, the evidence is that Plaintiff has continuously cashed out those miles throughout the course of this lawsuit for friends and family. Further, any impact on Plaintiff's Advantage™ account is attributable to his placement on AA's no-fly list (a now dismissed claim) and not to any defamatory statements made the basis of his claims.

### Any Suggestion of Possible Future Publication of Defamatory Material to Third Parties or Within AA

23.     Plaintiff will seek to introduce anecdotal evidence that Delta Airlines is desires to have all airlines share their no-fly lists and/or that it may be possible for others within AA (i.e., ticket agents, gate agents, etc.) to access the CERS Report and IRL referring to Plaintiff. This evidence is not relevant to Plaintiff's defamation *per se* claim since the risk or possibility of future publication of allegedly defamatory material is not actionable - without actual publication to an identifiable person, a defamation claim has not accrued. *Granda-Centeno v. Lara*, 489 So. 2d 142 (Fla. 3rd DCA 1986) (publication requires that the documents be "actually received and

read"—the fact that a defamatory writing was merely sent is insufficient to prove publication); *Owner's Adjustment Bureau, Inc. v. Ott*, 431 So. 2d 695, 696 (Fla. 3rd DCA 1983) (no publication in a libel action where the plaintiff failed to show that the libelous letter had been actually "received or read by any other person").

### AA's Deplaning and/or Permanent Banning of Other Passengers on Other Flights

24. Plaintiff may seek to introduce reports, lawsuits or other evidence of other instances in which AA removed (or did not remove) a passenger from a flight and/or permanently banned (or did not permanently ban) a passenger for assaulting a flight attendant. Such evidence is irrelevant and the probative value of such evidence is outweighed by the danger of unfair prejudice and confusion of the issues and considerations of undue delay and waste of time. Fed. R. Evid. 403. Evidence of such other acts, under different circumstances, involving different flight attendants, etc. would not be probative of the propriety of Plaintiff's claims related to his removal and permanent ban – claims which have since been dismissed with prejudice [DE 32] and they are obviously irrelevant Plaintiff's sole remaining defamation *per se* claim.

25. Further, if evidence of other acts is introduced, AA will be forced to defend and justify its conduct as to each other alleged act, thereby creating a series of "mini trials" that will delay, waste time and, more importantly, divert attention to the jury away from the intent issue that is central to Plaintiff's claims. Therefore, AA submits that Plaintiff should be precluded from introducing evidence of such other acts.

### Argument That AA is Derivatively Liable for the Flight Attendant's Alleged Malice or Resulting Punitive Damages

26. Plaintiff has alleged that flight attendant Merino was acting within the course and scope of his AA employment (*See,* Plaintiff's Amended Complaint [DE 40] at ¶¶ 6, 87) when he

11

knowingly, falsely, and with express malice and intent to injure Plaintiff accused Plaintiff of felony and that he did so to gratify his malevolence. *See,* Plaintiff's Amended Complaint [DE 40] at ¶¶ 43-44, 64-69, 72-73). AA would have no liability under these circumstances since the flight attendant would have departed from his mission with AA to pursue alleged personal interests. *City of Miami v. Simpson,* 172 So. 2d 435, 437 (Fla. 1965). Any argument to the contrary is inconsistent with established law and would be misleading to the jury.

### **Argument That Airlines Have Made Airline Travel Unpleasant**

27.     Plaintiff may seek to suggest that airline travel is unpleasant and difficult and that passengers are routinely mistreated by airlines. Such a suggestion is not evidence and simply appeals to notions of anger, in an attempt to interject notions of social injustice without supporting evidence. Thus, the evidence is inadmissible under Fed.R.Evid. 403 ("The Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of…unfair prejudice, confusing the issues…wasting time…"). Evidence is prejudicial under Rule 403 where it appeals to an illegitimate basis for persuasion, and thereby goes beyond proving the fact or issue it is offered to prove. *United States v. 0.161 Acres of Land in Birmingham, Ala.*, 837 F.2d 1036, 1041 (11th Cir. 1988). The phrase "unfair prejudice" means an "undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 (Advisory Committee's Notes).

**DATED** on this 5th day of August, 2022.

>Respectfully submitted,
>**BUCHANAN INGERSOLL & ROONEY PC**
>s/ Kelly H. Kolb
>Kelly H. Kolb, Esq.
>Florida Bar Number: 0343330
>kelly.kolb@bipc.com
>Robert D. Pecchio, Esq.
>Florida Bar Number: 1005955
>Robert.pecchio@bipc.com
>401 East Las Olas Boulevard, Suite 2250
>Fort Lauderdale, FL  33301
>Telephone:     (954) 703-3944
>Facsimile:      (954) 703-3939
>*Attorneys for Defendant*

## CERTIFICATE OF CONFERENCE

On August 5, 2022 counsel for Defendants conferred with counsel for Plaintiff by telephone regarding Defendant's Motion in Limine. Agreement was reached as to the Limine item discussed in paragraph 7 but no agreement was reached as to the remaining Limine items and thus this Motion is presented to the Court for determination.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this the 5th day of August 2022, a true and correct copy of the above and foregoing has been filed with the Clerk of Court using the CM/ECF system. I FURTHER CERTIFY that the foregoing document is being served this date, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner of those counsel or parties who are not authorized to receive electronically Notices of Electronic filing on the counsel of record or *pro se* parties identified on the attached Service List.

**SERVICE LIST:**

William T. Woodrow III
250 West Main Street, Suite 201
Charlottesville, VA 22902
E-mail: will@stoneandwoodrowlaw.com

Rook Elizabeth Ringer, Esq.
LENTO LAW GROUP
222 San Marco Ave., Ste. C
St. Augustine, FL 32084

E-mail: reringer@lentolawgroup.com

David Pollack
POLLACK LAW FIRM
75 Valencia Avenue, Suite 100
Coral Gables, FL 33134
Tel: (305) 372-5900
Tel: (855) 275-7378
Tel: (904) 602-9400
E-mail: david@davidpollacklaw.com
*Counsel for Plaintiff*

         By: */s/ Kelly H. Kolb*
           Kelly H. Kolb