IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | | |
|---|---|---|
| TROY CLOWDUS | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | DOCKET NO.: 1:21cv23155 |
| v. | : | |
| | : | |
| AMERICAN AIRLINES, INC. | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S CROSS-MOTION FOR SANCTIONS AGAINST PLAINTIFF AND PLAINTIFF'S COUNSEL**

**NOW COMES** Defendant, AMERICAN AIRLINES, INC. (hereinafter, "**AA**" or "**Defendant**"), by and through undersigned counsel and pursuant to this Court's July 26, 2022 Notice [DE 73], and files this Cross-Motion for Sanctions and states as follows:

**INTRODUCTION**

1. Plaintiff's Motion for Sanctions [DE 55] ("**Plaintiff's Motion**") and Plaintiff's Notice of Filing Certified Translated Documents in Support of Plaintiff's Reply to Defendant's Response to Motion for Sanctions [DE 72-1] ("**Plaintiff's Translation**") provide indisputable record proof that Plaintiff and/or Plaintiff's counsel (through Plaintiff's Mexican "criminologist" affiliated with multiple Mexican and U.S. governmental entities) have "persuaded" previously co-operative favorable witnesses to discontinue cooperation with Defendant and to materially change their prior (in one instance, sworn) version of events. This effort follows this Court's comments at a May 24, 2022 hearing that AA lacked any testimony from non-AA affiliated witnesses to support its version of the events at issue, thus telegraphing to Plaintiff's counsel the importance of forestalling AA's access to those witnesses.

2. Indeed, a "new and improved" affidavit was extracted by Plaintiff's "criminologist" from Juan Hernandez-Ramirez ("**Hernandez-Ramirez**") on May 27, 2022 in which he contradicts his own prior (sworn) and subsequent recitations of the events at issue, and indeed his own lawyer's summary of his knowledge. Further, the version of events recounted in the "criminologists" affidavit extracted from Hernandez-Ramirez contradicts the version of events recounted by every other passenger who has been deposed or provided statements in this case. The

possibility that these witnesses now are willing to present for deposition is of little solace since, given the wildly inconsistent sworn statement Hernandez-Ramirez was "persuaded" to provide to Plaintiff's "criminologist" and Jairo Espinoza's ("**Espinoza**") disavowal of his sworn declaration provided to defense counsel, they have been neutralized as effective witnesses – the obvious, foreseeable and intended result of the intervention of Plaintiff's "criminologist" who was (according to Plaintiff's text messages) being goaded and pressured to do just that.

### PLAINTIFF'S WITNESS TAMPERING
### Dr. Eduardo Muriel Melero – Plaintiff's "Criminologist"

3. Plaintiff's criminologist – Dr. Eduardo Muriel Melero ("**Muriel**") - claims to be registered with and/or working for the U.S. Embassy in Mexico City - the U.S. governmental agency with authority to revoke U.S. travel visas for Mexican nationals including Espinoza and Hernandez-Ramirez. His website reveals he is a nationally known criminologist who has worked with multiple Mexican governmental agencies and authorities, investigating kidnappings, murders, mutilations and organ trafficking and that he is a "security advisor" for major business interests in Mexico. He touts his major press and media coverage for his work on behalf of various Mexican governmental entities investigating mass murders and trafficking.

4. For example, his work investigating kidnappings, rapes by local police, mutilations and murders along the Texas/Mexico border for the Attorney General of the Mexican State of Chihuahua was chronicled in "The Daughters of Juarez: A True Story of Serial Murder South of the Border". As recounted in the book, "unlike the FBI investigators, much fanfare surrounded the arrival of Dr. Muriel and his team." Similar to how AA's Mexican counsel, Mauricio Fernandez ("**Fernandez**"), described his law firm and defense counsel's law firm (i.e., "important" and "prestigious") in his June 6 text to Hernandez-Ramirez, Muriel describes his company as the "First and Most Prestigious Investigation Agency" in Mexico. His history with and connections to the Mexican and U.S. governments are easily discovered with a simple Google search if not through print, radio and television media.

5. In March 2022, Plaintiff hired Muriel[1] to locate and "**persuade**"[2] several Mexican passengers on the flight in question to provide accounts of events favorable to Plaintiff's claims.

---

[1] Plaintiff's Translation [DE 72-1] at page 1- **attached as Ex. A**. See also Plaintiff's Translation [DE 72-1] at pp. 2-3 and 23-25.
[2] Plaintiff's Translation [DE 72-1] at page 36 of 77 – Plaintiff's text to his criminologist - "[Muriel]…will you keep working with **the student in Pueblo [Jairo Espinoza]**? Will you **visit him in person** [and] **persuade him to help us**?"- **attached as Ex. B**.

2

**Plaintiff insisted on in-person "persuasion" because he feared "that if [Muriel] call[ed] them by phone…they will say that they did not see or witness anything**."[3] Plaintiff was well aware of Muriel's "skills" in this regard as Muriel bragged about his ability to provide "a complete description of addresses and places they visit regularly, friends, activities and marital status."[4] Muriel's contact with these passengers preceded the May 24, 2022 hearing before this Court, but within the time frame during which Plaintiff's counsel was forcing his theories of the case on and threatening unrepresented non-party witnesses including Federico Quintana, Angelica Cookson, and Elja Keizer.[5] He was also disparaging defense counsel during the same time frame to those unrepresented non-party witnesses. Text messages recently filed by Plaintiff establish that Plaintiff was himself engaged in the same deplorable conduct as his counsel when communicating with his "criminologist."[6] There is every reason to believe the communications by Plaintiff's criminologist with these passengers were similarly improper, offensive and misleading. **Notably, Plaintiff has not produced any communications between his "criminologist" and Espinoza, Hernandez-Ramirez or any other passenger Plaintiff's "criminologist" was hired to "persuade."** Defendant requests that Plaintiff be ordered to produce all communications between his "criminologist" and Espinoza, Hernandez-Ramirez or any other passenger Plaintiff's "criminologist" was hired to "persuade."

### Plaintiff's Unbridled Deployment of his Criminologist

#### Juan Hernandez- Ramirez

6.  Defense counsel's office interviewed Hernandez-Ramirez on February 28, 2022[7] and sent him a draft declaration to sign on March 1, 2022 accurately stating his recounting of events on the flight at issue.[8] Plaintiff's Motion posits that Hernandez-Ramirez did not sign AA's draft declaration "because it did not accurately reflect what he told the representative from

---

[3] Plaintiff's Translation [DE 72-1] at page 9 of 77 - **attached as Ex. N.**
[4] Plaintiff's Translation [DE 72-1] at page 6 of 77 – **attached as Ex. P**.
[5] March 9, 2022 email from Plaintiff's counsel to Federico Quintana, May 2 & 4, 2022 emails from Plaintiff's counsel to Angelica Cookson and March 8, 2022 email from Plaintiff's counsel to Elja Keizer, **attached as composite Ex. C**.
[6] Plaintiff's Translation [DE 72-1] at page 29 of 77 ("this witness [Quintana] is committing perjury] with respect to where he lives); page 31 of 77 ("he [Merino] says he now works for TV Azteca but I am almost certain that this is not true…if he does not work there, it is worth more than $850 [and] will prove his is a liar"); page 42 of 77 ("he [Quintana] is a friend of the flight attendant [Merino]..he lied about what he saw and lied about his father…"); and page 67 of 77 ("I think that the airline hired the Mexican firm in order to bribe Juan {Hernandez-Ramirez] and Jairo [Espinoza] for their testimony.") – **attached as composite Ex. D**.
[7] Plaintiff's Motion [DE 55] at p. 5; Pecchio declaration **attached as Ex. E**
[8] March 1, 2022 email (and translation) to Hernandez-Ramirez **attached as Ex. F**

American."[9] Plaintiff's Motion concedes (and defense counsel have represented that) Hernandez-Ramirez never told defense counsel anything of the sort;[10] Hernandez-Ramirez' May 27, 2022 affidavit obtained by Plaintiff's criminologist says no such thing;[11] and his June 8, 2022 email to Plaintiff's "criminologist" fails to identify a single material inaccuracy or omission.[12] However, Hernandez-Ramirez' June 8, 2022 email does vaguely suggest he declined to sign the draft declaration because it was inaccurate. With the production of Plaintiff's text messages with his "criminologist," we now know why Hernandez-Ramirez' made this false claim in his email – it was *fed to him on June 8, 2022 – the same day as his email - by Plaintiff's "criminologist" with the explicit knowledge of and acquiescence by Plaintiff*.[13] This known manipulation of Hernandez-Ramirez on June 8 flies in the face of Plaintiff's self-serving purported May 24 email to his "criminologist" urging him not to "coach" witnesses.[14] There is no record evidence this email was ever sent to, received by or read by Plaintiff's "criminologist." Further, by knowingly filing and relying on Hernandez-Ramirez' June 8, 2022 email containing the "criminologist's" implanted false statement, Plaintiff's counsel has violated Florida Rule of Professional Conduct, Rule 4-3.3(4) – "A lawyer shall not knowingly…offer evidence that the lawyer knows to be false."

7. A side by side comparison[15] of AA's March 1, 2022 draft declaration for Hernandez-Ramirez,[16] his June 8, 2022 email to Plaintiff's criminologist (summarizing his recollection of events on the flight),[17] and the *intervening* May 27, 2022 signed affidavit obtained by Plaintiff's criminologist[18] reveals that, **with respect to the critical issue on which Plaintiff's "criminologist" was hired to "persuade" Hernandez-Ramirez** (i.e., whether he heard the "you hit me" comment), AA's draft declaration is identical to the Hernandez-Ramirez' email summary, both of which sharply and materially deviate from the affidavit extracted by Plaintiff's

---

[9] Plaintiff's Motion [DE 55] at p. 5, and Ex. C [DE 55-3], ¶ 10; see also Plaintiff's Reply to Defendant's Response to Motion for Sanctions [DE 66] at p. 4.
[10] Plaintiff's Motion [DE 55] at p. 5 – "he decided not to reply" to AA's transmission of the draft affidavit. See also, Pecchio declaration attached as Ex. E and Kolb declaration **attached as Ex. G**.
[11] Plaintiff's Motion [DE 55], Ex. B [DE 55-2] – **attached as Ex H**.
[12] Plaintiff's Motion [DE 55], Ex. D [DE 55-4] – **attached as Ex. I**.
[13] Plaintiff's Translation [DE 72-1] at page 62 of 77 - **attached as Ex. O** – Muriel text to Plaintiff: "better than what you want, I am going, <u>in some way</u>, to ask [Hernandez-Ramriez] to tell us…that <u>he did not sign anything because he did not agree with what they sent him as a declaration</u> and…that <u>he never accepted or informed anyone what happened on the plane that day</u>…"
[14] May 24, 2022 email from Plaintiff to E. Muriel [DE 66-3].
[15] Side by side comparison **attached as Ex. J**.
[16] Draft Hernandez-Ramirez declaration, **attached as Ex. K**.
[17] Plaintiff's Motion [DE 55], Ex. D [DE 55-4] – attached as Ex. I.
[18] Plaintiff's Motion [DE 55], Ex. B [DE 55-2] – attached as Ex H.

4

"criminologist" on the critical issue of publication. Moreover, with respect to the critical issue of publication, AA's draft declaration and Hernandez-Ramirez' June 8, 2022 email summary are consistent with the July 4, 2022 summary of Hernandez-Ramirez' version of events provided by his attorney – i.e., he heard nothing.[19] In sum, at Plaintiff's insistence that his criminologist "personally meet" with Hernandez-Ramirez and "persuade" him to "help us," Plaintiff's "criminologist" obtained a sworn affidavit from Hernandez-Ramirez which contradicts every description of events Hernandez-Ramirez (and his attorney) have ever provided on the one issue critical to the survival of Plaintiff's sole remaining claim - publication.[20] Further, by knowingly filing and relying on Hernandez-Ramirez' May 27, 2002 affidavit (extracted by Plaintiff's "criminologist") in which Hernandez-Ramirez falsely claims he heard the flight attendant's "you hit me" statement, heard Plaintiff apologize and had numerous other conversations with the flight attendant about Plaintiff's assault, Plaintiff's counsel has violated Florida Rule of Professional Conduct, Rule 4-3.3(4) – "A lawyer shall not knowingly…offer evidence that the lawyer knows to be false."

8. Second, Plaintiff's "criminologist" was so "persuasive" in extracting Hernandez-Ramirez' cooperation that he prevailed on Hernandez-Ramirez to misrepresent to AA's Mexican counsel his willingness to be involved in this case at all. Specifically, in a June 6-7, 2022 email exchange between AA's Mexican counsel (Fernandez) and Hernandez-Ramirez, Hernandez-Ramirez responds that he is busy and did not want to be involved.[21] However, as Plaintiff's Motion makes clear, Hernandez-Ramirez was *deeply involved with Plaintiff's criminologist* at that time, having sat for interviews with the criminologist between May 8 and May 27, 2022,[22] having provided an affidavit on May 27, 2022[23] and having provided his text messages with Fernandez on June 8[24] - – *just one day after he told Fernandez he did not want to be involved.* Nevertheless, Hernandez-Ramirez felt compelled to conceal from AA's Mexican counsel that deep and

---

[19] July 4, 2022 email from Letter from Julio Cesar Ramirez y Villafana [DE 66-7] – "Juan Pablo Hernandez Ramirez…had no knowledge of [events on the aircraft] because he was sleeping at the time of the incident…"
[20] This Court's April 29, 2022 Dismissal Order [DE 32] at p. 8 stated that "Plaintiff has failed to adequately allege publication- both for Defendant's statements onboard the flight and Defendant's intra-corporate communications."
[21] Text string between Hernandez-Ramirez and Fernandez with an English translation is **attached as Ex. L**.
[22] Plaintiff's Motion [DE 55], Ex. C [DE 55-3], ¶¶ 5-6.
[23] Plaintiff's Motion [DE 55], Ex. C [DE 55-3], ¶ 7 and Ex. H attached hereto
[24] Plaintiff's Motion [DE 55], Ex. C [DE 55-3], ¶ 10. See also, Plaintiff's Translation [DE 72-1] at page 59 of 77 – **attached as Ex. Q**.

continuing involvement with Plaintiff's "criminologist," despite his unfettered cooperation with AA *just months earlier*.[25]

9.  The only known intervening circumstance which could plausibly explain Hernandez-Ramirez' refusal to continue cooperating with defense counsel, his 180 degree change of his version of events on the one issue critical to Plaintiff's claim and his willingness to misrepresent his level of involvement in this case to AA's Mexican counsel is his contact by and "persuasive" communications with Plaintiff's "criminologist."[26] This is no coincidence. It is direct proof of witness tampering – directed by Plaintiff – by a "criminologist" who is unwilling to present for deposition[27] or produce his communications with anyone he has "personally met" with to "persuade."

<u>Jairo Espinoza</u>

10. Plaintiff's "criminologist" was also hired[28] to "personally meet" with and "persuade" Espinoza[29] to provide accounts of events favorable to Plaintiff's claims. Plaintiff's "criminologist" located Espinoza on May 5, 2022.[30] Any communications between Plaintiff's criminologist and Espinoza would be just as troublesome as the criminologist's communications with Hernandez-Ramirez, as argued above in paragraph 6. Just as Hernandez-Ramirez has discontinued his cooperation with defense counsel and completely changed his version of events following his communications with Plaintiff's "criminologist," Espinoza stopped communicating with defense counsel immediately after his contact with the "criminologist" even though he had earlier agreed (in March 2022) to sit for deposition.[31] Fortunately, the criminologist was not as persuasive in trying to manipulate Espinoza as he was with Hernandez-Ramirez. On the critical issue of whether Espinoza heard the flight attendant's "you hit me" statement, his July 1, 2022

---

[25] Pecchio declaration attached as Ex. E.
[26] Mauricio Fernandez's (AA's counsel in Mexico) attempted communications with Hernandez-Ramirez occurred *after* Plaintiff's "criminologist" obtained the May 27, 2022 affidavit from Hernandez-Ramirez, the first occurring on May 31, 2022.
[27] Plaintiff's Translation [DE 72-1] at page 18 of 77 – **attached as Ex. R.**
[28] Plaintiff's Translation [DE 72-1] at page 1 of 77 - attached as Ex. A; Plaintiff's Motion [DE 55], Ex. C [DE 55-3] at ¶3.
[29] Plaintiff's Translation [DE 72-1] at page 36 of 77 – Plaintiff's text to his criminologist - "[Muriel]…will you keep working with the student in Pueblo [Jairo Espinoza]? Will you visit him in person [and] persuade him to help us?" - attached as Ex. B.
[30] Plaintiff's Translation [DE 72-1] at page 34 of 77 - **attached as Ex. M**.
[31] Pecchio declaration attached as Ex. E.

affidavit[32] confirms the accuracy of the declaration he executed for defense counsel in March, 2022.[33]

11. However, Espinoza now claims he wants the signed declaration he executed for defense counsel in March, 2022 to be invalidated because his "English is not very good overall and there were some words [he] did not understand" when the declaration was provided to him.[34] To the contrary, when Espinoza was interviewed by defense counsel's practice assistant (who is fluent in Spanish), Espinoza demonstrated that he spoke and understood English and he never voiced any need for a translation or a concern that he was not understanding what was being discussed.[35]

12. As with Hernandez-Ramirez, the only known intervening circumstance which could plausibly explain Espinoza's refusal to continue cooperating with defense counsel is his contact by and "persuasive" communications with Plaintiff's "criminologist." Again, this is no coincidence. It is direct proof of witness tampering – directed by Plaintiff – by a "criminologist" who is unwilling to present for deposition or produce his communications with anyone he has "personally met" with to "persuade."

13. Of the thousands of attorneys and investigators available in Mexico, Plaintiff chose the most high profile, well known "criminologist" investigator in Mexico - and one with close ties to both the U.S. and Mexican governments in investigating mass murders, mutilations, rapes by law enforcement officers and disappearances. It does not strain credulity to conclude that the simple fact of Muriel's introduction to Hernandez-Ramirez and Espinoza (without more) would have been sufficient impetus for these previously cooperative young witnesses to: 1) to discontinue cooperation with AA; 2) to cause Hernandez-Ramirez to misrepresent his desire not to be involved; and 3) to cause Hernandez-Ramirez to change his story 180 degrees on the one issue (publication) critical to the thin survival of Plaintiff's remaining claim. Further, as the July 4, 2022 email from counsel for Hernandez-Ramirez and Espinoza makes clear, it was the involvement of Plaintiff's "criminologist" which caused them to retain counsel for protection.[36]

<u>Federico Quintana</u>

---

[32] Plaintiff's Reply to Defendant's Response to Motion for Sanctions, Ex F [DE 66-6] at p. 5 – "I could not listen to what [the flight attendant and the Plaintiff] were saying because I had earphones on…"
[33] Espinoza Declaration of Intent [DE 66-6] at p. 5.
[34] July 1, 2022 Espinoza affidavit [DE 66-6] at pp. 5-6.
[35] Declaration of Sonia San Martin – **attached as Ex. AA.**
[36] July 4, 2022 email from Letter from Julio Cesar Ramirez y Villafana [DE 66-7] at p. 2 of 6 – "Hernandez-Ramirez [and]… Espinoza…requested my help to address the issue related to the call from Eduardo Muriel…"

14. Mr. Quintana was a passenger on the flight in question and has provided deposition testimony that he observed Plaintiff assault AA's flight attendant. He also testified that he provides English tutoring lessons in Mexico City. Plaintiff's "criminologist" was also hired to probe Mr. Quintana's background for impeachment evidence. Specifically, Plaintiff's "criminologist" was instructed by Plaintiff to "do a full investigation and background report" on Mr. Quintana.[37] Plaintiff's instructions were accompanied by intentional misrepresentations that Mr. Quintana "was a friend of the flight attendant" who was assaulted,[38] and that Mr. Quintana "lives in Miami [and] is a United States resident."[39] Plaintiff went so far as to instruct his "criminologist" to engage in what can only fairly be characterized as an entrapment scheme whereby the "criminologist" would "make some arrangements so that a young woman can call [Quintana] and ask him…for English lessons [paid by Plaintiff] to find out where he lives…"[40] Countering, Plaintiff's "criminologist" suggested that he could "send him a gift in order to find him…"[41] – all for the purpose of "impeaching" Quintana on the issue of his correct address.

**PLAINTIFF'S VIOLATION OF THE PARTIES' CONFIDENTIALITY AGREEMENT**

15. The level of dishonesty and chicanery evidenced by Plaintiff's own texts with respect to relevant and material witnesses is compounded by the fact that Plaintiff and/or Plaintiff's counsel unleashed their "criminologist" on these witnesses by disclosing the witness' personal contact information to the "criminologist" and (unbelievably) publicly in violation of the parties' **Confidentiality Agreement, attached as Ex. X.** Specifically, the Confidentiality Agreement allows "discovery materials" (defined in paragraph 1(b) to include Rule 26 Disclosures) to be labeled "Confidential" (paragraphs 3 and 4(a)). The Agreement prohibits disclosure of confidential discovery materials except to a limited list of persons including (as relevant to Plaintiff's disclosure) "experts and consultants…who are retained or consulted by counsel of record for any Party concerning the preparation and/or trial of this Lawsuit" (paragraph 5(a)). The Confidentiality Agreement was signed by William Woodrow on behalf of the Plaintiff on December 14, 2021.

---

[37] Plaintiff's Translation [DE 72-1] at page 20 and 24 of 77 - **attached as Ex. S.**
[38] Plaintiff's Translation [DE 72-1] at page 42 of 77 – **attached as Ex. T**. Both Quintana and the flight attendant have testified in deposition that they did not and do not know each other and there is no evidence to the contrary.
[39] Plaintiff's Translation [DE 72-1] at page 31 of 77 – **attached as Ex. U.** Quintana and his mother (Ms. Cookson) testified in deposition that Quintana has never "lived" in the U.S. but has visited for brief periods of time and Mr. Quintana testified in deposition that he is a Mexican national residing in Mexico City. There is no evidence to the contrary.
[40] Plaintiff's Translation [DE 72-1] at page 44 of 77 – **attached as Ex. V.**
[41] Plaintiff's Translation [DE 72-1] at page 45 of 77 – **attached as Ex. W.**

16. AA's March 2, 2022 Fifth Amended Rule 26 Disclosures[42] labeled the contact information for Espinoza, Hernandez-Ramirez, Quintana, and two other Mexican national passengers as **CONFIDENTIAL.** Plaintiff's text messages reveal he disclosed the confidential contact information for all five witnesses to his "criminologist" – in some instances, cutting and pasting excerpts of AA's Fifth Amended Rule 26 Disclosures of the witness' contact information **including the CONFIDENTIAL designation for that information**.[43] Plaintiff's counsel have disavowed any involvement with hiring or speaking with Plaintiff's "criminologist"[44] – although this claim flies in the face of their assertion that communications with the criminologist are covered by the attorney work product privilege.[45] Since Plaintiff's "criminologist" was not retained or consulted by Plaintiff's counsel of record, Plaintiff's disclosure of the confidential witness contact information to his "criminologist" violated the terms of the parties' Confidentiality Agreement. Plaintiff's violation of the Confidentiality Agreement was intentional since he was fully aware that the information was labeled confidential and is charged with knowledge of the existence of the Confidentiality Agreement and its terms.

17. Moreover, Plaintiff's and his counsel's public disclosure of the witness' confidential contact information – with not one but two public filings in this case[46] - also violates the terms of the Confidentiality Agreement (paragraph 5(e)) since there was no need for the Court to access that confidential information "in connection with the proceedings in this lawsuit." Indeed, the public disclosure of the witness' personal contact information appears to have been a purely gratuitous act by an out of control litigant and his counsel.

## REQUESTED RELIEF
### Summary of the Harm Occasioned by Plaintiff's "Criminologist"

18. Through the unbridled work of his "criminologist" selected, encouraged and managed by Plaintiff, Plaintiff has irrevocably altered the factual landscape of this case by obstructing AA's access to and effectively neutralizing the usefulness and effectiveness of two non-AA affiliated witnesses this Court suggested were critical to resolution of the factual dispute

---

[42] Redacted version of AA's March 2, 2022 Fifth Amended Rule 26 Disclosure is **attached as Ex. Y**.
[43] Plaintiff's Translation [DE 72-1] at pp. 2-3 and 23-25. Plaintiff's Translation [DE 72-1] at page 29 of 77 – attached as Ex. D.
[44] Plaintiff's Reply to AA's Response to Plaintiff's Motion for Sanctions [DE 66] at fn. 2.
[45] Plaintiff's Reply to Defendant's Response to Motion for Sanctions [DE 66] at footnote 3 – "Although Clowdus' communications with [Muriel] are likely protected by the work produce and investigator privileges…"
[46] DE 66-4, pages 2-3, 23-24 and 29 of 77, and DE 77-1, 2-3, 23-24 and 29 of 77.

at issue in this case - publication. Plaintiff's actions were intentional, calculated and effective in that:

- Plaintiff hired his "criminologist to "persuade" critical witnesses to provide accounts of events favorable to Plaintiff's claims;

- Plaintiff hand-picked a "criminologist" who is nationally known for working with various Mexican governmental entities investigating kidnappings, murders, mutilations, etc. and some known to work for the U.S. Embassy empowered to revoke the U.S. travel visas of the witnesses – i.e., someone whose mere introduction would be sufficiently "persuasive" to extract the desired favorable version of events;

- Plaintiff insisted his "criminologist" conduct in-person "persuasion" fearing that telephonic contact would not be sufficiently "persuasive;"

- Plaintiff facilitated his "criminologist's" persuasive efforts by unlawfully disclosing the witness' contact information in violation of the parties' Confidentiality Agreement;

- Through the face to face "persuasive" efforts of Plaintiff's criminologist, Hernandez-Ramirez was "persuaded" to provide an affidavit contradicting every description of events Hernandez-Ramirez has ever provided (before and after the execution of the affidavit), including his attorney's summary of what Hernandez-Ramirez saw and hear, on the one issue critical to the survival of Plaintiff's sole remaining claim – publication;

- Plaintiff's "criminologist" was so "persuasive" in extracting Hernandez-Ramirez' cooperation that he prevailed on Hernandez-Ramirez (with Plaintiff's knowledge and consent) to falsely state in an email (now filed with this Court) that he did not sign a draft declaration provided by defense counsel because it was materially inaccurate;

- Prior to the intervention of Plaintiff's "criminologist," Hernandez-Ramirez and Espinoza were cooperating with AA's defense of this case as both had consented to telephonic interviews (in which both confirmed they did not hear any statements by the AA flight attendant) and Espinoza had signed a declaration accurately summarizing his version of events and had agreed to sit for deposition;

- Following the intervention of Plaintiff's "criminologist" just 90 days after defense counsel's last contact, both Hernandez-Ramirez and Espinoza have discontinued their prior cooperation with defense counsel;

- Following the intervention of Plaintiff's "criminologist" just 90 days after defense counsel's last contact, Hernandez-Ramirez has changed his recollection of events from "I did not hear anything" (confirmed in his June 8, 2022 email to Plaintiff's criminologist) to "I heard 'you hit me' and I heard the passenger apologize";

10

- Following the intervention of Plaintiff's "criminologist" just 90 days after defense counsel's last contact, Espinoza now disavows the declaration he provided to defense counsel.[47]

**Responsible Parties**

19. There is, therefore, a clear record of willful discovery abuse through witness tampering (facilitated by Plaintiff's and Plaintiff counsel's violation of the parties' Confidentiality Agreement) directed by Plaintiff and obstruction of AA's access to relevant and material witnesses. To now – after the "criminologist's" persuasive efforts have achieved the desired effect - depose Hernandez-Ramirez and Espinoza would be to run a fool's errand given their wildly and irreconcilably inconsistent sworn statements.  They no longer have any credibility - the obvious, foreseeable and perhaps intended result of the intervention of Plaintiff's "criminologist." This resulting harm – neutralization of two critical witnesses *identified by this Court* – cannot be remedied.

20. Further, while Plaintiff's counsel have denied hiring or encouraging Plaintiff's "criminologist" to engage in witness tampering,[48] they have carefully not denied ongoing knowledge of his activities or the results of those activities, nor have they denied that they directed or oversaw Plaintiff's handling of his "criminologist."  Indeed, they cannot since the record before this Court confirms Plaintiff was keeping his counsel fully apprised of the deployment of his "criminologist" and the results of his "persuasive" work on Hernandez-Ramirez and Espinoza.[49] Plaintiff's counsel are obviously relying on these persuasive results in their Motion seeking sanctions against defense counsel. They have, therefore, ratified and adopted the criminologist's "work" and (inferentially, if not actually) the methods he utilized to obtain those results. They cannot plausibly accept the results of his "work" and simultaneously claim to be (willfully) ignorant of his methods. Further, since Plaintiff's counsel cannot, through their client or their client's "criminologist," violate or attempt to violate the Florida Rules of Professional Conduct,

---

[47] Espinoza July 1, 2022 affidavit [DE 66-6] at p. 6 – "…I want the statement that was pre-made by American Airlines and sent to me in PDF format be invalidated…"

[48] David Pollack declaration at ¶4 [DE 66-1] – "I have never directed or encouraged Eduardo Muriel…to...influence the testimony of nay witness in this case…"; Declaration of William Woodrow at ¶4 [DE 66-2] – "I have never directed or encouraged Eduardo Muriel…to...influence the testimony of nay witness in this case…".

[49] Plaintiff's Translation [DE 72-1] at page 29 of 77 – attached at Ex. D ("…it would be very useful for my attorney if you could find…Federico Quintana…"); Plaintiff's Translation [DE 72-1] at pages 47-52, 59-60 and 74 of 77 – **attached as Ex. Z** (criminologist's forwarding of Fernandez emails with Hernandez-Ramirez and Espinoza, later forwarded by Plaintiff to his counsel and made an exhibit to Plaintiff's Motion [DE 55]; David Pollack declaration at ¶¶ 6-7 [DE 66-1] –"On June 13, 2002, I spoke with Eduardo Muriel to verify the facts contained in the Motion for Sanctions…[and] prepared a verified declaration for Mr. Muriel to sign."

11

the obstructionist efforts of and witness tampering by Plaintiff and his "criminologist" are those of Plaintiff's counsel.[50]

21. Unlawfully obstructing another party's access to evidence relevant to a pending action, or assisting another to do so, is a violation of Florida Rule of Professional Conduct 4-3.4(a)[51] and ABA Model Rule 3.4(f).[52] It is undisputed that Espinoza and Hernandez-Ramirez have (or had) relevant and material testimony relating to this pending action. It is undisputed that, following the intervention of Plaintiff's criminologist, both witnesses have discontinued communicating with and cooperating with AA's defense counsel, thus obstructing AA's ability to access their testimony. It is undisputed that, following the intervention of Plaintiff's criminologist, both witnesses have materially changed their version of events, rendering them useless as effective witnesses. It is undisputed, therefore, that Plaintiff's counsel have violated Florida Rule 4-3.4 and Model Rule 3.4 for which this Court retains the inherent power to fashion an appropriate remedy even in the absence of a finding of bad faith. *Harlan v Lewis, et. al,* 982 F.2d 1255, 1260 (8th Cir. 1993). Regardless, where a Court concludes that a party has obstructed an adversary's access to relevant and material evidence, a finding of bad faith is implicit. *Id*.

### Requested Relief

22. This Court's inherent power to address fraud on the Court by presentation of doctored of false evidence is unquestioned. *Chambers v NASCO, Inc.,* 501 U.S. 32, 46 (1991); *Aoude v Mobil Oil Corp.*, 892 F.2d 1115, 1119 (1st Cir. 1989); *Tesar v Potter*, No. CIVA 9:05-00956, 2007 WL 2783386 at *8 (D.S.C. Sept. 12, 2007)("dishonest litigants have a distinct advantage over their honest adversaries, for the victimized opponent winds up…consuming substantial resources to respond to and 'undo' the victimizer [sic] lies and distortions'"). "

23. Where, as here, a party is responsible for willful discovery abuse, particularly where that discovery abuse obstructs the adverse party's access to relevant and material witnesses, death penalty sanctions are warranted. *Betty K Agencies, Ltd. v M/V Monada*, 432 F.3d 1333, 1338 (11th Cir. 2005). Since the misconduct recited above "relates to the pivotal or linchpin issue in the case"

---

[50] Florida Rule of Professional Conduct 4-8.4(a) – "A lawyer shall not…violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or *do so through the acts of another*."
[51] Florida Rule of Professional Conduct 4-3.4 – A" lawyer must not: (a) *unlawfully obstruct another party's access to evidence* or otherwise unlawfully alter, destroy, or conceal a document or other material that the lawyer knows or reasonably should know is relevant to a pending or a reasonably foreseeable proceeding; *nor counsel or assist another person to do any such act*."
[52] ABA Model Rule 4.3 – "A lawyer shall not…(f) request a person other than a client to refrain from voluntarily giving relevant information to another party unless…."

– i.e., publication - this Court may dismiss this action as a sanction pursuant to its inherent power. *Qantum Comms. Corp. v. Star Broadcasting, Inc.,* 473 F.Supp.2d 1249, 1269 (S.D. Fla. 2007). See also, *United States v Shaffer Equip. Co.*, 111 F.3d 450, 462 (4th Cir. 1993)("When a party deceives a court or abuses the process to a level that us utterly inconsistent with the orderly administration of justice or undermines the integrity of the process, the court has the inherent power to dismiss the action."

24.     Death penalty sanctions against Plaintiff are appropriate here since: 1) Plaintiff himself guided, knew of and (at least) passively accepted the benefits of his "criminologist's" "persuasive" efforts to alter witness testimony to such an extent that Hernandez-Ramirez's own attorney confirms the falsity of the May 27, 2022 affidavit his client provided to Plaintiff's "criminologist"; 2) The degree of Plaintiff's wrongdoing is self-evident – he knowingly obtained and allowed his counsel to present to this Court Hernandez-Ramirez's May 27, 2022 affidavit which falsely claims he heard the flight attendant say "you hit me" and heard the Plaintiff apologize, and which falsely claims he had a discussion with the flight attendant about the entire event – statements which the witness' confirm are false; 3) the prejudice to the judicial system is severe – false evidence has been knowingly submitted to the Court and is the basis of Plaintiff's Motion for Sanctions against defense counsel; 4) the prejudice to AA is unquestioned as AA and its counsel has been forced to expend substantial sums defending themselves against a specious Motion for Sanctions propped by demonstrably false evidence; 5) There are no sanctions short of dismissal which could remedy the harm done or punish/deter such conduct in the future, particularly since the majority of the misconduct was by Plaintiff himself and he is unlikely to participate in litigation in the future.

25.     These concerns plus the fact that the misconduct discussed above goes to the merits of the case (and indeed has altered the facts of the case) combined with the reality that no lesser sanctions such as monetary fines can remedy or sufficiently punish or deter such conduct, strongly supports death penalty sanctions against Plaintiff. *Quiroz v. Superior Bldg. Maint., Inc.*, No. 06-21594-CIV, 2008 WL 3540599 *5 (S.D. Fla. Aug. 12, 2008)("This Court finds that **monetary sanctions fail to address the severity of Mr. Quiroz's acts of witness tampering and perjury,** which threaten the public's trust in our system of justice and disparage the core values for which it stands" "**Litigants should not be left with the impression that they can abuse the judicial process** and opposing parties by **fabricating evidence concerning the core of their case and**

**simply pay a fine to absolve their misdeeds**; "There is also an absence of any non-monetary sanction short of dismissal that is an appropriate response to Mr. Quiroz's acts."). See also, *Smart v. City of Miami Beach, Fla.*, 933 F. Supp. 2d 1366, 1380 (S.D. Fla. 2013), aff'd, 567 F. App'x 820 (11th Cir. 2014)(dismissal affirmed where Plaintiff attempted to alter witness testimony); *Benjamin v BWIA Airlines*, No. 07-20017-CIV-, 2009 WL 10667416 at *7 (S.D. Fla. Jan. 13, 2009)(ordering dismissal and award of fees when Plaintiff used fabricated documents). Thus, Defendant requests this Court strike Plaintiff's Amended Complaint and enter an order of dismissal with prejudice pursuant to the Court's inherent power.

26. Assuming the Court finds that the record does not support death penalty sanctions against Plaintiff, Defendant requests an order requiring Plaintiff and his counsel to produce all communications between Plaintiff's "criminologist" and all witnesses he has interviewed for this case, within such time as this Court deems appropriate, and to defer ruling on this Motion until an appropriate time after production of the communications.

27. At a minimum, however, Defendant requests an order: 1) precluding Plaintiff's use of the any declarations or affidavits obtained from either witness by Plaintiff, Plaintiff's counsel or Plaintiff's criminologist;[53] 2) for an adverse jury instruction that Plaintiff and/or Plaintiff's counsel have obstructed AA's access to relevant and material witnesses Espinoza and Hernandez-Ramirez;[54] 3) allowing AA's counsel to read to the jury, over any hearsay or other objections, the signed declaration it obtained from Espinoza and the portions of the unsigned Hernandez-Ramirez declaration he has adopted; and 4) such other remedial measures this Court deems appropriate under its inherent power. Fed.R.Civ.P. 37(b)(2)(A)(i) and (ii).

## CONCLUSION

For the reasons argued above, AA respectfully requests that this Honorable Court grant Defendant's Cross-Motion for Sanctions.

---

[53] *Immuno Vital, Inc. v Telemundo Group, Inc.*, 203 F.R.D. 561, 566-567 (S.D. Fla. 2001, Judge Moore) ("In addition, courts have stricken affidavit testimony where a party gives affidavit testimony but refuses to allow deposition questioning to test the veracity of the affidavit"; striking witness whose deposition sanctioned party declined to facilitate).

[54] Id, at p. 574 ("In addition, some courts have decided to instruct the jury as to negative inferences that should be drawn from violation of discovery orders, in lieu of striking the infracting party's pleadings. However, courts and commentators have noted that 'adverse inference instructions are one of the least severe sanctions which the court can impose and, therefore, often have very little deterrent effect.'").

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7(a)(3)

Undersigned counsel hereby certifies that he conferred with both counsel for Plaintiff by telephone on July 6, 2022. On August 5, 2022, the undersigned sent Plaintiff's counsel a draft of this motion and conferred with Plaintiff's counsel on August 8, 2022 in an effort to resolve the issues presented in this Cross-Motion. No agreement could be reached and, therefore, this Motion is presented as a contested Motion.

Respectfully Submitted,

                                                     **BUCHANAN INGERSOLL & ROONEY PC**

                                                   *s/ Kelly H. Kolb*
                                                   Kelly H. Kolb, Esq.
                                                   Florida Bar Number: 0343330
                                                   kelly.kolb@bipc.com
                                                   Robert D. Pecchio, Esq.
                                                   Florida Bar Number: 1005955
                                                   Robert.pecchio@bipc.com
                                                   401 East Las Olas Boulevard, Suite 2250
                                                   Fort Lauderdale, FL  33301
                                                   Telephone:    (954) 703-3944
                                                   Facsimile:    (954) 703-3939
                                                   *Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

     **I HEREBY CERTIFY** that on this 8th day of August 2022, a true and correct copy of the above and foregoing has been filed with the Clerk of Court using the CM/ECF system. I FURTHER CERTIFY that the foregoing document is being served this date, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner of those counsel or parties who are not authorized to receive electronically Notices of Electronic filing on the counsel of record or *pro se* parties identified on the attached Service List.

**SERVICE LIST:**

William T. Woodrow III
250 West Main Street, Suite 201
Charlottesville, VA 22902
E-mail: will@stoneandwoodrowlaw.com

Rook Elizabeth Ringer, Esq.
LENTO LAW GROUP
222 San Marco Ave., Ste. C
St. Augustine, FL 32084
Tel: (855) 275-7378
Tel: (904) 602-9400
E-mail: reringer@lentolawgroup.com

David H. Pollack, Esq.
THE LAW OFFICE OF DAVID H. POLLACK, LLC
75 Valencia Avenue, Suite 100
Coral Gables, FL 33134
Tel. No. 305-372-5900
Fax No. 305-372-5904
david@davidpollacklaw.com
*Counsel for Plaintiff*

                                                                 By:   */s/ Kelly H. Kolb*
                                                                               Kelly H. Kolb