IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| TROY CLOWDUS, | CIVIL ACTION |
| Plaintiff, | DOCKET NO.: 1:21cv23155 |
| v. | |
| AMERICAN AIRLINES, INC. | |
| Defendant. | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S OMNIBUS MOTION IN LIMINE**

Defendant, AMERICAN AIRLINES, INC., (hereinafter, "**AA**" or "**Defendant**"), by and through its undersigned counsel, files its Response to Plaintiff's Omnibus Motion in Limine [DE 80] ("**Motion**") and asserts the following:

**To Allow Juan Hernandez-Ramirez and Jairo Espinosa to Testify Remotely
or by Deposition or by Declaration**

1. Given the shenanigans involved with Plaintiff's "criminologist" "persuading" both witnesses to disavow their prior sworn or written statements, discontinue cooperation with AA at his instruction for that reason alone, conceal their active cooperation with Plaintiff while misrepresenting to AA their desire not to be involved in this case, and the willingness of both witnesses to adopt the misrepresentations fed to them by the "criminologist,"[1] there are no adequate safeguards which could be put in place to insure that further witness tampering would not occur during a remote deposition or remote testimony. *VMS-Global USA, LLC v Nobel Environmental Tech.,* 339 F.R.D. 690, 692 (S.D. Fla. 2021) (to allow remote testimony, the Court

---

[1] See Defendant's Cross-Motion for Sanctions [DE 83] at ¶¶1-2, 5-13.

must impose appropriate safeguards including protecting the witness from influence by other persons present with the witness). Both witnesses have demonstrated they are effectively controlled by the "criminologist" - whether the criminologist is present with them, sitting outside their homes or miles away when they testify.[2]

2. Second, there is no good cause to permit these witnesses to provide remote testimony under any circumstances. *Id* at 692 (discussing the "good cause" required by Fed. R. Civ. Pro. 43). Both witnesses travel to the United States regularly. Indeed, Hernandez-Ramirez was located by Plaintiff's "criminologist" on May 5, 2022 in Austin, Texas[3] and extracted his May 27, 2022 affidavit (which contradicts every version – sworn and unsworn – of events he has ever provided[4]) from him when he was in Austin, Texas.[5] The round trip travel costs between Mexico City to Miami are minimal.[6] Further, the scheduling and COVID issues supporting good cause for remote testimony in *VMS-Global USA, LLC* are not present in this case.

3. Third, the discovery period closed on July 15, 2022. Plaintiff made no effort to depose these witnesses during the discovery period, and obstructed AA's efforts to do so.[7] Plaintiff has not filed a motion to re-open discovery. Indeed, Plaintiff could not file such a motion in good faith. Plaintiff was provided the phone numbers for these witnesses on January 12, 2022 and March

---

[2] Defendant's Cross-Motion for Sanctions [DE 83] at ¶¶3-5 (describing the criminologist's reach of influence throughout Mexico and the U.S.).
[3] Plaintiff's Reply to AA's Response to His Motion for Sanctions [DE 66] at p. 5 ("On May 5, 2022, Muriel texted Clowdus that he had located Hernandez-Ramirez in Texas…");
[4] Defendant's Cross-Motion for Sanctions [DE 83] at ¶7.
[5] Ex E to Plaintiff's Reply to AA's Response to His Motion for Sanctions [DE 66-5].
[6] Kayak fares range from $303.00 to $434.00 for non-stop flights for the first 2 days of trial. https://www.kayak.com/flights/MEX-MIA/2022-10-24/2022-10-25?fs=stops=0&sort=bestflight_a
[7] Defendant's Cross-Motion for Sanctions [DE 83] at ¶¶8-9 (Plaintiff's persuader/criminologist caused Hernandez-Ramirez to misrepresent to AA's counsel his willingness to be involved in this case, while simultaneously sitting for interviews and executing an affidavit for Plaintiff's persuader/criminologist) and ¶¶10 and 12 (Espinoza discontinued communications and cooperation with AA's counsel shortly after he was "persuaded" by Plaintiff's criminologist).

2, 2022,[8] and was provided their email addresses on February 24, 2022.[9] However, Plaintiff did not contact these witnesses until May 5, 2022[10] and did not interview either witness until May 8, 2022.[11] Thus, Plaintiff was provided the witnesses' phone numbers 184 to 135 days before the discovery cut-off and their email addresses 141 days before the discovery cut-off, and Plaintiff was able to interview both witnesses 68 days before the discovery cut-off. Thus, there is undisputed record evidence of an unexplained lack of diligence in conducting discovery with respect to these witnesses.

    4. Plaintiff's Motion, however, argues that "newly discovered evidence surrounding their statements to AA and the communications [with] AA's Mexican counsel" demonstrate good cause for reopening discovery.[12] Other than blowing the "AA Mexican counsel text message dog whistle," Plaintiff offers nothing more than this conclusory argument - because the facts are otherwise. Plaintiff obtained the "communications" between the witnesses and AA's Mexican counsel on June 7, 2022[13] - 38 days before the discovery cut-off. Plaintiff did nothing to depose these witnesses within time frame. More importantly, however, Plaintiff is not calling these witnesses to testify about the non-substantive (side show) communications they had with AA's Mexican counsel, but rather to provide testimony that one or both of them heard the flight attendant's "you hit me" statement onboard the aircraft. Plaintiff's counsel knew about this development on May 27, 2022 – 49 days before the discovery cut-off - when Hernandez-Ramirez

---

[8] Defendant's Response to Plaintiff's Motion for Sanctions [DE 61] at ¶¶17 and 18.
[9] Defendant's Response to Plaintiff's Motion for Sanctions [DE 61] at ¶19.
[10] Defendant's Cross-Motion for Sanctions [DE 83] at ¶10; Plaintiff's Notice of Filing Certified Translated Documents in Support of Plaintiff's Reply to Defendant's Response to Motion for Sanctions [DE 72-1] at pp. 34-35 of 77.
[11] Defendant's Cross-Motion for Sanctions [DE 83] at ¶8.
[12] Plaintiff's Motion [DE 80], p. 2.
[13] Plaintiff's Motion for Sanctions [DE 55] at p. 15; Plaintiff's Notice of Filing Certified Translated Documents in Support of Plaintiff's Reply to Defendant's Response to Motion for Sanctions [DE 72-1] at pp. 47-52 of 77.

provided his affidavit extracted by Plaintiff's persuader/criminologist.[14]  Thus, there is simply no good cause to allow either witness to be deposed by Plaintiff at this time.

5.     Fourth, there is no good cause stated in the Motion to permit these witnesses to testify through their declarations "as a sanction for AA's tampering." There is no evidence AA or its counsel tampered with any witness. The singular text message from AA's Mexican counsel the basis of Plaintiff's Motion for Sanctions [DE 55] was not authorized, and was not intended to influence any witness' testimony (AA already had their testimony in sworn declarations or summaries) but to set up their depositions, and did not have the effect of influencing any witness' testimony.[15]  These facts are undisputed. Contrasted to that communication, the text messages between Plaintiff and his persuader/criminologist incontrovertibly prove: 1) Plaintiff hired his criminologist not to interview these witnesses but with the specific intent to "persuade" them (in person) to provide favorable testimony to "save [his] life";[16] 2) Plaintiff had actual knowledge of the coercive efforts used by his criminologist to obtain this favorable testimony;[17] and 3) the coercive efforts of Plaintiff's persuader/criminologist were successful in convincing both witnesses to disavow their prior sworn or written statements, to provide the contrary "favorable testimony" Plaintiff needed on the one issue critical to the survival of his defamation per se claim and to cause the witnesses to discontinue cooperation with defense counsel.[18]  Under these circumstances, to allow the July 1, 2022 Espinoza declaration and the May 27, 2022 Hernandez-Ramirez declarations into evidence would serve no purpose but to mislead the jury with obviously

---

[14] Ex E to Plaintiff's Reply to AA's Response to His Motion for Sanctions [DE 66-5].
[15] Defendant's Response to Plaintiff's Motion for Sanctions [DE 61] at ¶¶4-6.
[16] Defendant's Cross-Motion for Sanctions [DE 83] at ¶5; Plaintiff's Notice of Filing Certified Translated Documents in Support of Plaintiff's Reply to Defendant's Response to Motion for Sanctions [DE 72-1] at p. 9 of 77
[17] Defendant's Cross-Motion for Sanctions [DE 83] at ¶¶6-13.
[18] Defendant's Cross-Motion for Sanctions [DE 83] at ¶¶1-2, 7-13, 18.

manufactured evidence. Fed.R.Evid. 403 (relevant evidence may be excluded if its probative valued is substantially outweighed by the danger of misleading the jury); *U.S. v Holland*, 223 Fed. App'x 891, 897 (11th Cir. 2007). That Plaintiff's counsel is now seeking permission to introduce this manufactured evidence is itself an ethical lapse and thus sanctionable. Florida Rule of Professional Conduct, Rule 4- 3.3(4) – "A lawyer shall not knowingly…offer evidence that the lawyer knows to be false."  Plaintiff's witness tampering aside, the declarations are obviously hearsay and inadmissible under ordinary circumstances.

6.   Fifth, and most importantly, Plaintiff has irrevocably altered the factual landscape of this case by effectively neutralizing the usefulness and effectiveness (for either party) of two non-AA affiliated witnesses this Court suggested were critical to this case.  It is undisputed that, following the intervention of Plaintiff's criminologist, both witnesses have materially changed their sworn or written version of events, rendering them useless as effective witnesses. To now – after the "criminologist's" persuasive efforts have achieved the desired effect - depose Hernandez-Ramirez and Espinoza or allow them to testify would be to run a fool's errand given their wildly and irreconcilably inconsistent sworn statements. This resulting harm – neutralization of two critical witnesses identified by this Court – cannot be remedied for the reasons stated in AA's Cross-Motion for Sanctions.

### Allow Barbara LeBron to Testify Remotely

7.   While AA has no objection to allowing Ms. LeBron to testify remotely, AA reserves its evidentiary objections to her proposed testimony.

### Exclude AA Declarations for Espinoza and Hernandez-Ramirez

8.   Plaintiff's perfunctory statement that AA reached out to these two passengers "shortly after it banned Clowdus from flying on AA" is more than slightly inaccurate.  Plaintiff

was banned on June 22, 2021.[19] Hernandez-Ramirez and Espinoza were first interviewed by defense counsel's office on February 28, 2022[20] - some *8 months* after Plaintiff was banned for assaulting AA's flight attendant.

9. Plaintiff's argument that the declarations AA obtained from these two witnesses should be excluded because the witnesses have now disavowed their declarations since they were inaccurate ignores the indisputable evidence Plaintiff himself has (inexplicably) filed. This evidence proves that the sole reason these witnesses have disavowed their earlier sworn and written statements was because of the efforts of Plaintiff's persuader/criminologist, and shows that there are no material discrepancies between AA's declarations and the witnesses' recitation of events they have provided without the influence of Plaintiff's persuader/criminologist.

10. With respect to Hernandez-Ramirez, the record before the Court is undisputed that: 1) he never told defense counsel's office that his draft declaration was in inaccurate in any way;[21] 2) he was afforded the opportunity to make any desired edits to his draft affidavit – unconstrained by any "persuasion";[22] 3) his May 27, 2022 affidavit extracted by Plaintiff's criminologist does not say the draft declaration provided to him by AA was inaccurate;[23] 4) his **June 8, 2022** email to Plaintiff's "criminologist" fails to identify a single material inaccuracy or omission;[24] and 5) he first voiced any concern with the accuracy of AA's draft declaration <u>only after Plaintiff's persuader/criminologist texted Plaintiff</u> **on June 8, 2022** that "I am going, *in some way*, to ask *[Hernandez-Ramriez] to tell us…that he did not sign anything because he did not agree with what*

---

[19] Plaintiff's First Amended Complaint [DE 40] at ¶¶ 8 and 52;
[20] Plaintiff's Motion for Sanctions [DE 55] at p. 5; Defendant's Cross-Motion for Sanctions, Ex. E [DE 83-5] at ¶¶4-7.
[21] Defendant's Cross-Motion for Sanctions, Ex. E [DE 83-5] at ¶13 and Ex. G [DE 83-7] at ¶5.
[22] Defendant's Cross-Motion for Sanctions, Ex. F [DE 83-6].
[23] Defendant's Cross-Motion for Sanctions, Ex. H [DE 83-8].
[24] Defendant's Cross-Motion for Sanctions, Ex. I [DE 83-9].

*they sent him as a declaration and…that he never accepted or informed anyone what happened on the plane that day…"*[25] which Hernandez-Ramirez did later that <u>same day</u>. Notably, Hernandez-Ramirez has not (contrary to Plaintiff's argument) claimed in any sworn document that AA's draft declaration was inaccurate. Indeed, he cannot since, on the critical issue of whether he heard the "you hit me" comment, AA's draft declaration is identical to the Hernandez-Ramirez' June 8, 2022 email summary, both of which sharply and materially deviate from the May 27, 2022 affidavit extracted by Plaintiff's persuader/criminologist.[26]

11.     With respect to Espinoza, his newfound concern with the accuracy of the declaration he signed for AA – as with Hernandez-Ramirez – only surfaced after he was manipulated by Plaintiff's persuader/criminologist and after Espinoza had agreed just 90 days earlier to sit for deposition and recite the facts stated in his signed declaration.[27]

12.     In sum, the declarations AA provided to and received from both witnesses are consistent with every other recitation of events they have ever provided anyone, save and except for their newfound (implanted) concerns with inaccuracies and the May 27, 2022 affidavit from Hernandez-Ramirez which is so falsified it is inconsistent with his own lawyer's summary of what he saw and heard. Contrary to Plaintiff's arguments, it is easy to tell which party has "unclean hands" and which party has not only "attempted to manipulate" witness testimony, but succeeded in doing so using a persuader/criminologist who is not available for cross examination before a jury in this case.

---

[25] Defendant's Cross-Motion for Sanctions, Ex. O [DE 83-15].
[26] Defendant's Cross-Motion for Sanctions [DE 83] at ¶7.
[27] Defendant's Cross-Motion for Sanctions, Ex. E [DE 83-5] at ¶¶10, 12, 14.

**Exclude Quintana Deposition Testimony and Declaration**

13. Much of Plaintiff's argument pertaining to this In Limine item is premised on the notion that AA had a duty to alert Plaintiff's counsel to the fact that Quintana's father worked for AA and that he was flying on his mother's AA buddy pass. AA had no such duty. To the contrary, it was the obligation of Plaintiff's counsel to investigate Quintana in lieu of expecting AA's counsel to his job for him. Plaintiff's Motion cites no authority to the contrary.

14. The next theory posited in Plaintiff's Motion is that "AA sought to 'prep' [Ms. Cookson, Mr. Quintana's mother] for her deposition with Quintana also on the call" and that this somehow warrants the wholesale exclusion of her son's (Quintana's) deposition testimony. This argument is particularly troublesome since Plaintiff's counsel – both of them – have been previously disabused of such an absurd idea. First, Ms. Cookson was represented by independent counsel before and at her deposition and she testified in her deposition that she had no communications with AA's counsel while she was represented by her counsel. Second, this In Limine item appears to focus on an April 26, 2022 email (*9 weeks prior to her July 1, 2022 deposition – before she was represented by counsel*) from AA's counsel to Ms. Cookson seeking to set up a call with her and Mr. Quintana. Contrary to the conspiracy theory presented in Plaintiff's Motion, this email was an effort to discuss if Cookson or Quintana had any objection to AA producing the AA flight benefit, pension, health insurance, credit union, etc. financial data requested in Plaintiff's Third Set of Interrogatories and Fifth Request for Production served on April 11, 2022 – proving yet again that no good deed goes unpunished by Plaintiff's counsel in this case.

15. Plaintiff's argument that all evidence from Mr. Quintana should be excluded because he has given false testimony finds no record support, defies common sense and if granted

would result in clear reversible error. That Plaintiff's counsel believes Quintana provided false testimony does not make it so, any more than defense counsel's belief that Plaintiff has provided false testimony makes Plaintiff's testimony irreconcilably false. Further, the evaluation of witness testimony as truthful or false is a jury's function and not the province of a unilateral declaration by opposing counsel. Third, since Plaintiff's Motion hints that Plaintiff is well equipped to impeach Quintana, there would not appear to be any need to strike his testimony.

16.     Plaintiff's Motion next suggests that Quintana's testimony should be disallowed as a sanction because AA had "tainted" Quintana. Notably, Plaintiff's Motion fails to articulate how or in what manner or to what degree AA tainted Quintana or why wholesale exclusion of his testimony would be an appropriate remedy for such conduct. Plaintiff appears to be covering for his counsel's own lack of adequate preparation in advance of a deposition of a witness he knew would be critical of Plaintiff's claims in this lawsuit. That circumstance provides no basis for excluding Quintana's deposition testimony.

## References to Witness Tampering

17.     Evidence of witness tampering has no place before a jury. Instead, such matters would seem to be the province of a State Bar grievance committee, this Court's Committee on Attorney Admissions, Peer Review and Attorney Grievance and/or this Court's inherent authority to dismiss lawsuits tainted by such conduct of a party, or the party's counsel.

18.     Defense counsel has no intention of gratuitously seeking to introduce the evidence outlined in AA's Cross-Motion for Sanctions [DE 83] for the sole purpose of impugning Plaintiff or his counsel. However, use of such evidence to impeach Hernandez-Ramirez and/or Espinoza is proper, relevant and material since the evidence makes crystal clear that they were "persuaded" to provide false testimony and falsely claim that their prior sworn statements to AA were inaccurate

by Plaintiff's "criminologist." Whether that evidence indirectly impugns Plaintiff and/or his counsel is of no moment since it is their conduct which has created the need to use the evidence in the first place. One cannot escape the natural and foreseeable consequences – no matter how uncomfortable - of one's own conduct.

Respectfully Submitted,
**BUCHANAN INGERSOLL & ROONEY PC**
*s/ Kelly Kolb*
Kelly H. Kolb, Esq.
Florida Bar Number: 0343330
kelly.kolb@bipc.com
Robert D. Pecchio, Esq.
Florida Bar Number: 1005955
Robert.pecchio@bipc.com
401 East Las Olas Boulevard, Suite 2250
Fort Lauderdale, FL  33301
T:(954) 703-3944     F:(954) 703-3939
*Attorneys for Defendant American Airlines, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of August, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified in the manner specified, either via Transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically.

By: */s/ Kelly Kolb*
     Kelly Kolb

**SERVICE LIST:**
William T. Woodrow, III
Stone & Woodrow, LLP
Lewis & Clark Plaza
250 West Main Street, Suite 201
Charlottesville, VA 22902
Tel: (855) 275-7378
E-mail: will@stoneandwoodrowlaw.com
*Counsel for Plaintiff*

Rook Elizabeth Ringer, Esq.
Lento Law Group, P.A.
222 San Marco Ave., Ste. C
*Counsel for Plaintiff*

David Pollack, Esq.
Stone & Woodrow LLP Law Offices of David Pollack, LLP
250 West Main St. Suite 201 75 Valencia Avenue, Ste. 100
Charlottesville, VA 22902 Coral Gables, FL 33134
will@stoneandwoodrowlaw.com David@davidpollacklaw.com
Fax: 646 873-7529 Fax: (305) 372-5904
Voice: 855-275-7378 Voice: (305) 372-5900

*Counsel for Plaintiff*