UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

TROY CLOWDUS,

                Plaintiff,                              CASE NO: 2021-cv-23155

v.

AMERICAN AIRLINES, INC.,

                Defendant.

_____/

**PLAINTIFF'S REPLY TO AMERICAN AIRLINES, INC'S
RESPONSE TO HIS MOTION IN LIMINE**

Plaintiff TROY CLOWDUS ("Clowdus"), by and through undersigned counsel, files his Reply to AMERICAN AIRLINES, INC's ("AA")'s Response to His Motion *in Limine.*

**Introduction**

Apart from both parties' Motions in *Limine*, there are six motions pending before the Court: Defendant's Motion to Dismiss (ECF #51), Plaintiff's Motion for Sanctions (ECF #55), Plaintiff's Motion to Compel (ECF #64), Plaintiff's Motion to Compel (ECF #79), Defendant's Motion for Summary Judgment (ECF #81), and Defendant's Cross Motion for Sanctions (ECF #83). The outcome of these motions will have an impact upon the Court's pre-trial evidentiary orders for both parties. Of these pending motions, the outcome of the Plaintiff's Motion for Sanctions will largely determine the Court's disposition of the Plaintiff's evidentiary requests in the instant motion.

If the Court agrees with the Plaintiff that American Airlines' behavior with respect to the passengers Juan Ramirez, Jairo Espinoza, and Federico Quintana, is sanctionable, then there is a strong basis for granting some of the Plaintiff's evidentiary requests. Even if the Court does not ultimately sanction AA for its behavior, the Court may still, as a result of its evidentiary hearing on the Plaintiff's Motion for Sanctions, find a basis to grant the Plaintiff's requests if it decides that the witnesses Ramirez and Espinoza would be of benefit to the jury and if it conversely decides that Quintana's testimony is unreliable and would not.

In its Response, AA aggressively pushes its own theory of sanctions against the Plaintiff that it argued in Response to Plaintiff's Motion for Sanctions. There is no need to further exhaust the Court by re-litigating that motion here. As such, the Plaintiff declines to engage with AA's hyperbolic language and wild spin that it markets here in response to the instant motion. The Plaintiff's Motion for Sanctions is fully briefed, and the Plaintiff will not do so again here.

In connection with the Plaintiff's Motion for Sanctions, the Plaintiff voluntarily – and without being asked – provided the Court with every communication that he has had with his investigator. In contrast, AA is fighting a motion to compel disclosure of its own communications. AA makes strong accusations based upon these voluntarily provided messages, but the Plaintiff has nothing to hide. That's why he provided them. He is available to testify at an evidentiary hearing and so too is his investigator. Additionally, two of the three passengers in question have retained independent counsel and are also willing to be questioned by the Court. The Court can decide in that hearing if AA's histrionics ring true or not. Then the Court can determine the proper disposition of the Plaintiff's requests herein.

### *AA's April 26, 2022 Email to Angelica Cookson*

There is one claim that is made by AA for the first time in its Response to this motion that is too inaccurate to leave unaddressed. On April 26, 2022, Robert Peccio, an attorney for AA sent Angelica Cookson and Federico Quintana (her son) an email:

> Federico and Ms. Cookson:
>
> Please find the documents attached sent to us by Mr. Clowdus' counsel, and let's set up a call for tomorrow at 3PM EST. If you would like to speak before then, please feel free to give me a call at any time at 216-276-0498.
>
> Best Regards,
> Robert D. Pecchio
> Associate

Ms. Cookson responded to Robert Peccio the next day, informing him that she would need to reschedule the call, to which he responded: "That's fine." And "**Have we heard from Federico**?" When he received no answer, Mr. Peccio asked again: "**Can you make sure that Federico can attend?**" See ECF #66-15, Exh. O.

2

AA now claims in its Response to the present motion that this call was only for the purpose of discussing Clowdus' requested discovery – the particulars of Ms. Cookson's death benefits accruing from her late husband. AA claims this to be so because the email occurred nine weeks prior to when her deposition actually occurred, and by that time she was represented by counsel. What AA conveniently leaves out is that at the time Mr. Peccio sent his email, Ms. Cookson was not represented by counsel *and she was scheduled to appear for deposition on May 2, 2022, just 5 days later*.[1]

The point is not whether Mr. Peccio actually succeeded in having a call with Cookson and Federico to harmonize their testimony: the point whether *that was his intent*. If so, it is a clear insight into how AA has handled these third-party witnesses as if they were its own – seeking to prep them in ways that would be inappropriate *even if they were AA employees*. Along with the other numerous irregularities that Plaintiff has pointed out in his motion for sanctions, it casts further serious doubt upon the probative value of either the statement that AA procured from Mr. Quintana or his deposition testimony.

AA's explanation for its insistence that Federico be on the call with his mother to discuss Ms. Cookson's benefits is unconvincing. As AA testified to Magistrate Louis at the May 24, 2022 hearing on AA's Motion for Sanctions, there was no reason for it: the benefits should not be discoverable because they "are not his benefits." "The mother controls those benefits, not him." And "Mr. Quintana has no access and no right" to any of them. Transcript of May 24, 2022 Hearing before Magistrate Judge Lauren Louis [D.E. 53], p. 23, ll. 17-20; p. 6, ll. 22-24; p. 20, ll. 1-5 ["Trans."].

Why then was it so important that Quintana be on the call *to discuss his mothers benefits* five days before her deposition? The claim is simply not credible.[2] The commonsense

---

[1] As the Court may recall, Ms. Cookson would not ultimately be deposed before the Court rejected AA's attempts to convince the Court to disallow the Plaintiff to take her deposition and ruled against an expedited motion for sanctions against Plaintiff's attorney for his attempts to schedule the deposition. Only in anticipation of the motion hearing did Ms. Cookson retain counsel recommended to her by AA's counsel. The Plaintiff's counsel was provided this contact information by AA's counsel at the actual hearing itself.

[2] Federico had sat for deposition two months earlier and given AA a signed statement as well. The Plaintiff had subsequently called his credibility into question – hence, the mother's deposition. Ms. Cookson was already compelled by subpoena to bring records of her benefits to the deposition, so Plaintiff's request to AA was moot, not due for another 14 days, and AA refused it in its entirety until ordered by the Court to produce it on May 24, 2022 – regardless of Ms. Cookson's and *Federico's* "permission." This was no oversight by the Court because, of course, Cookson's permission had no bearing upon a valid discovery request.

explanation is too obvious not to be believed: AA wanted Federico on the phone to harmonize Cookson's upcoming testimony with his own.

### *Additional Items not Dependent on the Outcome of Plaintiff's Motion for Sanctions*

1.     While it is true that both Juan Ramirez and Jairo Espinoza are middle-class, chemical engineers who engage in frequent travel, their socio-economic and professional status has no bearing upon the fact that they live in Mexico, and they have no obligations to this case. The Plaintiff (and AA) can only take what these passengers are willing to give. The jury will benefit more by having their remote testimony than by not having it at all.

2.     The good cause to allow the Plaintiff to take the depositions of Juan Ramirez and Jairo Espinoza (if the witnesses were to so agree) is also tied up in the Plaintiff's Motion for Sanctions. Both passengers were very reluctant to get involved any further after their first round of interactions with AA. Indeed, no one from the Plaintiff's team has ever been able to communicate with Jairo Espinoza to this day (though AA keeps baldly asserting otherwise). Both passengers are only available now through counsel, for which AA's Mexican firm, ironically, can be thanked for providing the final straw motivating their action. It is likely that if these passengers had been approached neutrally from the outset, they would have been willing to provide honest depositions to benefit both parties with their recollections. If either passenger were only now to agree at this late date to sit for deposition, it would not be due to any lack of diligence on the part of the Plaintiff. If either were willing to do so, it would also provide unquestionably probative evidence for the jury to consider if they are not otherwise amenable to appearing for trial. At this time, all that counsel for the two passengers has agreed upon is to produce them remotely for an evidentiary hearing.

3.     The deposition of Federico Quintana should be struck regardless of the outcome of the Plaintiff's Motion for Sanctions. His testimony and conflicting signed statement raise far more questions than they answer. The Plaintiff had no opportunity to question him about his statement during his deposition, the Plaintiff had no opportunity to cross-examine him about his family connection with AA, and the Plaintiff had no opportunity to impeach his testimony with later-obtained discovery.[3] Furthermore, the coaching of AA's counsel during Quintana's deposition

---

[3] The Plaintiff obtained discovery of the relevant time stamps showing that Quintana and Clowdus overlapped on board the plane for only a few short minutes (maybe as little as one or two), and most of those minutes would have been consumed by the incident and its aftermath; yet Quintana described three detailed and discrete verbal

was, in the words of Magistrate Louis: "Outrageous. Just outrageous." Trans., ECF# 53, pg. 4, ll 16-17.  Plaintiff was repeatedly frustrated in his efforts to obtain straightforward testimony or to impeach the witness when Plaintiff had reason to believe that Quintana was not being truthful.

AA has demonstrated that Federico Quintana picks up the phone and responds to its needs. When AA wanted a signed statement, Quintana gave it one.  When AA wanted a deposition, Quintana acquiesced.  It is very likely that if AA called Quintana and asked him to appear remotely at an evidentiary hearing or at trial, he would agree.   To Plaintiff's knowledge, AA has made no such effort. AA should not be allowed to benefit from its choice to not make every effort to provide the jury with the best evidence.

## Conclusion

For the reasons stated in the Plaintiff's Motion in *Limine* and furthermore stated herein, and dependent upon the outcome of Plaintiff's Motion for Sanctions, the Plaintiff respectfully asks the Court to grant his evidentiary requests.

Respectfully Submitted,

/s/ William T. Woodrow III                           /s/ David H. Pollack

William T. Woodrow III (*pro hac vice*)   THE LAW OFFICE OF
Stone & Woodrow LLP                              DAVID H. POLLACK, LLC
250 West Main St. Suite 201                       Fla. Bar No. 0955840
Charlottesville, VA 22902                            75 Valencia Avenue, Suite 100
will@stoneandwoodrowlaw.com            Coral Gables, FL   33134
Phone: 855-275-7378                                   Tel:  305-372-5900

Attorneys for Plaintiff

---

interactions between Clowdus and the flight attendant *before* the offending bag ever made its appearance.  See ECF #66-19, Ex. S.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

/s/ William T. Woodrow

William T. Woodrow III (*pro hac vice*)
Stone & Woodrow LLP
250 West Main St. Suite 201
Charlottesville, VA 22902
will@stoneandwoodrowlaw.com
Phone: 855-275-7378
*Attorneys for Plaintiff*