```
          IN THE UNITED STATES DISTRICT COURT

        FOR THE SOUTHERN DISTRICT OF FLORIDA

   ------------------------x

   TROY CLOWDUS,           *

           Plaintiff,      *

   VS.                     *   Civil Action No.:

   AMERICAN AIRLINES, INC. *   1:21-cv-23155-MM

           Defendant.      *

   ------------------------x




                DEPOSITION OF JOHN KIRBY

                APPEARING REMOTELY FROM

                LOS ANGELES, CALIFORNIA




                   March 14, 2022

                    12:56 p.m.




   REPORTED BY:

   Dawn L. Halcisak, CLR

   APPEARING REMOTELY FROM MILLERSVILLE, MARYLAND
```

John Kirby
March 14, 2022

```
1          R E M O T E   A P P E A R A N C E S

2

3      ON BEHALF OF PLAINTIFF, CLOWDUS:

4          WILLIAM T. WOODROW, ESQUIRE

5          PRO HAC VICE

6          STONE & WOODROW LLP

7          250 West Main Street, Suite 201

8          Charlottesville, Virginia 22902

9          (855) 275-7378

10         will@stoneandwoodrowlaw.com

11

12

13     ON BEHALF OF DEFENDANT, AMERICAN AIRLINES:

14         KELLY KOLB, ESQUIRE

15         LABOR & EMPLOYMENT PRACTICE GROUP

16         401 East Las Olas Boulevard, Suite 2250

17         Ft. Lauderdale, Florida 33301

18         (954) 703 3944 (direct)

19         kelly.kolb@bipc.com

20

21

22
```

John Kirby
March 14, 2022

```
 1                    I N D E X

 2     Name of Witness                      Page

 3     JOHN KIRBY

 4     Examination

 5     BY MR. WOODROW                        6, 122

 6     BY MR. KOLB                           115

 7

 8

 9                  E X H I B I T S

10            (Attached to the Transcript.)

11     Exhibit                              Page

12     No. A  IRL Packet                     32

13     No. B  Letter Ban                     38

14     No. C  Clowdus Complaint              49

15     No. D  Witness Reports                68

16     No. E  Customer Service Manual (CSM)  59

17     No. F  Tour Report                    72

18

19

20

21

22
```

John Kirby
March 14, 2022

```
 1              R E M O T E   P R O C E E D I N G S
 2              IT IS HEREBY STIPULATED AND AGREED that
 3       the reading and signing of this deposition are
 4       not waived.
 5              THE REPORTER:  Good afternoon,
 6       everyone.
 7              The attorneys participating in this
 8       deposition acknowledge that I am not physically
 9       present in the deposition rooms and that I will
10       be reporting this deposition remotely.  They
11       further acknowledge that, in lieu of an oath
12       administered in person, the witness will
13       verbally declare his or her testimony in this
14       matter is under penalty of perjury.  The parties
15       and their counsel consent to this arrangement
16       and waive any objections to this manner of
17       reporting.
18              Please indicate your agreement by
19       stating your name, whom you represent, and your
20       agreement on the record, beginning with counsel
21       noticing the deposition.
22              MR. WOODROW:  William Woodrow, I
```

John Kirby
March 14, 2022

```
1    represent the Plaintiff Troy Clowdus and I agree

2    to that.

3              MR. KOLB:  Kelly Kolb for the Defendant

4    American Airlines, we agree as well.

5              THE REPORTER:  Okay.  Great.

6              THE WITNESS:  John Kirby, American

7    Airlines, I agree, as well.

8              THE REPORTER:  Okay.  Great.  Thank you

9    for that.

10             And now for the witness.

11   Will the witness kindly present his or her

12   government-issued identification by holding it

13   up to the video monitor for verification?

14             (Whereupon, at 12:57 p.m., the witness

15   presents government-issued identification and

16   identity verified.)

17             THE REPORTER:  Yes.  Thank you very

18   much.  I'll give you a moment to put that down.

19   That looks like you.

20             And can I ask you to raise your right

21   hand.

22                   JOHN KIRBY,
```

John Kirby
March 14, 2022

```
 1    having been duly sworn, was examined, and did

 2    testify as follows:

 3              THE WITNESS:  I do.

 4              THE REPORTER:  Please state your name,

 5    sir, and spell your name for the record.

 6              THE WITNESS:  John Kirby, J-O-H-N,

 7    K-I-R-B-Y.

 8              THE REPORTER:  Thank you, very much.

 9              Please begin, Counsel.  I'm going off

10    the video monitor, but I am here.

11              DIRECT EXAMINATION BY COUNSEL FOR

12                   PLAINTIFF, CLOWDUS

13    BY MR. WOODROW:

14       Q.   Thank you.  Good morning, Mr. Kirby.

15    My name is, Will Woodrow.  I'm here on behalf of

16    Troy Clowdus, a passenger who you had reason to

17    provide input on an investigation that was done

18    into him last year.  Let me ask you have you

19    ever given a deposition taken before?

20       A.   I have.

21       Q.   Okay.  Well, just make sure you let me

22    finish my questions.  Make sure you understand
```

John Kirby
March 14, 2022

```
1     them before you answer.  The reporter needs

2     verbal responses.  And just answer to the best

3     of your ability, okay?

4          A.   Okay.

5          Q.   Are you on medication today that might

6     affect your testimony?

7          A.   No.

8          Q.   Okay.  So, from the time, if you have

9     given a deposition before, I'm sure you're

10    aware, but like when I ask you questions

11    Mr. Kolb may object.  And if he does, that's

12    just to create a record for the judge later.

13    Unless he instructions you specifically not to

14    answer, which would only be if I asked you about

15    privileged information, which I don't intend to

16    do, you just ignore the objection and answer to

17    the best of your ability, okay?

18         A.   Okay.

19         Q.   Okay.  I'm going to start just asking a

20    little bit about your background.

21              Did you go to college?

22         A.   I did.
```

John Kirby
March 14, 2022

```
1        Q.    Where did you go?

2        A.    I've gone to numerous colleges both

3    in Missouri and in California.

4        Q.    Studied?

5        A.    Law degree criminal justice.

6        Q.    Okay.  And did you work in that field?

7        A.    Yep.

8        Q.    Where'd you begin?

9        A.    Well, where to begin?  So I worked

10   in the law enforcement field for

11   approximately 30 years, where I retired from

12   that field and started a career in corporate

13   security with American Airlines.

14       Q.    Okay.  What did you do in your capacity

15   in law enforcement?

16       A.    In my capacity in law enforcement, I

17   started out in patrol.  I worked in jails, I

18   worked investigations.  I spent about a third

19   of my career on the joint terrorist task

20   force working with the FBI.  I worked on

21   numerous task forces throughout my career

22   span.  And the end of my career -- toward the
```

John Kirby
March 14, 2022

1    end of my career working with the FBI, I

2    spent time working aviation security at the

3    airports.

4        Q.   Okay.  What year did you begin with

5    American?

6        A.   2016.

7        Q.   Okay.  And what did American hire you

8    to do?

9        A.   I was hired to be the investigator

10   for American Airlines in corporate security.

11       Q.   And is that the position -- is the

12   position that you have today is that the same

13   position that they hired you in, to do?

14       A.   It was not.

15       Q.   So am I correct in understanding that

16   you began in a role similar to Mr. Maldenaldo

17   and now you have risen to be supervisor?

18       A.   I -- not exactly.  So I started out

19   in a position such as Mr. Maldenaldo as an

20   investigator.  I'm now a regional manager,

21   but not in his region.  He's in the Miami

22   region.  I'm in the L.A. region.

John Kirby
March 14, 2022

```
1              (Off record discussion.)

2      BY MR. WOODROW:

3          Q.   So as the regional -- you say you are a

4      regional manager?

5          A.   That's correct.

6          Q.   What do your duties entail?

7          A.   I oversee a region that consists of

8      Chicago, all the airports near there.

9      Phoenix all those airports.  L.A. all those

10     airports, and Asia-Pacific, which basically a

11     large portion of Asia and the South Pacific.

12         Q.   And by oversee, what do your duties

13     entail?

14         A.   I oversee a group of investigators

15     who overlook my investigations for those

16     areas.

17         Q.   And what is the subject matter of those

18     investigations?  Are those just customer

19     misconduct?

20         A.   You cut out just a little bit.  Can

21     you repeat that question, please?

22         Q.   What is the subject matter of those
```

John Kirby
March 14, 2022

1    investigations?  Are those just customer

2    misconducts or broader?

3         A.   No, it's broader.

4         Q.   What sorts of investigations do you do?

5         A.   We look at customer misconduct, we

6    deal government agencies as far as

7    interaction with the airlines and government

8    agencies, such as the CSA.  We also oversee

9    the investigations involving any employees

10   who might have done something that would be

11   against American Airlines' policies.

12        Q.   Okay.  So if an employee engages in

13   misconduct, you would investigate that, as well?

14        A.   My team would.  That's correct.

15        Q.   Okay.  And in your role today, what

16   training have you received from American

17   Airlines?

18        A.   On-the-job training from the very

19   get-go.  And other than that, we don't have a

20   whole lot of training.  We have some legal

21   training from time to time, but there is not

22   a lot of training that the company has

John Kirby
March 14, 2022

```
 1    provided regarding that.

 2        Q.   Have you received any training in how

 3    to conduct investigations?

 4        A.   Throughout my law enforcement

 5    career, I conduct hundreds and hundreds of

 6    investigations.

 7        Q.   American Airlines hasn't provided any

 8    such training?

 9        A.   I don't believe so, no.

10        Q.   Does American Airlines provide training

11    to the investigators who work for you?

12        A.   We have some training, but it's

13    not -- I don't think so.  No.  There is some

14    training that we have but it's not

15    necessarily to do our investigations.  Most

16    of folks that work for us have all got prior

17    investigative experience.

18        Q.   Okay.  Who do you report to?

19        A.   I report to a director in Dallas.

20        Q.   And what's their name?

21        A.   His name is Phil Gilbert.

22        Q.   And in the course of our
```

John Kirby
March 14, 2022

1    investigations, do you ever have occasion to

2    interact with American's legal department?

3         A.   I do sometimes, yes.

4         Q.   And do you have a counterpart in the

5    legal department?

6         A.   Not necessarily a counterpart, no.

7         Q.   If there's noise, I apologize.  There's

8    construction going on in the suite next to mine.

9    So.

10             (Off record discussion.)

11   BY MR. WOODROW:

12        Q.   Do you ever consult with the legal

13   department before taking actions based upon

14   reports that you receive?

15        A.   I do basically let them know what

16   we're looking at, yes.

17        Q.   And do they ever provide input in how

18   they would like to see something handled?

19        A.   They sometimes ask questions, but

20   input, not necessarily.

21        Q.   As an investigator, are you cognizant

22   of assessing legal liability as a component of

John Kirby
March 14, 2022

1    your investigation and decisions?

2         A.   Can you ask the question again,

3    please?

4         Q.   Are you cognizant of potential legal

5    liability to American Airlines as you conduct

6    investigations and decide how to proceed?

7         A.   I believe so, yes.

8         Q.   Okay.  All right.  How many

9    investigators report to you?

10        A.   Currently, five.

11        Q.   Okay.  And Mr. Maldonado is not one of

12   those investigators?

13        A.   He is not, no.

14        Q.   How is it that you had occasion to

15   review one of his reports then?

16        A.   I review all of the reports that are

17   submitted to me that deal with the internal

18   refuse list.

19             (Off record discussion.)

20   BY MR. WOODROW:

21        Q.   Okay.  So help me understand that.  Are

22   you saying that for all of American Airlines you

John Kirby
March 14, 2022

1    are in charge of internal refuse list, but you

2    are a regional manager otherwise?

3         A.   Correct.

4         Q.   Okay.  So are you the individual who

5    makes the final decision on whether or not to

6    ban all customers who end up getting banned?

7         A.   I am.

8         Q.   Okay.  Now, when you're investigating

9    that allegation of a felony, do you or do you

10   instruct your investigators to take extra care

11   to determine that you get the results of the

12   investigation, correct?

13        A.   I would say yes.  It would matter if

14   it was felony or misdemeanor, though.  So all

15   of their information should be correct.

16        Q.   Okay.  So if you were to take extra

17   care in investigating a conclusion that a

18   passenger committed a felony, what might that

19   look like?

20             MR. KOLB:  Object to the form.

21             THE WITNESS:  I'm sorry?

22             MR. KOLB:  No, I've made an objection

John Kirby
March 14, 2022

1      to the form of the question.  You can go ahead

2      and answer it, though.

3              THE WITNESS:  Can you please repeat the

4      question?

5      BY MR. WOODROW:

6         Q.   Sure.  If you were to take extra care

7      in an investigation, due to the fact that you

8      were the investigating the allegation of a

9      felony, what would that look like?

10        A.   Well, the investigators should

11     collect every piece of information they have

12     available to them to investigate that case.

13     And once they complete that investigation,

14     they should make a recommendation or at least

15     take that investigation and determine what

16     they need to do next.

17        Q.   Okay.  Describe to me the standard

18     protocol of an investigation into a passenger

19     incident.

20        A.   Are we talking about a passenger who

21     is suspected of something?

22        Q.   Passenger misconduct?

John Kirby
March 14, 2022

1      A.   Yes.

2      Q.   Yes.

3      A.   Okay.  So the first thing that

4    happens is generally those cases go to our

5    security operations bureau in Dallas.  They

6    receive reports in Dallas that allow those

7    cases to be passed out to the correct region.

8    And that region will ensue and start an

9    investigation as to what occurred on that

10   flight or at the gate or in the airport or

11   whatever it might have taken place.

12     Q.   And do you provide any direct input

13   into those investigations?

14     A.   Normally, no.

15     Q.   And do you ever reject the recommended

16   action in the reports that you receive?

17     A.   Can you repeat that again?

18     Q.   When you receive a report, an IRL

19   packet from an investigator, do you ever reject

20   the recommended action of the investigator?

21     A.   Yes.

22     Q.   Give me an example.

John Kirby
March 14, 2022

1        A.   I can think of one off the top of my

2    head, but I have rejected those types of

3    recommendations of in the past.

4        Q.   And what reasons have you rejected

5    those recommendations for?

6        A.   I'm don't -- I'm not prepared for

7    that question.  I don't know.

8        Q.   You can't think of any potential

9    examples?

10       A.   Not without guessing, and that's not

11   what I'm about to do.

12       Q.   Okay.  Do you ever independently

13   investigate passenger incidents that you learn

14   about in the IRL reports?

15       A.   Myself, no.  It's done by

16   investigators.

17       Q.   Do you ever -- do you ever send a

18   report back for further investigation because

19   you are dissatisfied with what you see?

20       A.   Dissatisfied is probably a strong

21   word, but I do send cases back to the

22   investigators with questions sometimes.

John Kirby
March 14, 2022

```
1        Q.   And can you think of an example of
2   doing that?
3        A.   Not off the top of my head, no.
4        Q.   Do you take any additional steps once
5   you receive a report before you finalize a ban?
6        A.   Additional steps.  Yeah, I don't
7   really understand that question exactly.
8   It's maybe a little vague.
9        Q.   Okay.  Let me rephrase it.  Once you
10  receive a report, what do you do?
11       A.   I take that, I overlook -- I look at
12  that case.  And if it fits our criteria with
13  our refuse policy, I'll look at it and make
14  sure the criteria is all effectively checked
15  off on the refuse checklist and if they match
16  the conduct.  And then I take that and I
17  share that with our legal department.
18       Q.   Do you look at any information outside
19  of the IRL packet to make this decision?
20       A.   There's -- no, I do not.
21       Q.   Okay.  Do you receive even IRL
22  packet -- is it called an "IRL packet"?  Am I
```

John Kirby
March 14, 2022

1    referring to that correctly?

2         A.   Yeah.  That's a good terminology.

3         Q.   Okay.  Have you ever received an IRL

4    packet and taken no action as a result?

5         A.   You mean go one way or the other?

6    I -- I -- no actions period or?

7         Q.   No action against the customer.

8         A.   Well, they -- so I guess, you know,

9    this is a, kind of, Do what you are told.

10        Q.   All right.

11        A.   I think the best way to answer that

12   is:  We always take some sort of action,

13   whether it's positive or leave them on the

14   list or take them off the list, if that makes

15   sense.

16        Q.   Okay.  So is it your testimony that

17   sometimes you receive reports that recommend

18   taking no action against a customer?

19        A.   Correct.

20        Q.   Okay.  Have you ever reopened a closed

21   investigation based upon new information?

22        A.   Yes.  If I could think about it for

John Kirby
March 14, 2022

1    a second.

2            Yes.

3        Q.   Can you give me an example?

4        A.   No, I don't know.  I mean, I assume

5    we have.

6        Q.   Have you ever reversed a decision to

7    put a passenger on the IRL?

8        A.   Yes.

9        Q.   Can you -- can you think of that

10   example?

11       A.   I really can't.  I mean, I could

12   make up a scenario that would be me making

13   something up and that's not right.

14       Q.   Okay.  About how many times do you

15   think you've done so?

16       A.   I have no idea.

17       Q.   If you had to pick a range that you

18   were comfortable with, 1 to 10 or 500 or 50,

19   would you be comfortable saying that?

20            MR. KOLB:  Objection to form.

21            THE WITNESS:  I would not.

22

John Kirby
March 14, 2022

```
1    BY MR. WOODROW:

2         Q.   You would not be comfortable?

3         A.   No.

4         Q.   Okay.  All right.  If -- if American --

5    if the legal department called you up and said,

6    "We have had a witness recant.  And we have

7    reason to believe, from our investigation, that

8    the wrong decision was made."

9              Could you open the file and reverse it?

10             MR. KOLB:  Objection to form.

11             MR. WOODROW:  What's that?

12             MR. KOLB:  Objection to form.

13   BY MR. WOODROW:

14        Q.   Did you hear the question?

15        A.   I heard the question.  My question

16   is:  If you called me up?

17        Q.   I said if the legal department called

18   you up and said that they had -- that they had

19   investigated a situation, and they thought the

20   wrong decision was made, would you -- would you

21   be able to open the file and reverse the

22   decision?
```

John Kirby
March 14, 2022

```
1              MR. KOLB:  Object to the form.  Go

2      ahead.

3              THE WITNESS:  I don't question if -- if

4      they ask me to do something, like the legal

5      department did, and they thought that there was

6      something that was not appropriate, I would not

7      argue with them.

8      BY MR. WOODROW:

9         Q.   So you would have the authority then to

10     reverse the prior decision.

11             MR. KOLB:  Objection to the form.

12     BY MR. WOODROW:

13        Q.   You can answer.

14             THE WITNESS:  I'm sorry, you were

15     popping back up on my screen.

16             So, as far as reversing the decision,

17     what was your question?

18     BY MR. WOODROW:

19        Q.   I said, so you, personally, would have

20     that authority?

21             MR. KOLB:  Objection to form.

22             Go ahead.
```

John Kirby
March 14, 2022

1              THE WITNESS:  Yeah, the authority is a

2    collective decision amongst -- the investigators

3    there is something more that they need to look

4    at.

5    BY MR. WOODROW:

6        Q.   Okay.  Would you need to go to a

7    superior -- would you need to go to Phil Gilbert

8    to get a sign off on that or as a result of your

9    own conferral with your investigator, could you

10   make the decision to reverse the ban?

11       A.   It depends.

12       Q.   On what?

13       A.   The scenario.  I mean, I might go to

14   fill Phil Gilbert, I might not.

15       Q.   Well, take a scenario about passenger

16   misconduct, similar to our own.  Insert facts

17   that would be sufficient for you to feel that

18   you got the decision wrong, would you be able to

19   reverse the decision personally?

20              MR. KOLB:  Objection to form.

21              THE WITNESS:  I'm not exactly sure what

22   we are trying to get to here.

John Kirby
March 14, 2022

1    BY MR. WOODROW:

2        Q.    Well, I'm trying to get at the extent

3    of your authority essentially.  And I think

4    you've -- you've pretty much indicated that you

5    can.  I'm just trying to get a clear answer.

6        A.    I can make decisions.  So I can make

7    decisions, based on the internal refuse list

8    policies and each scenario that takes place

9    with our customers and our passengers -- our

10   employees, but I take all the facts into

11   account.

12       Q.    Okay.  Fair enough.

13            If a complaint is made by a crew or

14   someone else about a long-term Frequent Flyer

15   who's never had a complaint against them, is

16   there any greater effort made to assess the

17   facts of the incident before taking action

18   against them?

19       A.    No.

20       Q.    Why doesn't it give an opportunity for

21   a passenger to advocate on his own behalf before

22   taking such a drastic action as banning him for

John Kirby
March 14, 2022

```
1    life?

2            MR. KOLB:  Objection to form.

3            THE WITNESS:  So I think we do.

4    BY MR. WOODROW:

5       Q.   Okay.  Explain to me then?

6       A.   So the customer is sent a letter

7    stating that they're being accused of

8    misconduct.  And it gives them an opportunity

9    to reply in that letter as to how, you know,

10   certain circumstances done to give their

11   story basically.

12   BY MR. WOODROW:

13      Q.   Okay.  Well, we have a letter that

14   we'll look at later, but before we get to it is

15   it your assertion that that is made clear in the

16   letter that that is an option that the customer

17   has?

18      A.   I believe so.

19      Q.   And so is it your testimony that's if a

20   customer hit reply to that e-mail and gave their

21   facts, their version of events that that e-mail

22   would reply and find its way take the individual
```

John Kirby
March 14, 2022

```
1    who is investigating the incident?

2              MR. KOLB:  Objection to form.

3              THE WITNESS:  Yes.

4    BY MR. WOODROW:

5         Q.   How would it -- how would it find its

6    way to them?  Would it go directly to them?

7         A.   No.

8         Q.   What path would it take?

9         A.   That e-mail address that's provided

10   allow for that passenger to respond.  And if

11   the passenger --

12             (Whereupon, multiple speakers

13   simultaneously.)

14   BY MR. WOODROW:

15        Q.   Go ahead.

16        A.   If the passenger responds, which

17   oftentimes they don't, but if they do, that

18   information is passed forward to the

19   investigator.

20        Q.   What department does that response go

21   to first?

22        A.   It's a location in Dallas in
```

John Kirby
March 14, 2022

```
 1    corporate security.

 2         Q.   Okay.  So it doesn't go through

 3    customer service?

 4         A.   No.

 5         Q.   Okay.  And does -- does American

 6    provide any other avenue of appeal for a

 7    passenger once an action is taken against them?

 8         A.   Customer resolution has a -- the

 9    passenger would have the ability to go to

10    customer resolution.  So, yes.

11         Q.   How would they do that?

12         A.   AA.com\customerrelations, I believe.

13         Q.   I'm personally aware of a form that you

14    can click "Submit" through making a complaint on

15    American's website.

16              Is that what you're referencing, or are

17    you referencing something else?

18         A.   I'm not sure what you're talking

19    about.

20         Q.   All right.  Are you referring to the

21    mechanism whereby a customer would complain

22    about service they received?
```

John Kirby
March 14, 2022

```
1        A.   Yes.

2        Q.   And these complaints go through

3   customer service, correct?

4        A.   That's correct.  I believe so.

5        Q.   Okay.  All right.  Are you aware of any

6   discussions to share your IRL list with any

7   other airline?

8        A.   No.

9        Q.   Okay.  And when you make a

10  determination that a passenger has committed a

11  the felony, do you share that information with

12  any government entity such as the FAA, DOT, TSA?

13       A.   I do not know --

14       Q.   You don't --

15       A.   -- no.

16       Q.   All right.  Who has access to the

17  service reports?

18       A.   I'm not sure who all does.  I mean,

19  I know that our corporate security does.

20  Other than that, the investigators do.  Other

21  than that, I don't know.

22       Q.   Okay.  Do you know who has access to
```

John Kirby
March 14, 2022

```
1    passenger PNRs?

2         A.   I don't know who all those people

3    who -- they are -- I'm sure it's a long list.

4         Q.   So once you've determined that a

5    passenger has committed an assault or some

6    other -- or for some other reason has been

7    banned, where do you document that determination

8    so that he will not be sold a ticket?

9         A.   I do not do that.  That's not part

10   of my role.

11        Q.   Do you know if a travel agency

12   attempted to purchase a ticket, on behalf of a

13   banned customer, if they would be refused?

14        A.   If they're on our internal refuse

15   list, I don't know how that process -- I

16   can't answer to that process.

17        Q.   Okay.  So you don't know at what point

18   in the process that the passenger would be

19   flagged?

20        A.   I don't.  No.

21        Q.   Okay.  So what did you do -- what did

22   you do personally in this instance when you
```

John Kirby
March 14, 2022

1    received Mr. Maldonado's report?

2         A.    I reviewed his report and made a

3    determination that Mr. Clowdus belong on our

4    internal refuse list based on his conduct by

5    what he did to the flight on the aircraft.

6         Q.    Okay.  And what documents did you

7    review in preparation for your deposition today?

8         A.    IRL checklist that was sent to me.

9         Q.    Is that it?

10        A.    I also reviewed, with our attorney,

11   a few other documents that he showed me.

12        Q.    And what were those documents?

13        A.    One was some type of response that

14   was sent to the company, while the client --

15   your client was in the adverse cart

16   (phonetic), and I can't remember the other

17   two.

18        Q.    Okay.  When you received the report

19   from Mr. Maldenaldo, did you take any steps to

20   independently investigate that report?

21        A.    No.

22        Q.    And did anybody other than

John Kirby
March 14, 2022

1    Mr. Maldonado take any steps to investigate it

2    before you made a decision to do ban

3    Mr. Clowdus?

4            MR. KOLB:  Objection to form.

5            THE WITNESS:  To my knowledge, no.

6    BY MR. WOODROW:

7        Q.   Okay.  All right.  So we're -- I'm

8    going to figure this screen sharing out here.

9    We're going to go to Exhibit A, which is the IRL

10   packet, so you should be familiar with it.

11           (KIRBY Exhibit A marked for

12   identification and attached to the transcript.)

13   BY MR. WOODROW:

14       Q.   Okay.  Just a couple of questions on

15   this.  Do you recognize this?

16       A.   Yes.

17       Q.   Okay.  Is this IRL packet that you

18   reviewed for Mr. Clowdus?

19       A.   That's a portion of it, yes.

20       Q.   Okay.  Is this the first page?

21       A.   I don't know if it's the first page

22   or what page it is.  But that's the first of

John Kirby
March 14, 2022

1    what I'm looking at.

2         Q.   Okay.  Is this -- is this the first

3    page of a form that you would see when an

4    investigator completes an IRA packet?

5              What I'm saying is this:  Is this the

6    opening -- the opening page in a form that you

7    would fill out?

8         A.   It could be?  I don't always see it

9    in this typed format.

10        Q.   Okay.  Could you -- could you read at

11   the top what time this was first published?

12        A.   June 10 of 2021, at 12:29 p.m.

13        Q.   Okay.  And I'm going to go down to the

14   last page.  And is this -- is this the -- what

15   is this page?

16        A.   That is the internal refuse

17   checklist.

18        Q.   Okay.  And can you see at the bottom

19   what time this page was generated?

20        A.   June 5, 2021 at -- I'm sorry

21   June 11, 2021, at 11:24:02.

22        Q.   So this -- is it reasonable to conclude

John Kirby
March 14, 2022

1    from that that this investigation took roughly

2    24 hours between opening and conclusion?

3             MR. KOLB:  Object to the form.

4             THE WITNESS:  No.

5    BY MR. WOODROW:

6        Q.   Why not?

7        A.   I don't know how long this

8    investigation took.

9        Q.   Well, if he opened his investigation

10   June 10th, at 12:29 p.m., why is it not

11   reasonable to conclude that his investigation

12   took the time between the two?

13            MR. KOLB:  Objection to form.

14            THE WITNESS:  I don't know how long his

15   investigation took.  I can't -- I can't make

16   that conclusion.

17   BY MR. WOODROW:

18       Q.   Okay.  Well, let's go down a few pages,

19   and -- okay.  Can you identify this document?

20       A.   Just a second, I'm trying to look at

21   it.

22            Okay.  That is the security

John Kirby
March 14, 2022

1    operations portion of this investigation.

2        Q.   Okay.  And would this be the e-mail

3    that Mr. Maldonado received prior to him --

4    well, causing him to first learn about this

5    incident and subsequently opening an

6    investigation?

7        A.   I don't know.

8        Q.   Well, read the summary, please.

9        A.   The summary says, "After boarding,

10   passenger Clowdus became unruly."

11       Q.   Correct.

12       A.   Okay.  I've read it.

13       Q.   Where was this e-mail originated?

14       A.   That originated from security

15   operations.

16       Q.   Okay.  And so would this have been the

17   first e-mail generated as a result of the

18   passenger incident?

19           MR. KOLB:  Objection to form.

20           THE WITNESS:  I don't know.  There

21   could have been other e-mails I'm not privy to.

22

John Kirby
March 14, 2022

```
 1    BY MR. WOODROW:

 2        Q.   What is the purpose of this e-mail, in

 3    your experience?

 4        A.   That e-mail is to notify the

 5    two-line.  So there's people on that two-line

 6    from security operations that an incident has

 7    occurred on an aircraft, in this instance.

 8        Q.   Okay.  And is Mr. Maldonado a recipient

 9    of this e-mail?

10        A.   Yes.

11        Q.   And what time did Mr. Maldonado receive

12    this e-mail?

13        A.   It was sent at 8:38 a.m., on the

14    10th of June.

15        Q.   Okay.  So is it reasonable to conclude

16    if the flight was at 6:30 that morning and

17    Mr. Maldonado had completed his investigation by

18    6/11, at 11:24 a.m., when he digitally signed

19    his report to you.

20            MR. KOLB:  Objection to form.

21            THE WITNESS:  Can you ask the question

22    again?
```

John Kirby
March 14, 2022

```
 1    BY MR. WOODROW:

 2        Q.   Okay.  Looking at the digital time

 3    stamp at the bottom of this internal refuse

 4    checklist report, can we conclude that

 5    Mr. Maldonado had finished his investigation at

 6    11:24, on June 11?

 7        A.   I cannot --

 8             MR. KOLB:   objection to form.

 9    BY MR. WOODROW:

10        Q.   What might he have done after signing

11    this report to send to you?

12             MR. KOLB:  Objection to form.

13             THE WITNESS:  I don't know.

14    BY MR. WOODROW:

15        Q.   Is there some other report that might

16    have been generated subsequent to this report?

17        A.   To my knowledge, no.

18        Q.   Have you reviewed any other IRL packet

19    or any information about Mr. Clowdus?

20        A.   No.

21        Q.   Okay.  So this is the report that was

22    sent to you, correct?
```

John Kirby
March 14, 2022

```
 1        A.   Yes.

 2        Q.   Okay.  Now, let's look at Exhibit B,

 3    the letter banning Mr. Clowdus.

 4             (KIRBY Exhibit B marked for

 5    identification and attached to the transcript.)

 6    BY MR. WOODROW:

 7        Q.   What's the date on this letter,

 8    Mr. Clowdus?

 9        A.   I'm trying to see now, so just give

10    me a second.

11             (Brief pause.)

12             THE WITNESS:  Okay.  I've seen it.

13    That is dated June 22nd, at 10:56 a.m.

14    BY MR. WOODROW:

15        Q.   Okay.  My question to you was:  Why did

16    take roughly 11 days between Mr. Maldonado

17    sending you his report and Mr. Clowdus being

18    sent this letter?

19             MR. KOLB:  Object to the form.

20             THE WITNESS:  I don't know.

21    BY MR. WOODROW:

22        Q.   Is it the policy of American Airlines
```

John Kirby
March 14, 2022

1    to wait a span of time between receiving reports

2    and informing customers?

3            MR. KOLB:  Objection to form.

4            THE WITNESS:  I think you need to ask

5    the question again, if you don't mind.

6    BY MR. WOODROW:

7        Q.   Is it a policy of American Airlines to

8    wait a certain span of time before informing

9    customers about the results of investigations?

10           MR. KOLB:  Object to the form.

11           THE WITNESS:  So there is -- I think

12   the best way to answer that, there's two letters

13   that were sent out; one is the letter stating

14   that the investigation is being conducted, and

15   the second letter that's sent out were to tell

16   you, as a customer, the investigation's complete

17   and the ban is lifted, or the investigation is

18   complete, and you're no longer welcome to fly on

19   American Airlines.

20   BY MR. WOODROW:

21       Q.   I understand.  But that wasn't my

22   question.  My question was:  Why did it take 11

John Kirby
March 14, 2022

1    days for this final determination to reach Mr.

2    Clowdus when it took substantially less time to

3    decide the result of the investigation?

4            MR. KOLB:  Objection to form.

5            THE WITNESS:  I don't know.

6    BY MR. WOODROW:

7        Q.   And would you -- would this letter, if

8    a passenger responded to this letter and said,

9    "Nobody has heard my side of the story."

10           At this point, is it too late?

11       A.   No.

12       Q.   If a passenger did respond to this

13   letter and gave their side of their story, would

14   the investigator reopen the investigation?

15           MR. KOLB:  Objection to form.

16           THE WITNESS:  I don't know if they

17   would or not.

18   BY MR. WOODROW:

19       Q.   But they have that ability once they've

20   already sent you the IRL packet and you've made

21   your discussion and the customer has been

22   notified?

John Kirby
March 14, 2022

```
 1              MR. KOLB:  Objection to form.

 2              THE WITNESS:  Can you say that again?

 3     BY MR. WOODROW:

 4       Q.   Well, presumably the customer received

 5     this letter, after you have received the IRL

 6     packet and you have signed off on the permanent

 7     ban.  So, at this 5, if the passenger responded

 8     to this e-mail, they'd already be on the IRL

 9     list.

10              And so my question to you is:  At that

11     point, is it over, or would you reconsidering

12     based upon potentially what they say in their

13     e-mail?

14              MR. KOLB:  Objection to form.

15              THE WITNESS:  We always take all the

16     facts into consideration.  So if the passenger

17     responded with some type of explanation, if you

18     will, that would be taken into consideration.

19     BY MR. WOODROW:

20       Q.   And who would receive this; the

21     security office?

22       A.   It goes to our headquarters,
```

John Kirby
March 14, 2022

1    correct.

2         Q.    And would that e-mail be forwarded to

3    you or to Mr. Maldonado or either?

4         A.    Mr. Maldonado should see the letter.

5         Q.    Okay.  Let's go back to Exhibit A.

6               Okay.  I'd like you to read the top of

7    page 29, the synopsis that Mr. Maldonado filled

8    out while generating this report.

9               (Brief pause.)

10              THE WITNESS:  Sorry, it's hard to read

11   on my phone, so I'm trying to like --

12              MR. WOODROW:  Let me --

13              THE WITNESS:  -- bring it.  I can -- I

14   can see it now.

15              (Brief pause.)

16   BY MR. WOODROW:

17        Q.    Okay.  Have you read it?

18        A.    I have read it.

19        Q.    Okay.  Do you find it at all

20   problematic that this synopsis created, to open

21   an investigation, already uses conclusory

22   language indicating the outcome of the

John Kirby
March 14, 2022

```
 1    investigation, which is yet to occur?

 2          MR. KOLB:  Objection to form.

 3          THE WITNESS:  No.

 4    BY MR. WOODROW:

 5       Q.   Why not?

 6       A.   What I'm reading is the synopsis as

 7    to what occurred on the flight.

 8       Q.   And Mr. Maldonado would have filled out

 9    this synopsis prior to investigating what

10    occurred on the flight; is that not correct?

11          MR. KOLB:  Objection to form.

12          THE WITNESS:  Bear with me for just a

13    second while I look at -- I'm going to look -- I

14    need to look at this in totality because I'm not

15    sure.  It's on page 2, correct?

16          MR. WOODROW:  This is on page AA triple

17    zero 29.

18          THE WITNESS:  I -- I -- yeah, I see it.

19    It's -- it looks like page 2 to me.

20          MR. WOODROW:  Yeah, it's the second

21    page of the PDF.

22          THE WITNESS:  Yes.  Exactly.  Okay.
```

John Kirby
March 14, 2022

1    Can you repeat the question now -- now I have

2    had a chance to look at this.

3    BY MR. WOODROW:

4        Q.   Okay.  My question to you is:  Do you

5    fine it problematic that this is before

6    Mr. Maldonado has conducted an investigation,

7    but he's already using conclusive language that

8    Mr. Clowdus physically assaulted Mr. Moreno?

9            MR. KOLB:  Objection to the form.

10           THE WITNESS:  I don't have a problem

11   with it.

12   BY MR. WOODROW:

13       Q.   And if we go down to this narrative,

14   which was a synopsis of the two service reports,

15   this also uses conclusive language.

16           And so my question is:  What was

17   Mr. Maldonado intending to investigate if he

18   never questioned the allegation of assault from

19   the beginning?

20           MR. KOLB:  Objection to form.

21           THE WITNESS:  I can't answer for him.

22

John Kirby
March 14, 2022

```
 1   BY MR. WOODROW:

 2        Q.   As his supervisor, what did you expect

 3   him to investigate?

 4        A.   I'm not his supervisor.

 5        Q.   As the person who is relying upon his

 6   report to make an accurate decision, what did

 7   you expect him to investigate?

 8             MR. KOLB:  Objection to form.

 9             THE WITNESS:  I expect the

10   investigators to submit IRL packets that have

11   the facts regarding what happened on the

12   specific flight where -- where it occurred.

13   BY MR. WOODROW:

14        Q.   Okay.  And so what happens to a

15   passenger complaint when it's received in the

16   system?

17        A.   I don't understand the passenger

18   complaint.  I'm not sure what -- what you're

19   asking.

20        Q.   I'm asking:  If a passenger makes a

21   complaint about a flight attendant, and there's

22   only one way they can do it.  They do it online
```

John Kirby
March 14, 2022

1    and they hit submit and then gone.  They don't

2    get a copy.  What happens to that complaint?

3         A.   I'm not sure --

4              MR. KOLB:  Objection.

5              THE WITNESS:  I don't have the

6    knowledge to that.

7    BY MR. WOODROW:

8         Q.   Okay.  Do you have the knowledge of how

9    AA decides whether or not to take a complaint

10   seriously?

11             MR. KOLB:  Objection to form.

12             THE WITNESS:  I do not.

13   BY MR. WOODROW:

14        Q.   So if a passenger makes a complaint

15   about a flight attendant, you don't know if an

16   investigation is done?

17             MR. KOLB:  Objection to form.

18             THE WITNESS:  I do not know.

19   BY MR. WOODROW:

20        Q.   All right.  Do you ever receive

21   passenger complaints that are forwarded to you

22   in conjunction with an ongoing investigation?

John Kirby
March 14, 2022

| | |
|---|---|
| 1 | A.   I don't believe so. |
| 2 | Q.   So you don't know if employees are ever |
| 3 | disciplined as a result of passenger complaints? |
| 4 | A.   I do not have direct knowledge |
| 5 | whether they are or they are not. |
| 6 | Q.   Do you know if a passenger complaint |
| 7 | about an employee attaches itself to the |
| 8 | employee's personnel file? |
| 9 | A.   I have no idea. |
| 10 | Q.   All right.  As an investigator, or as |
| 11 | someone who oversees investigators, do you know |
| 12 | if employees' personnel files are ever reviewed |
| 13 | in conjunction with an investigation into an |
| 14 | incident? |
| 15 | A.   I do not have direct knowledge of |
| 16 | that, no. |
| 17 | Q.   Okay.  Do you know if customer service |
| 18 | agents are empowered to advocate on behalf of |
| 19 | customers who contact them? |
| 20 | A.   Can you repeat that, please? |
| 21 | Q.   Do you know if customer service agents |
| 22 | are empowered to advocate on behalf of customers |

John Kirby
March 14, 2022

```
 1   who call them?

 2        A.   What was the last part of the

 3   question; who do what?

 4        Q.   Who call them?

 5        A.   Tell them.

 6        Q.   Call them to complain?

 7        A.   Oh, okay.  Sorry, I didn't

 8   understand the question.

 9             I have no idea what their role is in

10   that respect.

11        Q.   Okay.  So is it your experience that a

12   customer agent would ever contact an

13   investigator to provide the passenger's version

14   of what occurred?

15        A.   Maybe.

16        Q.   Has that ever happened to your direct

17   knowledge?

18        A.   I've seen complaints from the

19   customer resolution department in the past.

20        Q.   Give me an example of what a report

21   like that might be about.

22        A.   If a passenger complained that
```

John Kirby
March 14, 2022

1    something had happened and they put that into

2    writing to our company, that's what I'm

3    talking about, basically.

4        Q.   Okay.  Well, let's look at Exhibit C

5    which you said you reviewed.

6             (KIRBY Exhibit C marked for

7    identification and attached to the transcript.)

8    BY MR. WOODROW:

9        Q.   Okay.  Can you identify this document?

10       A.   I'm sorry, I'm going to pull -- yes.

11       Q.   Okay.  And what is it?

12       A.   That appears to be a message sent

13   from an IP address to the company

14   regarding -- just a second.

15            It's a message that's sent to the

16   company.

17       Q.   From who?

18       A.   I believe it's from Mr. Clowdus.

19       Q.   And --

20       A.   Yeah, I don't know what the result

21   is -- back to his IP address, so I'm not

22   positive.  It -- it appears to be.

John Kirby
March 14, 2022

```
 1        Q.   And what is it about?

 2        A.   A complaint.

 3        Q.   And what's the subject of the

 4   complaint?

 5        A.   Do you want me to read it to you?

 6        Q.   Sure.  Yeah.  Go ahead.  Read it out

 7   loud, please.

 8        A.   Okay.

 9             "I was seated in business class,

10        front row window seat.  The flight

11        attendant was Carlos Moreno.  I know I

12        was -- in my seat, but he was verbally

13        aggressive with passengers as they

14        boarded.  He seemed agitated and very

15        anxious.

16             "After the last passengers boarded,

17        he asked me to give him my leather

18        briefcase to store overhead.  I reached

19        down and handed it to him.  As I was

20        leaning over the other seat in an

21        attempt to get my bag to him, he looked

22        away and I accidentally bumped the side
```

John Kirby
March 14, 2022

1       of his leg because of the long reach

2       over the seat.

3            "I apologized immediately.  He

4       was -- he got very angry said I -- and

5       said I hit him. I was baffled and" --

6       pardon me.  It's hard to read this

7       because it's so small -- "I was baffled

8       and apologized -- I was baffled and

9       apologized again.  He said he didn't

10      care and I had to get off the plane.

11           "The other flight attendant and the

12      ground crew at the Garfield Terrace

13      gate, they tried to intercede, but he

14      refused to listen, insisting I must

15      deplane.  I fly every week business

16      class with American, and I've never

17      experienced this before.

18           "The other flight attendant --

19      working the gate were very kind and

20      apologetic.  My only concern is making

21      certain that my status with American is

22      unaffected by this unfortunate incident.

John Kirby
March 14, 2022

```
 1              "Thank you for your consideration.

 2         Please contact me if any other further

 3         information is required."

 4         Q.   Okay.  Thank you.

 5              Now, how could it be that an

 6    investigation into this incident failed to

 7    obtain this passenger complaint?

 8              MR. KOLB:  Objection to form.

 9              THE WITNESS:  I don't know.

10    BY MR. WOODROW:

11         Q.   Well, if there's the potential for a

12    passenger complaint to exit, why is that not

13    enough to require investigators as a matter of

14    protocol to look for one?

15              MR. KOLB:  Objection to form.

16              THE WITNESS:  I don't have the answer

17    to that question.

18    BY MR. WOODROW:

19         Q.   So you don't know if there are

20    protocols in place that should automatically

21    connect this complaint with the investigator

22    who, in this case, was Mr. Maldonado?
```

John Kirby
March 14, 2022

1      A.   I don't know if we have a mechanism

2   that takes that complainant and moves to the

3   investigator, no.

4      Q.   Okay.  So if I were to conclude it from

5   your earlier testimony about complaints finding

6   their way to investigators that that would have

7   included this sort of complaint, I would have

8   been wrong; is that correct?

9           MR. KOLB:  Objection to form.

10          THE WITNESS:  I don't understand the

11   question.

12   BY MR. WOODROW:

13      Q.   Okay.  So you just testified a few

14   minutes ago that it's not unusual for passenger

15   complaints to find their way to investigators.

16   And I'm wondering where the breakdown was in

17   this instance.

18          MR. KOLB:  Objection to form.

19          THE WITNESS:  I don't know if there was

20   a break down5, but I will say that if

21   Mr. Clowdus received a letter, which he should

22   have received a letter to give him a chance to

John Kirby
March 14, 2022

```
1    respond, that would give him an opportunity to

2    say his case, so to speak.

3    BY MR. WOODROW:

4         Q.   Okay.  Well, we'll get to that letter

5    in a little while here.

6              Would you have liked to have seen this

7    passenger complaint as part of the IRL packet

8    that you reviewed?

9              MR. KOLB:  Objection to form.

10             THE WITNESS:  I always want to see

11   everything that's out there.

12   BY MR. WOODROW:

13        Q.   So if there's a passenger complaint,

14   such as this, and directly conflicts with an

15   employee's service report, does the employee the

16   presumption of truth if there are no other

17   witnesses?

18             MR. KOLB:  Objection to form.

19             THE WITNESS:  So we take our employee's

20   word for truth.

21   BY MR. WOODROW:

22        Q.   Is that a yes?
```

John Kirby
March 14, 2022

1         A.    I believe our employees tell us the

2    truth.

3         Q.    So does the passenger's testimony have

4    any value?

5              MR. KOLB:  Objection to form.

6              THE WITNESS:  I can say this:

7    Passengers oftentimes will -- will tell us

8    things that are not true.

9    BY MR. WOODROW:

10        Q.    All right.  Has it ever been your

11   experience that an employee has told you

12   something that was not true?

13        A.    Yes, I'm sure.

14        Q.    Okay.  Now, why don't investigators

15   just, as a matter of protocol, reach out to a

16   passenger when they're considering whether to

17   take such a permanent action against them?  Why

18   don't they e-mail or call them?

19              MR. KOLB:  Objection to form.

20              THE WITNESS:  They are e-mailed -- the

21   letter.

22

John Kirby
March 14, 2022

1    BY MR. WOODROW:

2        Q.   Why don't they make a positive effort

3    to obtain the passenger's account of what

4    happened?

5            MR. KOLB:  Objection to form.

6            THE WITNESS:  I'm not sure exactly how

7    to answer that.  I'm not sure.  I don't know.

8    BY MR. WOODROW:

9        Q.   In your experience, do investigators

10   ever contact passengers in the course of looking

11   into passenger misconduct?

12       A.   Sometimes.

13       Q.   Give me an example.

14       A.   I can't think of anything off the

15   top of my head, but maybe if they're -- I

16   don't know.  I would be guessing.  I don't

17   want to guess.

18       Q.   Have you ever, personally, contacted a

19   passenger in conjunction with an investigation

20   you were conducting?

21       A.   Yes.

22       Q.   Okay.  You can't remember what that

John Kirby
March 14, 2022

```
1      incident was?

2           A.   It's -- it's been a while.  But I --

3      I talk to passengers all the time.

4           Q.   Okay.  Is that on the frontline while

5      the incident has transpired in the aftermath or

6      is that on the back end when you are doing an

7      investigation?

8           A.   It could be either.

9           Q.   But you can't think of any examples

10     when that has happened?

11          A.   I talk to passengers on numerous

12     occasions.  Example-wise, I told passengers

13     at hand -- why -- sorry.

14               (Whereupon, multiple speakers

15     simultaneously.)

16     BY MR. WOODROW:

17          Q.   Have you talked to -- sorry.

18               Have you talked --

19               (Whereupon, multiple speakers

20     simultaneously.)

21               THE WITNESS:  That's all.

22
```

John Kirby
March 14, 2022

```
 1    BY MR. WOODROW:

 2         Q.   Have you talked to the passengers by

 3    contacting them over the phone or by e-mail or

 4    just in your encounter with them in person at

 5    the airport?

 6         A.   Both with the exception of e-mail,

 7    I've never e-mailed a passenger.

 8         Q.   But you have called a passenger after

 9    the fact?

10         A.   I believe so, in years past.

11         Q.   Okay.  But you can't think of that

12    specific example?

13         A.   No.

14         Q.   Okay.  Isn't true that an investigator

15    can presume the existence of a service report

16    from the GSC on the scene in an incident where a

17    passenger is removed from a flight prior to take

18    off?

19              MR. KOLB:  Objection to form.

20              THE WITNESS:  No.

21    BY MR. WOODROW:

22         Q.   Why not?
```

John Kirby
March 14, 2022

1      A.   The GSC might not write a report.

2      Q.   Well, isn't it true that the GSC is

3    required to write a report if there was an

4    incident with a passenger?

5           MR. KOLB:  Objection to form.

6           THE WITNESS:  I don't believe so.  I

7    think it's only if they're involved.

8    BY MR. WOODROW:

9      Q.   Okay.  Let's go to Exhibit E then.

10   We're going to skip ahead a little bit.  This is

11   going to be marked E.

12          (KIRBY Exhibit E marked for

13   identification and attached to the transcript.)

14   BY MR. WOODROW:

15     Q.   And this is -- do you recognize -- can

16   you identify this document?

17     A.   Do you mind showing the first page

18   of it?

19     Q.   This is the first page of it.

20     A.   It's not it.

21     Q.   It's not?

22     A.   No.

John Kirby
March 14, 2022

1      Q.   Are you seeing "Customer Service

2    Manual" up top?

3      A.   Yeah, page 4.  Yes, page 4.

4      Q.   Okay.  So is this an excerpt from

5    American Airlines Customer Service Manual?

6           MR. KOLB:  Objection to form.

7    Objecting to providing the witness an

8    incomplete, and therefore, inaccurate document.

9    BY MR. WOODROW:

10     Q.   You can answer.

11     A.   Sorry, say that again.

12     Q.   Is this an excerpt from American

13   Airlines service manual?

14     A.   It seems like it might or it appears

15   to be.

16     Q.   Okay.  Let me represent that this was

17   provided to us by American Airline, and it's

18   stamped AA00051 as the first page of what I have

19   provided.  I'd like to go down to G.

20          Do you see G what this section

21   overarching is about?

22     A.   Misconduct.  That's misconduct.

John Kirby
March 14, 2022

```
 1        Q.   Okay.  We're going to go down to G6.

 2             What does G6 say?

 3             Do you need it to be larger?

 4        A.   Well, I had to get there first.

 5   I -- I can blow it up a little bit -- my

 6   phone's getting hot -- at the airport is 6,

 7   correct?

 8        Q.   That's correct.  I think this 6B, the

 9   Escalation, B7.  Could you read B7, and then

10   after that read E?

11             (Brief pause.)

12             THE WITNESS:  Okay.

13   BY MR. WOODROW:

14        Q.   Could you read it aloud?

15        A.   I read it out loud?  Sure.

16             "If a customer's denied travel on

17        their scheduled flight, the GSC, or a

18        member of the management will at --

19        complete a customer event report

20        service."

21        Q.   Okay.  And that's at the airport.

22             Now, let's go 7, "On The Plane."  And
```

John Kirby
March 14, 2022

1    could you read 7B and then 3?

2        A.   7B?  I don't see 7B.  I see 7A.

3        Q.   So scroll down to the next page.

4        A.   Okay.  Okay.  I got it now.  Okay.

5             Involuntary Deplaning is what you're

6    talking about, correct?

7        Q.   Yeah.

8        A.   And you want which portion read?

9        Q.   Three, please.

10       A.   Okay.

11            "In situations where law

12       enforcement is delayed in the request

13       for assistance, GSC member of management

14       or SCSM must attempt to gather all

15       information from the customer

16       involved -- the information must be

17       reported in the passenger event report."

18       Q.   Okay.  So it seems clear -- from this

19   customer service manual -- that the GSC is

20   required to complete a service report; is that

21   correct?

22            MR. KOLB:  Objection; money

John Kirby
March 14, 2022

```
1    misrepresents document.  The witness --

2              THE WITNESS:  -- you misrepresent the

3    document --

4              MR. KOLB:  Objection stands.

5              MR. WOODROW:  -- the objection is

6    wrong.

7    BY MR. WOODROW:

8         Q.   What is your conclusion from reading

9    these two items about whether or not the GSC

10   must create a service report after involving

11   himself with an incident with a passenger?

12             MR. KOLB:  Objection to form?

13             THE WITNESS:  It's really hard for me

14   to answer that question, based on not knowing

15   the entire manual.  I don't know the manual and

16   what their responsibilities are, as a GSC.  I

17   don't -- I'm not a GSC, and I haven't taken that

18   training.

19   BY MR. WOODROW:

20        Q.   Okay.  So the plain language of this

21   manual is not enough for you to conclude that

22   the GSC is required to create a service report
```

John Kirby
March 14, 2022

1    after involving himself in an incident.

2             Is that your testimony?

3             MR. KOLB:  Objection; argumentative.

4    Asked and answered; misrepresents the document.

5    Other than that, it's a great question.

6             MR. WOODROW:  That's a great objection,

7    Kelly.

8             MR. KOLB:  Thank you.  I'll sustain

9    it --

10            (Whereupon, multiple speakers

11   simultaneously.)

12            MR. KOLB:  -- move on.

13   BY MR. WOODROW:

14     Q.   Isn't it true that if there is a

15   service report from a GSC that it's likely to --

16   it's likely to contain the passenger's version

17   of events since the role of GSC is to attempt to

18   mediate these situations?

19            MR. KOLB:  Objection to form.

20            THE WITNESS:  I have no idea what it --

21   what it should state.

22

John Kirby
March 14, 2022

```
1    BY MR. WOODROW:
2         Q.   Okay.  Are you testifying that -- well,
3    strike that.
4              When conducting an investigation, is it
5    a priority for your investigators to obtain all
6    relevant service reports about the incident?
7         A.   Yes.
8         Q.   Okay.  And what steps do they take to
9    do that?
10        A.   They get those reports sent to them
11   by various sources, but the security
12   operations team has access to all those
13   reports.
14        Q.   Okay.  And that the investigators do
15   they value the service reports generated by the
16   GSCs for what they might learn about the
17   incident from them?
18             MR. KOLB:  Objection to form.
19             THE WITNESS:  Can you ask the question
20   again?
21   BY MR. WOODROW:
22        Q.   The question is:  Do your investors
```

John Kirby
March 14, 2022

1    place any particular value on reviewing the GSC

2    reports when there's a passenger incident?

3              MR. KOLB:  Objection to form.

4              THE WITNESS:  All the reports should

5    have some type of value to them.

6    BY MR. WOODROW:

7         Q.   And your investigators don't assign any

8    particular value to the GSC reports due to maybe

9    them having the most neutral account of events?

10             MR. KOLB:  Objection to form.

11             THE WITNESS:  I don't know.

12   BY MR. WOODROW:

13        Q.   Okay.  In your time when you

14   investigated passenger incidents, did you pay

15   any special attention to the GSC reports when

16   you were conducting investigations?

17        A.   When I conducted investigations, I

18   paid attention to every report I had

19   assessed.

20      * Q.   If you were not sent a GSC report, would

21   you go and look to see if maybe one had been

22   created and overlooked?

John Kirby
March 14, 2022

```
 1              MR. KOLB:  Objection to form.

 2              THE WITNESS:  I would like to take a

 3      pause for just a second.  I have an airplane

 4      pulling in next to my office, and I'm able to do

 5      it for about maybe 15 seconds.

 6              MR. WOODROW:  Fine.

 7              (Brief pause.)

 8              THE WITNESS:  This gets loud.  Sorry.

 9      That's a little better.  Well, let's go back to

10      that question again.  Please say it again.

11              MR. WOODROW:  Madam reporter, could you

12      reread the question, please?

13              *  (Question read.)

14              THE REPORTER:  Absolutely.

15              MR. KOLB:  Objection to form.

16              THE WITNESS:  I would not know -- all

17      reports that are sent should be sent to me right

18      away.

19      BY MR. WOODROW:

20         Q.   Okay.  So the fact that an incident

21      happened either at the airport or onboarding

22      before takeoff would not cause you to wonder
```

John Kirby
March 14, 2022

1    where the GSC report was if you didn't receive

2    one?

3              MR. KOLB:  Objection to form.

4              THE WITNESS:  I might, I might not.  It

5    just depends.

6    BY MR. WOODROW:

7        Q.   Okay.  Well, let's go back is to

8    Exhibit D.  And I'll give you a little preview.

9              There is a GSC report.  This is Exhibit

10   D.  Okay.

11             (KIRBY Exhibit D marked for

12   identification and attached to the transcript.)

13   BY MR. WOODROW:

14       Q.   Okay.  All right.  Can you identify

15   this document?

16       A.   It's a service report.

17       Q.   Okay.  Have you seen this service

18   report before?

19       A.   Not -- well, I believe we looked at

20   it on Friday, but prior to that, no.

21       Q.   Okay.  Was this service report included

22   in the IRL packet that you received?

John Kirby
March 14, 2022

```
 1       A.    I do not believe so.

 2       Q.    Okay.  And what's the time stamp that

 3   says when this was created?  Do you see it right

 4   here?

 5       A.    June 10, '21, at 10:52.

 6       Q.    And that is that earlier than we looked

 7   and saw that the investigation documents were

 8   opened?

 9            MR. KOLB:  Objection to form.

10            THE WITNESS:  I don't remember.

11   BY MR. WOODROW:

12       Q.    Well, let's go back.

13            Okay.  First published -- could you

14   read this time?

15       A.    12:1:29 p.m.

16       Q.    Okay.  So now as you read this report,

17   does this report allege that Mr. Clowdus

18   assaulted Mr. Moreno?

19            MR. KOLB:  Objection to form.

20            THE WITNESS:  Sorry, I can read through

21   the phone.  I just lost it.  Hang on.  There we

22   go.
```

John Kirby
March 14, 2022

1              Yeah, I have read it.  What was the

2      question again?

3      BY MR. WOODROW:

4          Q.   Does Mr. Enriquez write in his report

5      that Mr. Clowdus assaulted Mr. Moreno?

6              MR. KOLB:  Objection to form.

7              THE WITNESS:  No.

8      BY MR. WOODROW:

9          Q.   Okay.  Now, if this report was

10     generated before the investigation began, why

11     would it not have been included in the IRL

12     packet?

13             MR. KOLB:  Objection to form.

14             THE WITNESS:  I don't know.

15     BY MR. WOODROW:

16         Q.   So I will ask you again:  Was this a

17     failure of investigation that this report was

18     not included in the IRL packet?

19             MR. KOLB:  Objection to form.

20             THE WITNESS:  You broke off a little

21     bit.  You have to ask that again.

22

John Kirby
March 14, 2022

```
 1    BY MR. WOODROW:

 2         Q.   I said was it a failure of

 3    investigation that this report was not included

 4    in the IRL packet?

 5              MR. KOLB:  Objection to form.

 6              THE WITNESS:  I wouldn't call it a

 7    failure.

 8    BY MR. WOODROW:

 9         Q.   Why not?

10         A.   I wouldn't call it a failure.

11         Q.   Would you have liked to see this report

12    in the IRL packet that you received?

13              MR. KOLB:  Objection to form.

14              THE WITNESS:  I like to see everything

15    that's available.

16    BY MR. WOODROW:

17         Q.   And is this report -- does this report

18    tend to make you more confident that Mr. Clowdus

19    assaulted Mr. Moreno or less confident?

20              MR. KOLB:  Objection to form.

21              THE WITNESS:  It doesn't change my

22    opinion, one way or the other.
```

John Kirby
March 14, 2022

```
1    BY MR. WOODROW:

2         Q.   Okay.  Let's go to Exhibit F.

3              (KIRBY Exhibit F marked for

4    identification and attached to the transcript.)

5    MR. WOODROW:

6         Q.   Do you recognize this document?

7         A.   Yes, that's a tour report.

8         Q.   Okay.  And in your job do you have

9    occasion to review tour reports?

10        A.   Very rarely do I see those.

11        Q.   And in what circumstances do you see

12   them?

13        A.   The only times I think I've seen

14   those is when an employee, like, had to go to

15   the hospital or the doctor.  I've seen

16   those -- it's very, very rare.

17        Q.   Okay.  And could you read this -- did

18   you review this last Friday, as well?

19        A.   Yes.

20        Q.   Had you seen it before that occasion?

21        A.   No.

22        Q.   Okay.  And could you read this out
```

John Kirby
March 14, 2022

1    loud, please, beginning with "irregularities"?

2    A.    Okay.

3         "Irregularities T2416.  Next,

4    received a call from corporate security

5    to deny the passenger, sky boarding

6    passenger Mr. Clowdus, Troy.  He was

7    traveling on trip 1303 Mex, which is

8    Mexico, on seat 1A and allegedly he hit

9    the purser while relocating a laptop

10   briefcase from the floor to the seat --

11   into the -- from the floor into the next

12   to him.

13        "According to the customer, his

14   laptop case hit the purser accidently

15   because it's a heavy bag.  CFC Havi

16   Enriquez was present and felt that

17   removing the was not proper.

18        "As to his understanding, the FA

19   unnecessarily escalated the situation.

20   The CFC then rebooked him on the next

21   departure.  And, once again, was

22   surprised when he learned the customer

John Kirby
March 14, 2022

```
1            had been removed for a second time.  I

2            spoke with corporate security and he

3            said three different flight attendants

4            filed service reports where they

5            witnessed the purser getting hit.

6                 "The CFC stated, 'Well, that is not

7            possible because I was close to the

8            purser and when the incident occurred

9            where the FA" -- flight attendant --

10           'were on the back of the aircraft.'.

11                "The passenger says he travels

12           every week.  He was still confused about

13           why the purser took that approach."

14      Q.   Okay.  So my question to you is:  Why

15   would AA not have any protocols in place to

16   connect this very pertinent record with the

17   investigation that was being done into

18   Mr. Clowdus?

19           MR. KOLB:  Objection to form.

20           THE WITNESS:  I don't know.

21   BY MR. WOODROW:

22      Q.   Because everybody has said, "It wasn't
```

John Kirby
March 14, 2022

1    my responsibility.  Mr. Gonzalez, it wasn't his

2    responsibility; Mr. Maldonado, it wasn't his

3    responsibility.

4            So who's responsibility is it that

5    American Airlines gets these decisions right?

6            MR. KOLB:  Objection to form.

7            THE WITNESS:  I don't know.

8    BY MR. WOODROW:

9        Q.   Would you characterize this as a

10   failure of investigation that this report did

11   not make its way into the IRL packet?

12           MR. KOLB:  Objection to form.

13           THE WITNESS:  I don't like the word

14   "failure," so no.

15   BY MR. WOODROW:

16       Q.   What word would you use, Mr. Kirby?

17       A.   It would have been nice to have seen

18   it.  It wouldn't necessarily -- it wouldn't

19   necessarily have changed what happened.

20       Q.   If you had seen this, what would you

21   have done differently?

22           MR. KOLB:  Objection to form.

John Kirby
March 14, 2022

```
 1              THE WITNESS:  I -- I -- nothing.

 2      BY MR. WOODROW:

 3          Q.   You would be taken no further steps to

 4      investigate if you had seen this tour report?

 5          A.   Myself, no.  I'm not the

 6      investigator.

 7          Q.   Would you have been satisfied banning

 8      Mr. Clowdus if you had this in the IRL packet

 9      and nothing more?

10              MR. KOLB:  Objection to form.

11      BY MR. WOODROW:

12          Q.   Nothing more than the other service

13      reports, I should say.

14              MR. KOLB:  Objection to form.

15              THE WITNESS:  You're saying the service

16      reports, plus this report, as well?

17      BY MR. WOODROW:

18          Q.   Correct?

19          A.   We would have still banned

20      Mr. Clowdus.

21          Q.   If that was all you received, would you

22      have asked Mr. Maldonado to conduct more
```

John Kirby
March 14, 2022

1    inquiry, such as possibly calling or e-mailing

2    Mr. Enriquez?

3         A.   Before it was received?  I'm sorry,

4    you kind of broke off a little bit.

5         Q.   If you received this in your IRL packet

6    and Mr. Maldonado had still sent it up the chain

7    with the recommendation to ban, would you have

8    wanted him to at least contact Mr. Enriquez or

9    conduct any additional investigation before

10   signing off on Mr. Clowdus's ban?

11             MR. KOLB:  Object to form.

12             THE WITNESS:  I'm not sure.

13   BY MR. WOODROW:

14        Q.   You testified earlier that you have had

15   occasion, in the past, to send IRL packets back

16   to investigators because you've been

17   dissatisfied with the amount of information you

18   were given.

19             Would this be an instance where you

20   were dissatisfied with the information given?

21        A.   I'm not sure.  I don't think so, no.

22        Q.   Why not?

John Kirby
March 14, 2022

```
1          A.    Based on what the flight attendant

2    said, I would take their account since they

3    were the victim in his instance.  And there

4    was also a victim -- or a witness flight

5    attendant into consideration that this

6    assault occurred and would uphold this IRL.

7          Q.    Would you have been interested in

8    knowing what the passenger said if you saw this?

9          A.    What the -- what the -- Mr. Clowdus

10   said?

11         Q.    Yeah.  What Mr. Clowdus's story --

12   version of events was?

13         A.    It's always nice to hear all the --

14   all the accounts.

15         Q.    And would you have gone out of your

16   way -- would this be one of those instances --

17   an example of one of those instances that you

18   just spoke of where you called the passenger for

19   more information?

20         A.    I don't call passengers, that's up

21   to the investigators.

22         Q.    I'm sorry, I'm referring back when you
```

John Kirby
March 14, 2022

1   were an investigator.

2          And you just recently testified that

3   over the course of your time conducting

4   investigations, you did have occasion to

5   occasionally contact passengers.

6       A.   Correct.

7       Q.   Would this set of facts cause one of

8   those occasions?

9       A.   It might, it might not, but probably

10  not.

11      Q.   So you wouldn't have any concern that

12  you may be making the wrong decision in accusing

13  a passenger of a felony without further inquiry?

14          MR. KOLB:  Objection to form.

15          THE WITNESS:  This is not a felony.

16  BY MR. WOODROW:

17      Q.   It is a felony to assault a flight

18  attendant.  I beg to differ.

19          MR. KOLB:  Objection to form;

20  argumentative.

21  BY MR. WOODROW:

22      Q.   Is it your testimony that this set of

John Kirby
March 14, 2022

```
1    facts would not cause you to seek additional

2    facts before you made a final determination?

3              MR. KOLB:  Objection; asked and

4    answered.

5    BY MR. WOODROW:

6         Q.   Go ahead, sir.

7         A.   I'm sorry.

8         Q.   Answer the question, please.

9         A.   What was the question again?

10        Q.   The question is:  Is it your testimony

11   that this set of facts that I've presented you

12   with here today would not cause you to conduct a

13   deeper inquiry before making the final decision

14   to ban a passenger for life?

15             MR. KOLB:  Objection to form.

16             THE WITNESS:  No, our inquiry -- our

17   inquiry was made based on the flight attendant

18   alleging the assault, which we trust to be true,

19   as well as the other flight attendant seeing it.

20   And we know that oftentimes, when passengers are

21   involved in misconduct, they will lie or change

22   the facts of the story to make it look better
```

John Kirby
March 14, 2022

```
 1   for themselves.  So we trust our employees and

 2   we have to do that as a company.

 3   BY MR. WOODROW:

 4       Q.   And has it ever been your experience

 5   that an employee will file a secondhand

 6   supporting service report to back up one of

 7   their coworkers?

 8           MR. KOLB:  Objection to form.

 9           THE WITNESS:  I don't know.

10   BY MR. WOODROW:

11       Q.   Do you ever entertain that awareness or

12   possibility when you are evaluating the service

13   reports that you receive?

14           MR. KOLB:  Objection to form.

15           THE WITNESS:  Anything's possible.

16   BY MR. WOODROW:

17       Q.   But you don't give -- you say anything

18   is possible, but do you ever take it into

19   consideration when you are making

20   determinations?

21       A.   I trust our employees are telling us

22   the truth when they are -- when they are
```

John Kirby
March 14, 2022

1    making these reports?

2         Q.   When you --

3         A.   They have no reason not to.

4         Q.   Well, when you read one of these

5    reports, do you assume that it's a firsthand

6    account, even if it does not explicitly say that

7    it is?

8         A.   I believe it's a firsthand account,

9    especially with the victim.

10        Q.   Well, of course, it would be with the

11   victim.  I'm asking about a witness statement.

12   Do you assume that all witness statements are

13   firsthand accounts, even if they do not

14   explicitly claim to be so?

15             MR. KOLB:  Objection to form.

16             THE WITNESS:  I --

17             MR. KOLB:  Go ahead.

18             THE WITNESS:  I believe that these

19   reports made by our witnesses, also, are true.

20   And even if it's not explicitly stated that they

21   were there -- right there at the stop, they have

22   seen something.

John Kirby
March 14, 2022

```
1    BY MR. WOODROW:
2        Q.   When you read Mr. Enriquez's service
3    report, did you believe that to have been a
4    firsthand account?
5        A.   I didn't read it until today --
6    well, until Friday, actually.
7        Q.   Okay.  And when you read it, did you
8    believe from that that he had witnessed the
9    event?
10       A.   It didn't seem like it.  It seemed
11   more like he was being told a story.
12       Q.   Okay.  So when you read Mr. Enriquez's
13   report, you read it with a skeptical eye and
14   wondered whether or not it was a first or
15   secondhand account; is that right?
16            MR. KOLB:  Objection; mischaracterizes
17   his testimony; asked and answered.
18   BY MR. WOODROW:
19       Q.   Answer the question, please.
20       A.   Mr. Enriquez has made a report that
21   he was privy to some of this stuff obviously,
22   but not everything.  He wasn't there when the
```

John Kirby
March 14, 2022

```
1    actual assault occurred.  That's what it

2    seemed to be to me at least.

3         Q.   Did he say that explicitly -- that he

4    wasn't there when the assault occurred?

5         A.   He doesn't say that, no.

6         Q.   And so why would you conclude that his

7    was a secondhand account, but Ms. Gray's was a

8    firsthand account?

9         A.   It's more logical for -- for the

10   flight attendants to be onboard during

11   boarding, that would be for a GSC.  GSCs are

12   rarely on board during boarding.

13        Q.   And if I were to tell you that actually

14   Mr. Enriquez was closest to the incident when it

15   happened, has been his had testimony, that that

16   would disagree with that logical conclusion,

17   wouldn't it?

18             MR. KOLB:  Objection; misconstrues his

19   testimony; attempts to mislead the witness.

20             MR. WOODROW:  No, it does not.

21   Mr. Enriquez has testified that he was standing

22   right around the bulkhead.  And that he turned
```

John Kirby
March 14, 2022

```
1    around the corner as soon as he heard, "You hit

2    me," so it does not misconstrue his testimony

3    whatsoever.

4           MR. KOLB:  He said he was outside the

5    aircraft.

6           MR. WOODROW:  He said he was inside the

7    aircraft, standing around the bulkhead.  You can

8    go back and review the testimony.

9           MR. KOLB:  That's a misrepresentation.

10   He said he was outside the aircraft and saw

11   nothing.  And first went into the aircraft when

12   he heard Mr. Moreno scream he'd been hit.

13   That's his testimony.

14          MR. WOODROW:  Now --

15          (Whereupon, multiple speakers

16   simultaneously.)

17          MR. KOLB:  -- that's his testimony.

18          MR. WOODROW:  Well, that's not his

19   testimony.  We can go back and look at that.  In

20   any event --

21          (Whereupon, multiple speakers

22   simultaneously.)
```

John Kirby
March 14, 2022

```
1              MR. KOLB:  Well, let's be fair, maybe,

2      to the witness.  If you're going to hand him

3      allowing witness testimony, let me pull up his

4      deposition transcript.

5              MR. WOODROW:  No, we're not going to

6      take time to do that.  We --

7              MR. KOLB:  You don't want to take time

8      to be straightforward with the witness?  Is that

9      what you are saying?

10              MR. WOODROW:  We can take a break and

11      you can do that on redirect, Kelly.  You're not

12      going to step into my deposition.  You are more

13      than welcome to that on redirect.

14              MR. KOLB:  I just don't you to mislead

15      the witness, because you might not get a correct

16      answer.

17              MR. WOODROW:  And I don't want you to

18      mislead the witness either, Kelly, and I also

19      don't want you to testify in my deposition.

20              MR. KOLB:  Well, stop misleading the

21      witness and I won't --

22              MR. WOODROW:  Okay.
```

John Kirby
March 14, 2022

1           MR. KOLB:  -- very simple.

2           MR. WOODROW:  Right back at you,

3      Kelly --

4           MR. KOLB:  Oh, I'm sorry.

5           MR. WOODROW:  -- because you're the one

6      misleading the witness.

7      BY MR. WOODROW:

8      Q.   Let's go back to Mrs. Gray's -- let's

9      go back to Mrs. Gray's service report.

10          Mr. Kirby, does she say anywhere in

11     this -- I'm sorry, this is not the same one.

12          In her service report, does she ever

13     say, explicitly, that she witnessed?

14          If you were logically going to evaluate

15     this service report, how would logically

16     conclude that all of these very specific facts

17     were witnessed, firsthand, and not reported as a

18     secondhand account?

19     A.   How many questions do you have in

20     there?

21     Q.   Read this, please, and tell me what

22     assertions in this lead you to believe that she

John Kirby
March 14, 2022

1    witnessed, firsthand, every fact that she puts

2    in this account.

3              MR. KOLB:  Objection to form.

4              THE WITNESS:  I need you to repeat that

5    one more time.  Sorry.

6    BY MR. WOODROW:

7         Q.   Okay.  Read the facts related to the

8    event, and I want you to explain to me why you

9    assume this is all reliable as firsthand

10   testimony; testimony of a firsthand account that

11   she witnessed personally and not, as you

12   concluded with Mr. Enriquez more logically,

13   something that maybe she just is supporting her

14   fellow flight attendant and relating what she

15   was told by him.

16        A.   That's a really long statement.  But

17   it appears, based on this report, that this

18   flight attendant says, Ms. Gray, that she did

19   witness what happened.  And it would be

20   logical for me to believe that she would do

21   that based on her position in the aircraft

22   during boarding and not necessarily for a GSC

John Kirby
March 14, 2022

1     to see or be close enough to witness

2     anything.

3         Q.   So is it your testimony that if you

4     receive a service report from a GSC, you accord

5     it less weight than a service report that you

6     would receive from a flight attendant?

7         A.   No.

8         Q.   That's what I'm hearing you say right

9     here.

10            MR. KOLB:  Objection; argumentative.

11     BY MR. WOODROW:

12        Q.   As the investigator or someone who

13     signs off on investigations, are you ever

14     concerned about the potential for bad employees

15     to push or abuse passengers who rub them the

16     wrong way?

17            MR. KOLB:  Objection to form.

18            THE WITNESS:  I don't know.  I'm not

19     sure.

20     BY MR. WOODROW:

21        Q.   Okay.  Do you think that it ever

22     happens that a flight attendant gets angry at an

John Kirby
March 14, 2022

```
1    employee or at a customer -- sorry --

2         A.   Okay.

3         Q.   -- and initiates action against them

4    that's unfair?  Has that ever happened do you

5    think?

6              MR. KOLB:  Object to form.

7              THE WITNESS:  I don't know if it has or

8    not.

9    BY MR. WOODROW:

10        Q.   Okay.  Does AA, as an institution, make

11   any effort to acknowledge the reality that

12   flight attendants are not always the model of

13   profession that AA hopes they will be?

14             MR. KOLB:  Objection to form.

15             THE WITNESS:  I don't even know how to

16   answer that question, because that's not my

17   role.

18   BY MR. WOODROW:

19        Q.   Do you, as an investigator -- or are

20   you aware if American Airlines, as a company,

21   employs any safeguards to protect from

22   potentially rogue employees?
```

John Kirby
March 14, 2022

1          MR. KOLB:  Objection to form.

2          THE WITNESS:  I do not know.

3     BY MR. WOODROW:

4       Q.   Do you ever consider that possibly that

5     that could be actually, in fact, what's

6     occurring when you are conducting an

7     investigation or signing off on an

8     investigation?

9          MR. KOLB:  Objection to form.

10          THE WITNESS:  Again, anything is

11     possible, but we believe employees tell us the

12     truth.  There's no reason for our employees not

13     to.

14     BY MR. WOODROW:

15       Q.   So is it fair to say that if you are

16     going to err, you are going to err on the side

17     of your employees every time?

18          MR. KOLB:  Objection to form.

19          THE WITNESS:  "Every time's" a big

20     word.

21     BY MR. WOODROW:

22       Q.   More often than not, if you're going to

John Kirby
March 14, 2022

```
1    err, you're going to err on the side of your

2    employee.

3            Is that a fair statement?

4            MR. KOLB:  Objection to form.

5            THE WITNESS:  I believe we take our

6    employees word to be the truth.

7    BY MR. WOODROW:

8        Q.   And simultaneously, you believe that

9    the passengers often make up stories to justify

10   what occurred; is that correct?

11       A.   I think passengers oftentimes do

12   that, as well as criminals.

13       Q.   So do you equate passengers with

14   criminals in these situations?

15           MR. KOLB:  Objection to form.

16           THE WITNESS:  If a passenger assaults

17   someone, they've committed a crime.

18   BY MR. WOODROW:

19       Q.   Does a criminal get a fair hearing in

20   court?

21           MR. KOLB:  Objection to form.

22           THE WITNESS:  Someone accused of a
```

John Kirby
March 14, 2022

```
 1   crime?  Are you asking me that?

 2   BY MR. WOODROW:

 3       Q.   Yes.  If someone is accused of a

 4   crime -- of being a criminal, they get a fair

 5   hearing and a chance to testify on their behalf,

 6   don't they?

 7       A.   They do.

 8       Q.   But you don't give your passengers that

 9   same opportunity, do you, before you conclude

10   that they are more often than not going to be

11   telling a lie?

12            MR. KOLB:  Objection; argumentative.

13   Calls for speculation.  Hypothetical.

14   BY MR. WOODROW:

15       Q.   You can still answer?

16       A.   I agree, it calls for -- it calls

17   for speculation.  I -- I'm guessing here, at

18   this point.

19       Q.   Well, no, I think you are testifying.

20   I think that is what you have explicitly

21   testified and I'm just putting a point on it.

22            Has AA every identified rogue employees
```

John Kirby
March 14, 2022

1   who abused passengers?

2           MR. KOLB:  Objection to form.

3           THE WITNESS:  Can you ask the question

4   one more time?

5   BY MR. WOODROW:

6       Q.   Are you aware of an employee every

7   receiving punishment for abusing a passenger in

8   the course of any investigations you've been a

9   part of?

10      A.   Yes.

11      Q.   Give me an example?

12      A.   I don't know the specifics, but we

13  did have an employee some time back who

14  actually assaulted a passenger.

15      Q.   And was that witnessed by other

16  employees?

17      A.   I don't know.  I don't think so.

18      Q.   Have you ever caught an employee in a

19  lie while you were investigating the facts of

20  what they reported in a service report about an

21  incident?

22      A.   I am not sure.  I don't think so.

John Kirby
March 14, 2022

1        Q.   How would you identify if a certain

2    employee attracts more passenger incidents than

3    is objectively reasonable?

4            MR. KOLB:  Objection to form.

5            THE WITNESS:  I have no knowledge of

6    that.

7    BY MR. WOODROW:

8        Q.   Do you know of any metric by which

9    American measures the number of passenger

10   incidents that accrue to any specific employee?

11       A.   I do not.

12       Q.   So there was an employee and, you know,

13   they kicked 100 people or they asked the captain

14   to kick a hundred people off of flights in 100

15   days and that is widely above the average of,

16   let's say, 5 for their coworkers, would that

17   come to anyone's attention?

18           MR. KOLB:  Objection to form.

19           THE WITNESS:  I would hope so.

20   BY MR. WOODROW:

21       Q.   And what would be the frontline of

22   defense in recognizing that?

John Kirby
March 14, 2022

1             MR. KOLB:  Objection to form.

2             THE WITNESS:  I don't know.

3    BY MR. WOODROW:

4        Q.   Would that ever be something that you,

5    as an investigator, or one of your investigators

6    would have occasion to realize?

7             MR. KOLB:  Objection to form.

8             THE WITNESS:  I don't think so.

9    BY MR. WOODROW:

10       Q.   So if Mr. Comb called you up six months

11   and asked you a take a second look at this

12   decision Mr. Clowdus, would you have done so?

13            MR. KOLB:  Objection to form.

14            THE WITNESS:  If who called -- if

15   who -- say it again, please.

16   BY MR. WOODROW:

17       Q.   Mr. Comb?

18       A.   Oh.  As --

19            (Whereupon, multiple speakers

20   simultaneously.)

21       Q.   -- correctly.  It is not phonetic.

22   Sorry.

John Kirby
March 14, 2022

```
 1              MR. KOLB:  Thank you.  Thank you.

 2              THE WITNESS:  If we were asked by

 3      counsel to relook at a case, yes.

 4      BY MR. WOODROW:

 5         Q.   And if he had asked you to do that,

 6      what steps would you have taken?

 7         A.   We'd -- well, I would have sent it

 8      back to the investigator to take a look at

 9      the case.

10         Q.   And if he had taken aback to -- taken a

11      second look, presumably he wouldn't have been

12      satisfied just with the two service reports that

13      he relied upon initially, correct?

14         A.   Sorry, say that again.

15         Q.   Well, by sending it back to take

16      another look, what would you expect him to do?

17         A.   To reread it and look for everything

18      that was out there that he had used to make

19      his first decision.

20         Q.   And would you have expected him to find

21      a passenger complaint, if one existed?

22              MR. KOLB:  Objection to form.
```

John Kirby
March 14, 2022

```
 1              THE WITNESS:  I don't know.

 2    BY MR. WOODROW:

 3        Q.   Is there -- tell me how would you go

 4    about looking for a passenger complaint?  As an

 5    investigator, what do you do?

 6        A.   Those complaints -- sorry, I have

 7    background noise -- those complaints come to

 8    us, like if a passenger responds to us in

 9    their, you know, communication back to the

10    company, we see that, corporate security sees

11    that.

12        Q.   But if a passenger files their

13    complaint online, and that's the only way that

14    they know how to do it, how would your

15    investigator determine if one of those

16    complaints existed?

17        A.   I'm not sure.

18        Q.   So there's no clear protocol is what

19    you are testifying?

20              MR. KOLB:  Objection to form.

21              THE WITNESS:  I think the protocol is

22    there.  If a passenger sends that to customer
```

John Kirby
March 14, 2022

```
1    relations, that should find its way to us.

2    BY MR. WOODROW:

3        Q.   Okay.  And who should be the person

4    that would send it to you?

5        A.   Security operations.

6        Q.   And if a passenger files a complaint,

7    does that go in through security operations or

8    into customer service?

9        A.   Through customer relations.

10       Q.   So is it your testimony that it's the

11   responsibility of customer relations to forward

12   complaints to corporate security?

13           MR. KOLB:  Objection to form.

14           THE WITNESS:  I know I've seen them in

15   the past, so I believe so.

16   BY MR. WOODROW:

17       Q.   If you had been aware at the time that

18   Mr. Enriquez believed it was Mr. Moreno who

19   unnecessarily escalated and also had disagreed

20   that there could be a witness who witnessed it

21   firsthand because it was his testimony that's

22   all the flight attendants were at the back of
```

Joan Kirby
March 14, 2022

1    the plane, what would you have done differently?

2           MR. KOLB:  Objection to form;

3    misconstrues testimony, and asks for

4    speculation.

5           THE WITNESS:  Like I said before,

6    nothing.  This investigation was concluded.

7    BY MR. WOODROW:

8      Q.   If Mr. Enriquez came to you today and

9    said, "I remember that event," and "This

10   passenger he really got shafted," you would

11   completely discount his appeal to you?

12          MR. KOLB:  Objection to form.

13          THE WITNESS:  That didn't happen here.

14   He didn't come to us.

15   BY MR. WOODROW:

16     Q.   What I hear you saying is even if he

17   did, that would be your response?

18          MR. KOLB:  Objection to form.

19          THE WITNESS:  What I basically said

20   was, I trusted the flight attendants to be

21   telling the truth, as I'm sure the investigator

22   did.  He trusted them to be telling the truth;

Joan Kirby
March 14, 2022

1   otherwise, he would not have sent this -- this

2   report over to me.  And they were firsthand --

3   they had firsthand account of what happened.

4   BY MR. WOODROW:

5       Q.   Or at least that's how you interpreted

6   the witness statement to be without seeing that

7   Mr. Enriquez claims, no, she could not have had

8   firsthand of what happened?

9           MR. KOLB:  Objection to form;

10  misconstrues testimony; calls for speculation.

11  BY MR. WOODROW:

12      Q.   Isn't that correct?

13      A.   I might have to speculate, and I'm

14  not going to speculate.

15      Q.   Well, you wouldn't have to speculate.

16  If we go right to the tour report, that's

17  exactly what Mr. Enriquez has said in the tour

18  report.  Let's go back and look at this. He

19  stated that three different flight attendants

20  filed a service report where they witnessed the

21  purser get his.  CSC stated, "Well, that is not

22  possible because I was closest to the purser.

John Kirby
March 14, 2022

1    And when the incident occurred with the FA, we

2    were on the back of the aircraft."

3              So that's exactly what he's saying.

4    That's not speculation on his part, is it?

5              MR. KOLB:  Objection; misrepresents the

6    witness's testimony.

7    BY MR. WOODROW:

8        Q.   Is it?

9        A.   He is making a statement that isn't

10   necessarily the same as the others, but I

11   wasn't there.  So --

12             (Whereupon, multiple speakers

13   simultaneously.)

14       Q.   How was --

15             (Whereupon, multiple speakers

16   simultaneously.)

17       A.   -- to know one way or the other.

18       Q.   How was this statement not making a

19   claim of fact just like the others?

20       A.   It is.

21       Q.   It is, isn't it?

22             And what is he saying about the

Joan Kirby
March 14, 2022

```
 1    likelihood of Mrs. Gray's statement being

 2    firsthand.  He's contradicting that, isn't he?

 3         A.   He appears to be that way, yes.

 4         Q.   But your testimony today is that's

 5    still wouldn't have mattered and it wouldn't

 6    have affected your investigation if you had

 7    known -- wouldn't have affected your signing off

 8    on the investigation if you had known that two

 9    American Airlines employees were giving

10    conflicting testimony.

11              MR. KOLB:  Objection to form.

12              THE WITNESS:  I believe in this case,

13    the flight attendant was assaulted.

14    BY MR. WOODROW:

15         Q.   And what gives you cause to believe

16    that?

17         A.   Because he said so.

18         Q.   And the passenger said that wasn't the

19    case, didn't he?  You discount the passenger's

20    word over Mr. Moreno's every time, correct?

21              MR. KOLB:  Objection; asked and

22    answered.
```

Joan Kirby
March 14, 2022

```
1    BY MR. WOODROW:

2         Q.   Do you know how to define an assault?

3         A.   Yes.

4         Q.   What does an assault necessitate?  What

5    elements?  As a former police officer, I'm sure

6    you know this very well.

7              MR. KOLB:  Objection to form.

8              THE WITNESS:  An assault, in itself, is

9    different in different jurisdictions.  As far as

10   the definition, but I'll give you the California

11   definition in a round-about way.

12             You have to the present ability to, if

13   you threaten someone, and you have the present

14   ability to complete that threat, that's an

15   assault.  Once you complete that threat, then

16   you have battery.  In this instance, you had a

17   battery of the flight attendant who was hit by

18   the bag.

19   BY MR. WOODROW:

20        Q.   And in every instance of assault or

21   battery, the one essential element is intent; is

22   it not?
```

Joan Kirby
March 14, 2022

```
1              MR. KOLB:  Objection to form.

2              THE WITNESS:  It's not necessarily --

3      assault and battery is not necessarily an intent

4      crime.

5      BY MR. WOODROW:

6         Q.   Is that right --

7              (Whereupon, multiple speakers

8      simultaneously.)

9         A.   I'll give you an example.  If you go

10     in and do a robbery at a convenience store

11     with a gun, and you point that gun at the

12     clerk, and somehow it goes off, you could

13     still be convicted of a crime --

14        Q.   Yeah, that's completely different.

15        A.   -- whether you meant to or not.

16        Q.   And that would a per se, sort of, a

17     crime.  And we're not talking about that here,

18     are we?  We're talking about simple assault.

19              And can you assault somebody

20     accidentally without meaning to threaten them?

21              MR. KOLB:  Objection to form.

22              THE WITNESS:  Without meaning to
```

Joan Kirby
March 14, 2022

1    threaten them, you said?

2    BY MR. WOODROW:

3        Q.   Yes.

4        A.   You can assault someone just by

5    merely touching them.

6        Q.   And isn't it true that what would make

7    that an assault is that you meant to touch them

8    offensively?  You meant to --

9             MR. KOLB:  Objection to form.

10   BY MR. WOODROW:

11       Q.   -- if Mr. Clowdus is to be believed

12   that and his bag made accidental contact with

13   Mr. Moreno, then that and cannot legally be an

14   assault, can it?

15            MR. KOLB:  Object to form.

16            THE WITNESS:  We don't believe it was

17   an accident.

18   BY MR. WOODROW:

19       Q.   Exactly.

20            MR. WOODROW:  All right.  I need to

21   take a break and put together an exhibit of the

22   first letter that was sent that I believe you

Joan Kirby
March 14, 2022

1    gave to us, because I didn't prepare that one.

2              MR. KOLB:  The June 10 letter?

3              (Recessed at 2:50 p.m.)

4              (Reconvened at 2:56 p.m.)

5              MR. WOODROW:  Yeah, the temporary

6    suspension and --

7              THE WITNESS:  -- specifically to it.

8              MR. WOODROW:  Okay.

9              THE WITNESS:  Perfect.  Fine.  It is.

10   BY MR. WOODROW:

11        Q.   Can you identify this document, please?

12        A.   This document is a letter that is

13   sent to Mr. Clowdus regarding an

14   investigation being conducted.

15        Q.   And this would be the first letter that

16   you referenced earlier as opposed to the second

17   letter relaying the result of the investigation;

18   isn't that correct?

19        A.   Let me just make sure, but I believe

20   so.  Hang on.

21              This is the first letter I believe,

22   yes.

Joan Kirby
March 14, 2022

1      Q.   And this would be the letter that you

2   said provided the passenger the opportunity to

3   give their side of the story by replying to

4   corporate security, correct?

5      A.   They were given the opportunity,

6   yes.

7      Q.   Okay.  Now, could you read the top line

8   of this e-mail between the three asterisks on

9   either side?

10      A.   "Please do not reply.  This is not a

11   monitored e-mail address."

12      Q.   So how, then, would a passenger use

13   this opportunity to give their side of the story

14   like you had claimed?

15      A.   I'm not because this is -- I think

16   this is an older letter maybe, but I'm not

17   sure.  I'd have to go back and talk to that

18   department because I don't -- I don't do

19   these letters myself.

20      Q.   So is it possible that this doesn't

21   actually afford a passenger a way to speak on

22   their own behalf?

Joan Kirby
March 14, 2022

```
 1        A.   Give me just a second.  I'm going to

 2    try to hopefully figure this out.

 3             (Brief pause.)

 4             THE WITNESS:  I'm not sure.

 5    BY MR. WOODROW:

 6        Q.   If a passenger were to read this

 7    letter, is it reasonable for them to think they

 8    should reply to this e-mail address and

 9    advocates on their own behalf?

10             MR. KOLB:  Objection to form.

11             THE WITNESS:  I think a passenger

12    should have the opportunity to reply somewhere,

13    but I can't really say, based on what I'm seeing

14    in front of me.

15    BY MR. WOODROW:

16        Q.   Do you know of any other place where a

17    passenger is afforded the opportunity to either

18    weigh in on their own investigation or to appeal

19    the outcome?

20        A.   Customer relations.

21        Q.   And that would be the Exhibit C that we

22    reviewed earlier, which Mr. Clowdus did do,
```

Joan Kirby
March 14, 2022

1    correct?

2         A.   He sent something to them, yes.

3         Q.   And this would be the other opportunity

4    that you're referring that a passenger has to

5    advocate on their own behalf, correct?

6         A.   I think so, it seems like it.

7         Q.   And can you think of any other way in

8    which a passenger can appeal or weigh in on

9    their behalf?

10        A.   Not off the top of my head, no.

11        Q.   Okay.  So if we go back to the facts

12   that we've reviewed today, the evidence, the

13   various documents, the tour report, the

14   passenger complaint, Mr. Enriquez service

15   report, and Mr. Moreno's service report, and we

16   remove Mrs. Gray's service report from the

17   equation, would you have done anything

18   differently?

19             MR. KOLB:  Objection to form.

20             THE WITNESS:  I'm not able to remove a

21   report, if it's there.

22

Joan Kirby
March 14, 2022

1    BY MR. WOODROW:

2        Q.   I'm saying if we were to.  If, say,

3    either she hadn't made it or she recanted, and

4    we depose her and she says, "You know, I didn't

5    see anything."  If she were to do that, would

6    you, then, view the evidence that you've seen

7    today in a light more favorable to Mr. Clowdus?

8            MR. KOLB:  Objection to form.

9            THE WITNESS:  I -- we're definitely,

10   you know -- we're definitely speculating one way

11   or the other, whether we would do something

12   different based on a fact that's not there,

13   because her report is there, it stands, as does

14   the victim's report.

15   BY MR. WOODROW:

16       Q.   Well, let's take -- we're going to

17   depose Mrs. Gray next week, week and a half, and

18   we don't know what she's going to say.  But she

19   might come in and say, "You know, I didn't see

20   anything firsthand.  Sorry."

21           If that were the case, and I came back

22   to you and I said, "Mr. Kirby, could you please

Joan Kirby
March 14, 2022

```
1    reopen this investigation and take a second look

2    at this now, in light of the fact that you don't

3    have a corroborating witness statement?"

4            Would you be open to doing that?

5            MR. KOLB:  Objection to form.

6            THE WITNESS:  To answer your question,

7    if she changed her story?

8    BY MR. WOODROW:

9        Q.   Correct.

10       A.   We wouldn't reconsider this case

11   most likely, but I don't know.  I mean, we

12   would at least talk about it.

13       Q.   Okay.  All right.  And if you talked

14   about it and you decided that the evidence in

15   your opinion now was not strong enough to impose

16   such a harsh penalty on Mr. Clowdus, you'd have

17   the authority to reverse that decision, correct?

18           MR. KOLB:  Objection to form?

19           THE WITNESS:  No.

20   BY MR. WOODROW:

21       Q.   No?

22       A.   By myself, no.  This would go higher
```

Joan Kirby
March 14, 2022

```
 1    than me.

 2         Q.   Now that litigation has commenced, I

 3    presume is the factor that you are evaluating in

 4    that conclusion, correct?

 5              MR. KOLB:  Objection to form.

 6              THE WITNESS:  That's a partial reason.

 7    BY MR. WOODROW:

 8         Q.   What's the rebuttal statement of the

 9    reason?

10         A.   If we have an employee who files a

11    report that's not true and she changes mind

12    or he changes his mind, that's going to

13    change things.

14         Q.   If you have an employee who changes

15    their mind and says, "Well, you know, I believe

16    what I wrote, but I didn't actually see it."

17              Are you going to discipline that

18    employee for implying that they didn't actually

19    see it?

20              MR. KOLB:  Objection to form.

21              THE WITNESS:  I don't discipline

22    employees.
```

John Kirby
March 14, 2022

```
 1    BY MR. WOODROW:

 2        Q.   Are you going to open an investigation

 3    into that employee's conduct?

 4             MR. KOLB:  Objection to form.

 5             THE WITNESS:  This piece is outside

 6    corporate security.  That -- that -- what you're

 7    implying, is outside of our role.

 8    BY MR. WOODROW:

 9        Q.   Who's role would it be?

10        A.   If it's a flight attendant, they

11    report to -- they report flight service

12    managers.  If it's a customer service agent,

13    they report to other managers.  There's a lot

14    of managers in that company who oversee

15    different roles.

16        Q.   Fair enough.

17             All right.  Let me see.  I believe

18    that's about all I have for you, Mr. Kirby.

19             MR. KOLB:  I have just a few.  Bear

20    with me, Mr. Kirby.

21    ///

22    ///
```

Joan Kirby
March 14, 2022

```
1              CROSS-EXAMINATION BY COUNSEL FOR

2              DEFENDANT, AMERICAN AIRLINES, INC.

3      BY MR. KOLB:

4         Q.   Some questions and some statements were

5      made to you that do you see Mr. Enriquez was on

6      the aircraft when this incident occurred.  I'd

7      like read to you from his deposition, if you

8      listen to me carefully, sir.

9              Let me get there.

10             This is starting at page 13, line 25.

11             "QUESTION:  Okay.  So where were

12          you physical located when the

13          allegation assault occurred by

14          Mr. Moreno -- claim by Mr. Moreno

15          occurred?

16             "ANSWER:  I was outside the

17          aircraft at door just waiting for the

18          flight attendant to close the door.

19          So we were ready for departure.

20             MR. KOLB:  All right.  One second.  At

21      line -- page 14, line 21.

22             "QUESTION:  All right.  Okay.  So
```

Joan Kirby
March 14, 2022

1           describe to the best of your

2           recollection -- your recollection,

3           the events that led up to you

4           escorting Mr. Clowdus from that

5           first flight.

6               "ANSWER:  Well, as I said before,

7       we were standing at the door of the

8       aircraft in the jet bridge, the agents

9       and myself, waiting for the door to be

10      closed.  A few seconds later, that's

11      when I heard -- we heard someone

12      saying, 'You hit me, you hit me.'  We

13      heard it twice. Immediately, my

14      reaction was to go inside the aircraft

15      to the find out what was going on."

16          The rest of my question, sir:  I want

17   you to assume that Mr. Enriquez was never

18   inside the aircraft when this incident

19   occurred; is that fair?

20      A.   Based on what he said, yes, that's

21   fair.

22      Q.   Let me add one more snip of the

Joan Kirby
March 14, 2022

1    testimony.  Page 17, line 22.

2            "QUESTION:  Did you ever see

3        Mr. Clowdus get out of his seat and

4        act aggressively towards anybody?

5            "ANSWER:  No, I never had a

6        visual -- I never witnessed this

7        entire situation because I was

8        outside the aircraft."

9            And you were asked some questions about

10   Mr. Enriquez tour report, which has a Bates

11   label of AA14 at the bottom -- and you were

12   asked some questions about whether that appeared

13   to be a firsthand account.  Whether you treated

14   it as a firsthand account.

15           Having heard Mr. Enriquez sworn

16   deposition testimony in this case, to what

17   extent do you believe his tour report was a

18   firsthand account of an incident that occurred

19   on the flight in question?

20       A.   The only firsthand account he had

21   was what he heard and -- so he never heard,

22   "I've been hit, I've been hit."

Joan Kirby
March 14, 2022

```
 1        Q.   Okay.  Based on deposition testimony of

 2   Mr. Enriquez that I've just read to you, do you

 3   feel that Mr. Enriquez had a firsthand witnessed

 4   account of the incident on the aircraft?

 5        A.   No.

 6        Q.   On the -- you were asked some questions

 7   about the tour report.  I want to read to you

 8   some -- and I believe you testified that it

 9   appeared to be Mr. Enriquez recollection of what

10   somebody told him.

11             Did I recall that correctly or no?

12        A.   I'm not sure.

13        Q.   Okay.  Let me read you from his

14   deposition on page 16.  Here he is talking about

15   his service report.  Page 16, Line 11.

16             "QUESTION:  What was your understanding

17        of why Mr. Clowdus was removed from that

18        flight?

19             "ANSWER:  Well, at that point, it

20        was just basically based on what

21        Mr. Clowdus was telling me, his

22        version.
```

Joan Kirby
March 14, 2022

```
1              MR. KOLB:  Then down line 18.
2              "ANSWER:  The information I got
3         from the flight attendant was that he
4         got hit by the passenger, but I had no
5         details from the flight attendant.
6              MR. KOLB:  One second.  All right.
7              (Brief pause.)
8              MR. KOLB:  -- Mr. Enriquez deposition
9    talking about his tour report -- I'm sorry, the
10   service report I believe it is.
11             I missed it.
12             One second, I apologize.
13             (Brief pause.)
14   BY MR. KOLB:
15        Q.   All right.  On page 36, Mr. Enriquez is
16   shown Mr. Moreno's service report, the same
17   service report that was included in your IRL
18   packet.  And he's asked if -- line 24 of page
19   36.
20             "QUESTION:  Is there any way to
21         know who's telling the truth by
22         reading each person's account?
```

Joan Kirby
March 14, 2022

```
 1              Answer on page 35 -- let's see --

 2        sorry page 37, line 2:

 3              "ANSWER:  Yeah.  At the time, I

 4        believe Mr. Moreno was telling the

 5        truth."

 6              Having heard Mr. Enriquez's

 7    description of his comparison of Mr. Moreno's

 8    and Mr. Gonzalez's tour report, do you any

 9    information or have you heard any information

10    today that would cause you to reconsider your

11    decisions to ban Mr. Clowdus from American

12    Airlines flights?

13        A.   No.

14        Q.   You were also read an excerpt of the

15    tour report where Mr. Enriquez reportedly said

16    there could have been no other flight attendants

17    who witnessed the assault.

18              Do you remember that line of

19    questioning?

20        A.   I do.

21        Q.   All right.  And you were told that

22    Mr. Enriquez had stated that all the other
```

Joan Kirby
March 14, 2022

1     flight attendants were are the rear of the

2     aircraft.  Let me read from Mr. Enriquez's

3     deposition page 19, line 4:

4           "QUESTION:   When you looked around the

5        corner, were the other flight attendants in

6        the vicinity of Mr. Moreno in first calls?

7           "ANSWER:  Not that I recall.  My

8        full attention was to the point, to

9        Mr. Moreno and Mr. Clowdus.  I don't

10       remember seeing anybody else standing

11       there.

12          MR. KOLB:  Having heard that witness

13    testimony, do you have any reason to doubt, sir,

14    that Ms. Gray's service report is anything other

15    than a firsthand account of what she saw --

16    sorry, what is she reported?

17       A.   I have no reason to believe anything

18    different.

19       Q.   You were asked a bunch of questions

20    about whether this was an assault and battery.

21    And you stated you could have either battery or

22    an assault, I can't remember which, when not

Joan Kirby
March 14, 2022

1    necessarily intending to hurt anybody.  Am I

2    correct understanding that if a person engages

3    in intentional conduct, such as throwing a

4    computer bag towards a person and that bag hits

5    that person and causes offensive contact, that

6    would be sufficient to ban that passenger from

7    American Airlines even, though, he didn't intend

8    to hit the flight attendant?

9         A.    Absolutely.

10             MR. KOLB:  We'll reserve our questions

11   for the time of trial.

12             MR. WOODROW:  I've got just a couple

13   more.

14             REDIRECT EXAMINATION BY COUNSEL FOR

15                  PLAINTIFF, CLOWDUS

16   BY MR. WOODROW:

17        Q.    Mr. Kirby, did I ever represent to you

18   that Mr. Enriquez claimed to witness the

19   incident personally?

20        A.    It seemed that way, you're alluding

21   that direction, at least.

22        Q.    I believe what I claimed is that he

Joan Kirby
March 14, 2022

1    witnessed the aftermath of the incident and that

2    he claimed that he was closest to the incident

3    when it occurred, not that he actually saw it,

4    but that physically he was the closest.

5           And that, most notably, in that claim

6    was that he said there were no other flight

7    attendants in the front of the plane.  He

8    directly rebutted or refuted the claim that

9    there were other flight attendant who were

10   better positioned to witness the aftermath of

11   the incident than he was.

12          Is that not correct?

13          MR. KOLB:  Objection to form.

14          THE WITNESS:  That appears to be what

15   you're saying, yes.

16   BY MR. WOODROW:

17     Q.   Yes.  And when he came on the plane and

18   looked around the corner, I never said that he

19   did and witnessed the event.  I said he did that

20   and witnessed the aftermath; did I not?

21          MR. KOLB:  Objection to form.  The

22   record will speak for itself.

John Kirby
March 14, 2022

```
 1              THE WITNESS:  Yeah, I'm not sure at

 2      this point, because what you were saying

 3      appeared to be that you were trying to tell me

 4      he witnessed it.

 5      BY MR. WOODROW:

 6          Q.   Well, what I was trying to tell you.

 7      Mr. Kirby is that he testified in the tour

 8      report that is was not possible for these other

 9      three flight attendants to have given firsthand

10      statements because he was there and they were in

11      the back of the plane.  And that's very

12      literally from the tour report that we read; is

13      it not?

14              MR. KOLB:  Objection to form.

15              THE WITNESS:  That's in that report.

16      Correct.

17      BY MR. WOODROW:

18          Q.   Okay.  Now, is it possible that

19      employees who are giving deposition testimony

20      might now be concerned about angering their

21      employer at this stage.

22              MR. KOLB:  Objection to form.
```

John Kirby
March 14, 2022

```
1    BY MR. WOODROW:

2        Q.    And is it possible that their testimony

3    might shift accordingly to be more supportive of

4    their employer's claim in the litigation?  Is

5    that a possible, Mr. Kirby?

6              MR. KOLB:  Objection; calls for

7    speculation.

8              THE WITNESS:  Yeah, I've no idea.

9    BY MR. WOODROW:

10       Q.    Is it logically possible?

11             MR. KOLB:  The same objection.

12             THE WITNESS:  I wouldn't call it

13   logical.

14   BY MR. WOODROW:

15       Q.    You wouldn't call it logical for an

16   employee to be concerned about their own

17   employment when they are giving deposition

18   testimony and possibly forgetting facts or

19   softening their stance on certain things that

20   might not help their employer's case.

21             That's not possible?  That's not

22   logical?
```

Joan Kirby
March 14, 2022

```
1              MR. KOLB:  Objection; compound,

2     argumentative, speculation.

3     BY MR. WOODROW:

4        Q.   So when you testify here today that

5     having heard what Mr. Enriquez said in his

6     deposition months later, pursuant to litigation,

7     is it reasonable for you to rely upon those

8     recollections more strongly than you rely upon

9     what he said at the time in his tour report?

10             As an investigator, which is more

11    reasonable, Mr. Kirby?

12             MR. KOLB:  Objection to form.

13             THE WITNESS:  I never saw his tour

14    report until today -- or until Friday.

15    BY MR. WOODROW:

16       Q.   And is it reasonable for you to having

17    seen the tour report today -- which was

18    generated at the time in the heat of the moment

19    when he experienced it -- is it more reasonable

20    for you to you rely upon what he said then, or

21    what he said in deposition, once litigation was

22    commenced, and he didn't want to anger his
```

Joan Kirby
March 14, 2022

```
 1    employer?
 2              MR. KOLB:  Objection to form.
 3              THE WITNESS:  I think it's actually
 4    more reasonable to believe now he's reflected on
 5    it in his deposition.
 6    BY MR. WOODROW:
 7         Q.   You think his memory has gotten better
 8    over the last year.
 9              Is that what you're testifying?
10              MR. KOLB:  Objection to form.
11              THE WITNESS:  I believe he's had time
12    to think about it and re-examine what he saw or
13    didn't see.
14    BY MR. WOODROW:
15         Q.   Okay.
16         A.   Again, I'm not him.
17              MR. WOODROW:  Okay.  I'm done with that
18    line of questioning.  I think logic speaks for
19    itself.  I have no further questions.
20              CROSS-EXAMINATION BY ATTORNEY FOR,
21                  DEFENDANT AMERICAN AIRLINES
22
```

John Kirby
March 14, 2022

```
 1    BY MR. KOLB:
 2         Q.   Mr. Kirby, just a couple of more.  Do
 3    you recall what the tour report looks like?
 4         A.   More or less, yes.
 5         Q.   All right.  Do you recall the tour
 6    report being sworn under penalty or perjury?
 7         A.   More or less, yes.
 8         Q.   Do you recall that the tour report
 9    wasn't even generated by Mr. Enriquez?  It
10    wasn't, it was generated by somebody else?
11         A.   That's correct.
12         Q.   Would you tend to believe
13    Mr. Enriquez's sworn deposition testimony, an
14    unsworn generated by somebody other than the
15    witness in arriving at your testimony here
16    today?
17         A.   Say that again, please.
18         Q.   Sure.  You were asked some questions
19    about what's more credible; the statement then,
20    or the statement now.  My question very simply
21    is:  What's more credible; A sworn deposition
22    testimony that Mr. Enriquez gave or the tour
```

John Kirby
March 14, 2022

1    report that recounts what Mr. Enriquez

2    supposedly told somebody else while under oath?

3             MR. WOODROW:  Objection; calls for

4    speculation.  The jury will decide that.

5    BY MR. KOLB:

6        Q.   You can answer.

7        A.   I can say this:  A sworn deposition

8    holds more credibility to me than hearsay.

9    And the tour report is hearsay, based on the

10   account he gave someone else.

11            MR. KOLB:  We reserve the remainder of

12   our questions.  Thank you, Mr. Kirby.

13            MR. WOODROW:  Thank you, Mr. Kirby.

14            THE REPORTER:  Okay.  So this is the

15   point in the deposition before I conclude that I

16   just double-check if the witness is going to

17   read and sign?

18            MR. KOLB:  He will.  No, no.  I'll tell

19   you in one second.  Okay --

20            THE REPORTER:  Okay.  So the witness is

21   going to read and sign, and you want an

22   electronic copy?

John Kirby
March 14, 2022

```
 1              MR. KOLB:  Yes, ma'am.

 2              THE REPORTER:  Four on the page?

 3              MR. KOLB:  Yeah, a mini script is fine.

 4              THE REPORTER:  Yeah.  And the exhibits

 5    are going to be attached, if you can give them

 6    to me.

 7              (Whereupon, at 3:21 p.m., the remote

 8    deposition of JOHN KIRBY was concluded.)

 9                    * * * * *

10

11

12

13

14

15

16

17

18

19

20

21

22
```

John Kirby
March 14, 2022

1                    ACKNOWLEDGMENT OF DEPONENT

2              I, JOHN KIRBY, do hereby acknowledge

3       that I have read and examined the foregoing

4       testimony, and the same is a true, correct and

5       complete transcription of the testimony given by

6       me, and any corrections appear on the attached

7       Errata sheet signed by me.

8

9

10          (DATE)                    (SIGNATURE)

11

12

13

14

15

16

17

18

19

20

21

22

Joan Kirby
March 14, 2022

```
 1        CERTIFICATE OF SHORTHAND REPORTER-NOTARY PUBLIC

 2              I, Dawn L. Halcisak, Court Reporter and

 3      Notary Public in and for the State of Maryland,

 4      the officer before whom the foregoing Remote

 5      Deposition was taken, do hereby certify that the

 6      foregoing transcript is a true and correct

 7      record of the testimony given; that said

 8      testimony was taken by me stenographically and

 9      thereafter reduced to typewriting under my

10      direction and that I am neither counsel for,

11      related to, nor employed by any of the parties

12      to this case and have no interest, financial or

13      otherwise, in its outcome.

14              IN WITNESS WHEREOF, I have hereunto set

15      my hand and affixed my notarial seal this 28th

16      day of March 2022.

17

18      My commission expires:

19      August 4, 2023

20

21      NOTARY PUBLIC IN AND FOR THE

22      STATE OF MARYLAND
```

Joan Kirby
March 14, 2022

```
1              E R R A T A   S H E E T

2        IN RE:  CLOWDUS V. AMERICAN AIRLINES, INC.

3     RETURN BY:

4     ================================================

5     PAGE   LINE      CORRECTION AND REASON

6     ================================================

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22       (DATE)                    (SIGNATURE)
```

John Kirby
March 14, 2022

---

### Exhibits

EX A John Kir
by 3.14.22
  3:12 32:9,11
  42:5
EX B John Kir
by 3.14.22
  3:13 38:2,4
EX C John Kir
by 3.14.22
  3:14 49:4,6
  109:21
EX D John Kir
by 3.14.22
  3:15 68:8,9,
  10,11
EX E John Kir
by 3.14.22
  3:16 59:9,12
EX F John Kir
by 3.14.22
  3:17 72:2,3

---

### 1

1
  21:18
10
  21:18 33:12
  69:5 107:2
100
  95:13,14
10:52
  69:5
10:56
  38:13
10th
  34:10 36:14
11
  33:21 37:6
  38:16 39:22
  118:15
11:24
  36:18 37:6

11:24:02
  33:21
12:1:29
  69:15
12:29
  33:12 34:10
12:57
  5:14
13
  115:10
1303
  73:7
14
  115:21
15
  67:5
16
  118:14,15
17
  117:1
18
  119:1
19
  121:3
1A
  73:8

---

### 2

2
  43:15,19
  120:2
2016
  9:6
2021
  33:12,20,21
21
  69:5 115:21
22
  117:1
22nd
  38:13
24
  34:2 119:18
25
  115:10

29
  42:7 43:17
2:50
  107:3
2:56
  107:4

---

### 3

3
  62:1
30
  8:11
35
  120:1
36
  119:15,19
37
  120:2
3:21
  130:7

---

### 4

4
  60:3 121:3

---

### 5

5
  33:20 41:7
  95:16
50
  21:18
500
  21:18

---

### 6

6
  61:6
6/11
  36:18
6:30
  36:16

6B
  61:8

---

### 7

7
  61:22
7A
  62:2
7B
  62:1,2

---

### 8

8:38
  36:13

---

### A

a.m.
  36:13,18
  38:13
AA
  43:16 46:9
  74:15 90:10,
  13 93:22
AA.COM\
CUSTOMERRELAT
IONS
  28:12
AA00051
  60:18
AA14
  117:11
aback
  97:10
ability
  7:3,17 28:9
  40:19
  104:12,14
able
  22:21 24:18
  67:4 110:20
above
  95:15

---

Joan Kirby
March 14, 2022

| | | | |
|---|---|---|---|
| **Absolutely** | **act** | **agent** | 127:21 |
| 67:14 122:9 | 117:4 | 48:12 114:12 | **Airlines'** |
| **abuse** | **action** | **agents** | 11:11 |
| 89:15 | 17:16,20 | 47:18,21 | **airplane** |
| **abused** | 20:4,7,12,18 | 116:8 | 67:3 |
| 94:1 | 25:17,22 | **aggressive** | **airport** |
| **abusing** | 28:7 55:17 | 50:13 | 17:10 58:5 |
| 94:7 | 90:3 | **aggressively** | 61:6,21 |
| **access** | **actions** | 117:4 | 67:21 |
| 29:16,22 | 13:13 20:6 | **agitated** | **airports** |
| 65:12 | **actual** | 50:14 | 9:3 10:8,9, |
| **accident** | 84:1 | **ago** | 10 |
| 106:17 | **add** | 53:14 | **allegation** |
| **accidental** | 116:22 | **agree** | 15:9 16:8 |
| 106:12 | **additional** | 5:1,4,7 | 44:18 115:13 |
| **accidentally** | 19:4,6 77:9 | 93:16 | **allege** |
| 50:22 105:20 | 80:1 | **AGREED** | 69:17 |
| **accidently** | **address** | 4:2 | **allegedly** |
| 73:14 | 27:9 49:13, | **agreement** | 73:8 |
| **accord** | 21 108:11 | 4:18,20 | **alleging** |
| 89:4 | 109:8 | **ahead** | 80:18 |
| **account** | **administered** | 16:1 23:2,22 | **allow** |
| 25:11 56:3 | 4:12 | 27:15 50:6 | 17:6 27:10 |
| 66:9 78:2 | **adverse** | 59:10 80:6 | **allowing** |
| 82:6,8 83:4, | 31:15 | 82:17 | 86:3 |
| 15 84:7,8 | **advocate** | **aircraft** | **alluding** |
| 87:18 88:2, | 25:21 47:18, | 31:5 36:7 | 122:20 |
| 10 101:3 | 22 110:5 | 85:5,7,10,11 | **aloud** |
| 117:13,14, | **advocates** | 88:21 102:2 | 61:14 |
| 18,20 118:4 | 109:9 | 115:6,17 | **American** |
| 119:22 | **affect** | 116:8,14,18 | 5:4,6 8:13 |
| 121:15 | 7:6 | 117:8 118:4 | 9:5,7,10 |
| 129:10 | **affected** | 121:2 | 11:11,16 |
| **accounts** | 103:6,7 | **aircraft.'.** | 12:7,10 |
| 78:14 82:13 | **afford** | 74:10 | 14:5,22 22:4 |
| **accrue** | 108:21 | **airline** | 28:5 38:22 |
| 95:10 | **afforded** | 29:7 60:17 | 39:7,19 |
| **accurate** | 109:17 | **airlines** | 51:16,21 |
| 45:6 | **aftermath** | 5:4,7 8:13 | 60:5,12,17 |
| **accused** | 57:5 123:1, | 9:10 11:7,17 | 75:5 90:20 |
| 26:7 92:22 | 10,20 | 12:7,10 | 95:9 103:9 |
| 93:3 | **afternoon** | 14:5,22 | 115:2 120:11 |
| **accusing** | 4:5 | 38:22 39:7, | 122:7 127:21 |
| 79:12 | **agencies** | 19 60:5,13 | **American's** |
| **acknowledge** | 11:6,8 | 75:5 90:20 | 13:2 28:15 |
| 4:8,11 90:11 | **agency** | 103:9 115:2 | **amount** |
| | 30:11 | 120:12 122:7 | 77:17 |

Joan Kirby
March 14, 2022

**anger**
  126:22
**angering**
  124:20
**angry**
  51:4 89:22
**answer**
  7:1,2,14,16
  16:2 20:11
  23:13 25:5
  30:16 39:12
  44:21 52:16
  56:7 60:10
  63:14 80:8
  83:19 86:16
  90:16 93:15
  112:6 115:16
  116:6 117:5
  118:19 119:2
  120:1,3
  121:7 129:6
**answered**
  64:4 80:4
  83:17 103:22
**anxious**
  50:15
**anybody**
  31:22 117:4
  121:10 122:1
**anyone's**
  95:17
**Anything's**
  81:15
**apologetic**
  51:20
**apologize**
  13:7 119:12
**apologized**
  51:3,8,9
**appeal**
  28:6 100:11
  109:18 110:8
**appeared**
  117:12 118:9
  124:3
**appears**
  49:12,22

**anger**
  60:14 88:17
  103:3 123:14
**approach**
  74:13
**appropriate**
  23:6
**approximately**
  8:11
**areas**
  10:16
**argue**
  23:7
**argumentative**
  64:3 79:20
  89:10 93:12
  126:2
**around**
  84:22 85:1,7
  121:4 123:18
**arrangement**
  4:15
**arriving**
  128:15
**Asia**
  10:11
**Asia-pacific**
  10:10
**asked**
  7:14 50:17
  64:4 76:22
  80:3 83:17
  95:13 96:11
  97:2,5
  103:21
  117:9,12
  118:6 119:18
  121:19
  128:18
**asking**
  7:19 45:19,
  20 82:11
  93:1
**asks**
  100:3
**assault**
  30:5 44:18
  78:6 79:17

  80:18 84:1,4
  104:2,4,8,
  15,20 105:3,
  18,19 106:4,
  7,14 115:13
  120:17
  121:20,22
**assaulted**
  44:8 69:18
  70:5 71:19
  94:14 103:13
**assaults**
  92:16
**assertion**
  26:15
**assertions**
  87:22
**assess**
  25:16
**assessed**
  66:19
**assessing**
  13:22
**assign**
  66:7
**assistance**
  62:13
**assume**
  21:4 82:5,12
  88:9 116:17
**asterisks**
  108:8
**attached**
  32:12 38:5
  49:7 59:13
  68:12 72:4
  130:5
**attaches**
  47:7
**attempt**
  50:21 62:14
  64:17
**attempted**
  30:12
**attempts**
  84:19

**attendant**
  45:21 46:15
  50:11 51:11,
  18 74:9
  78:1,5 79:18
  80:17,19
  88:14,18
  89:6,22
  103:13
  104:17
  114:10
  115:18
  119:3,5
  122:8 123:9
**attendants**
  74:3 84:10
  90:12 99:22
  100:20
  101:19
  120:16
  121:1,5
  123:7 124:9
**attention**
  66:15,18
  95:17 121:8
**attorney**
  31:10 127:20
**attorneys**
  4:7
**attracts**
  95:2
**authority**
  23:9,20 24:1
  25:3 112:17
**automatically**
  52:20
**available**
  16:12 71:15
**avenue**
  28:6
**average**
  95:15
**aviation**
  9:2
**aware**
  7:10 28:13
  29:5 90:20

Joan Kirby
March 14, 2022

94:6 99:17
**awareness**
81:11

---

**B**

**B7**
61:9
**back**
18:18,21
23:15 42:5
49:21 57:6
67:9 68:7
69:12 74:10
77:15 78:22
81:6 85:8,19
87:2,8,9
94:13 97:8,
15 98:9
99:22 101:18
102:2 108:17
110:11
111:21
124:11
**background**
7:20 98:7
**bad**
89:14
**baffled**
51:5,7,8
**bag**
50:21 73:15
104:18
106:12 122:4
**ban**
15:6 19:5
24:10 32:2
39:17 41:7
77:7,10
80:14 120:11
122:6
**banned**
15:6 30:7,13
76:19
**banning**
25:22 38:3
76:7

**based**
13:13 20:21
25:7 31:4
41:12 63:14
78:1 80:17
88:17,21
109:13
111:12
116:20
118:1,20
129:9
**basically**
10:10 13:15
26:11 49:3
100:19
118:20
**Bates**
117:10
**battery**
104:16,17,21
105:3
121:20,21
**Bear**
43:12 114:19
**beg**
79:18
**began**
9:16 70:10
**begin**
6:9 8:8,9
9:4
**beginning**
4:20 44:19
73:1
**behalf**
6:15 25:21
30:12 47:18,
22 93:5
108:22 109:9
110:5,9
**believe**
12:9 14:7
22:7 26:18
28:12 29:4
47:1 49:18
55:1 58:10
59:6 68:19
69:1 82:8,18

83:3,8 87:22
88:20 91:11
92:5,8 99:15
103:12,15
106:16,22
107:19,21
113:15
114:17
117:17 118:8
119:10 120:4
121:17
122:22
127:4,11
128:12
**believed**
99:18 106:11
**belong**
31:3
**best**
7:2,17 20:11
39:12 116:1
**better**
67:9 80:22
123:10 127:7
**big**
91:19
**bit**
7:20 10:20
59:10 61:5
70:21 77:4
**blow**
61:5
**board**
84:12
**boarded**
50:14,16
**boarding**
35:9 73:5
84:11,12
88:22
**bottom**
33:18 37:3
117:11
**break**
53:20 86:10
106:21

**breakdown**
53:16
**bridge**
116:8
**brief**
38:11 42:9,
15 61:11
67:7 109:3
119:7,13
**briefcase**
50:18 73:10
**bring**
42:13
**broader**
11:2,3
**broke**
70:20 77:4
**bulkhead**
84:22 85:7
**bumped**
50:22
**bunch**
121:19
**bureau**
17:5
**business**
50:9 51:15

---

**C**

**California**
8:3 104:10
**call**
48:1,4,6
55:18 71:6,
10 73:4
78:20
125:12,15
**called**
19:22 22:5,
16,17 58:8
78:18 96:10,
14
**calling**
77:1
**calls**
93:13,16

Joan Kirby
March 14, 2022

101:10 121:6
125:6 129:3
**capacity**
8:14,16
**captain**
95:13
**care**
15:10,17
16:6 51:10
**career**
8:12,19,21,
22 9:1 12:5
**carefully**
115:8
**Carlos**
50:11
**cart**
31:15
**case**
16:12 19:12
52:22 54:2
73:14 97:3,9
103:12,19
111:21
112:10
117:16
125:20
**cases**
17:4,7 18:21
**caught**
94:18
**causing**
35:4
**certain**
26:10 39:8
51:21 95:1
125:19
**CFC**
73:15,20
74:6
**chain**
77:6
**chance**
44:2 53:22
93:5
**change**
71:21 80:21

**changed**
75:19 112:7
**changes**
113:11,12,14
**characterize**
75:9
**charge**
15:1
**checked**
19:14
**checklist**
19:15 31:8
33:17 37:4
**Chicago**
10:8
**circumstances**
26:10 72:11
**claim**
82:14 102:19
115:14
123:5,8
125:4
**claimed**
108:14
122:18,22
123:2
**claims**
101:7
**class**
50:9 51:16
**clear**
25:5 26:15
62:18 98:18
**clerk**
105:12
**click**
28:14
**client**
31:14,15
**close**
74:7 89:1
115:18
**closed**
20:20 116:10
**closest**
84:14 101:22

113:13
123:2,4
**Clowdus**
5:1 6:12,16
31:3 32:3,18
35:10 37:19
38:3,8,17
40:2 44:8
49:18 53:21
69:17 70:5
71:18 73:6
74:18 76:8,
20 78:9
96:12 106:11
107:13
109:22 111:7
112:16 116:4
117:3
118:17,21
120:11 121:9
122:15
**Clowdus's**
77:10 78:11
**cognizant**
13:21 14:4
**collect**
16:11
**collective**
24:2
**college**
7:21
**colleges**
8:2
**Comb**
96:10,17
**come**
95:17 98:7
100:14
111:19
**comfortable**
21:18,19
22:2
**commenced**
113:2 126:22
**committed**
15:18 29:10
30:5 92:17

**communication**
98:9
**company**
11:22 31:14
49:2,13,16
81:2 90:20
98:10 114:14
**comparison**
120:7
**complain**
28:21 48:6
**complainant**
53:2
**complained**
48:22
**complaint**
25:13,15
28:14 45:15,
18,21 46:2,
9,14 47:6
50:2,4 52:7,
12,21 53:7
54:7,13
97:21 98:4,
13 99:6
110:14
**complaints**
29:2 46:21
47:3 48:18
53:5,15
98:6,7,16
99:12
**complete**
16:13 39:16,
18 61:19
62:20
104:14,15
**completed**
36:17
**completely**
100:11
105:14
**completes**
33:4
**component**
13:22

Joan Kirby
March 14, 2022

compound
  126:1
computer
  122:4
concern
  51:20 79:11
concerned
  89:14 124:20
  125:16
conclude
  33:22 34:11
  36:15 37:4
  53:4 63:21
  84:6 87:16
  93:9 129:15
concluded
  88:12 100:6
  130:8
conclusion
  15:17 34:2,
  16 63:8
  84:16 113:4
conclusive
  44:7,15
conclusory
  42:21
conduct
  12:3,5 14:5
  19:16 31:4
  76:22 77:9
  80:12 114:3
  122:3
conducted
  39:14 44:6
  66:17 107:14
conducting
  56:20 65:4
  66:16 79:3
  91:6
conferral
  24:9
confident
  71:18,19
conflicting
  103:10
conflicts
  54:14

confused
  74:12
conjunction
  46:22 47:13
  56:19
connect
  52:21 74:16
consent
  4:15
consider
  91:4
consideration
  41:16,18
  52:1 78:5
  81:19
considering
  55:16
consists
  10:7
construction
  13:8
consult
  13:12
contact
  47:19 48:12
  52:2 56:10
  77:8 79:5
  106:12 122:5
contacted
  56:18
contacting
  58:3
contradicting
  103:2
convenience
  105:10
convicted
  105:13
copy
  46:2 129:22
corner
  85:1 121:5
  123:18
corporate
  8:12 9:10
  28:1 29:19
  73:4 74:2

98:10 99:12
  108:4 114:6
correct
  9:15 10:5
  11:14 15:3,
  12,15 17:7
  20:19 29:3,4
  35:11 37:22
  42:1 43:10,
  15 53:8
  61:7,8 62:6,
  21 76:18
  79:6 86:15
  92:10 97:13
  101:12
  103:20
  107:18 108:4
  110:1,5
  112:9,17
  113:4 122:2
  123:12
  124:16
  128:11
correctly
  20:1 96:21
  118:11
corroborating
  112:3
counsel
  4:15,20 6:9,
  11 97:3
  115:1 122:14
counterpart
  13:4,6
couple
  32:14 122:12
  128:2
course
  12:22 56:10
  79:3 82:10
  94:8
court
  92:20
coworkers
  81:7 95:16
create
  7:12 63:10,
  22

created
  42:20 66:22
  69:3
credibility
  129:8
credible
  128:19,21
crew
  25:13 51:12
crime
  92:17 93:1,4
  105:4,13,17
criminal
  8:5 92:19
  93:4
criminals
  92:12,14
criteria
  19:12,14
CROSS-
EXAMINATION
  115:1 127:20
CSA
  11:8
CSC
  101:21
customer
  10:18 11:1,5
  20:7,18
  26:6,16,20
  28:3,8,10,21
  29:3 30:13
  39:16 40:21
  41:4 47:17,
  21 48:12,19
  60:1,5 61:19
  62:15,19
  73:13,22
  90:1 98:22
  99:8,9,11
  109:20
  114:12
customer's
  61:16
customers
  15:6 25:9
  39:2,9

Joan Kirby
March 14, 2022

47:19,22
cut
  10:20

—————————

       D

Dallas
  12:19 17:5,6
  27:22
date
  38:7
dated
  38:13
days
  38:16 40:1
  95:15
deal
  11:6 14:17
decide
  14:6 40:3
  129:4
decided
  112:14
decides
  46:9
decision
  15:5 19:19
  21:6 22:8,
  20,22 23:10,
  16 24:2,10,
  18,19 32:2
  45:6 79:12
  80:13 96:12
  97:19 112:17
decisions
  14:1 25:6,7
  75:5 120:11
declare
  4:13
deeper
  80:13
Defendant
  5:3 115:2
  127:21
defense
  95:22

define
  104:2
definitely
  111:9,10
definition
  104:10,11
degree
  8:5
delayed
  62:12
denied
  61:16
deny
  73:5
department
  13:2,5,13
  19:17 22:5,
  17 23:5
  27:20 48:19
  108:18
departure
  73:21 115:19
depends
  24:11 68:5
deplane
  51:15
Deplaning
  62:5
depose
  111:4,17
deposition
  4:3,8,9,10,
  21 6:19 7:9
  31:7 86:4,
  12,19 115:7
  117:16
  118:1,14
  119:8 121:3
  124:19
  125:17
  126:6,21
  127:5
  128:13,21
  129:7,15
  130:8
describe
  16:17 116:1

description
  120:7
details
  119:5
determination
  29:3 30:7
  31:3 40:1
  80:2
determination
s
  81:20
determine
  15:11 16:15
  98:15
determined
  30:4
differ
  79:18
different
  74:3 101:19
  104:9 105:14
  111:12
  114:15
  121:18
differently
  75:21 100:1
  110:18
digital
  37:2
digitally
  36:18
direct
  6:11 17:12
  47:4,15
  48:16
direction
  122:21
directly
  27:6 54:14
  123:8
director
  12:19
disagree
  84:16
disagreed
  99:19

discipline
  113:17,21
disciplined
  47:3
discount
  100:11
  103:19
discussion
  10:1 13:10
  14:19 40:21
discussions
  29:6
dissatisfied
  18:19,20
  77:17,20
doctor
  72:15
document
  30:7 34:19
  49:9 59:16
  60:8 63:1,3
  64:4 68:15
  72:6 107:11,
  12
documents
  31:6,11,12
  69:7 110:13
doing
  19:2 57:6
  112:4
door
  115:17,18
  116:7,9
DOT
  29:12
double-check
  129:16
doubt
  121:13
down5
  53:20
drastic
  25:22
due
  16:7 66:8
duly
  6:1

Joan Kirby
March 14, 2022

duties
  10:6,12

_____

E

_____

e-mail
  26:20,21
  27:9 35:2,
  13,17 36:2,
  4,9,12 41:8,
  13 42:2
  55:18 58:3,6
  108:8,11
  109:8
e-mailed
  55:20 58:7
e-mailing
  77:1
e-mails
  35:21
earlier
  53:5 69:6
  77:14 107:16
  109:22
effectively
  19:14
effort
  25:16 56:2
  90:11
either
  42:3 57:8
  67:21 86:18
  108:9 109:17
  111:3 121:21
electronic
  129:22
element
  104:21
elements
  104:5
employee
  11:12 47:7
  54:15 55:11
  72:14 81:5
  90:1 92:2
  94:6,13,18
  95:2,10,12

  113:10,14,18
  125:16
employee's
  47:8 54:15,
  19 114:3
employees
  11:9 25:10
  47:2 55:1
  81:1,21
  89:14 90:22
  91:11,12,17
  92:6 93:22
  94:16 103:9
  113:22
  124:19
employees'
  47:12
employer
  124:21 127:1
employer's
  125:4,20
employment
  125:17
employs
  90:21
empowered
  47:18,22
encounter
  58:4
end
  8:22 9:1
  15:6 57:6
enforcement
  8:10,15,16
  12:4 62:12
engages
  11:12 122:2
Enriquez
  70:4 73:16
  77:2,8 83:20
  84:14,21
  88:12 99:18
  100:8 101:7,
  17 110:14
  115:5 116:17
  117:10,15
  118:2,3,9

  119:8,15
  120:15,22
  122:18 126:5
  128:9,22
  129:1
Enriquez's
  83:2,12
  120:6 121:2
  128:13
ensue
  17:8
entail
  10:6,13
entertain
  81:11
entire
  63:15 117:7
entity
  29:12
equate
  92:13
equation
  110:17
err
  91:16 92:1
escalated
  73:19 99:19
Escalation
  61:9
escorting
  116:4
essential
  104:21
essentially
  25:3
evaluate
  87:14
evaluating
  81:12 113:3
event
  61:19 62:17
  83:9 85:20
  88:8 100:9
  123:19
events
  26:21 64:17
  66:9 78:12

  116:3
everybody
  74:22
everyone
  4:6
evidence
  110:12 111:6
  112:14
exactly
  9:18 19:7
  24:21 43:22
  56:6 101:17
  102:3 106:19
EXAMINATION
  6:11 122:14
examined
  6:1
Example-wise
  57:12
examples
  18:9 57:9
exception
  58:6
excerpt
  60:4,12
  120:14
exhibit
  32:9,11
  38:2,4 42:5
  49:4,6 59:9,
  12 68:8,9,11
  72:2,3
  106:21
  109:21
exhibits
  130:4
existed
  97:21 98:16
existence
  58:15
exit
  52:12
expect
  45:2,7,9
  97:16
expected
  97:20

experience
  12:17 36:3
  48:11 55:11
  56:9 81:4
experienced
  51:17 126:19
explain
  26:5 88:8
explanation
  41:17
explicitly
  82:6,14,20
  84:3 87:13
  93:20
extent
  25:2 117:17
extra
  15:10,16
  16:6
eye
  83:13

**F**

FA
  73:18 74:9
  102:1
FAA
  29:12
fact
  16:7 58:9
  67:20 88:1
  91:5 102:19
  111:12 112:2
factor
  113:3
facts
  24:16 25:10,
  17 26:21
  41:16 45:11
  79:7 80:1,2,
  11,22 87:16
  88:7 94:19
  110:11
  125:18
failed
  52:6

failure
  70:17 71:2,
  7,10 75:10,
  14
fair
  25:12 86:1
  91:15 92:3,
  19 93:4
  114:16
  116:19,21
familiar
  32:10
far
  11:6 23:16
  104:9
favorable
  111:7
FBI
  8:20 9:1
feel
  24:17 118:3
fellow
  88:14
felony
  15:9,14,18
  16:9 29:11
  79:13,15,17
felt
  73:16
field
  8:6,10,12
figure
  32:8 109:2
file
  22:9,21 47:8
  81:5
filed
  74:4 101:20
files
  47:12 98:12
  99:6 113:10
fill
  24:14 33:7
filled
  42:7 43:8
final
  15:5 40:1

80:2,13
finalize
  19:5
find
  26:22 27:5
  42:19 53:15
  97:20 99:1
  116:15
finding
  53:5
fine
  44:5 67:6
  107:9 130:3
finish
  6:22
finished
  37:5
first
  17:3 27:21
  32:20,21,22
  33:2,11
  35:4,17
  59:17,19
  60:18 61:4
  69:13 83:14
  85:11 97:19
  106:22
  107:15,21
  116:5 121:6
firsthand
  82:5,8,13
  83:4 84:8
  87:17 88:1,
  9,10 99:21
  101:2,3,8
  103:2 111:20
  117:13,14,
  18,20 118:3
  121:15 124:9
fits
  19:12
five
  14:10
flagged
  30:19
flight
  17:10 31:5

36:16 43:7,
  10 45:12,21
  46:15 50:10
  51:11,18
  58:17 61:17
  74:3,9 78:1,
  4 79:17
  80:17,19
  84:10 88:14,
  18 89:6,22
  90:12 99:22
  100:20
  101:19
  103:13
  104:17
  114:10,11
  115:18 116:5
  117:19
  118:18
  119:3,5
  120:16
  121:1,5
  122:8 123:6,
  9 124:9
flights
  95:14 120:12
floor
  73:10,11
fly
  39:18 51:15
Flyer
  25:14
folks
  12:16
follows
  6:2
force
  8:20
forces
  8:21
forgetting
  125:18
form
  15:20 16:1
  21:20 22:10,
  12 23:1,11,
  21 24:20
  26:2 27:2

Joan Kirby
March 14, 2022

28:13 32:4
33:3,6 34:3,
13 35:19
36:20 37:8,
12 38:19
39:3,10
40:4,15
41:1,14
43:2,11
44:9,20 45:8
46:11,17
52:8,15
53:9,18
54:9,18
55:5,19 56:5
58:19 59:5
60:6 63:12
64:19 65:18
66:3,10
67:1,15 68:3
69:9,19
70:6,13,19
71:5,13,20
74:19 75:6,
12,22 76:10,
14 77:11
79:14,19
80:15 81:8,
14 82:15
88:3 89:17
90:6,14
91:1,9,18
92:4,15,21
94:2 95:4,18
96:1,7,13
97:22 98:20
99:13 100:2,
12,18 101:9
103:11 104:7
105:1,21
106:9,15
109:10
110:19 111:8
112:5,18
113:5,20
114:4
123:13,21
124:14,22
126:12

127:2,10
**format**
33:9
**forward**
27:18 99:11
**forwarded**
42:2 46:21
**Four**
130:2
**Frequent**
25:14
**Friday**
68:20 72:18
83:6 126:14
**front**
50:10 109:14
123:7
**frontline**
57:4 95:21
**full**
121:8

---

**G**

**G6**
61:1,2
**Garfield**
51:12
**gate**
17:10 51:13,
19
**gather**
62:14
**gave**
26:20 40:13
107:1 128:22
129:10
**generally**
17:4
**generated**
33:19 35:17
37:16 65:15
70:10 126:18
128:9,10,14
**generating**
42:8

**get-go**
11:19
**getting**
15:6 61:6
74:5
**Gilbert**
12:21 24:7,
14
**give**
5:18 17:22
21:3 25:20
26:10 38:9
48:20 50:17
53:22 54:1
56:13 68:8
81:17 93:8
94:11 104:10
105:9 108:3,
13 109:1
130:5
**given**
6:19 7:9
77:18,20
108:5 124:9
**giving**
103:9 124:19
125:17
**goes**
41:22 105:12
**going**
6:9 7:19
13:8 32:8,9
33:13 43:13
49:10 59:10,
11 61:1
86:2,5,12
87:14 91:16,
22 92:1
93:10 101:14
109:1
111:16,18
113:12,17
114:2 116:15
129:16,21
130:5
**Gonzalez**
75:1

**Gonzalez's**
120:8
**good**
4:5 6:14
20:2
**government**
11:6,7 29:12
**government-
issued**
5:12,15
**Gray**
88:18 111:17
**Gray's**
84:7 87:8,9
103:1 110:16
121:14
**great**
5:5,8 64:5,6
**greater**
25:16
**ground**
51:12
**group**
10:14
**GSC**
58:16 59:1,2
61:17 62:13,
19 63:9,16,
17,22 64:15,
17 66:1,8,
15,20 68:1,9
84:11 88:22
89:4
**GSCS**
65:16 84:11
**guess**
20:8 56:17
**guessing**
18:10 56:16
93:17
**gun**
105:11

---

**H**

**half**
111:17

Joan Kirby
March 14, 2022

hand
  5:21 57:13
  86:2
handed
  50:19
handled
  13:18
Hang
  69:21 107:20
happen
  100:13
happened
  45:11 48:16
  49:1 56:4
  57:10 67:21
  75:19 84:15
  88:19 90:4
  101:3,8
hard
  42:10 51:6
  63:13
harsh
  112:16
Havi
  73:15
head
  18:2 19:3
  56:15 110:10
headquarters
  41:22
hear
  22:14 78:13
  100:16
heard
  22:15 40:9
  85:1,12
  116:11,13
  117:15,21
  120:6,9
  121:12 126:5
hearing
  89:8 92:19
  93:5
hearsay
  129:8,9
heat
  126:18

heavy
  73:15
help
  14:21 125:20
higher
  112:22
hire
  9:7
hired
  9:9,13
hit
  26:20 46:1
  51:5 73:8,14
  74:5 85:1,12
  104:17
  116:12
  117:22 119:4
  122:8
hits
  122:4
holding
  5:12
holds
  129:8
hope
  95:19
hopes
  90:13
hospital
  72:15
hot
  61:6
hours
  34:2
hundred
  95:14
hundreds
  12:5
hurt
  122:1
Hypothetical
  93:13

_____

        I

_____

idea

21:16 47:9
  48:9 64:20
  125:8
identificatio
n
  5:12,15
  32:12 38:5
  49:7 59:13
  68:12 72:4
identified
  93:22
identify
  34:19 49:9
  59:16 68:14
  95:1 107:11
identity
  5:16
ignore
  7:16
immediately
  51:3 116:13
implying
  113:18 114:7
impose
  112:15
inaccurate
  60:8
incident
  16:19 25:17
  27:1 35:5,18
  36:6 47:14
  51:22 52:6
  57:1,5 58:16
  59:4 63:11
  64:1 65:6,17
  66:2 67:20
  74:8 84:14
  94:21 102:1
  115:6 116:18
  117:18 118:4
  122:19
  123:1,2,11
incidents
  18:13 66:14
  95:2,10
included
  53:7 68:21

70:11,18
  71:3 119:17
incomplete
  60:8
independently
  18:12 31:20
indicate
  4:18
indicated
  25:4
indicating
  42:22
individual
  15:4 26:22
information
  7:15 15:15
  16:11 19:18
  20:21 27:18
  29:11 37:19
  52:3 62:15,
  16 77:17,20
  78:19 119:2
  120:9
informing
  39:2,8
initially
  97:13
initiates
  90:3
input
  6:17 13:17,
  20 17:12
inquiry
  77:1 79:13
  80:13,16,17
Insert
  24:16
inside
  85:6 116:14,
  18
insisting
  51:14
instance
  30:22 36:7
  53:17 77:19
  78:3 104:16,
  20

Joan Kirby
March 14, 2022

instances
 78:16,17
institution
 90:10
instruct
 15:10
instructions
 7:13
intend
 7:15 122:7
intending
 44:17 122:1
intent
 104:21 105:3
intentional
 122:3
interact
 13:2
interaction
 11:7
intercede
 51:13
interested
 78:7
internal
 14:17 15:1
 25:7 30:14
 31:4 33:16
 37:3
interpreted
 101:5
investigate
 11:13 16:12
 18:13 31:20
 32:1 44:17
 45:3,7 76:4
investigated
 22:19 66:14
investigating
 15:8,17 16:8
 27:1 43:9
 94:19
investigation
 6:17 14:1
 15:12 16:7,
 13,15,18
 17:9 18:18

20:21 22:7
34:1,8,9,11,
15 35:1,6
36:17 37:5
39:14,17
40:3,14
42:21 43:1
44:6 46:16,
22 47:13
52:6 56:19
57:7 65:4
69:7 70:10,
17 71:3
74:17 75:10
77:9 91:7,8
100:6 103:6,
8 107:14,17
109:18 112:1
114:2
investigation
's
 39:16
investigation
s
 8:18 10:15,
 18 11:1,4,9
 12:3,6,15
 13:1 14:6
 17:13 39:9
 66:16,17
 79:4 89:13
 94:8
investigative
 12:17
investigator
 9:9,20 13:21
 17:19,20
 24:9 27:19
 33:4 40:14
 47:10 48:13
 52:21 53:3
 58:14 76:6
 79:1 89:12
 90:19 96:5
 97:8 98:5,15
 100:21
 126:10

investigators
 10:14 12:11
 14:9,12
 15:10 16:10
 18:16,22
 24:2 29:20
 45:10 47:11
 52:13 53:6,
 15 55:14
 56:9 65:5,14
 66:7 77:16
 78:21 96:5
investors
 65:22
Involuntary
 62:5
involved
 59:7 62:16
 80:21
involving
 11:9 63:10
 64:1
IP
 49:13,21
IRA
 33:4
IRL
 17:18 18:14
 19:19,21,22
 20:3 21:7
 29:6 31:8
 32:9,17
 37:18 40:20
 41:5,8 45:10
 54:7 68:22
 70:11,18
 71:4,12
 75:11 76:8
 77:5,15 78:6
 119:17
irregularitie
s
 73:1,3
items
 63:9

J

J-O-H-N
 6:6
jails
 8:17
jet
 116:8
job
 72:8
John
 5:6,22 6:6
 130:8
joint
 8:19
judge
 7:12
June
 33:12,20,21
 34:10 36:14
 37:6 38:13
 69:5 107:2
jurisdictions
 104:9
jury
 129:4
justice
 8:5
justify
 92:9

K

K-I-R-B-Y
 6:7
Kelly
 5:3 64:7
 86:11,18
 87:3
kick
 95:14
kicked
 95:13
kind
 20:9 51:19

Joan Kirby
March 14, 2022

77:4
**kindly**
5:11
**kirby**
5:6,22 6:6,
14 32:11
38:4 49:6
59:12 68:11
72:3 75:16
87:10 111:22
114:18,20
122:17 124:7
125:5 126:11
128:2
129:12,13
130:8
**know**
13:15 18:7
20:8 21:4
26:9 29:13,
19,21,22
30:2,11,15,
17 32:21
34:7,14
35:7,20
37:13 38:20
40:5,16
46:15,18
47:2,6,11,
17,21 49:20
50:11 52:9,
19 53:1,19
56:7,16
63:15 66:11
67:16 70:14
74:20 75:7
80:20 81:9
89:18 90:7,
15 91:2
94:12,17
95:8,12 96:2
98:1,9,14
99:14 102:17
104:2,6
109:16
111:4,10,18,
19 112:11
113:15

119:21
**knowing**
63:14 78:8
**knowledge**
32:5 37:17
46:6,8 47:4,
15 48:17
95:5
**known**
103:7,8
**Kolb**
5:3 7:11
15:20,22
21:20 22:10,
12 23:1,11,
21 24:20
26:2 27:2
32:4 34:3,13
35:19 36:20
37:8,12
38:19 39:3,
10 40:4,15
41:1,14
43:2,11
44:9,20 45:8
46:4,11,17
52:8,15
53:9,18
54:9,18
55:5,19 56:5
58:19 59:5
60:6 62:22
63:4,12
64:3,8,12,19
65:18 66:3,
10 67:1,15
68:3 69:9,19
70:6,13,19
71:5,13,20
74:19 75:6,
12,22 76:10,
14 77:11
79:14,19
80:3,15
81:8,14
82:15,17
83:16 84:18
85:4,9,17

86:1,7,14,20
87:1,4 88:3
89:10,17
90:6,14
91:1,9,18
92:4,15,21
93:12 94:2
95:4,18
96:1,7,13
97:1,22
98:20 99:13
100:2,12,18
101:9 102:5
103:11,21
104:7 105:1,
21 106:9,15
107:2 109:10
110:19 111:8
112:5,18
113:5,20
114:4,19
115:3,20
119:1,6,8,14
121:12
122:10
123:13,21
124:14,22
125:6,11
126:1,12
127:2,10
128:1 129:5,
11,18 130:1,
3

---

**L**

---

**L.A.**
9:22 10:9
**label**
117:11
**language**
42:22 44:7,
15 63:20
**laptop**
73:9,14
**large**
10:11

**larger**
61:3
**late**
40:10
**law**
8:5,10,15,16
12:4 62:11
**lead**
87:22
**leaning**
50:20
**learn**
18:13 35:4
65:16
**learned**
73:22
**leather**
50:17
**leave**
20:13
**led**
116:3
**leg**
51:1
**legal**
11:20 13:2,
5,12,22 14:4
19:17 22:5,
17 23:4
**legally**
106:13
**letter**
26:6,9,13,16
38:3,7,18
39:13,15
40:7,8,13
41:5 42:4
53:21,22
54:4 55:21
106:22
107:2,12,15,
17,21 108:1,
16 109:7
**letters**
39:12 108:19
**liability**
13:22 14:5

Joan Kirby
March 14, 2022

lie
  80:21 93:11
  94:19
lieu
  4:11
life
  26:1 80:14
lifted
  39:17
light
  111:7 112:2
likelihood
  103:1
line
  108:7
  115:10,21
  117:1 118:15
  119:1,18
  120:2,18
  121:3 127:18
list
  14:18 15:1
  20:14 25:7
  29:6 30:3,15
  31:4 41:9
listen
  51:14 115:8
literally
  124:12
litigation
  113:2 125:4
  126:6,21
little
  7:20 10:20
  19:8 54:5
  59:10 61:5
  67:9 68:8
  70:20 77:4
located
  115:12
location
  27:22
logic
  127:18
logical
  84:9,16
  88:20

125:13,15,22
logically
  87:14,15
  88:12 125:10
long
  30:3 34:7,14
  51:1 88:16
long-term
  25:14
longer
  39:18
look
  11:5 15:19
  16:9 19:11,
  13,18 24:3
  26:14 34:20
  38:2 43:13,
  14 44:2 49:4
  52:14 66:21
  80:22 85:19
  96:11 97:8,
  11,16,17
  101:18 112:1
looked
  50:21 68:19
  69:6 121:4
  123:18
looking
  13:16 33:1
  37:2 56:10
  98:4
looks
  5:19 43:19
  128:3
lost
  69:21
lot
  11:20,22
  114:13
loud
  50:7 61:15
  67:8 73:1

_____

M

Madam
  67:11

made
  15:22 22:8,
  20 25:13,16
  26:15 31:2
  32:2 40:20
  80:2,17
  82:19 83:20
  106:12 111:3
  115:5
make
  6:21,22
  16:14 19:13,
  19 21:12
  24:10 25:6
  29:9 34:15
  45:6 56:2
  71:18 75:11
  80:22 90:10
  92:9 97:18
  106:6 107:19
makes
  15:5 20:14
  45:20 46:14
making
  21:12 28:14
  51:20 79:12
  80:13 81:19
  82:1 102:9,
  18
Maldenaldo
  9:16,19
  31:19
Maldonado
  14:11 32:1
  35:3 36:8,
  11,17 37:5
  38:16 42:3,
  4,7 43:8
  44:6,17
  52:22 75:2
  76:22 77:6
Maldonado's
  31:1
management
  61:18 62:13
manager
  9:20 10:4
  15:2

managers
  114:12,13,14
manner
  4:16
manual
  60:2,5,13
  62:19 63:15,
  21
marked
  32:11 38:4
  49:6 59:11,
  12 68:11
  72:3
match
  19:15
matter
  4:14 10:17,
  22 15:13
  52:13 55:15
mattered
  103:5
mean
  20:5 21:4,11
  24:13 29:18
  112:11
meaning
  105:20,22
meant
  105:15
  106:7,8
measures
  95:9
mechanism
  28:21 53:1
mediate
  64:18
medication
  7:5
member
  61:18 62:13
memory
  127:7
message
  49:12,15
metric
  95:8

Joan Kirby
March 14, 2022

Mex
  73:7
Mexico
  73:8
Miami
  9:21
mind
  39:5 59:17
  113:11,12,15
mine
  13:8
mini
  130:3
minutes
  53:14
mischaracteri
zes
  83:16
misconduct
  10:19 11:5,
  13 16:22
  24:16 26:8
  56:11 60:22
  80:21
misconducts
  11:2
misconstrue
  85:2
misconstrues
  84:18 100:3
  101:10
misdemeanor
  15:14
mislead
  84:19 86:14,
  18
misleading
  86:20 87:6
misrepresent
  63:2
misrepresenta
tion
  85:9
misrepresents
  63:1 64:4
  102:5

missed
  119:11
Missouri
  8:3
model
  90:12
moment
  5:18 126:18
money
  62:22
monitor
  5:13 6:10
monitored
  108:11
months
  96:10 126:6
Moreno
  44:8 50:11
  69:18 70:5
  71:19 85:12
  99:18 106:13
  115:14 120:4
  121:6,9
Moreno's
  103:20
  110:15
  119:16 120:7
morning
  6:14 36:16
move
  64:12
moves
  53:2
multiple
  27:12 57:14,
  19 64:10
  85:15,21
  96:19
  102:12,15
  105:7

---

**N**

name
  4:19 6:4,5,
  15 12:20,21

narrative
  44:13
necessarily
  12:15 13:6,
  20 75:18,19
  88:22 102:10
  105:2,3
  122:1
necessitate
  104:4
need
  16:16 24:3,
  6,7 39:4
  43:14 61:3
  88:4 106:20
needs
  7:1
neutral
  66:9
never
  25:15 44:18
  51:16 58:7
  116:17
  117:5,6,21
  123:18
  126:13
nice
  75:17 78:13
noise
  13:7 98:7
notably
  123:5
noticing
  4:21
notified
  40:22
notify
  36:4
number
  95:9
numerous
  8:2,21 57:11

---

**O**

oath
  4:11 129:2

object
  7:11 15:20
  23:1 34:3
  38:19 39:10
  77:11 90:6
  106:15
Objecting
  60:7
objection
  7:16 15:22
  21:20 22:10,
  12 23:11,21
  24:20 26:2
  27:2 32:4
  34:13 35:19
  36:20 37:8,
  12 39:3
  40:4,15
  41:1,14
  43:2,11
  44:9,20 45:8
  46:4,11,17
  52:8,15
  53:9,18
  54:9,18
  55:5,19 56:5
  58:19 59:5
  60:6 62:22
  63:4,5,12
  64:3,6,19
  65:18 66:3,
  10 67:1,15
  68:3 69:9,19
  70:6,13,19
  71:5,13,20
  74:19 75:6,
  12,22 76:10,
  14 79:14,19
  80:3,15
  81:8,14
  82:15 83:16
  84:18 88:3
  89:10,17
  90:14 91:1,
  9,18 92:4,
  15,21 93:12
  94:2 95:4,18
  96:1,7,13

97:22 98:20
99:13 100:2,
12,18 101:9
102:5
103:11,21
104:7 105:1,
21 106:9
109:10
110:19 111:8
112:5,18
113:5,20
114:4
123:13,21
124:14,22
125:6,11
126:1,12
127:2,10
129:3
**objections**
4:16
**objectively**
95:3
**obtain**
52:7 56:3
65:5
**obviously**
83:21
**occasion**
13:1 14:14
72:9,20
77:15 79:4
96:6
**occasionally**
79:5
**occasions**
57:12 79:8
**occur**
43:1
**occurred**
17:9 36:7
43:7,10
45:12 48:14
74:8 78:6
84:1,4 92:10
102:1 115:6,
13,15 116:19
117:18 123:3

**occurring**
91:6
**offensive**
122:5
**offensively**
106:8
**office**
41:21 67:4
**officer**
104:5
**oftentimes**
27:17 55:7
80:20 92:11
**okay**
5:5,8 6:21
7:3,4,8,17,
18,19 8:6,14
9:4,7 11:12,
15 12:18
14:8,11,21
15:4,8,16
16:17 17:3
18:12 19:9,
21 20:3,16,
20 21:14
22:4 24:6
25:12 26:5,
13 28:2,5
29:5,9,22
30:17,21
31:6,18
32:7,14,17,
20 33:2,10,
13,18 34:18,
19,22 35:2,
12,16 36:8,
15 37:2,21
38:2,12,15
42:5,6,17,19
43:22 44:4
45:14 46:8
47:17 48:7,
11 49:4,9,11
50:8 52:4
53:4,13 54:4
55:14 56:22
57:4 58:11,
14 59:9

60:4,16
61:1,12,21
62:4,10,18
63:20 65:2,
8,14 66:13
67:20 68:7,
10,14,17,21
69:2,13,16
70:9 72:2,8,
17,22 73:2
74:14 83:7,
12 86:22
88:7 89:21
90:2,10 99:3
107:8 108:7
110:11
112:13
115:11,22
118:1,13
124:18
127:15,17
129:14,19,20
**older**
108:16
**On-the-job**
11:18
**onboard**
84:10
**onboarding**
67:21
**once**
16:13 19:4,9
28:7 30:4
40:19 73:21
104:15
126:21
**one**
14:11,15
18:1 20:5
31:13 39:13
45:22 52:14
66:21 68:2
71:22 78:16,
17 79:7 81:6
82:4 87:5,11
88:5 94:4
96:5 97:21
98:15 102:17

104:21 107:1
111:10
115:20
116:22
119:6,12
129:19
**ongoing**
46:22
**online**
45:22 98:13
**open**
22:9,21
42:20 112:4
114:2
**opened**
34:9 69:8
**opening**
33:6 34:2
35:5
**operations**
17:5 35:1,15
36:6 65:12
99:5,7
**opinion**
71:22 112:15
**opportunity**
25:20 26:8
54:1 93:9
108:2,5,13
109:12,17
110:3
**opposed**
107:16
**option**
26:16
**originated**
35:13,14
**outcome**
42:22 109:19
**outside**
19:18 85:4,
10 114:5,7
115:16 117:8
**overarching**
60:21
**overhead**
50:18

Joan Kirby
March 14, 2022

overlook
  10:15 19:11
overlooked
  66:22
oversee
  10:7,12,14
  11:8 114:14
oversees
  47:11

---

P

---

p.m.
  5:14 33:12
  34:10 69:15
  107:3,4
  130:7
Pacific
  10:11
packet
  17:19 19:19,
  22 20:4
  32:10,17
  33:4 37:18
  40:20 41:6
  54:7 68:22
  70:12,18
  71:4,12
  75:11 76:8
  77:5 119:18
packets
  45:10 77:15
page
  32:20,21,22
  33:3,6,14,
  15,19 42:7
  43:15,16,19,
  21 59:17,19
  60:3,18 62:3
  115:10,21
  117:1
  118:14,15
  119:15,18
  120:1,2
  121:3 130:2
pages
  34:18

paid
  66:18
pardon
  51:6
part
  30:9 48:2
  54:7 94:9
  102:4
partial
  113:6
participating
  4:7
particular
  66:1,8
parties
  4:14
passed
  17:7 27:18
passenger
  6:16 15:18
  16:18,20,22
  18:13 21:7
  24:15 25:21
  27:10,11,16
  28:7,9 29:10
  30:1,5,18
  35:10,18
  40:8,12
  41:7,16
  45:15,17,20
  46:14,21
  47:3,6 48:22
  52:7,12
  53:14 54:7,
  13 55:16
  56:11,19
  58:7,8,17
  59:4 62:17
  63:11 66:2,
  14 73:5,6
  74:11 78:8,
  18 79:13
  80:14 92:16
  94:7,14
  95:2,9 97:21
  98:4,8,12,22
  99:6 100:10
  103:18

108:2,12,21
109:6,11,17
110:4,8,14
119:4 122:6
passenger's
  48:13 55:3
  56:3 64:16
  103:19
passengers
  25:9 50:13,
  16 55:7
  56:10 57:3,
  11,12 58:2
  78:20 79:5
  80:20 89:15
  92:9,11,13
  93:8 94:1
past
  18:3 48:19
  58:10 77:15
  99:15
path
  27:8
patrol
  8:17
pause
  38:11 42:9,
  15 61:11
  67:3,7 109:3
  119:7,13
pay
  66:14
PDF
  43:21
penalty
  4:14 112:16
  128:6
people
  30:2 36:5
  95:13,14
Perfect
  107:9
period
  20:6
perjury
  4:14 128:6

permanent
  41:6 55:17
person
  4:12 45:5
  58:4 99:3
  122:2,4,5
person's
  119:22
personally
  23:19 24:19
  28:13 30:22
  56:18 88:11
  122:19
personnel
  47:8,12
pertinent
  74:16
Phil
  12:21 24:7,
  14
Phoenix
  10:9
phone
  42:11 58:3
  69:21
phone's
  61:6
phonetic
  31:16 96:21
physical
  115:12
physically
  4:8 44:8
  123:4
pick
  21:17
piece
  16:11 114:5
place
  17:11 25:8
  52:20 66:1
  74:15 109:16
plain
  63:20
Plaintiff
  5:1 6:12
  122:15

Joan Kirby
March 14, 2022

plane
  51:10 61:22
  100:1 123:7,
  17 124:11
please
  4:18 6:4,9
  10:21 14:3
  16:3 35:8
  47:20 50:7
  52:2 62:9
  67:10,12
  73:1 80:8
  83:19 87:21
  96:15 107:11
  108:10
  111:22
  128:17
PNRS
  30:1
point
  30:17 40:10
  41:11 93:18,
  21 105:11
  118:19 121:8
  124:2 129:15
police
  104:5
policies
  11:11 25:8
policy
  19:13 38:22
  39:7
popping
  23:15
portion
  10:11 32:19
  35:1 62:8
position
  9:11,12,13,
  19 88:21
positioned
  123:10
positive
  20:13 49:22
  56:2
possibility
  81:12

possible
  74:7 81:15,
  18 91:11
  101:22
  108:20
  124:8,18
  125:2,5,10,
  21
possibly
  77:1 91:4
  125:18
potential
  14:4 18:8
  52:11 89:14
potentially
  41:12 90:22
preparation
  31:7
prepare
  107:1
prepared
  18:6
present
  4:9 5:11
  73:16
  104:12,13
presented
  80:11
presents
  5:15
presumably
  41:4 97:11
presume
  58:15 113:3
presumption
  54:16
pretty
  25:4
preview
  68:8
prior
  12:16 23:10
  35:3 43:9
  58:17 68:20
priority
  65:5

privileged
  7:15
privy
  35:21 83:21
probably
  18:20 79:9
problem
  44:10
problematic
  42:20 44:5
proceed
  14:6
process
  30:15,16,18
profession
  90:13
proper
  73:17
protect
  90:21
protocol
  16:18 52:14
  55:15 98:18,
  21
protocols
  52:20 74:15
provide
  6:17 12:10
  13:17 17:12
  28:6 48:13
provided
  12:1,7 27:9
  60:17,19
  108:2
providing
  60:7
published
  33:11 69:13
pull
  49:10 86:3
pulling
  67:4
punishment
  94:7
purchase
  30:12

purpose
  36:2
purser
  73:9,14
  74:5,8,13
  101:21,22
pursuant
  126:6
push
  89:15
put
  5:18 21:7
  49:1 106:21
puts
  88:1
putting
  93:21

---

Q

question
  10:21 14:2
  16:1,4 18:7
  19:7 22:14,
  15 23:3,17
  36:21 38:15
  39:5,22
  41:10 44:1,
  4,16 48:3,8
  52:17 53:11
  63:14 64:5
  65:19,22
  67:10,12,13
  70:2 74:14
  80:8,9,10
  83:19 90:16
  94:3 112:6
  115:11,22
  116:16
  117:2,19
  118:16
  119:20 121:4
  128:20
questioned
  44:18
questioning
  120:19

Joan Kirby
March 14, 2022

127:18
questions
  6:22 7:10
  13:19 18:22
  32:14 87:19
  115:4 117:9,
  12 118:6
  121:19
  122:10
  127:19
  128:18
  129:12

---

R

raise
  5:20
range
  21:17
rare
  72:16
rarely
  72:10 84:12
re-examine
  127:12
reach
  40:1 51:1
  55:15
reached
  50:18
reaction
  116:14
read
  33:10 35:8,
  12 42:6,10,
  17,18 50:5,6
  51:6 61:9,
  10,14,15
  62:1,8 67:13
  69:14,16,20
  70:1 72:17,
  22 82:4
  83:2,5,7,12,
  13 87:21
  88:7 108:7
  109:6 115:7
  118:2,7,13

120:14 121:2
124:12
129:17,21
reading
  4:3 43:6
  63:8 119:22
ready
  115:19
reality
  90:11
realize
  96:6
rear
  121:1
reason
  6:16 22:7
  30:6 82:3
  91:12 113:6,
  9 121:13,17
reasonable
  33:22 34:11
  36:15 95:3
  109:7 126:7,
  11,16,19
  127:4
reasons
  18:4
rebooked
  73:20
rebuttal
  113:8
rebutted
  123:8
recall
  118:11 121:7
  128:3,5,8
recant
  22:6
recanted
  111:3
receive
  13:14 17:6,
  16,18 19:5,
  10,21 20:17
  36:11 41:20
  46:20 68:1
  81:13 89:4,6

received
  11:16 12:2
  20:3 28:22
  31:1,18 35:3
  41:4,5 45:15
  53:21,22
  68:22 71:12
  73:4 76:21
  77:3,5
receiving
  39:1 94:7
recently
  79:2
recessed
  107:3
recipient
  36:8
recognize
  32:15 59:15
  72:6
recognizing
  95:22
recollection
  116:2 118:9
recollections
  126:8
recommend
  20:17
recommendatio
n
  16:14 77:7
recommendatio
ns
  18:3,5
recommended
  17:15,20
reconsider
  112:10
  120:10
reconsidering
  41:11
reconvened
  107:4
record
  4:20 6:5
  7:12 10:1
  13:10 14:19

74:16 123:22
recounts
  129:1
redirect
  86:11,13
  122:14
referenced
  107:16
referencing
  28:16,17
referring
  20:1 28:20
  78:22 110:4
reflected
  127:4
refuse
  14:18 15:1
  19:13,15
  25:7 30:14
  31:4 33:16
  37:3
refused
  30:13 51:14
refuted
  123:8
regarding
  12:1 45:11
  49:14 107:13
region
  9:21,22 10:7
  17:7,8
regional
  9:20 10:3,4
  15:2
reject
  17:15,19
rejected
  18:2,4
related
  88:7
relating
  88:14
relations
  99:1,9,11
  109:20
relaying
  107:17

Joan Kirby
March 14, 2022

relevant
  65:6
reliable
  88:9
relied
  97:13
relocating
  73:9
relook
  97:3
rely
  126:7,8,20
relying
  45:5
remainder
  129:11
remember
  31:16 56:22
  69:10 100:9
  120:18
  121:10,22
remote
  130:7
remotely
  4:10
remove
  110:16,20
removed
  58:17 74:1
  118:17
removing
  73:17
reopen
  40:14 112:1
reopened
  20:20
repeat
  10:21 16:3
  17:17 44:1
  47:20 88:4
rephrase
  19:9
reply
  26:9,20,22
  108:10
  109:8,12

replying
  108:3
report
  12:18,19
  14:9 17:18
  18:18 19:5,
  10 31:1,2,
  18,20 36:19
  37:4,11,15,
  16,21 38:17
  42:8 45:6
  48:20 54:15
  58:15 59:1,3
  61:19 62:17,
  20 63:10,22
  64:15 66:18,
  20 68:1,9,
  16,18,21
  69:16,17
  70:4,9,17
  71:3,11,17
  72:7 75:10
  76:4,16 81:6
  83:3,13,20
  87:9,12,15
  88:17 89:4,5
  94:20 101:2,
  16,18,20
  110:13,15,
  16,21
  111:13,14
  113:11
  114:11,13
  117:10,17
  118:7,15
  119:9,10,16,
  17 120:8,15
  121:14
  124:8,12,15
  126:9,14,17
  128:3,6,8
  129:1,9
reported
  62:17 87:17
  94:20 121:16
reportedly
  120:15

reporter
  4:5 5:5,8,17
  6:4,8 7:1
  67:11,14
  129:14,20
  130:2,4
reporting
  4:10,17
reports
  13:14 14:15,
  16 17:6,16
  18:14 20:17
  29:17 39:1
  44:14 65:6,
  10,13,15
  66:2,4,8,15
  67:17 72:9
  74:4 76:13,
  16 81:13
  82:1,5,19
  97:12
represent
  4:19 5:1
  60:16 122:17
request
  62:12
require
  52:13
required
  52:3 59:3
  62:20 63:22
reread
  67:12 97:17
reserve
  122:10
  129:11
resolution
  28:8,10
  48:19
respect
  48:10
respond
  27:10 40:12
  54:1
responded
  40:8 41:7,17

responds
  27:16 98:8
response
  27:20 31:13
  100:17
responses
  7:2
responsibilit
ies
  63:16
responsibilit
y
  75:1,2,3,4
  99:11
rest
  116:16
result
  20:4 24:8
  35:17 40:3
  47:3 49:20
  107:17
results
  15:11 39:9
retired
  8:11
reverse
  22:9,21
  23:10 24:10,
  19 112:17
reversed
  21:6
reversing
  23:16
review
  14:15,16
  31:7 72:9,18
  85:8
reviewed
  31:2,10
  32:18 37:18
  47:12 49:5
  54:8 109:22
  110:12
reviewing
  66:1
right
  5:20 14:8

Joan Kirby
March 14, 2022

20:10 21:13
22:4 28:20
29:5,16 32:7
46:20 47:10
55:10 67:17
68:14 69:3
75:5 82:21
83:15 84:22
87:2 89:8
101:16 105:6
106:20
112:13
114:17
115:20,22
119:6,15
120:21 128:5
**risen**
9:17
**robbery**
105:10
**rogue**
90:22 93:22
**role**
9:16 11:15
30:10 48:9
64:17 90:17
114:7,9
**roles**
114:15
**rooms**
4:9
**roughly**
34:1 38:16
**round-about**
104:11
**row**
50:10
**rub**
89:15

---

**S**

---

**safeguards**
90:21
**satisfied**
76:7 97:12

**saying**
14:22 21:19
33:5 76:15
86:9 100:16
102:3,22
111:2 116:12
123:15 124:2
**says**
35:9 69:3
74:11 88:18
111:4 113:15
**scenario**
21:12 24:13,
15 25:8
**scene**
58:16
**scheduled**
61:17
**scream**
85:12
**screen**
23:15 32:8
**script**
130:3
**scroll**
62:3
**SCSM**
62:14
**seat**
50:10,12,20
51:2 73:8,10
117:3
**seated**
50:9
**second**
21:1 34:20
38:10 39:15
43:13,20
49:14 67:3
74:1 96:11
97:11 107:16
109:1 112:1
115:20
119:6,12
129:19
**secondhand**
81:5 83:15

84:7 87:18
**seconds**
67:5 116:10
**section**
60:20
**security**
8:13 9:2,10
17:5 28:1
29:19 34:22
35:14 36:6
41:21 65:11
73:4 74:2
98:10 99:5,
7,12 108:4
114:6
**see**
13:18 18:19
33:3,8,18
38:9 42:4,14
43:18 54:10
60:20 62:2
66:21 69:3
71:11,14
72:10,11
89:1 98:10
111:5,19
113:16,19
114:17 115:5
117:2 120:1
127:13
**seeing**
60:1 80:19
101:6 109:13
121:10
**seek**
80:1
**sees**
98:10
**send**
18:17,21
37:11 77:15
99:4
**sending**
38:17 97:15
**sends**
98:22
**sense**

20:15
**seriously**
46:10
**service**
28:3,22
29:3,17
44:14 47:17,
21 54:15
58:15 60:1,
5,13 61:20
62:19,20
63:10,22
64:15 65:6,
15 68:16,17,
21 74:4
76:12,15
81:6,12 83:2
87:9,12,15
89:4,5 94:20
97:12 99:8
101:20
110:14,15,16
114:11,12
118:15
119:10,16,17
121:14
**set**
79:7,22
80:11
**shafted**
100:10
**share**
19:17 29:6,
11
**sharing**
32:8
**shift**
125:3
**showed**
31:11
**showing**
59:17
**shown**
119:16
**side**
40:9,13
50:22 91:16

Joan Kirby
March 14, 2022

92:1 108:3,
9,13
**sign**
24:8 129:17,
21
**signed**
36:18 41:6
**signing**
4:3 37:10
77:10 91:7
103:7
**signs**
89:13
**similar**
9:16 24:16
**simple**
87:1 105:18
**simply**
128:20
**simultaneousl**
**y**
27:13 57:15,
20 64:11
85:16,22
92:8 96:20
102:13,16
105:8
**sir**
6:5 80:6
115:8 116:16
121:13
**situation**
22:19 73:19
117:7
**situations**
62:11 64:18
92:14
**skeptical**
83:13
**skip**
59:10
**sky**
73:5
**small**
51:7
**snip**
116:22

**softening**
125:19
**sold**
30:8
**sort**
20:12 53:7
105:16
**sorts**
11:4
**sources**
65:11
**South**
10:11
**span**
8:22 39:1,8
**speak**
54:2 108:21
123:22
**speakers**
27:12 57:14,
19 64:10
85:15,21
96:19
102:12,15
105:7
**speaks**
127:18
**special**
66:15
**specific**
45:12 58:12
87:16 95:10
**specifically**
7:13 107:7
**specifics**
94:12
**speculate**
101:13,14,15
**speculating**
111:10
**speculation**
93:13,17
100:4 101:10
102:4 125:7
126:2 129:4
**spell**
6:5

**spent**
8:18 9:2
**spoke**
74:2 78:18
**stage**
124:21
**stamp**
37:3 69:2
**stamped**
60:18
**stance**
125:19
**standard**
16:17
**standing**
84:21 85:7
116:7 121:10
**stands**
63:4 111:13
**start**
7:19 17:8
**started**
8:12,17 9:18
**starting**
115:10
**state**
6:4 64:21
**stated**
74:6 82:20
101:19,21
120:22
121:21
**statement**
82:11 88:16
92:3 101:6
102:9,18
103:1 112:3
113:8
128:19,20
**statements**
82:12 115:4
124:10
**stating**
4:19 26:7
39:13
**status**
51:21

**step**
86:12
**steps**
19:4,6 31:19
32:1 65:8
76:3 97:6
**STIPULATED**
4:2
**stop**
82:21 86:20
**store**
50:18 105:10
**stories**
92:9
**story**
26:11 40:9,
13 78:11
80:22 83:11
108:3,13
112:7
**straightforwa**
**rd**
86:8
**strike**
65:3
**strong**
18:20 112:15
**strongly**
126:8
**Studied**
8:4
**stuff**
83:21
**subject**
10:17,22
50:3
**submit**
28:14 45:10
46:1
**submitted**
14:17
**subsequent**
37:16
**subsequently**
35:5
**substantially**
40:2

Joan Kirby
March 14, 2022

**sufficient**
24:17 122:6
**suite**
13:8
**summary**
35:8,9
**superior**
24:7
**supervisor**
9:17 45:2,4
**supporting**
81:6 88:13
**supportive**
125:3
**supposedly**
129:2
**sure**
6:21,22 7:9
16:6 19:14
24:21 28:18
29:18 30:3
43:15 45:18
46:3 50:6
55:13 56:6,7
61:15 77:12,
21 89:19
94:22 98:17
100:21 104:5
107:19
108:17 109:4
118:12 124:1
128:18
**surprised**
73:22
**suspected**
16:21
**suspension**
107:6
**sustain**
64:8
**sworn**
6:1 117:15
128:6,13,21
129:7
**synopsis**
42:7,20
43:6,9 44:14

**system**
45:16

---

**T**

---

**T2416**
73:3
**take**
15:10,16
16:6,15
19:4,11,16
20:12,14
24:15 25:10
26:22 27:8
31:19 32:1
38:16 39:22
41:15 46:9
54:19 55:17
58:17 65:8
67:2 78:2
81:18 86:6,
7,10 92:5
96:11 97:8,
15 106:21
111:16 112:1
**taken**
6:19 17:11
20:4 28:7
41:18 63:17
76:3 97:6,10
**takeoff**
67:22
**takes**
25:8 53:2
**taking**
13:13 20:18
25:17,22
**talk**
57:3,11
108:17
112:12
**talked**
57:17,18
58:2 112:13
**talking**
16:20 28:18
49:3 62:6

105:17,18
118:14 119:9
**task**
8:19,21
**team**
11:14 65:12
**tell**
39:15 48:5
55:1,7 84:13
87:21 91:11
98:3 124:3,6
129:18
**telling**
81:21 93:11
100:21,22
118:21
119:21 120:4
**temporary**
107:5
**tend**
71:18 128:12
**terminology**
20:2
**Terrace**
51:12
**terrorist**
8:19
**testified**
53:13 77:14
79:2 84:21
93:21 118:8
124:7
**testify**
6:2 86:19
93:5 126:4
**testifying**
65:2 93:19
98:19 127:9
**testimony**
4:13 7:6
20:16 26:19
53:5 55:3
64:2 79:22
80:10 83:17
84:15,19
85:2,8,13,
17,19 86:3

88:10 89:3
99:10,21
100:3 101:10
102:6 103:4,
10 117:1,16
118:1 121:13
124:19
125:2,18
128:13,15,22
**Thank**
5:8,17 6:8,
14 52:1,4
64:8 97:1
129:12,13
**thing**
17:3
**things**
55:8 113:13
125:19
**think**
12:13 18:1,8
19:1 20:11,
22 21:9,15
25:3 26:3
39:4,11
56:14 57:9
58:11 59:7
61:8 72:13
77:21 89:21
90:5 92:11
93:19,20
94:17,22
96:8 98:21
108:15
109:7,11
110:6,7
127:3,7,12,
18
**third**
8:18
**thought**
22:19 23:5
**threat**
104:14,15
**threaten**
104:13
105:20 106:1

Joan Kirby
March 14, 2022

three
  62:9 74:3
  101:19 108:8
  124:9
throwing
  122:3
ticket
  30:8,12
time
  7:8 9:2
  11:21 33:11,
  19 34:12
  36:11 37:2
  39:1,8 40:2
  57:3 66:13
  69:2,14 74:1
  79:3 86:6,7
  88:5 91:17
  94:4,13
  99:17 103:20
  120:3 122:11
  126:9,18
  127:11
time's
  91:19
times
  21:14 72:13
today
  7:5 9:12
  11:15 31:7
  80:12 83:5
  100:8 103:4
  110:12 111:7
  120:10
  126:4,14,17
  128:16
told
  20:9 55:11
  57:12 83:11
  88:15 118:10
  120:21 129:2
top
  18:1 19:3
  33:11 42:6
  56:15 60:2
  108:7 110:10
totality
  43:14

touch
  106:7
touching
  106:5
tour
  72:7,9 76:4
  101:16,17
  110:13
  117:10,17
  118:7 119:9
  120:8,15
  124:7,12
  126:9,13,17
  128:3,5,8,22
  129:9
training
  11:16,18,20,
  21,22 12:2,
  8,10,12,14
  63:18
transcript
  32:12 38:5
  49:7 59:13
  68:12 72:4
  86:4
transpired
  57:5
travel
  30:11 61:16
traveling
  73:7
travels
  74:11
treated
  117:13
trial
  122:11
trip
  73:7
triple
  43:16
Troy
  5:1 6:16
  73:6
true
  55:8,12
  58:14 59:2

  64:14 80:18
  82:19 106:6
  113:11
trust
  80:18 81:1,
  21
trusted
  100:20,22
truth
  54:16,20
  55:2 81:22
  91:12 92:6
  100:21,22
  119:21 120:5
try
  109:2
trying
  24:22 25:2,5
  34:20 38:9
  42:11 124:3,
  6
TSA
  29:12
turned
  84:22
twice
  116:13
two
  31:17 34:12
  39:12 44:14
  63:9 97:12
  103:8
two-line
  36:5
type
  31:13 41:17
  66:5
typed
  33:9
types
  18:2

U

unaffected
  51:22

understand
  6:22 14:21
  19:7 39:21
  45:17 48:8
  53:10
understanding
  9:15 73:18
  118:16 122:2
unfair
  90:4
unfortunate
  51:22
unnecessarily
  73:19 99:19
unruly
  35:10
unsworn
  128:14
unusual
  53:14
uphold
  78:6

V

vague
  19:8
value
  55:4 65:15
  66:1,5,8
various
  65:11 110:13
verbal
  7:2
verbally
  4:13 50:12
verification
  5:13
verified
  5:16
version
  26:21 48:13
  64:16 78:12
  118:22
vicinity
  121:6

Joan Kirby
March 14, 2022

| | | | |
|---|---|---|---|
| **victim** | **week** | 20 70:7,14, | 123:1,19,20 |
| 78:3,4 82:9, | 51:15 74:12 | 20 71:6,14, | 124:4 |
| 11 | 111:17 | 21 74:20 | **witnesses** |
| **victim's** | **weigh** | 75:7,13 | 54:17 82:19 |
| 111:14 | 109:18 110:8 | 76:1,15 | **wonder** |
| **video** | **weight** | 77:12 78:4 | 67:22 |
| 5:13 6:10 | 89:5 | 79:15 80:16 | **wondered** |
| **view** | **went** | 81:9,15 | 83:14 |
| 111:6 | 85:11 | 82:11,12,16, | **wondering** |
| **visual** | **whatsoever** | 18 84:19 | 53:16 |
| 117:6 | 85:3 | 86:2,3,8,15, | **Woodrow** |
| | **Where'd** | 18,21 87:6 | 4:22 6:13,15 |
| ───────── | 8:8 | 88:4,19 | 10:2 13:11 |
| **W** | **widely** | 89:1,18 | 14:20 16:5 |
| ───────── | 95:15 | 90:7,15 | 22:1,11,13 |
| **wait** | **William** | 91:2,10,19 | 23:8,12,18 |
| 39:1,8 | 4:22 | 92:5,16,22 | 24:5 25:1 |
| **waiting** | **window** | 94:3 95:5,19 | 26:4,12 |
| 115:17 116:9 | 50:10 | 96:2,8,14 | 27:4,14 |
| **waive** | **witness** | 97:2 98:1,21 | 32:6,13 |
| 4:16 | 4:12 5:6,10, | 99:14,20 | 34:5,17 36:1 |
| **waived** | 11,14 6:3,6 | 100:5,13,19 | 37:1,9,14 |
| 4:4 | 15:21 16:3 | 101:6 103:12 | 38:6,14,21 |
| **want** | 21:21 22:6 | 104:8 105:2, | 39:6,20 |
| 50:5 54:10 | 23:3,14 | 22 106:16 | 40:6,18 |
| 56:17 62:8 | 24:1,21 26:3 | 107:7,9 | 41:3,19 |
| 86:7,17,19 | 27:3 32:5 | 109:4,11 | 42:12,16 |
| 88:8 116:16 | 34:4,14 | 110:20 111:9 | 43:4,16,20 |
| 118:7 126:22 | 35:20 36:21 | 112:3,6,19 | 44:3,12 |
| 129:21 | 37:13 38:12, | 113:6,21 | 45:1,13 |
| **wanted** | 20 39:4,11 | 114:5 121:12 | 46:7,13,19 |
| 77:8 | 40:5,16 | 122:18 | 49:8 52:10, |
| **way** | 41:2,15 | 123:10,14 | 18 53:12 |
| 20:5,11 | 42:10,13 | 124:1,15 | 54:3,12,21 |
| 26:22 27:6 | 43:3,12,18, | 125:8,12 | 55:9 56:1,8 |
| 39:12 45:22 | 22 44:10,21 | 126:13 | 57:16 58:1, |
| 53:6,15 | 45:9 46:5, | 127:3,11 | 21 59:8,14 |
| 71:22 75:11 | 12,18 52:9, | 128:15 | 60:9 61:13 |
| 78:16 89:16 | 16 53:10,19 | 129:16,20 | 63:5,7,19 |
| 98:13 99:1 | 54:10,19 | **witness's** | 64:6,13 |
| 102:17 103:3 | 55:6,20 56:6 | 102:6 | 65:1,21 |
| 104:11 | 57:21 58:20 | **witnessed** | 66:6,12 |
| 108:21 110:7 | 59:6 60:7 | 74:5 83:8 | 67:6,11,19 |
| 111:10 | 61:12 63:1, | 87:13,17 | 68:6,13 |
| 119:20 | 2,13 64:20 | 88:1,11 | 69:11 70:3, |
| 122:20 | 65:19 66:4, | 94:15 99:20 | 8,15 71:1,8, |
| **website** | 11 67:2,8,16 | 101:20 117:6 | 16 72:1,5 |
| 28:15 | 68:4 69:10, | 118:3 120:17 | 74:21 75:8, |

Joan Kirby
March 14, 2022

```
     15 76:2,11,
     17 77:13
     79:16,21
     80:5 81:3,
     10,16 83:1,
     18 84:20
     85:6,14,18
     86:5,10,17,
     22 87:2,5,7
     88:6 89:11,
     20 90:9,18
     91:3,14,21
     92:7,18
     93:2,14 94:5
     95:7,20
     96:3,9,16
     97:4 98:2
     99:2,16
     100:7,15
     101:4,11
     102:7 103:14
     104:1,19
     105:5 106:2,
     10,18,20
     107:5,8,10
     109:5,15
     111:1,15
     112:8,20
     113:7 114:1,
     8 122:12,16
     123:16
     124:5,17
     125:1,9,14
     126:3,15
     127:6,14,17
     129:3,13
word
     18:21 54:20
     75:13,16
     91:20 92:6
     103:20
work
     8:6 12:11,16
worked
     8:9,17,18,20
working
     8:20 9:1,2
     51:19
```

```
write
     59:1,3 70:4
writing
     49:2
wrong
     22:8,20
     24:18 53:8
     63:6 79:12
     89:16
wrote
     113:16

─────────────

          Y

yeah
     19:6 20:2
     24:1 43:18,
     20 49:20
     50:6 60:3
     62:7 70:1
     78:11 105:14
     107:5 120:3
     124:1 125:8
     130:3,4
year
     6:18 9:4
     127:8
years
     8:11 58:10

─────────────

          Z

zero
     43:17
```