UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

|  |  |  |
|---|---|---|
| TROY CLOWDUS | : : : | CIVIL ACTION |
| Plaintiff, | : | DOCKET NO.: 1:21cv23155 |
| v. | : : |  |
| AMERICAN AIRLINES, INC. | : : |  |
| Defendant. | : : |  |

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE CERTAIN EVIDENCE**

Defendant, American Airlines, Inc. ("**AA**") hereby files its Reply to Plaintiff's Response in Opposition [DE 95] to Defendant's Motion in Limine [DE 82]:

**Plaintiff's Untimely Deposition Corrections**

1. The parties do not dispute that these corrections are inadmissible.

**References to Flight Attendant Merino Knowing any Passengers on the Flight**

2. Plaintiff does not dispute that he has no evidence that Flight Attendant Merino knows any passenger on the incident flight and that his "theory" that Quintana and Merino were friends was made up out of whole cloth to discredit Quintana.

**References to Flight Attendant Merino Acting as if on Amphetamines**

3. Plaintiff does not dispute that he has no evidence that Merino was on amphetamines and that he had no such evidence when he put this theory in his original Complaint. There is no sound legal or evidentiary basis for this argument, and as such, the inquiry would be prejudicial. Fed. R. Evid. 401. Fed. R. Evid. 403.

**Any Suggestion or Argument that Flight Attendant Merino Removed Plaintiff**

4. The parties do not dispute that Merino made the request for removal to the captain following Clowdus striking him with his bag. As a matter of law and AA policy, however, Merino had no authority to make, and did *not* make, the *decision/order* to have Plaintiff removed. Any suggestion to the contrary would be prejudicial/mislead.

1

5. The impropriety of Plaintiff's planned argument ("Merino kicked Clowdus off the plane") is exposed using the same deposition testimony Plaintiff refers to in his Response.[1] Specifically:

> WOODROW: Okay. Did Mr. Henriquez ever inform you that Mr. Clowdus had told him that it was an accident, that he did not intend for his bag to touch you?
>
> MERINO: Well, actually, he came back to talk - - - to talk to me after he - -
>
> WOODROW: When?
>
> MERINO: After the passenger was on the jet bridge, when passenger and him were on the jet bridge, and he came back to me. **But the captain already made a decision**.[2]

6. There is no evidence that Henriquez *pleaded* with Merino to return Clowdus back to the flight. There is also no evidence to support Plaintiff's argument that Merino could have gotten Clowdus re-admitted *after* the captain's decision:

> HENRIQUEZ: And from there, we need to have a discussion with the flight attendant and the chief in command, which is the pilot, and we'll go from there. If the decision's already made - - like, in that [referring to Clowdus'] case, **the decision's already made by the captain**, then I'm in charge of passing information to the passenger.
> --
> HENRIQUEZ: I then asked the **chief in command, the pilot, because has final word, I asked him, "What do you want me to do at that point?"**
>
> **He said, "Unfortunately, he needs come off. He's not going to be able to fly with us."**[3]

7. Any argument that Merino had the authority to make the decision to remove Clowdus, and/or "changed his mind" and somehow had the authority to re-admit Clowdus **after the pilot made the decision**, is unsupported by any testimony or evidence. Fed. R. Evid. 403.

### References to Other Passenger Incidents Involving Flight Attendant Merino

8. Plaintiff does not dispute that other passenger incidents proffered in discovery are not relevant and should be excluded. Plaintiff, however, desires to use subsequent incidents based

---

[1] Plaintiff's Response to Motion in Limine [DE 95] at 3.
[2] Deposition of Carlos Merino, 27:24-28:4. Deposition transcripts will be cited as [page:line] throughout.
[3] Deposition of Jose Henriquez, 13:4-9; 15:24-16:7.

purely on speculation (i.e. "It may be, for example, that Merino has suffered burnout following the challenges of the COVID years . . .").[4] This speculative argument is clearly contrary to Federal Rule of Evidence 404 (evidence of character, other acts are not admissible to prove that on a particular occasion the person acted in accordance with same). Subsequent incidents are just as inadmissible as prior incidents, for the same reasons adopted by this Court as to prior incidents.

### Any Suggestion That the AA Flight Attendants Merino and Gray Are Social Friends or Conspired to Write Supporting CERS Reports

9. Plaintiff does not dispute that there is no good faith basis for the contention that Merino engaged Gray to provide a false statement that corroborated his account—a theory that Plaintiff also made up out of whole cloth.

10. Plaintiff speculates that Gray "did not witness the incident" that she has testified that she witnessed, that Merino testified she witnessed; and for which she filled out an incident report saying she witnessed at the time.[5] No evidence disputes this. Gray was in the Number 3 position on this flight, the flight attendant position that must remain in business class except in rare cases of emergency.[6] Plaintiff's allegation that Gray and Merino conspired against him relies on three passengers—one of which recalled seeing Gray in the business class section during the flight; another who simply did not recall either way; and (disingenuously) a third who has not provided deposition testimony in this action to be questioned about Ms. Gray.[7] Plaintiff also relies on Ground Security Coordinator Jose Henriquez, who himself testified that he was not focused on other flight attendants and could not recall observing Gray either way. His "full attention" was on Merino and Clowdus.[8]

11. Plaintiff's intent is not to argue that Gray's observations about Clowdus' intent should be disputed for purposes of proving/disproving Clowdus' intentionality. Plaintiff goes farther, concocting a conspiracy theory whereby Gray did not see the interaction *at all* (despite being undisputedly within the small, business class area). Plaintiff speculates that she conspired

---

[4] Plaintiff's Response to Motion in Limine [DE 95] at 3.
[5] Plaintiff's Response to Motion in Limine [DE 95] at 3.
[6] Deposition of Fernando Bastos, 15:11-21. There is no evidence of an emergency.
[7] Deposition of Federico Quintana, 59:18-23; Deposition of Nicole Kim, 7:3-15.
[8] Deposition of Jose Henriquez, 19:4-13. Mr. Henriquez also clarified that his disbelief resulted from being informed that *three* flight attendants had filed reports – "there's no possibility of having three flight attendants gather at the same time." Deposition of Jose Henriquez, 34:4-12. He was correct—only Gray and Merino filed reports. This had nothing to do with confirming Plaintiff's conspiracy theory that Gray fabricated her report to help Merino.

3

with Merino to corroborate their accounts (and in her case, completely invent one) because they are "friends." This theory is based only on Gray's testimony that she interacts with Merino on layovers. Gray denied that she interacts with Merino outside of the work environment.[9] Any argument referring to a conspiracy to commit perjury is baseless and inflammatory.

### Any Suggestion that Ground Security Coordinator Henriquez Observed the Assault

12. Despite alleging in his *Amended Complaint* that Ground Security Coordinator observed the "moments ***during*** and immediately following the incident,"[10] Plaintiff now agrees that Henriquez did not observe the assault, as Henriquez testified. Any argument or suggestion to the contrary is without evidentiary basis and would be misleading.

### References to Passenger Federico Quintana Fearing Loss of His Mother's Flight Benefits

13. In the May 24, 2022 hearing referenced by Plaintiff, the Court allowed *discovery* into the benefits that Ms. Cookson (the passenger Federico Quintana's mother) possessed with regard to AA. The Court *did not* make *any finding* regarding whether Mr. Quintana feared the loss of his mother's benefits, and the discoverability of these benefits has no impact on the propriety of discussing this issue at trial, given that no evidence was developed to support the argument that Quintana "feared his mother losing her benefits."

14. The lack of good faith evidence to support this contention is revealed by Plaintiff's speculative argument in the Response—i.e. Quintana "could have worried about retaliation for not cooperating" or "he could have just been appreciate that AA lets him fly for free and wanted to give back." Contrary to Plaintiff's misrepresentations in his Response, the evidence clearly demonstrates that Mr. Quintana *does not* "fly for free."[11] Ms. Cookson (his mother who purchases his tickets) testified that she pays both "full fare for his ticket" and sometimes uses a *discount*.[12] She also testified that even when she gets a discounted flight through AA she still has to "pay some money for the ticket" and it is "not a free ticket."[13] Plaintiff's counsel questioned Ms. Cookson in her deposition about a flight (at the discounted rate) of $121.47 that she purchased for her son Quintana.[14] Ms. Cookson has already testified that she understands her ability to purchase up to 8

---

[9] Deposition of Deon Gray, 10:11-19.
[10] Amended Complaint [DE 40] ¶ 33.
[11] Plaintiff's Response to Motion in Limine [DE 95] at 5.
[12] Deposition of Angelica Cookson, 26:16-20.
[13] Deposition of Angelica Cookson, 28:18
[14] Deposition of Angelica Cookson, 79:23-80:10.

one-way discounted "buddy pass" tickets for friends/family members (one of which is Quintana) cannot be withdrawn for something as innocuous as a deposition. She also testified that her son had no concerns regarding her ability to lose those benefits.[15] Plaintiff's speculative argument has no evidentiary basis and is calculated to mislead.

### Any Suggestion That the Flight Attendants' Rushed Departure of the Flight Because Their Pay Commences at Push Back

15. Plaintiff conflates "performance" with "pay" in his Response to avoid admitting that he has no evidence to support the argument that Merino was in a rush based on departure time. Plaintiff admits that Merino did not testify to being in such a rush. Flight attendant Bastos testified that nothing happens but a hand slap, which also relates to performance—not pay. Henriquez is not a flight attendant. He operates by different policies/incentives. None of the flight attendants testified to knowing what a "Right Start" is.[16] The flight attendants deposed in this action have testified that on-time departure has no effect on their compensation.[17] As argued in the Motion, there is no evidence that Merino was in "a rush", given that flight attendants are paid for flight time and their pay is not impacted by early departure, and any argument to the contrary is without evidentiary basis and would mislead.

### Impeachment of Witnesses on Collateral Matters

16. Plaintiff does not dispute the impropriety of impeachment of Merino on collateral matters and that he made multiple endeavors to collect "impeachment" evidence as to passenger Federico Quintana on issues collateral to the substance of his relevant testimony, which should be deemed inadmissible.

### Any Suggestion that AA's Counsel Sought to Bribe or Influence Any Witness

17. Plaintiff does not address and therefore does not dispute that AA did not seek to bribe any witness, and this incendiary allegation has no place in trial. Plaintiff suggests that paying a witnesses' travel expenses to testify at trial or deposition constituted an "improper inducement."[18] This is a baseless argument. Paying witnesses' travel expenses to testify at trial or deposition is not improper and is specifically permitted. 28 U.S.C. §1821 specifically states that

---

[15] Deposition of Angelica Cookson, 97:1-15; 99-18.
[16] Deposition of Carlos Merino, 94:7-22; Deposition of Deon Gray, 99:1-4.
[17] Deposition of Carlos Merino, 97:3-15; Deposition of Deon Gray, 99:5-21; Deposition of Fernando Bastos, 27:10-25.
[18] Plaintiff's Response to Motion in Limine [DE 95] at 7.

those served with a federal subpoena in a civil case may, for example, receive payment of an attendance fee; payment for actual expense of travel; a subsistence allowance for overnight stay. The Florida Bar also condones such paying for a witness' expenses to testify, based on the recognition of the "value of a witness's time" and "duty to assist in the truth-seeking function of the trial process.'" *Trial Pracs., Inc. v. Hahn Loeser & Parks, LLP,* 260 So. 3d 167, 171 (Fla. 2018); *Allstate Ins. Co. v. Boecher*, 733 So.2d 993, 998 (Fla. 1999)).[19] Plaintiff's suggestion that Defendant offered "an all-expense paid trip from Mexico to Miami" as "inducement" is not made in good faith and is meritless. Defendant had no need to "influence" either Mexican witness, Juan Hernandez-Ramirez and Jairo Espinoza. By the point of "Velarde's text messages to Jairo Espinoza," Defendant had already interviewed Espinoza and Ramirez, and knew what each individual would say, which is why AA wanted to obtain their deposition testimony.

**<u>Evidence of the Completeness of AA's Investigation Prior to Permanently Banning Plaintiff and Evidence Relevant Only to Plaintiff's Dismissed Claims</u>**

18. Plaintiff brings one claim for defamation *per se*. His negligence/breach of contract claims were dismissed. It therefore follows, (as Plaintiff admits), that AA could only be vicariously liable for the damages "Merino caused"—through his defamatory acts (and/or the defamation AA directly engaged in). In that sense, Plaintiff could attempt to pursue AA for damages that Merino's on-board statements caused him (e.g. reputational harm to those who overhead these statements) and/or for damages caused by Merino's unprivileged publication of his CERS report with AA. However, there is no causative link/no "unbroken continuity" between Merino's statements and AA's ban of Clowdus—a decision by AA corporate which undisputedly occurred weeks later, using different criteria, over which Merino had no control.[20]

19. By the time that AA had the opportunity to investigate, the allegedly defamatory actions of Gray and Merino had already been completed. Plaintiff argues that, instead of properly investigating, AA simply "rubber-stamped" Gray and Merino's defamatory comments, conceding that neither the investigators nor AA generated any *new* actionable statements. Any damages that

---

[19] "Under the plain language of rule 4-3.4(b), payments to witnesses are proper—and outside the scope of the prohibition on the 'offer [of] an inducement to a witness'—if they fall within one of the following three categories: **(1)**'reasonable expenses incurred by the witness in attending or testifying at proceedings'; (2) 'a reasonable, noncontingent fee for professional services of an expert witness'; or **(3)**'reasonable compensation to reimburse a witness for the loss of compensation incurred by reason of preparing for, attending, or testifying at proceedings.' R. Regulating Fla. Bar 4-3.4(b)." *Id.*
[20] Defendant's Motion in Limine [DE 82] ¶ 18-22.

would therefore result from that negligent "rubber-stamping" (i.e. AA negligently investigated and banned Clowdus, removed his flight privileges, etc.) would be attributable to AA's negligent wrongdoing and would not be *caused* by Gray's/Merino's defamatory wrongdoing. But Plaintiff's claim for negligent investigation/removal against AA has been dismissed. The damages/evidence (such as incomplete investigation) are therefore likely to mislead as to what Plaintiff's defamation damages are.

20. Recognizing this, Plaintiff speculates that evidence/damages from a negligent investigation could be admissible because they could go to ratification – "If there was evidence that AA was provided with information which proved that the allegation of assault was not true and did [*sic*] not nothing to follow up on it . . . that evidence would certainly be relevant to proving that AA both ratified and condoned Merino's conduct."[21]  First, there is no such evidence. Of the parties involved, only Clowdus admitted in deposition to providing an incomplete/misleading/inaccurate report to AA.[22]  Clowdus does not dispute any material facts as provided to AA in the reports by Gray or Merino—he merely disputes the subjective conclusions regarding his intent to hit Merino with his bag (Clowdus says it was an accident). At best, Clowdus argues that AA chose the wrong side on a disputed issue—Clowdus' intent. Any argument that this choice resulted from the negligent investigation is irrelevant to defamation (it is not ratification), and it is likely to mislead.

21. Second, Plaintiff's use of the vague terms "Merino's conduct" and some vague "policy" to formulate this argument of ratification is telling. There is *no evidence* that AA instructs/requires its flight attendants to maliciously *defame* passengers, particularly not million mile fare paying passengers like Clowdus. Therefore, Plaintiff would have to prove that Merino's act was *unauthorized* act, and that AA knowingly ratified/condoned it after the fact. *Stalley v. Transitional Hosps. Corp. of Tampa*, 44 So. 3d 627, 631 (Fla. Dist. Ct. App. 2010). Ratification requires "full knowledge" of the facts and an *affirmative* manifestation of an intent to approve that act. *Id.* This knowing, and affirmative, act of ratification cannot be proven simply by a lack of a plaintiff's desired action (in the Plaintiff's case, AA believing his account over Merino's). *Id.*

---

[21] Response to Motion in Limine [DE 95] at 9.
[22] Deposition of Troy Clowdus, 90:16-91:14; 97:2-10.  For example, Clowdus admitted that in his customer complaint to AA **he completely withheld that he had ignored Merino's instructions to store his bag, which he now claims instigated Merino's malice toward him**.

22. There is no evidence that AA knowingly and affirmatively adopted/ratified a knowingly false statement by Merino/Gray. Plaintiff asserts only that AA adopted a belief negligently—it should have investigated more. Ratification requires a full knowledge of the facts. AA could not be argued to have *knowingly condoned/ratified* false statements, which to date have still not been proven false (and as to intent—can't be). Plaintiff can only argue that AA was negligent in handling the investigation of those accounts.

23. The completeness of the investigation would therefore not tend to make a fact of consequence to defamation *per se* more or less probable. The damages/evidence attributed to the dismissed claims would not be relevant to defamation *per se*. Any attempt to conflate his defamation *per se* claim with his dismissed claims (and their associated damages—actual or punitive) and any mention of an "incomplete investigation" would mislead the jury.[23]

### Any Suggestion of Possible Future Publication of Defamatory Material to Third Parties or Within AA

24. Plaintiff does not dispute that future publication is not actionable and that a party does not incur damages for torts that have not happened. Plaintiff suggests, however, that he should nevertheless be able to refer to anecdotal evidence regarding Delta Airlines' desire to share no-fly lists with other airlines because it could go to "potential damages"—thus revealing the speculative basis for this argument.[24]

25. Plaintiff made this same baseless argument in support of its Motion to Compel discovery responses to its Seventh Request for Production [DE 64]. The Court squarely rejected it, even before Defendant had a chance to respond.[25] The Court should likewise reject it here.

26. Plaintiff's argument is akin to speculating how much the damages stemming from a battery would "balloon" if the defendant were to somehow batter the injured party *again* in a different altercation "in six months." Plaintiff cannot be compensated for possible future damages but only those reasonably certain. The line of questioning contemplated by Plaintiff is not probative and highly likely to mislead.

---

[23] Plaintiff's footnote 5 on page 8 of his Response is without any evidentiary/factual basis. There is *no* evidence that AA wanted to "given an illusion" of a substantive investigation. The investigation into this incident was concluded days after Maldonado sent the IRL packet to Kirby, and it was not implemented until AA's legal counsel approved. This is undisputed evidence, and any argument to the contrary is intended to mislead the jury. Fed. R. Evid. 403. Regardless, the length of the investigation is irrelevant to Plaintiff's defamation *per se* claim.
[24] Plaintiff's Response to Motion in Limine [DE 95] at 10.
[25] Paperless Order Requiring Expedited Response [DE 65] of July 18, 2022 ("On the argument presented, Plaintiff has not shown that he is entitled to further response to RFP No. 3").

27.     Likewise for Plaintiff's argument regarding potential access to Clowdus' file by some unnamed employee—Plaintiff admits he has suffered no concrete injury for stored materials that have not been published.  The speculation that one day defamatory material could be accessed by some non-managerial employee for an unprivileged purpose, constructs facts that do not exist regarding some future tort that does not exist, for which Plaintiff has no concrete injury.  Plaintiff's Response dismisses the element of publication—but defamation (and its damages) do not exist without it.  This line of questioning is irrelevant and highly likely to mislead.[26]

### AA's Deplaning and/or Permanent Banning of Other Passengers on Other Flights

28.     Plaintiff's Response concedes the purely speculative nature of this argument when he asserts that "*if* enough examples were shown to demonstrate a policy or habit of banning passengers without investigation, *then* it very much would be probative for the jury to consider the question of good faith in how AA handled and republished the defamation . . ."[27] Plaintiff concedes this is pure speculation, without evidence.

29.     Further, as argued above, evidence of such other acts, involving different circumstances, passenger, flight attendants, etc. would not be probative of the propriety of Plaintiff's claims related to his removal and permanent ban, and they are obviously irrelevant Plaintiff's sole remaining defamation *per se* claim.

### Argument That AA is Derivatively Liable for the Flight Attendant's Alleged Malice or Resulting Punitive Damages

30.     The unusual nature of Plaintiff's claim/damages renders his vicarious liability argument more confusing than a typical tort action.  Using Plaintiff's Jon/Sam/Wal-Mart analogy, Plaintiff's claim is more akin to Sam (the defamed) pursuing Wal-Mart for refusing to continue to do business with him.[28]  Plaintiff essentially argues that AA should be <u>vicariously liable for Merino's injurious interference with Plaintiff's business relationship with AA</u>.  As this Court held, Plaintiff has no legal rights against AA to any of the damages flowing from his business relationship with AA, including damages that flow from AA's right to no longer contract/fly with him, his (perceived) loss of his AA rewards, etc.[29]  Further, AA cannot be liable for interfering

---

[26] Plaintiff's Response purports to impose his own standard for liability in a defamation action—the requirement that AA "tightly guard[] the reason for the ban."  This standard (that intra-defamation occurs unless a corporation "tightly guards" its corporate decisions) is of course, not grounded in law, and is likewise capable of misleading. Fed.R.Evid. 403.
[27] Plaintiff's Response to Motion in Limine [DE 95] at 10.
[28] Plaintiff's Response to Motion in Limine [DE 95] at 9.
[29] Defendant's Motion in Limine [DE 82] at ¶ 18-22.

with its own business relationship.  Only strangers to a contract/relationship can interfere with it. *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.,* 742 So. 2d 381 (Fla. Dist. Ct. App. 1999); *West v. Troelstrup,* 367 So. 2d 253 (Fla. Dist. Ct. App. 1979).  To the extent that Plaintiff is alleging that AA (through its investigators/security personnel) and Merino acted *in concert* to damage Plaintiff's reputation with AA (as a part of some argued policy), Plaintiff has plead no allegation of conspiracy.  *See Marlborough Holdings Group, Ltd. v. Azimut-Beneti, S.P.A.*, 505 Fed. App'x 899, 907 (11th Cir. 2013) (district court properly disregarded conspiracy allegations in dismissing claims under Florida law where plaintiff failed to plead conspiracy as separate count). Plaintiff also has no evidence of some "policy" to defame or conspire to defame passengers.

31. The parties do not dispute that a corporation can be held liable for its employees' acts committed in the course and scope of their employment.  Liability can only be visited upon the employer, however, when the "conduct in some way furthers the interests of the master or is at least motivated by a purpose to serve those interests, rather than the employee's own." *Perez v. Zazo,* 498 So. 2d 463, 465 (Fla. 3d DCA 1986); *see also Nettles v. Thornton,* 198 So. 2d 44 (Fla. 1st DCA 1967) (without facts to show that the tort "was necessary . . . to carry out her duties, or that she was instructed by her employers to [commit the tort]" the bartender could not be considered within the course and scope of her employment).

32. Hoping to prove that Merino acted with express malice (as required to defeat qualified privilege), Plaintiff argues that "Merino's primary motive in filing the CERS report . . . was to harm Clowdus" rather than out of his concern to fulfill his work objectives.[30]  Plaintiff argues that Merino, who "felt belittled" by Clowdus, maliciously concocted a lie about Clowdus to "punish" Clowdus.[31]  This serves no business purpose.  Plaintiff argues extensively that AA places a premium on timely early departures—and that Merino was rushing to serve this interest. AA would not then be served by Merino inhibiting this early departure by maliciously (and for his own interest in punishing Clowdus) carrying out a campaign of defamation that required security intervention, and resulted in the removal of a passenger for no authorized reason.  To the extent that Plaintiff argues that Merino departed from his motivation to serve his employer (as is necessary to demonstrate the express malice needed to defeat qualified privilege), Merino has necessarily departed from an interest in serving his employer.

---

[30] Plaintiff's Response in Opposition to Summary Judgment [DE 96] at 9.
[31] *Id.*

**Argument That Airlines Have Made Airline Travel Unpleasant**

33. While suggesting his own anecdotal version of what "is true," Plaintiff does not dispute that the suggestion that airlines have made travel unpleasant is not evidence and inadmissible under Fed.R.Evid. 403 ("The Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of…unfair prejudice, confusing the issues…wasting time…"). He also admits that his argument is based on speculation ("If there is evidence to support it, the Plaintiff can argue it.").

DATED on this the 2nd day of September, 2022.

        Respectfully submitted,
        **BUCHANAN INGERSOLL & ROONEY PC**
        *s/ Robert Pecchio*
        Robert D. Pecchio, Esq.
        Florida Bar Number: 1005955
        Robert.pecchio@bipc.com
        401 East Las Olas Boulevard, Suite 2250
        Fort Lauderdale, FL  33301
        Telephone:    (954) 703-3944
        Facsimile:    (954) 703-3939
        *Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this the 2nd day of September 2022, a true and correct copy of the above and foregoing has been filed with the Clerk of Court using the CM/ECF system. I FURTHER CERTIFY that the foregoing document is being served this date, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner of those counsel or parties who are not authorized to receive electronically Notices of Electronic filing on the counsel of record or *pro se* parties identified on the attached Service List.

**SERVICE LIST:**

William T. Woodrow III
250 West Main Street, Suite 201
Charlottesville, VA 22902
E-mail: will@stoneandwoodrowlaw.com

Rook Elizabeth Ringer, Esq.
LENTO LAW GROUP
222 San Marco Ave., Ste. C
St. Augustine, FL 32084
E-mail: reringer@lentolawgroup.com

David Pollack
POLLACK LAW FIRM
75 Valencia Avenue, Suite 100
Coral Gables, FL 33134
Tel: (305) 372-5900
Tel: (855) 275-7378
Tel: (904) 602-9400
E-mail: david@davidpollacklaw.com
*Counsel for Plaintiff*

By: */s/ Robert Pecchio*
      Robert Pecchio