IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

|  |  |  |
|---|---|---|
| TROY CLOWDUS | : | |
|  | : | CIVIL ACTION |
| Plaintiff, | : | DOCKET NO.: 1:21cv23155 |
| v. | : | |
|  | : | |
| AMERICAN AIRLINES, INC. | : | |
|  | : | |
| Defendant. | : | |

**DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

**NOW COMES** Defendant, AMERICAN AIRLINES, INC., (hereinafter, "**AA**" or "**Defendant**"), by and through undersigned counsel and files this Reply in Support of Defendant's Motion for Partial Summary Judgment ("**Motion**"), and in support thereof, states:

**INTRODUCTION**

1. Plaintiff concedes that his libel *per se* claim derives solely from the mandatory AA Corporate Event Reporting System ("**CERS**")[1] written report made by flight attendant Carlos Merino ("**Merino**")[2] which was sent *» to »* AA Corporate Security's Aristides Maldonado ("**Maldonado**"), who compiled the Report into an AA Internal Refuse List Packet ("**IRL**") according to his duties and sent the IRL Packet *» to »* AA's Regional Corporate Security Manager of Investigations, John Kirby ("**Kirby**"), who was duty bound to review same and make a flight ban decision. **There is no other transmission and/or written communication plead or in record evidence of Merino's CERS Report and the IRL Packet.**[3] Plaintiff therefore concedes

---

[1] Plaintiff's Response to Defendant's SUMF [DE 97] ¶ 6.
[2] **Plaintiff's 11th hour effort to expand this claim to now (weeks before trial) include flight attendant's Gray's CERS Report to create a fact issue fails as a matter of law since, as discussed below, Plaintiff's defamation *per se* claim is not premised on Gray's CERS Report**. *Andrews v. CSX Transp., Inc.*, Case No. 3:06-cv-704-J-32HTS, 2009 WL 5176462, at *10 n.16, 2009 U.S. Dist. LEXIS 119155, at *37 n.16 (M.D. Fla. Dec. 22, 2009) (noting that the plaintiff "cannot raise this new **unpleaded claim** in a motion for **summary judgment** without first obtaining leave to amend her complaint to reflect the [ ] **claim**").
[3] Contrary to Plaintiff's argument (Plaintiff's MSJ Response [DE 96] at footnote 1), AA has not moved for summary judgment on Merino's verbal "you hit me" statement because that statement is not actionable as demonstrated in AA's pending 12(b)(6) Motion to Dismiss [DE 51]. Furthermore, the filing of the instant motion should not be improperly perceived as concession on any of the points AA has raised in its pending Motion to Dismiss, including, (but not limited to), that Merino's subjective impression of Clowdus' intent is non-verifiable opinion (and thus immune from defamation).

that his libel *per se* claim is limited to these intra-corporate communications which are only actionable if they fall outside the broad scope[4] of qualified privilege inherent in intra-corporate communications.[5]  They do not.

2. While conceding the bulk of AA's Motion, Plaintiff's Response argues summary judgment is inappropriate since: 1) Merino's CERS Report lost its qualified privilege because he was motivated by express malice; 2) the IRL Packet lost its qualified privilege because there was no meaningful investigation of Merino's CERS Report; and 3) Gray did not have qualified privilege to file a CERS Report.  The arguments fail for the following reasons.

<u>**Plaintiff Fails to Provide Evidence of Express Malice to Overcome the *Undisputed* Qualified Privilege of Merino's CERS Report**</u>

3. Plaintiff concedes that Merino's CERS Report is subject to qualified privilege.[6] Thus, Plaintiff bears the heavy burden to meet the "very high standard" of providing record evidence to demonstrate express malice—ill will, hostility, and an *evil* intention to injure.  *Shaw v. R.J. Reynolds Tobacco, Co.,* 818 F. Supp. 1539, 1542 (M.D. Fla. 1993), *aff'd* 15 F.3d 1097 (11th Cir. 1994); *Nodar v. Galbreath,* 462 So. 2d 803, 801 (Fla. 1984).  In an obvious concession that Plaintiff cannot meet this high standard, Plaintiff's Response accuses Defendant of misrepresenting *Nodar,* **but it is Plaintiff who has done so**.[7]  The Supreme Court of Florida and federal courts interpreting Florida law (and *Nodar* itself) have not equivocated—express malice requires "ill will" "hostility" *and* an "evil intention to defame and injure":

> **"The Supreme Court of Florida has *unequivocally held* that *all three elements* (ill will, hostility and evil intention to defame and injure*) and* more must be shown. *Boehm v. American Bankers Ins. Group, Inc.*, 557 So.2d 91, 94 (Fla. 3rd DCA 1990) (citing *Nodar*, 462 So.2d at 811 n.8). 'It is insufficient that the speaker have generalized feelings of hostility and malice towards the Plaintiff. Only if the Plaintiff demonstrates the primary motivation for the *statements uttered* was express malice, is the privilege overcome.' *Id.* (citing *Nodar*, 462 So.2d at 812)."**[8]

---

[4] See AA's Motion for Partial Summary Judgment [DE 81] at ¶17.
[5] Plaintiff does not dispute, and thus concedes, he has no record evidence to support his allegation "upon information and belief" that there was any publication of defamatory material to Chris Reddig; and that he has no record evidence of publication to "upon information and belief" to "too wide an audience." *See,* generally Plaintiff's MSJ Response [DE 96].
[6] Plaintiff's MSJ Response [DE 96] at p. 8.
[7] Plaintiff's MSJ Response [DE 96].
[8] *Demby v. Eng.,* 667 So. 2d 350, 353 (Fla. Dist. Ct. App. 1995) (discussing *Nodar*) "The next question is whether appellant abused the conditional privilege by writing the letter with express **malice, that is ill will, hostility, *and* evil intention to injure and defame**");  *Shaw,* 818 F. Supp. at 1542-43 (granting summary judgment where

*Mastaw v. W. Fla. Med. Ctr. Clinic*, No. 3:20CV5888-RV/EMT, 2022 WL 2517207, *7 (N.D. Fla. Apr. 26, 2022) (granting summary judgment where the plaintiff had "failed to produce sufficient evidence of 'express malice' (ill will, hostility, and evil intention to injure **and** defame) to overcome the privilege.") (emphasis added).

4.  Evidence of only *two* of these elements is not enough to show express malice and forfeit qualified privilege. *Nodar,* 462 So. 2d at 812 (showing "hostility or ill will toward the plaintiff" is not enough to demonstrate express malice and forfeit qualified privilege). Neither is the "incidental gratification of personal feelings of indignation[.]" *Id.* To survive summary judgment, therefore, Plaintiff must produce evidence (not speculative arguments) that Merino exhibited ill will, hostility, **and** evil intent to injure "*and more*" when he filed his CERS Report.[9] Plaintiff's Response, while littered with jury arguments and speculation, fails to proffer "evidence" sufficient to meet this standard.

5.  Plaintiff's argument[10] that Merino knew his assault claim was false because Clowdus attempted to apologize (which Plaintiff asserts is inconsistent with intentional assault) defies common sense and the meaning of "apology." First, *Clowdus*' conduct (i.e., attempting to apologize[11]) is no evidence of *Merino's* knowledge, much less his ill will, hostility, **and** evil intent to injure "*and more.*" Second, that Clowdus may have attempted to apologize is not exculpatory but instead *proof* he committed an offense against Merino. Webster defines "apology" as "an *admission* of error or discourtesy accompanied by an expression of regret."[12] Clowdus' claimed apology confirms he engaged in offensive conduct and thus the accuracy of Merino's CERS Report (and/or its reasonableness). Further, nothing about an apology *after the fact* provides meaningful disruption to Merino's prior observation/interpretation of Clowdus' conduct.

---

plaintiff had "failed to offer evidence that Defendant acted with "**ill will, hostility, *and* an evil intent to defame required to establish express malice")

[9] *Mastaw,* 2022 WL 2517207 at *7.

[10] Plaintiff's reliance on his own pleadings (*See* Plaintiff's Response to Defendant's SUMF [DE 97] ¶ 7) to demonstrate (anything, much less) Merino's knowledge is insufficient as a matter of law to create a fact issue precluding summary judgment. Rule 56(e) provides that a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or otherwise provided . . . must set forth specific facts showing that there is a genuine issue for trial."

[11] Contrary to Plaintiff's Response to Defendant's SUMF [DE 97], whether Clowdus attempted to apologize is not an undisputed fact. See, AA's Reply to Plaintiff's Response to Defendant's Statement of Undisputed Facts filed concurrently herewith at ¶ 46.

[12] https://www.merriam-webster.com/dictionary/apology

6. Regardless, proof that Merino's statement was false is no evidence of his ill will, hostility, and an evil intent to injure. *Demby*, 667 So. 2d at 353 ("**Malice cannot be inferred from the fact that some statements are untrue**."); *Boehm v. Am. Bankers Ins. Grp*., Inc., 557 So. 2d 91, 97 (Fla. Dist. Ct. App. 1990) (malice "is not inferable from the mere fact that the statements are untrue"); *Lozada v. Hobby Lobby Stores, Inc.,* 702 Fed. Appx. 904, 915 (11th Cir. 2017) (summary judgment granted despite **plaintiff's own testimony that publisher of alleged defamatory remarks "lied"**).[13] Contrary to the cases cited by Plaintiff,[14] there is no evidence Merino knew (or even believed) his CERS Report was false. Regardless, Plaintiff's apology, and his accusation that Merino was indifferent to same, is immaterial and inapposite to whether Merino acted with ill will, malice, and hostility when he filed his duty bound CERS Report to Maldonado.[15]

7. Plaintiff then argues that *his own* behavior—i.e. his refusal to obey Merino's instructions; his (alleged) laughing/mocking Merino; and (again) his claimed apology or lack thereof—provides evidence of *Merino*'s express malice.[16] Essentially, Plaintiff argues the Court must *infer that Merino* acted with ill will, hostility, **and** evil intent to injure "*and more*" from the mere nature of *Clowdus*' conduct. *Clowdus*' conduct is no evidence of *Merino's* "ill will, hostility, and an evil intent to injure or defame" *and more*. To hold otherwise would be to eliminate the malice requirement for overcoming qualified privilege since it would be the rare circumstance in which assaultive conduct does not aggravate the victim to some degree.

8. Further, the undisputed evidence shows the opposite. Merino was undisputedly required by AA's CERS Manual to file his CERS report. His request that AA "do something" about the assault is no evidence of his malice since he had no control over whether AA did anything

---

[13] Much of Plaintiff's argument centers on his false perception that a plaintiff can attack qualified privilege by showing that certain statements are defamatory. The qualified privilege analysis is only relevant if a statement is alleged to be defamatory. *Lewis v. Evans,* 406 So. 2d 489, 492 (Fla. Dist. Ct. App. 1981) (**qualified privilege extends to statements that are "false and otherwise actionable" as defamation**). True statements have no need for privilege in the defamation analysis.
[14] Plaintiff's MSJ Response [DE 96] at p. 6. *Asinmaz v. Semrau*, 42 So. 3d 955, 959 (Fla. Dist. Ct. App. 2010) (proven that party had no reason to believe a jeweler switched real diamonds for fakes, recanted her statement, and the party had no duty to report such conduct to the police but chose to do so); *Morgan v. Dun & Bradstreet, Inc*., 421 F.2d 1241 (5th Cir. 1970) (speaker knew republished statement was false before it was republished); *Lewis v. Evans,* 406 So. 2d 489 (Fla. Dist. Ct. App. 1981)("the mere fact that a defamatory statement was made does not imply that the speaker was motivated by malice if the statement was made on a privileged occasion, and therefore malice will not be presumed as a matter of law, even though the statement charges the commission of a crime or is otherwise defamatory per se.").
[15] Defendant's SUMF # 6; Plaintiff's Response to Defendant's SUMF [DE 97] ¶ 6.
[16] Plaintiff's MSJ Response [DE 96] at p. 9.

4

to Clowdus - he left that decision up to AA. Had Merino truly been motivated by malice, he would have reported Clowdus' conduct to law enforcement or to the FAA himself. Merino was *undisputedly* "just doing [his] job" when he filed his report.[17] *Thomas v. Tampa Bay Downs,* 761 So. 2d 401, 404 (Fla. 2d DCA 200) (conduct which is part of the work "employee is hired to perform" and that is "required by the job" and is "activated at least in part by the employee's purpose to serve his or her employer" is immune from defamation). Plaintiff admitted that he does not know Merino, barely interacted with him and had no idea what Merino was "thinking or saying."[18] Thus, Plaintiff's Response fails to provide evidence of *Merino*'s ill will, hostility, and evil intent to injure sufficient to overcome the high qualified privilege standard.[19]

9. Plaintiff's reliance on various claimed discrepancies in the deposition testimony of Merino on issues immaterial to AA's Motion for Partial Summary Judgment fails to raise a fact issue precluding summary judgment, since AA's Motion is premised on Plaintiff's inability to overcome qualified privilege.[20] Whether Merino felt "rushed" the morning of the flight because flight attendant's pay does not begin until pushback is immaterial.[21] Regardless of when his pay began that morning, his testimony was undisputed that he was not rushed that morning. Further, whether he was rushed is not material to the issue framed by AA's Motion – the qualified privilege cloaking his CERS Report - since that Report does not discuss being rushed or that Clowdus' conduct was delaying departure. Similarly, Merino's memory of Clowdus' demeanor, posture, and whether Merino had the "wind knocked out of him" are irrelevant to the issue framed by AA's Motion since these issues are not mentioned in Merino's CERS Report.

10. Plaintiff's speculative argument that Merino "felt disrespected and belittled" by Plaintiff is **unsupported by any evidence** and is thus insufficient to create a fact issue precluding summary judgment. *Lozada,* 702 Fed. Appx. at 915 (evidence of express malice "too speculative" to survive summary judgment). Plaintiff's proffered "evidence" (to wit, conjecture) is insufficient.

11. Plaintiff's argument[22] that the "crux of the case" is whether Merino "lied" in his CERS Report ignores the stated basis of AA's Motion – the qualified privilege with which that

---

[17] *See* discussion Defendant's Motion for Partial Summary Judgment [DE 81] ¶ 40-41.
[18] *See* discussion Defendant's Motion for Partial Summary Judgment [DE 81] ¶ 40-41.
[19] *Jarzynka v. St. Thomas University,* 310 F. Supp. 2d 1256, 1267 (S.D. Fla. 2004); *Lefrock v. Walgreens Co.,* 77 F. Supp. 3d 1199, 1202 (M.D. Fla. 2015) *aff'd* 644 F.App'x 898 (11th Cir. 2016); *Lozada v. Hobby Lobby Stores, Inc.,* 702 Fed. Appx. 904 (11th Cir. 2017).
[20] *See* Plaintiff's MSJ Response [DE 96] at p. 9.
[21] *See* Defendant's Reply to Plaintiff's Response to Defendant's SUMF ¶¶ 48-49.
[22] Plaintiff's MSJ Response [DE 96] at p. 10.

Report (and others) are cloaked and Plaintiff's inability to muster admissible evidence of malice or abuse of the privilege sufficient to overcome that privilege. Not surprisingly, therefore, Plaintiff's Response is focused almost entirely on the claimed falsity of Merino's CERS Report – which, of course, is subsumed (for purposes of AA's Motion) within the concept of qualified privilege. As argued above, malice cannot be inferred from the mere falsity of a statement.[23]  The Supreme Court in *Nodar* found words in a *public* forum accusing a teacher of being "unqualified" and harassing, abusing, and "victimizing" the speaker's son were insufficient proof of express malice.  *Nodar,* 462 So. at 812.  The Middle District (and Eleventh Circuit) in *Shaw* granted summary judgment finding no express malice where a managerial employee stated that the plaintiff had been fired for theft to an inquiring customer with whom the plaintiff had a "longstanding personal and business relationship[.]"[24] The Southern District (and Eleventh Circuit) in *Lozada* did not find express malice where plaintiff's coworker (inaccurately) accused plaintiff of threatening to *"shoot up"* their store, which resulted in that employee being detained under the Baker Act.[25] Merino made his (duty bound) CERS Report to one person—Maldonado, who was duty bound to receive it and forward it on to Kirby.[26]  There is simply no record evidence sufficient to meet the "high standard" of express malice needed to overcome qualified privilege.

**Plaintiff's Effort to Expand Intra-Corporate Publication and Misrepresent *Geddes, et. al*
Fails to Create Material Fact Issue**

12. Like *Nodar,* it is Plaintiff, not AA, that misrepresents *Geddes* in an attempt to distort what this Court has made clear—to sustain a claim for defamation against a corporation (as here), Plaintiff must *first* show "that the defamatory statement was published **to any employee other than an executive or manager such that the statement was *not* made to the corporation itself**." *See* Order on Motion for Judgment on the Pleadings [DE 32] at p. 9.  While the cases cited by Plaintiff state that communications *between* corporate executives are not considered "published," none of the cited cases hold that the principle is *limited* to communications between managers/executives.  Indeed, decades of case law and this Court's prior ruling on Defendant's Motion for Judgment on the Pleadings (which Plaintiff's Response makes no effort to distinguish)

---

[23] Defendants' Motion for Partial Summary Judgment [DE 81] at ¶¶ 40-41.
[24] *Shaw,* 818 F. Supp. at 1541-42 (the employee had been acquitted of the charge of theft prior to this conversation).
[25] *Lozada,* 702 Fed. Appx. at 906, 915.
[26] *Shaw,* 818 F. Supp. at 1542 (summary judgment granted where "publication was limited in scope"; "information was not disclosed to additional persons"; and "parties to conversation shared corresponding business interests").

hold that intra-corporate communications from an employee *to* a manager/executive are not publications if the corporation is the entity accused of defamation.

13.   This rule is not controversial.  It has been cited by this Court (in this action and otherwise) and followed by the Supreme Court.  See *Lopez v. Ingram Micro, Inc.,* No. 95–2004–CIV–NESBITT, 1997 WL 401585 (S.D. Fla. Mar 18, 1997) (communication of employee **to** plaintiff's supervisors would **not** satisfy "publication" element) (citing *Baker v. McDonald's Corp.,* 686 F.Supp. 1474, 1484 (S.D. Fla. 1987), *aff'd,* 865 F.2d 1272 (1988), *cert. denied,* 493 U.S. 812, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989)).  In *Lopez,* the Southern District did not equivocate when granting summary judgment for the corporation based on defamation—"communications by [the corporation's] agents, i.e. investigators [**non-managers/executives**], **to** [**the corporation's**] **management personnel** do not satisfy the 'publication' element."[27] *Geddes* itself made a clear distinction in its analysis of statements made *to* managers (not published) and statements made *to* non-managers (potentially published but privileged).  *American Airlines v. Geddes,* 960 So. 2d 830, 834 (Fla. Dist. Ct. App. 2007) (with "regard to statements made *to* non-managerial personnel . . .")[28]

14.   Thus, properly stated, binding case law holds that Maldonado's transmission of his IRL packet to Kirby was not a "publication" since it is undisputed[29] Kirby was managerial.[30]

### Plaintiff's Effort to Expand his Defamation Claim to Include Maldonado is Improper and Fails to Create a Fact Issue

15.   In light of the foregoing argument, the Court need not address Plaintiff's contention that Maldonado "abused the privilege" when he transmitted the IRL Packet to Kirby because this transmission was not publication—and there is therefore no need for a qualified privilege analysis. Regardless, assuming *arguendo* Plaintiff's mistaken understanding of intra-corporate publication

---

[27] Throughout *Lopez*, the Southern District made this same distinction. *Lopez,* 1997 WL 401585 at *7 ("in his response [Plaintiff] Lopez contends that "an Ingram [corporation] non-management employee" "published false and defamatory statements *to* customers **and Ingram's non-management employees."**) (emphasis added).

[28] This is not to say that an *individual* is immune from suit for defamation if he makes his statements to a corporation. But that *possibility* is inapposite to Plaintiff's claim.  Plaintiff's libel *per se* claim is brought against the *corporation* for its *intra-corporate* communication by employees.  As he attempted in Response to the (pending) Motion to Dismiss, Plaintiff again attempts to smuggle in *Walter v. Jet Aviation* here where it does not belong, deceptively omitting that in *Walter* the plaintiff was **suing an individual for defamation**. *Walter v. Jet Aviation Flight Servs. and Matthew Raver [individual],* 2016 WL 7116641 (S.D. Fla. 2016) ("Defendants' argument is that a corporate cannot publish defamatory statements to itself . . . **But Plaintiff has sued an individual for defamation**, Mr. Raver, **therefore the case law cited by Defendants [including** *Geddes***] does not apply**.")

[29] Plaintiff's Response to Defendant's SUMF [DE 97] # 9-10.

[30] Defendant's SUMF [DE 81] #10.

applies to Maldonado's transmission of the IRL Packet to Kirby, this transmission was nevertheless privileged, and Plaintiff has nevertheless failed to adduce any evidence of Maldonado's express malice to overcome that privilege.

16. It is undisputed that Maldonado received Merino's (and Gray's) CERS Report pursuant to AA's procedure, that his job with AA included assessing those statements and compiling them into an IRL Packet with other materials and forwarding that Packet to Kirby who was ultimately responsible for making a flight ban decision as part of his job duties with AA.[31] It is also undisputed that Maldonado and Kirby had a common interest in communicating and acting on the contents of the IRL Packet.[32] Thus, while the transmission of the IRL Packet from Maldonado to Kirby was not a "publication" for defamation purposes, this transmission would still (assuming publication *arguendo*) nevertheless be privileged. *Thomas*, 761 So. 2d at 404 (conduct is within the scope of one's employment so as to be immune from an action for defamation if it is part of the work an "employee is hired to perform" and that is "required by the job" and is "activated at least in part by the employee's purpose to serve his or her employer" is immune from defamation).

17. In the absence of a "publication," the presence or absence of qualified privilege and/or malice is irrelevant and immaterial to AA's Motion. However, ignoring the absence of a "publication" of the IRL Packet and thus the irrelevance of qualified privilege, Plaintiff nonetheless argues (citing *Diplomat Elec. Inc. v. Westinghouse Elec. Supply, Co.,* 430 F.2d 38, 47 (5th Cir. 1970)) that Maldonado "abused" qualified privilege because he *published* the IRL Packet to Kirby after Maldonado had received information (i.e., Clowdus' complaint to AA customer services, and Ground Security Coordinator Henriquez' ("**Henriquez**") CERS Report) casting doubt on the truth of Merino's assault claim in his CERS Report, thus evidencing malice by Maldonado.[33] This argument fails to create a fact issue since: 1) Maldonado's transmission of the IRL Packet was not a "publication"; and 2) it is undisputed that Maldonado did not know of the existence of or see any materials other than Merino's and Gray's CERS Reports.[34] One cannot

---

[31] Defendant's SUMF [DE 81] #7-10.
[32] *Id.*
[33] Plaintiff's MSJ Response [DE 96] at pp. 12-13.
[34] Plaintiff's Response to Defendant's SUMF [DE 97] # 53, 59-60; Plaintiff's MSJ Response [DE 96] at p. 13. *See also*, Plaintiff's Response to Defendant's SUMF [DE 97-15] (Deposition of Maldonado) at page 43: lines 1-5; page 56: lines 19-59:5; page 62: lines 4-10; page 66: lines 9-14; page 68: lines 16-18.

ignore reliable information one does not have.[35] Failure to consider unknown information is not evidence of *express malice* with regard to Maldonado's duty bound transmission to Kirby.

18. Plaintiff next argues that Maldonado's transmission of the IRL Packet to Kirby was malicious since Maldonado negligently investigated Merino's assault claim. Plaintiff's negligent investigation claim was dismissed long ago.[36] Further, there is no evidence or expert opinion as to the standard of care Maldonado should have utilized in conducing his investigation beyond gathering all information known or readily available to him. Thus, this argument fails to raise a material fact issue precluding summary judgment.

19. Lastly, Plaintiff's reliance on *Drennen v. Westinghouse Elec. Corp.,* 328 So. 2d 52 (Fla. 1st DCA 1976) as analogous to this case is fanciful.  In *Drennen,* Westinghouse **indiscriminately assembled 300 employees and *made a corporate announcement* (on an *ad hoc* basis outside the normal course of operations) to these workers that plaintiff had committed a class "A" felony offense**—solely for the purpose (read "interest") of restoring corporate morale and reducing workplace rumors. *Id.*  While the corporate speaker had an interests in the communication (quelling rumors), the audience of 300 employees did not. *Id.*  Here, it is undisputed Merino, Maldonado and Kirby – i.e., all speakers and recipients - had aligned interests and duties to transmit, receive, review and act on the CERS Reports and the IRL Packet.[37]

20. Moreover, it is undisputed that Maldonado generated none of his own speech—he compiled Merino's and Gray's CERS Reports into the IRL Packet (as he is duty bound to do), and transmitted that IRL Packet to Kirby for review (as he and Kirby are duty bound to do);[38] and he transmitted this material to no one else.[39]  These acts are undisputedly privileged (even if

---

[35] Even if Maldonado had *republished* the material, it could be further argued that *Diplomat* does not apply here because Maldonado never received any "reliable source" of information about the incident.  It is undisputed that Henriquez was not present in the aircraft to witness the striking of Merino by Plaintiff, and Plaintiff admits that his complaints contain *knowing and intentional* inaccuracies.  See Plaintiff's Response to Defendant's SUMF [DE 97-10] at (Deposition of Clowdus) page 90: line 16 *through* page 91: line 14; and page 97: lines 2-10.

[36] Order on Defendant's Motion for Judgment on the Pleadings [DE 32].

[37] *John Hancock Mut. Life Ins. Co. v. Zalay,* 581 So. 2d 178, 179 (Fla. 2d DCA 1991) (a publication made "in reference" to a duty to a person "having a corresponding interest or duty" is privileged even if it is otherwise defamatory); *Shaw v. R.J. Reynolds Tobacco, Co.,* 818 F. Supp. 1539, 1542 (M.D. Fla. 1993), *aff'd* 15 F.3d 1097 (11th Cir. 1994) (summary judgment granted on qualified privileged communication where the customer had an interest in learning what happened to the (fired) sales rep and the company had an interest in responding adequately to a customer's inquiry about same); *see also Lozada,* 702 Fed. Appx. at 910-11, 914 (employee's statements were **qualified privileged despite being made "solely" for "personal motives**" because the recipient had a corresponding interest).

[38] Plaintiff's Response to Defendant's SUMF [DE 97] # 7-10.

[39] There is no evidence that Maldonado or anyone else "disseminated [these materials] throughout the organization." Therefore, Plaintiff's citation to *Wirig v. Kinney Shoe Corp.,* 461 N.W. 2d 374 (Minn. 1990) (which analyzes

considered publication). *Thomas,* 761 So. 2d at 404. Plaintiff's Response offers nothing to the contrary. Indeed, in a separate filing, Plaintiff has admitted Maldonado's actions never exceeded what he was duty bound to do-"…there is also evidence to support that Maldonado was acting in the course and scope of his employment with AA when he wrote the IRL Packet because he was performing his job in the way that AA desired him to do." *See* Plaintiff's Response in Opposition to Defendant's Motion in Limine [DE 95] at p. 11.

### Plaintiff's Effort to Expand his Defamation Claim to Include Deon Gray is Improper and Fails to Create Material Fact Issue

21. On the eve of trial, Plaintiff asserts for the first time that AA is liable for defamation *per se* arising from flight attendant Gray's CERS Report. As currently plead, Plaintiff's defamation claim is premised on Merino's statements[40] - not Gray's CERS Report which Plaintiff references in his Amended Complaint solely in an attempt to establish publication of *Merino's* statements.[41] This tactic fails to raise a material fact issue precluding summary judgment. *Andrews,* 2009 WL 5176462 at *10 n.16 (plaintiff "cannot raise this new **unpleaded claim** in a motion for **summary judgment** without first obtaining leave to amend her complaint to reflect the [ ] **claim**").

22. Further, Plaintiff argues that Gray's failure to recall various details of the incident in her deposition "cast[s] doubt on her truthfulness."[42] This argument fails to raise a material fact issue precluding summary judgment since Plaintiff has not identified any statement in Gray's CERS Report which is false and has not identified any evidence Gray was motivated by ill will, hostility, **and** evil intent to injure "*and more.*" As for Plaintiff's argument that Gray was not a witness to the assault on Merino, Plaintiff's Response strays far from the record evidence – which is telling. He relies on three passengers—one of which recalled seeing Gray in the business class section during the flight; another who simply did not recall either way;[43] and (disingenuously) a

---

Minnesota law) and *Kuwik v. Starmark Star Mktg. & Admin., Inc.,* 156 Ill. 2d 16, 30, 619 N.E. 2d 129 (1993) (Illinois) for *that* proposition are inapposite. Furthermore, these jurisdictions use different standards than Florida. *Wirig* involved whether a corporation had "probable cause", which is not feature in Florida defamation *per se* law. *Wirig,* 461 N.W. 2d at 382 fn. 4. *Kuwik* used Illinois' standard of recklessness for actual malice to evaluate an insurance company's remarks against an insured. *Kuwik,* 619 N.E. 2d at 772 ("actual malice must be proven by a minimum standard of recklessness . . ."). This does not comport with Florida's *express malice* standard, as discussed above.
[40] First Amended Complaint [DE 40] at ¶¶ 64-70, 76-80, 84 (verbal statements) and ¶¶ 72-75, 81-83, 85-89 (written statement).
[41] First Amended Complaint [DE 40] at ¶¶ 71 and 74.
[42] Plaintiff's MSJ Response [DE 96] at 11.
[43] *See* Plaintiff's Response to Defendant's SUMF [DE 97-6] (Deposition of Federico Quintana) at page 59: lines 18-20; Plaintiff's Response to Defendant's SUMF [DE 97-7] (Deposition of Nicole Kim) at page 7: lines 3-15.

third who has not provided deposition testimony in this action to be questioned about Gray (and he provides no testimony in his affidavit even remotely approaching what Plaintiff attempts to commit him to here).[44]  As to Henriquez, Plaintiff completely misrepresents the evidence and Henriquez's testimony – which (again) is telling.  It is *undisputed* that Henriquez did not witness the incident, and that he only entered the aircraft *after* Plaintiff assaulted Merino[45] and thus had no opportunity to know where Gray was standing *at the time of the incident.*  Further, when Henriquez eventually entered the aircraft, he testified that his "full attention" was on Merino and Clowdus and that he could not recall Gray's location either way.[46]  He has *never* stated, neither in deposition nor any report, that he "disputed the credibility of any flight attendant witness statements," as Plaintiff has frequently misrepresented.[47]  Plaintiff's conspiracy theories are not record proof.

## CONCLUSION

For the reasons argued above, AA respectfully requests that this Honorable Court grant Defendant's Partial Summary Judgment as to Plaintiff's libel *per se* claim and enter judgment against Plaintiff accordingly.

Respectfully Submitted,

BUCHANAN INGERSOLL & ROONEY PC

*s/ Kelly H. Kolb*
Kelly H. Kolb, Esq.
Florida Bar Number: 0343330
kelly.kolb@bipc.com
Robert D. Pecchio, Esq.
Florida Bar Number: 1005955
Robert.pecchio@bipc.com
401 East Las Olas Boulevard, Suite 2250
Fort Lauderdale, FL  33301
Telephone:     (954) 703-3944
Facsimile:      (954) 703-3939
*Attorneys for Defendant*

---

[44] Jairo Espinoza, whose affidavit Plaintiff generally cites, and who makes no mention of Gray at all.  Plaintiff attempts to *prove* that the *absence* of Gray in Espinoza's affidavit is record evidence that Gray did not publish her report on a privileged occasion.
[45] Plaintiff's Response to Defendant's SUMF [DE 97] ¶ 15; AA's Reply to Plaintiff's Response to Defendant's Statement of Undisputed Facts ¶ 15.
[46] Plaintiff's Response to Defendant's SUMF [DE 97-3] at (Deposition of Henriquez) at page 19: lines 4-13.
[47] Response [DE 96] at 11.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this the 19th day September, 2022, a true and correct copy of the above and foregoing has been filed with the Clerk of Court using the CM/ECF system. I FURTHER CERTIFY that the foregoing document is being served this date, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner of those counsel or parties who are not authorized to receive electronically Notices of Electronic filing on the counsel of record or *pro se* parties identified on the attached Service List.

**SERVICE LIST:**

William T. Woodrow III
250 West Main Street, Suite 201
Charlottesville, VA 22902
E-mail: will@stoneandwoodrowlaw.com

Rook Elizabeth Ringer, Esq.
LENTO LAW GROUP
222 San Marco Ave., Ste. C
St. Augustine, FL 32084
Tel: (855) 275-7378
Tel: (904) 602-9400
E-mail: reringer@lentolawgroup.com

David H. Pollack, Esq.
THE LAW OFFICE OF DAVID H. POLLACK, LLC
75 Valencia Avenue, Suite 100
Coral Gables, FL 33134
Tel. No. 305-372-5900
Fax No. 305-372-5904
david@davidpollacklaw.com

*Counsel for Plaintiff*

By: */s/ Kelly H. Kolb*
      Kelly H. Kolb