# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

TROY CLOWDUS,                                      Case No.: 1:21-cv-23155-KMM

                Plaintiff,

v.

AMERICAN AIRLINES, INC.,

                Defendant.

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND ADDITIONAL FACTS

Defendant, AMERICAN AIRLINES, INC. ("AA" or "Defendant"), by and through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56 ("Rule 56") and Local Rule of the Southern District of Florida 56.1, files its Reply to Plaintiff's Response to Defendant's Statement of Undisputed Facts and Additional Facts.

### *Introduction*

Plaintiff does not actually dispute a single SUMF submitted by Defendant. Plaintiff attempts to give the appearance of factual disputes by: 1) re-characterizing Defendant's SUMF by adding facts and then disputing the added facts (for example, SUMF # 2-5, 11 & 12); 2) using his own pleadings as summary judgment evidence (for example, SUMF # 7-9); 3) disputing Defendant's SUMF without supporting evidence (for example, SUMF # 5); 4) incorrectly claiming cited evidence supports Plaintiff's denial (for example, SUMF # 8 & 49); and 5) disputing non-material aspects of Defendant's SUMF (for example, SUMF # 10). Each of these facts should therefore be deemed admitted.  See Rule 56(e) (a factual assertion that is not properly disputed should be deemed admitted).

<u>*Reply to Plaintiff's Response to Defendant's Statement of Undisputed Facts*[1]</u>

1.      *Undisputed.*

2.      *Undisputed* that Plaintiff was aware that passengers seated in the bulkhead seat must stow their bags, and that Plaintiff did not stow his bag.[2]  Plaintiff cites no record evidence stating that he was advised that he was "permitted to retain his bag until the completion of the boarding process."[3]  Plaintiff admitted that flight attendant Merino never stated that he could hold his bag until the doors closed. *Id.*

3.      *Undisputed.*  Plaintiff's denial does not meet the SUMF directly but instead re-frames the SUMF and then denies the reframed SUMF.  This is not a proper refutation of the undisputed facts.  *Silverstein v. Boehringer Ingelheim Pharms., Inc.*, No. 19-CIV-81188, 2020 WL 6110909, *5 (S.D. Fla. Oct. 7, 2020) (a court reviewing the parties statement of material facts will extract the "underlying facts from the record" and ignore the "characterizations").  It is undisputed that Plaintiff never stowed his bag or made any effort to stow his bag before his bag hit flight attendant Merino.

4.      *Undisputed* that, in response to being confronted by Merino about not stowing his bag, Plaintiff "swung" his bag and struck Merino with it.[4]  Plaintiff's denial does not meet the SUMF directly but instead re-frames the SUMF as including an implied characterization and then denies the reframed SUMF.  This is not a proper refutation of the undisputed facts.  *Silverstein,* 2020 WL 6110909 at *5.

5.      *Undisputed* that Plaintiff was removed from the aircraft after striking Merino, that Merino had no authority to remove Plaintiff from the aircraft and that only the Captain had authority to remove Plaintiff.  Plaintiff disputes "it was the Captain's decision to remove Clowdus" asserting the Captain only "endorsed" Merino's demand for Plaintiff's removal.[5]  Plaintiff's cited record evidence does not demonstrate that Merino made any such demand.

6.      *Undisputed.*

---

[1] For the purposes of this Reply, Defendant's Statement of Undisputed Facts will be referred to as "SUMF" and Plaintiff's Response to same will be referred to as "Response."
[2] Response [DE 97], ¶ 2.
[3] *See* Plaintiff's Response to Defendant's SUMF [DE 97-10] at ("Deposition of Clowdus") page 56:3-7.  [For the purposes of this Reply, deposition transcripts shall be cited as "Name of Deponent, Page Number: Line Number"].
[4] Response [DE 97], ¶ 4.
[5] Response [DE 97], ¶ 5.

7.     *Undisputed* that that Merino filed a CERS report in compliance with the CERS Manual.  Plaintiff disputes that "Merino accurately detailed his observations of the incident." However, Plaintiff cites no record evidence to support his dispute this SUMF, instead relying solely on the allegations in his First Amended Complaint—which is improper and is not a refutation of the proposed fact.[6]

8.     *Undisputed* that Aristides Maldonado of AA's Corporate Security received Merino's CERS report as part of his duties conducting the investigation.  Plaintiff however disputes that Maldonado conducted an investigation.[7]  This allegedly additional conclusion is not a proper refutation of the proposed, and *undisputed* fact(s) from paragraph 8 of Defendant's SUMF.  *Silverstein,* 2020 WL 6110909 at *5 (a party adverse to summary judgment must dispute the facts with record evidence, simply supplementing additional facts to an *undisputed* proposed fact does "not contradict or 'genuinely dispute'" the proposed fact).

9.     *Undisputed* that Maldonado compiled an IRL Packet and sent that packet John Kirby as required by AA practices.  Plaintiff disputes that Maldonado compiled other "documents (plural)" in the IRL Packet other than Merino's and Gray's CERS Report.  This denial is not supported by record evidence but rather only by Plaintiff's own pleadings.  This is neither a factual refutation of the proposed fact nor proper support for same under Rule 56.[8]

10.    *Undisputed* that Kirby is responsible for reviewing IRL packets and making determinations as to whether to place a passenger on AA's no-fly list.  Plaintiff disputes the characterization of these IRL packets as "investigatory."  Plaintiff's denial is not material to Defendant's Motion for Summary Judgment. Whether or not an IRL packet should be referred to as "investigatory" does not dispute the material fact that Kirby received the IRL packet within and for the purpose of the responsibilities of his position with AA, which was the fact was proposed in paragraph 9 of the SUMF.[9]

11.    *Undisputed* that AA has not terminated Plaintiff's AAdvantage program membership nor has AA forfeited or voided Plaintiff's accrued rewards mileage and that Plaintiff has access to same.  Plaintiff denies that his accrued mileage miles have any value to him.

---

[6] Rule 56(e) provides that a party adverse to a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or otherwise provided . . . must set forth specific facts showing that there is a genuine issue for trial."
[7] Response [DE 97], ¶ 8.
[8] *See Silverstein,* 2020 WL 6110909 at *5, discussion supra paragraph 7 and 8.
[9] *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

Plaintiff's denial does not meet the SUMF directly but instead re-frames the SUMF as including the concept of "value" to Plaintiff. This is not a proper refutation of the undisputed facts. . *Silverstein,* 2020 WL 6110909 at *5. Further, Plaintiff cites no record evidence to support this denial.

      12.    *Undisputed.*[10]

### *Reply to Plaintiff's Additional Facts*

      13.    *Disputed* that Plaintiff has provided competent support. Purchased tickets are not competent evidence to demonstrate Plaintiff's proposed fact that he was "seated" at the "time of the incident" (ostensibly, the striking of Merino with his bag). Plaintiff cites no other record evidence supporting this fact.

      14.    *Disputed* that Plaintiff has provided competent support. Defendant's Fifth Amended Disclosures are not competent evidence to support Plaintiff's proposed "fact" that each of the named passengers were "seated" at the time of the incident. Plaintiff cites no other record evidence supporting this fact.

      15.    *Undisputed* that Henriquez immediately entered the aircraft after hearing Merino state "You hit me" after Clowdus struck him with his bag.

      16.    *Undisputed.*

      17.    *Undisputed* that Henriquez testified that by the time he turned the corner (which was after Clowdus struck Merino[11]) to enter the aircraft, he observed that Clowdus was seated.[12]

      18.    *Disputed.* While Quintana testified he never witnessed Clowdus stand, Kim testified that she never witnessed Clowdus "stand up **aggressively**."[13] Espinoza has not been deposed, and regardless, his statement does not state that he does not recall Clowdus "standing at any time before he rose to exit the plane." Furthermore, Plaintiff's citation to only "Affidavit of Jairo Espinoza" without any pinpoint citation is improper under L.R. 56.1(b)(1)(B) (general citation e.g. "Smith Affidavit" is non-compliant).

---

[10] In response to the undisputed fact proposed in paragraph 12, Plaintiff disingenuously argues (and without any evidence) that it disputes that AA is not considering sharing its no-fly list and that AA has refused discovery on this question. This is a blatant misrepresentation. This Court *struck down* Plaintiff's attempt to compel discovery on this issue. *See* Paperless Order Requiring Expedited Response [DE 65] ("On the argument presented, Plaintiff has not shown that he is entitled to further response . . . "). This issue is irrelevant. Furthermore, Plaintiff's *argument* does not dispute the negated fact proposed in paragraph 12.

[11] *Supra* paragraph 15

[12] Plaintiff's Response to Defendant's SUMF [DE 97-3] at ("Deposition of Henriquez") at page 18: lines 12-16.

[13] Plaintiff's Response to Defendant's SUMF [DE 97-7] ("Deposition of Kim") at page 17: lines 19-24.

19.     *Undisputed.*

20.     *Disputed.*  Quintana did *not* testify that he did not recall seeing Gray "in the business class" at the time of the incident, and nowhere in Plaintiff's cited excerpt from his deposition does Quintana so testify.  In the excerpt cited from passenger Nicole Kim, she testified only that she did not recall either way.  Espinoza has not been deposed to be asked whether or not he "recalls" Grey in the business class—and his affidavit makes no such statement.[14]  This proposed fact should be disregarded for failure to provide competent support.  It is undisputed (and every flight attendant has testified) that Gray was assigned to the business class for this flight.  Business class flight attendants only leave business class in case of emergency, (of which there was no evidence of emergency requiring her departure).[15]

21.     *Disputed.*  The cited deposition transcript does not indicate that Henriquez "did not observe flight attendant Gray standing in the business class."[16] Henriquez testified that he was not focused on flight attendants and could not recall observing Gray either way.[17] The cited excerpt does not demonstrate that Henriquez "disputed the credibility of any flight attendant witness statements to his supervisor . . ." Henriquez made no such statement in his Tour Report or his deposition.  Mr. Henriquez testified that his assertions in the Tour Report (that it was not "possible" that three attendants filed a witness report) resulted from his misunderstanding that *three* flight attendants had filed reports – "there's no possibility of having three flight attendants gather at the same time."[18]

22.     *Disputed.*  It is undisputed that Gray was assigned to the business class (where Clowdus was seated), and she has testified that she was between the second and third row (of the four row business class section) at the time Clowdus struck Merino.[19]

23.     *Undisputed.*

24.     *Undisputed* that Gray testified that she observed that Clowdus appeared angry as he was being escorted off the plane.

---

[14] Response [DE 97], ¶ 20, fn. 17.
[15] Plaintiff's Response to Defendant's SUMF [DE 97-23] ("Deposition of Bastos") at page 15: lines 11-15; Plaintiff's Response to Defendant's SUMF [DE 97-13] ("Deposition of Merino") at page 34: lines 1-12.
[16] Deposition of Henriquez, 15:5-9.
[17] Deposition of Henriquez, 19:4-13.
[18] Deposition of Henriquez, 34:4-12.
[19] Deposition of Bastos, 15:11-15; Deposition of Merino, 34:1-12.

25. *Disputed* that any these passengers testified that they did not observe Clowdus acting angrily or aggressively at any point. Quintana testified that he believed Clowdus hit Merino "deliberately" with his bag and that he acted like "an angry toddler."[20] Kim provided no such testimony as proposed by Plaintiff, and she testified she did not see Clowdus at all (including when he struck Merino) until after he had been told to exit the plane. Finally, Keizer and Espinoza have not been deposed in this action, and Plaintiff's general citation to Declaration of Keizer and Espinoza Affidavit is improper under Rule 56. Finally, neither Keizer's nor Espinoza's statements state that they did not observe Clowdus to act "angrily or aggressively at any point."

26. *Disputed.* Quintana did not testify that Clowdus departed "without speaking." He testified that he left without "raising his voice" and that he "didn't argue."[21] Keizer's statement (which is not properly cited pursuant to Rule 56) states only that Clowdus "gathered his things quietly" and "left the aircraft without issue."[22]

27. *Undisputed* that Kim so testified.[23]

28. *Undisputed* that Henriquez (who entered the plane after Clowdus struck Merino) testified that Merino complied with the request to depart the plane and that he was not aggressive to Henriquez.

29. *Undisputed* that Gray so testified.

30. *Undisputed* that Clowdus so testified.

31. *Undisputed* that Gray so testified.

32. *Undisputed* that Clowdus so testified.

33. *Disputed.* Gray did not testify that she and Merino are "friends." She testified that they interact socially on layovers, but "not out of the work environment" and that she has never even been to his house.[24]

34. *Undisputed* that while this is not the complete recitation of Merino's CERS report, these statements are contained in his CERS Report.

35. *Undisputed* that Gray placed these statements in her CERS report.

---

[20] Plaintiff's Response to Defendant's SUMF [DE 97-6] ("Deposition of Federico Quintana") at page 21: lines 5-8; page 89:7-15; Deposition of Kim, 26:14-18.
[21] Deposition of Quintana, 21:1-4; 86:10-18.
[22] Plaintiff's Response to Defendant's SUMF [DE 97-11] ("Declaration of Keizer") ¶ 7, 10.
[23] Deposition of Kim, 8:9-14.
[24] Plaintiff's Response to Defendant's SUMF [DE 97-5] ("Deposition of Gray") at page 10: lines 14-19.

36.     *Disputed*.  Merino did not testify that he "knew" he was "accusing" Clowdus of a felony.[25]

37.     *Undisputed.*

38.     *Undisputed* that Henriquez (who did not observe the incident) made the noted statement based only "on the version" that he "got from Mr. Clowdus" and that he had a "different opinion" after he read Merino's report.[26]

39.     *Undisputed.*

40.     *Disputed*.  Henriquez did not make a last "appeal" to Merino.  It is undisputed Merino had no authority to which Henriquez could appeal.[27]  Merino testified, as did Henriquez, that by the time Henriquez advised Merino that Clowdus was contending the striking was an "accident"—the pilot (who is chief in command) had already made the decision to remove Clowdus.[28]

41.     *Undisputed.*

42.     *Undisputed* that Merino testified that Clowdus looked mad when he boarded.

43.     *Undisputed* Merino testified in deposition that Clowdus knocked the wind out of him and that he "lost his breath" for several seconds.

44.     *Disputed*.  Merino testified that Clowdus "did kind of crunch, but that was pretty much it."[29]  He did not testify that Merino was "half-standing" "menacingly."

45.     *Disputed*.  Merino testified that Clowdus went into a "defensive position" and that his face was "right next" to Merino's on his way out and that he glared at Merino.[30]

46.     *Disputed*.   Clowdus never "attempted to apologize."[31]

47.     *Undisputed* that Merino did so testify.

48.     *Undisputed.*

49.     *Disputed*. Bastos testified that "nothing happens" except for a "slap of [] hand" if the door closes late.[32]  He did not testify that he receives a "reprimand."

50.     *Undisputed* that Henriquez so testified.

---

[25] Deposition of Merino, 73:9-15.
[26] Deposition of Henriquez, 32:21-33:6.
[27] *Supra* paragraph 5
[28] Deposition of Merino, 27:24-28:4.
[29] Deposition of Merino, 17:22-25.
[30] Deposition of Merino, 49:17-24.
[31] Deposition of Merino, 17:4-9; 28:25 - 29:9; 116:20 – 117:1.
[32] Deposition of Bastos, 27:10-18.

51.      *Disputed.*  Kirby testified that *there is training* but "it's not *necessarily* to do *our* investigations.  Most of folks that work for us have all got prior investigative experience."[33]

52.      *Undisputed* that Maldonado's job includes compiling reports that he receives involving passengers and sending them on to Corporate Security, including John Kirby.[34]

53.      *Disputed.*  The cited record evidence does not support this fact, only that Plaintiff's customer complaint was not available to him.

54.      *Undisputed* that Maldonado relied on the CERS reports filed and did not "contact" Merino, Gray, or Henriquez.

55.      *Undisputed* that no one from AA contacted Clowdus as part of an investigation into the incident.

56.      *Undisputed* that Kirby did so testify.

57.      *Undisputed.*

58.      *Disputed.*  Kirby did not testify that passenger's version of events was "not taken into account." The cited record reference is to a question by Plaintiff's counsel, not testimony by Mr. Kirby.  Kirby stated only that he believed "passengers oftentimes do that [make up stories to "justify what occurred"].[35]

59.      *Disputed.*   The cited record references do not support this fact. In addition, Henriquez has never stated that he did not believe "any statements corroborating Merino's account were truthful." In his duties creating the IRL packet, Maldonado was only tasked with collecting every piece of information available to him.[36]

60.      *Disputed.*  Maldonado was not aware the Henriquez CERS report existed so he could not have collected it.  Maldonado testified that he had never (until his deposition) seen Henriquez' CERS report; that he did not have the report available to him; that he did not know that Henriquez was the individual who arrived on the scene after the incident; and therefore, he had no reason to "collect" it or know that any report by Henriquez existed within this event.[37]  Maldonado is only tasked with collecting every piece of information available to him.[38]

---

[33] Plaintiff's Response to Defendant's SUMF [DE 97-16] ("Deposition of Kirby") at page 12: lines 10-17.
[34] Plaintiff's Response to Defendant's SUMF [DE 97-15] ("Deposition of Maldonado") at page 13:16 *through* page 14: line 25.
[35] Deposition of Kirby, 92:9-93:18.
[36] Deposition of Kirby, 16:10-16.
[37] Deposition of Maldonado 56: 19-59:5.
[38] Deposition of Kirby, 16:10-16.

61.     *Undisputed* that Henriquez did not use the word "assault" in his CERS report.

62.     *Undisputed* that Maldonado synthesized the reports of Merino and Gray into the IRL packet.

63.     *Disputed.* Plaintiff cites no record evidence by which he can support this proposed fact. His cursory citation to only the "IRL Packet" is insufficient and improper under Rule 56(c)(1).

64.     *Undisputed*.

65.     *Disputed.* The cited record references do not support this fact, as Merino did not testify that he demanded Clowdus' removal. Merino testified he told the Captain he did not feel safe flying with Clowdus. Further, Merino did not testify that "he *only* went to the captain to demand Clowdus' removal" after saying "you hit me" and "not receiving an apology.[39]

66.     *Undisputed* that Merino did so testify.

67.     *Undisputed*.

68.     *Undisputed*.

69.     *Undisputed*.

70.     *Disputed* in so far as this is not a fact, it is unsupported by any cited record evidence, and is improper pursuant to Rule 56.


Dated: September 19, 2022.

                          By:___*/s/ Kelly H. Kolb*_____
                                Kelly H. Kolb, Esq.
                                kelly.kolb@bipc.com
                                Buchanan Ingersoll & Rooney, PC
                                401 E Las Olas Boulevard, Suite 2250
                                Fort Lauderdale, FL 33301
                                Tel: 954-468-2300
                                Fax: 954-527-9915
                                *Counsel for Defendant*

---

[39] Deposition of Merino, 117:1-10.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this the 19th day of September, 2022, a true and correct copy of the above and foregoing has been filed with the Clerk of Court using the CM/ECF system. I FURTHER CERTIFY that the foregoing document is being served this date, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner of those counsel or parties who are not authorized to receive electronically Notices of Electronic filing on the counsel of record or *pro se* parties identified on the attached Service List.

By: ___/s/ Kelly H. Kolb_____

Kelly H. Kolb, Esq.

**SERVICE LIST:**

William T. Woodrow III
250 West Main Street, Suite 201
Charlottesville, VA 22902

Rook Elizabeth Ringer, Esq.
LENTO LAW GROUP
222 San Marco Ave., Ste. C
St. Augustine, FL 32084
Tel:  (855) 275-7378
Tel:  (904) 602-9400
E-mail:  reringer@lentolawgroup.com
E-mail:  will@stoneandwoodrowlaw.com

David H. Pollack, Esq.
THE LAW OFFICE OF DAVID H. POLLACK, LLC
75 Valencia Avenue, Suite 100
Coral Gables, FL 33134
Tel. No. 305-372-5900
Fax No. 305-372-5904
david@davidpollacklaw.com
*Counsel for Plaintiff*