**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.:  1:21-CV-23155-KMM**

TROY CLOWDUS,

      Plaintiff,

v.

AMERICAN AIRLINES, INC.,

      Defendant.

_____/

**<u>JOINT PRETRIAL STIPULATION</u>**

      The Plaintiff, TROY CLOWDUS ("Clowdus" or "Plaintiff") and the Defendant, AMERICAN AIRLINES, INC., ("AA" or "Defendant"), by and through their undersigned attorneys, submit the following Joint Pretrial Stipulation and state as follows:

      1.     **Concise Statement Of The Case**

            **<u>Plaintiff</u>**

      This case arises out a flight-attendant's short-tempered aggression, resulting in a false allegation of felony assault and a permanent flight ban for the Plaintiff.  While taking his seat early in the boarding process, the Plaintiff was informed brusquely by a flight attendant that he would need to stow his bag, to which the Plaintiff agreed to comply once situated. This was his only interaction with the flight attendant until he realized belatedly, due to the earphones he was wearing, that he was being angrily addressed by the same flight attendant with the demand: "give me the bag."  Feeling hostility and not wanting to invite further interaction, the Plaintiff looked away, reached down to retrieve the bag and swung it over the intervening seat, inadvertently making slight contact with some portion of the flight attendant's body.  The flight attendant's reaction was an immediate and explosive: "you hit me!", stunning the Plaintiff into the initial

bewildered response of "no I didn't, I was trying to hand you my bag," and then a subsequent attempt to apologize.  The Plaintiff was kicked off the flight.  Multiple passengers and one employee testified that the Plaintiff did not seem angry or aggressive and left the plane calmly. At least one passenger heard the Plaintiff attempt to apologize and also, along with two employees, heard the flight attendant's exclamation of "you hit me!"  The AA employee who removed the Plaintiff told his supervisor that the flight attendant unnecessarily escalated the incident.  He rebooked the Plaintiff on a later flight, only for the Plaintiff to be kicked off of that flight as well after the flight attendant filed a report claiming to have been assaulted.

Having been falsely accused of felony assault, the Plaintiff brought a claim of defamation per se against the flight attendant and, vicariously and directly, against the airline.  The verbal defamation was heard specifically by two employees and one passenger and generally by all first-class passengers.  The flight attendant's written report is defamatory and is not protected by the defense of qualified privilege if the jury concludes that the flight attendant knew that his *written* accusation was untrue and therefore that he made it with common law express malice. The airline is vicariously liable for both of these instances of defamation as they were committed within the anticipated scope of the flight attendant's duties.  Additionally, if the Court concludes that the airline endorsed and republished the defamatory accusation for its own purposes, with no concern for its accuracy, then the airline is directly liable for all internal publications involving at least one non-managerial employee, including the internal memo recommending that the Plaintiff be placed on the airline's internal no fly list.

### Defendant

This case arises out of a first-class passenger's refusal to comply with multiple instructions from a uniformed flight attendant to stow his carry-on bag in an overhead bin on an

international flight, since he was seated in a first-class bulkhead seat. As the aircraft doors were about to be closed for departure, the flight attendant observed Mr. Clowdus' carry-on bag hidden behind his legs. The flight attendant then asked Mr. Clowdus to hand his bag to the flight attendant so the flight attendant could stow the bag for him. Mr. Clowdus responded by tossing his bag to and hitting the flight attendant causing the flight attendant to take a few steps backwards and say "you hit me." Mr. Clowdus did not react with surprise.  Instead, he was seen by some people on the aircraft to be looking straight at the flight attendant. The flight attendant immediately reported this incident to the flight captain who ordered Mr. Clowdus removed from the aircraft. Mr. Clowdus was later placed on AA's no-fly list and permanently banned from flying on American Airlines. American Airlines denies it defamed Mr. Clowdus at any time because: 1) the statement by the flight attendant that Mr. Clowdus hit the flight attendant with the bag was true, was not heard by any other passenger and was otherwise not defamatory; and 2) AA's internal communications regarding Mr. Clowdus' conduct were only exchanged between those with a need to know, such as AA's Corporate Security personnel, and not circulated to any outside parties nor to anyone within AA who did not share a common interest in the assault report or the no-fly determination. Indeed, but for the filing of this lawsuit, no one outside AA would have known anything about Mr. Clowdus' conduct or his permanent ban from flying AA.

**2.      Basis for Federal Jurisdiction**

The Court has diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C.A. 1332 (a)(1).

**3.      The Pleading Raising the Issues**

(a)      Plaintiff's First Amended Complaint [DE 40];

3

(b)    Defendant's Motion to Dismiss [DE 51] remains pending and, therefore, Defendant does not have a live pleading on file.

4.    **Pending Motions and Matters**

(a)    Defendant's Motion to Dismiss [DE 51];

(b)    Defendants' Motion for Partial Summary Judgment [DE 81];

(c)    Defendant's Motion to Separately File its Statement of Undisputed Facts [DE 84]

(d)    Joint Motion to Reset Trial Date [DE 101];

(e)    Defendant's Motion in Limine [DE 82]:

(f)    Plaintiff's Motion in Limine [DE 80].

5.    **Concise Statement of Uncontested Facts Which Will Require No Proof At Trial, with reservations, if any**

    <u>**Joint:**</u>

(a)    Clowdus was a business class passenger who boarded AA's Flt 1303 (the "Flight") from Miami to Mexico City on June 10, 2021, and was seated in the first row bulkhead seat (1F).

(b)    The other (first) business class passengers were assigned to the following seats:

        (1A) Cojab
        (1B) Cohenmenun
        (2F) Acosta
        (3A) Kim
        (3B) Espinoza
        (3E) Hernandez-Ramirez
        (3F) Keizer
        (4A) Quintana
        (4B) Williams
        (4E) Donzis

(c)    Flight attendants Carlos Merino and Deon Gray ("Gray") were assigned to work the business class section on the Flight.  Flight attendants Nadege Colas ("Colas")

and Fernando Bastos ("Bastos") were assigned to work the coach class of the aircraft.

(d)     Ground Security Coordinator Jose Henriquez ("Henriquez") was standing on the jet bridge just outside the aircraft pursuant to his duties with AA, and entered the aircraft when he heard "You hit me."

(e)     Henriquez escorted Plaintiff off the aircraft.

(f)     The police were not called and no police report was filed by either Merino or Henriquez.

(g)     The CERS Reports submitted by Merino and Gray were uploaded to AA's Corporate Security database at 8:13am and 8:42am, respectively.

(h)     The CERS Report submitted by Henriquez was uploaded to AA's Corporate Security database at 10:52am.

(i)     Clowdus submitted two customer complaints regarding the Incident through AA's online portal.

(j)     Maldonado never received the CERS Report filed by Henriquez and so did not include it in the IRL Packet.

(k)     Maldonado never received the two customer complaints filed by Clowdus on the day of the flight and so did not include them in the IRL Packet.

(l)     Clowdus was notified in writing by AA's Corporate Security department that he had been placed on AA's Internal Refuse List ("IRL") and was permanently banned from flying with AA.

(m)     Both the email informing Clowdus that he had been placed on the temporary refuse list pending investigation and the email informing him of his permanent

5

ban say ***Please do not reply.  This is not a monitored email address*** at the top.

(n)     Clowdus received an email informing him that the investigation was complete on June 22.

(o)     Clowdus has not lost and continues to accrue and use his AAdvantage points.

(p)     Clowdus has never sought political office.

(q)     Clowdus has not sought counseling for any mental anguish or other emotional distress related to the facts at issue in this lawsuit.

(r)     Merino did not seek medical treatment.

(s)     AA's policies vest sole authority to order removal of a passenger in the flight captain.

(t)     Passenger Federico Quintana was flying standby pursuant to his mother's survivor benefits from AA.

(u)     Clowdus' ticket was scanned at the top of the jet bridge at 6:27am.

(v)     Passenger Quintana's ticket was scanned at the top of the jet bridge at 6:39am.

**6.**     **Statement of Facts/Issues Which Remain to Be Litigated**

**Plaintiff's Statements:**

(a)     Whether Henriquez observed any flight attendants other than Merino in the first-class cabin when he entered the aircraft.

(b)     Whether Merino asked the Captain to remove Clowdus and the Captain complied.

(c)     Whether the Captain ever spoke with Clowdus.

(d)     Whether Henriquez spoke with Clowdus about the incident before he was removed.

(e)     Whether the AA Customer Service Manual requires that if customer conduct is alleged on board the plane while still at the gate, a GSC must be called to interview the passenger and then a collaborative discussion must take place between the captain, the flight attendant, and the GSC before the passenger can be removed unless the passenger has clearly violated federal regulations.

(f)     Whether Henriquez re-entered the aircraft and spoke with Merino, telling him that Clowdus had claimed the hit was an accident and asking if he could reboard. Merino said "well, he didn't apologize" and "The Captain has decided."

(g)     Whether it was Henriquez's prerogative to call the police or alternately to rebook Clowdus.

(h)     Whether, after speaking with Clowdus, Henriquez reached a determination that Clowdus had violated federal regulations.

(i)     Whether AA procedures require flight attendants and ground security coordinators to file a CERS Report if they are involved with or eyewitness to the removal of a passenger from a flight.

(j)     Whether Henriquez also filed a CERS report which did not say that Clowdus assaulted Merino with his carry-on bag.

(k)     Whether AA security coordinator Aristides Maldonado ("Maldonado") received and reviewed the CERS Reports filed by Merino and Gray later the same morning and opened a file on the incident at 12:29pm, summarizing and compiling these CERS Reports into an IRL Packet, which he then submitted to AA Regional Corporate Security Manager John Kirby ("Kirby") at 11:24am the following morning.

(l)     Whether Maldonado took any steps to investigate the incident other than receiving and synopsizing Merino and Gray's CERS Reports.

(m)    Whether Kirby took any independent steps to investigate the incident before finalizing the travel ban.

(n)    Whether AA provides an avenue for passengers to involve with or appeal adverse decisions taken against them.

(o)    Whether the Captain personally ordered Clowdus off the plane.

(p)    Whether Henriquez placed Clowdus on the waitlist for the next flight at 6:49am

(q)    Whether or not Clowdus accidentally bumped Merino with his bag.

(r)    Whether Merino knew that his claim that Clowdus assaulted him was untrue

(s)    Whether Merino defamed Clowdus to passengers after the plane departed by telling them that he was assaulted.

(t)    Whether or not Gray was present during the incident or observed the incident.

(u)    If Gray was there and observed the incident, whether she believed it to be intentional.

(v)    Whether or not AA followed company policy in the manner that it removed Clowdus from the flight

(w)    Whether or not Merino knew or had reason to know that the bag struck him accidentally.

(x)    Whether or not Clowdus was looking at Merino when the bag made contact.

(y)    Whether or not Clowdus repeatedly laughed and mocked Merino after the bag made contact

(z)    Whether or not Clowdus attempted to apologize

8

(aa)    Whether or not Merino had the "wind" knocked out of him

(bb)    Whether or not Clowdus half-stood aggressively after the bag made contact

(cc)    Whether or not Clowdus exhibited an angry demeanor while aboard the plane

(dd)    Whether or not Clowdus protested vocally while being led off the plane

(ee)    Whether or not Clowdus aggressively leaned in towards Merino while being led past him upon deboarding

(ff)    Whether or not Clowdus appeared confused in the aftermath of the incident

(gg)    Whether or not Clowdus was repeatedly reprimanded for wearing his mask improperly and each time refused to fix it

(hh)    The facts of what various passengers heard and observed.

(ii)    Whether or not AA conducted an investigation into the incident

(jj)    The scope of the Plaintiff's damages.


**Defendant's Statements:**

(a)    Whether, during the boarding process of other passengers, Clowdus was reminded at least once that he must stow his carry-on bag in an overhead bin.

(b)    Whether passengers seated in bulkhead seats must store their bags in the overhead bin before departure or when instructed by a uniform crew member.  Clowdus was aware of this rule when he boarded the flight and he was advised of this rule by the flight attendant when he boarded.

(c)    Whether Clowdus had not yet stowed his bag when, as the aircraft doors were about to be closed for departure, Merino asked Clowdus to stow his bag

9

(d)     Whether Clowdus made any effort to stow his bag in the overhead bin before being approached by Merino as the aircraft doors were about to be closed for departure.

(e)     Whether, as the aircraft doors were about to be closed for departure, Merino saw that Clowdus had placed his bag at his feet.

(f)     Whether when Clowdus swung his bag at Merino when he hit Merino with his bag.

(g)     Whether, after the bag made hit or made contact with Merino, Merino uttered the words "You hit me."

(h)     Whether, as the aircraft doors were about to be closed for departure, Merino asked Clowdus to hand his carry-on bag to Merino so Merino could stow the bag for him.

(i)     Whether Henriquez saw the Incident.

(j)     Whether Gray was present during the Incident to have witnessed the Incident.

(k)     Whether passenger Jairo Espinoza heard any statements made by Merino in regards to Clowdus.

(l)     The force of the impact of Clowdus' carry-on bag on Merino.

(m)     Whether, as required by AA procedures, Merino reported the Incident to flight captain, Captain NJ Lakhani.  Captain Lakhani then ordered Plaintiff removed from the aircraft after speaking with Merino.

(n)     Whether AA's procedures require a flight captain to discuss a passenger removal with a Ground Security Coordinator when the reason for removal is a violation of FAA regulations.

10

(o)     Whether AA's procedures require a flight captain to discuss a passenger removal with the passenger under any circumstances.

(p)     Whether Henriquez re-entered the aircraft and, as required by AA procedure, spoke with the flight captain and Merino to determine if Clowdus could remain on the aircraft. The flight captain declined to allow Clowdus back on the aircraft.

(q)     Whether AA procedures require flight attendants involved in passenger events such as the Incident to file a CERS Report.

(r)     Whether Merino and Gray submitted CERS Reports to AA regarding the incident.

(s)     Whether the CERS Reports submitted by Merino and Gray stated Clowdus had assaulted Merino with his carry-on bag.

(t)     Whether Clowdus was rebooked on a second flight by Henriquez, following his removal from the first flight.  Whether, upon review of Merino and Gray's CERS Reports, AA's Corporate Security department placed Clowdus on a temporary no-fly list, pending AA's review of the Incident. As a result, Clowdus was later removed from the second flight without incident.

(u)     Whether AA Corporate Security Coordinator Aristides Maldonado ("Maldonado") received and reviewed the CERS Reports filed by Merino and Gray pursuant to his Corporate Security duties. Whether Maldonado compiled those CERS Reports into an IRL Packet with other documents, which he then submitted to AA Regional Corporate Security Manager John Kirby ("Kirby) for review pursuant to his Corporate Security duties.

(v)     Whether, pursuant to his duties with AA, Kirby received and reviewed the IRL Packet before making his decision to ban Clowdus from future flight with AA.

11

(w)     Whether AA has not shared and does not share its CERS Reports or IRL regarding Clowdus with any other airlines, government agencies or other third parties.

(x)     Whether Clowdus' company has lost any business opportunities as a result of any act or omission of AA or its employees

(y)     Clowdus' intent when he swung his carry-on bag toward Merino – subject to AA's position that, as a matter of law, intent is not an objectively verifiable fact which can be proven true or false.

(z)     Whether the statement "you hit me" is slander per se since it is true.Why Henriquez rebooked Clowdus on the second flight.

(aa)    Whether any allegedly defamatory statement was published to an identifiable third party.

(bb)    Whether any allegedly defamatory statement was published internally within AA to a person outside qualified privilege.

(cc)    Whether those AA employees who have received and read the Gray, Merino and Henriquez CERS Reports and the IRL packet in the normal course of their duties with AA fall within AA's qualified privilege.

(dd)    Whether Clowdus may still fly on any of AA's partner airlines and use the AA Admiral's Club facilities worldwide while flying on any of AA's partner airlines.

(ee)    Whether Merino or any other AA employee acted with express malice.

(ff)    The nature and extent of Clowdus' damages.

(gg)    Clowdus' standing to claim damages to his business.

(hh)    The purpose of Clowdus' trips to Central and South America.

7.      **Concise Statement of Issues of Law on Which There is Agreement**

(a) In a defamation per se action, the plaintiff does not need to show any special damages. *Alan v. Wells Fargo Bank, N.A.,* 604 F. App'x 863, 865 (11th Cir. 2015) (citing *Johnson v. Fin. Acceptance Co.,* 118 Fla. 397, 159 So. 364, 365 (1935).

(b) A "communication is actionable *per se* ... if it imputes to another ... a criminal offense amounting to a felony" *Wolfson v. Kirk,* 273 So.2d 774, 776 (Fla. 4th DCA 1973)).

(c) "[T]he test to be applied in determining whether an allegedly defamatory statement constitutes an actionable statement of fact requires that the court examine the statement in its totality and the context in which it was uttered or published." *O'Boyle v. Sweetapple*, 2015 WL 13574304, at *4 (S.D. Fla. June 4, 2015).

(d) Qualified privilege is an affirmative defense and the burden of proving it rests with the defendant.

(e) Qualified privilege is lost if a statement is made to too wide an audience. *Johnston v. Borders*, 2018 WL 8244336 (M.D. Fla., June 19, 2018), at * 5.

8.      **Concise Statement of Issues of Law Which Remain to be Determined**

<u>**Plaintiff's Proposal:**</u>

(a)      Whether in determining if an expression is one of fact or opinion, a court must consider the circumstances surrounding the statement. *Sequiera v. Gate Safe, Inc.*, 2017 WL 6568196 (S.D. Fla., Oct. 27, 2017), at * 2

(b)      Whether liability attaches to statements that were made subject to a qualified privilege if the privilege has been abused.

13

(c)     Whether In order for a statement to be privileged, it must be (1) made in good

faith; (2) with an interest to be upheld; (3) published on a proper occasion; and (4)

published in a proper manner.

(d)     Whether statements made by one person with an interest and/or duty in the

communication to another person with an interest and/or duty in the

communication are qualifiedly privileged.

(e)     Whether express malice is present where the primary motive for the statement is

shown to have been an intention to injure the plaintiff." *Nodar v. Galbreath*, 462

So. 2d 803, 806 (Fla. 1984).

(f)     Whether a plaintiff may establish express malice by showing that the speaker is

motivated "more by a desire to harm the person defamed than by a purpose to

protect the personal or social interest giving rise to the privilege." *Nodar v.

Galbreath*, 462 So. 2d 803, 10 (Fla. 1984).

(g)     Whether "Proof that defamation is false, and was known to be such by the

publisher, certainly establishes malice in fact"  Lewis v Evans, 406 So. 2d 489,

493 (Fla. Dist. Ct. App. 1981) (citing Montgomery v. Knox, 23 Fla. 595, 3 So.

211, 217 (1887)); see also Morgan v. Dun & Bradstreet, Inc., 421 F.2d 1241,

1242–43 (5th Cir. 1970)("Express malice may be proven by the publication of a

libelous statement with knowledge of its falsity."); Riggs v. Cain, 406 So. 2d

1202, 1203 (Fla. Dist. Ct. App. 1981)( since there is "no social advantage in the

publication of a deliberate lie, the privilege is lost if the defendant does not

believe what he says.")

14

(h)     Whether statements made to serve one's own interest rather than the interest giving rise to a qualified privilege become privileged. *Drennen v. Westinghouse Elec. Corp.*, 328 So.2d 52 (Fla. 1st DCA 1976).

(i)     Whether a qualified privilege accrued to any AA employee to hear the exclamation "you hit me."

(j)     Whether the undisputed facts that Merino said: "you hit me" and that it was heard by multiple people are sufficient for the jury to infer publication to the entire first-class cabin. *See Lombardi v. Flaming Fountain, Inc*., 327 So. 2d 39, 40 (Fla. Dist. Ct. App. 1976) ("We hold, therefore, that in a slander action it is not necessary to produce witnesses who heard the slanderous words spoken. The jury may well infer publication if it is shown that the words were uttered in a loud voice in the presence of others and under conditions and circumstances in which a loud voice would likely be heard."); *American Ideal Management, Inc. v. Dale Village, Inc..*, 567 So.2d 497, 499 (Fla. 4th DCA 1990).

(k)     Whether a speech from a low-level employee to corporate management can be considered publication. *Walter v. Jet Aviation Flight Servs., Inc*., 2016 WL 7116641, at *1 (S.D. Fla. Dec. 7, 2016) ("the Court is unaware of any case that stands for the proposition that a low-level employee, acting with malicious intent, cannot publish a defamatory statement by uttering that statement to corporate officers.")

(l)     Whether Deon Gray had a qualified privilege to file a CERS Report if a jury determines that she did not in fact witness the incident.

(m)     Whether if Gray had a qualified privilege she abused that privilege by not knowing the truth of her statement.

(n)     Whether Maldonado abused and thus lost the privilege by accusing Clowdus of assaulting Merino in the IRL report without conducting an investigation and/or to serve AA's own purposes rather than the reason for which the privilege attached.

(o)     Whether AA is vicariously liable for the defamation of Merino and Gray

(p)     Whether AA is liable for punitive damages.

**Defendants' Proposal:**

(a) To prevail on his defamation *per se* claim, Plaintiff must show that (1) AA personnel uttered a false statement of fact about Clowdus; (2) the false statement accused Clowdus of a felony within its "four corners" and without need for inference, innuendo, and/or extrinsic facts; and there (3) was an unprivileged publication of that falsehood to a third party.

(b) As to the first element of falsity, the alleged defamatory statement must have contained a false, objectively verifiable fact. No liability attaches with regard to any statements that are true (or substantially true), which are premised on opinion and not premised on fact, or which are not objectively verifiable, including statements that pertain to another's state of mind. *Klayman v. Jud. Watch, Inc.,* 22 F. Supp. 3d 1240, 1253 (S.D. Fla. 2014), aff'd (Feb. 17, 2015) (falsity only exists where the publication is substantially and materially false); *Hallmark Builders, Inc. v. Gaylord Broad, Co*., 733 F.2d 1461, 1464 (11th Cir. 1984) (defamation must include a false statement of fact which is the "sine qua non for recovery in a defamation action."); *Turner v. Wells,* 198 F. Supp. 3d 1355, 1369 (S.D. Fla. 2016)(the "critical question" is whether

the statement is objectively verifiable);  *Turner,* 198 F. Supp. 3d at 1369-70 ("an individual's state of mind at a particular point in time 'is not subject to empirical proof'" and  is therefore immune from defamation).

(c) As to the second element, defamation *per se* requires Plaintiff to identify the precise words communicated, and those precise words communicated must, within the "four corners" of the statement, and without the need for innuendo, inference, or extrinsic facts, falsely accuse a Plaintiff of conduct arising to a felony. There is no liability for any statement that does not accuse a Plaintiff of conduct arising to a felony, and/or any statement that requires the addition of inference, innuendo, or extrinsic facts for the common mind to understand it as accusing a Plaintiff of conduct arising to a felony. *Paulson v. Cosm. Dermatology, Inc.*, No. 17-cv-20094, 2017 WL 2484197, *3 (S.D. Fla. June 8, 2017) (injurious nature of the statement must be "apparent from the words in the statement itself"); *Scobie v. Taylor*, 2013 WL 3776270, *4 (S.D. Fla. 2013) ("In a per se action, consideration is given only to the 'four corners' of the publication and the language used should be interpreted as the 'common mind' would normally understand it."); *Klayman v. Judicial Watch*, 22 F. Supp. 3d 1240, 1247-48 (S.D. Fla. 2014) (". . .whether the underlying facts actually support a felony offense is not relevant"—in order to qualify as defamatory per se, the statement must specifically "accuse a person of a felony."); *Afalo v. Weiner,* 2018 WL 3235529, *5 fn.2 (S.D. Fla. 2018) ("Because this is a claim for defamation per se, the Statement must be considered alone, without reference to extrinsic facts and/or innuendo ").

(d) As to the third element, the statement must actually be communicated or "published" to a third party, which is someone other than the speaker and the Plaintiff.  To satisfy

this element, the Plaintiff has the burden of identifying the third party recipients of the alleged defamatory communication. *Mennella v. Am. Airlines, Inc.,* No. 17-21915-CIV, 2019 WL 1429636, at *3 (S.D. Fla. Mar. 29, 2019), *aff'd,* 824 F. App'x 696 (11th Cir. 2020) ("To meet the standard for publication to a third party, a plaintiff "must allege the identity of the particular person to whom the remarks were made with a **reasonable degree of certainty[.]**"); *American Airlines, Inc. v. Geddes,* 960 So. 2d 830, 833 (Fla. Dist. Ct. App. 2007) ("A defamatory statement does not become actionable . . . until it is published . . . to a third person").

(e) Statements made by one corporate employee to a corporate executive or manager are not considered "published" but rather are considered the corporation speaking to itself for which no liability attached. *American Airlines, Inc. v. Geddes,* 960 So. 2d 830, 833 (Fla. Dist. Ct. App. 2007) (when "the entity alleged to have committed the defamation is a corporation," intra-corporate communication made to executive and managerial employees is not publication, but rather the corporation speaking to itself); *Lopez v. Ingram Micro, Inc.,* 1997 WL 401585, *6 (S.D. Fla. March 18, 1997) ("communications by [defendant corporation's] agents, i.e. the investigators, to [] management personnel do not satisfy the 'publication' element").

(f) Even if a statement is defamatory and is published, no liability attaches to statements that were made subject to qualified privilege. In order for a statement to be privileged, it must be (1) made in good faith; (2) with an interest to be upheld; (3) published on a proper occasion; and (4) published in a proper manner. Statements made by employees to other employees with a common interest in the statement fall within qualified privilege. *Glynn v. City of Kissimmee,* 383 So. 2d 774, 776 (Fla.

18

Dist. Ct. App. 1980). Alternatively, statements made within the course and scope of an employee's employment duties are subject to qualified privilege. *Thomas v. Tampa Bay Downs, Inc*., 761 So. 2d 401, 404 (Fla. 2d DCA 2000) (an employee's conduct is "immune from an action for defamation if it is the type of conduct that the employee is hired to perform . . . and the conduct is activated at least in part by the employee's purpose to serve his or her employer."). Alternatively, statements made for a bona fide commercial purpose are subject to qualified privilege. *John Hancock Mut. Life Ins. Co. v. Zalay*, 581 So.2d 178, 180 (Fla. 2d DCA 1991).  Alternatively, statements made by one person with an interest and/or duty in the communication to another person with an interest and/or duty in the communication are qualified privilege.  *Shaw v. R.J. Reynolds Tobacco, Co.,* 818 F. Supp. 1539, 1543 (M.D. Fla. 1993).

(g) Qualified privilege can only be overcome if a party can rebut the presumption of good faith that attaches to statements made subject to qualified privilege.  *Thomas v. Tampa Bay Downs, Inc*., 761 So. 2d 401, 404 (Fla. 2d DCA 2000) (once it is determined that the statement is subject to qualified privilege, it "becomes cloaked with a legal presumption of good faith.  To overcome this presumption, [plaintiff] bears the burden of proving the [communication] was made with express malice.")To do so, the Plaintiff must show that the statements were made with express malice.  To show express malice, a Plaintiff must show that the statements were made with ill will, hostility, and an evil intent to injure. *Mastaw v. W. Fla. Med. Ctr. Clinic*, No. 3:20CV5888-RV/EMT, 2022 WL 2517207, *7 (N.D. Fla. Apr. 26, 2022) ("The Supreme Court of Florida has *unequivocally held* that *all three elements* (ill will,

hostility and evil intention to defame and injure*) and* more must be shown [to demonstrate express malice]. *Boehm v. American Bankers Ins. Group, Inc.*, 557 So.2d 91, 94 (Fla. 3rd DCA 1990) (citing *Nodar*, 462 So.2d at 811 n.8). 'It is insufficient that the speaker have generalized feelings of hostility and malice towards the Plaintiff. Only if the Plaintiff demonstrates the primary motivation for the *statements uttered* was express malice, is the privilege overcome.' *Id.* (citing *Nodar*, 462 So.2d at 812).")

(h) The mere fact that a statement is untrue and made with knowledge of its falsity, or made without regard to its truth or falsity, is insufficient. The test for determining express malice is not whether statements were false, or even whether there was knowledge or reckless disregard for their falsity. *Crestview Hosp. Corp. v. Coastal Anesthesia, P.A.*, 203 So. 3d 978, 982 (Fla. Dist. Ct. App. 2016);  ("The mere fact that a statement is untrue and made with knowledge of its falsity, or made recklessly without regard to its truth or falsity is not the test"); *John Hancock Mut. Life Ins. Co. v. Zalay*, 581 So.2d 178, 180 (Fla. 2d DCA 1991). (citing *Nodar* ); See also *Loeb v. Geronemus*, 66 So.2d 241, 244 (Fla.1953) (stating that "the malice which vitiates a qualified privilege must be ... not merely inferred from falsity, etc."); *Demby v. English*, 667 So.2d 350, 353 (Fla. 1st DCA 1995) ("malice cannot be inferred from the fact that some statements are untrue") (citing *Coogler v. Rhodes*, 38 Fla. 240, 21 So. 109, 112 (1896))."

(i) The permissive removal stature, 42 USC 44902(b), vests sole authority to order removal of a passenger in the flight captain.

(j)  Whether the statement "you hit me" is capable of being slander per se since it is true, it is not substantially and materially false, it does not expressly (within its four corners) accuse Clowdus of a felony and it requires a determination of Clowdus' intent which is not an objectively verifiable fact which can be proven true or false.

(k)  Whether the statement "you hit me" when overheard by AA Ground Security Coordinator Henriquez was subject to qualified privilege when uttered by Merino or afterwards when discussed with Henriquez and/or the flight captain

(l)  Whether the CERS Reports (and AA's alleged adoption of same) and/or IRL Packet stating Clowdus assaulted Merino are capable of being libelous per se since they do not expressly (within their four corners) accuse Clowdus of a felony and since they require a determination of Clowdus' intent which is not an objectively verifiable fact which can be proven true or false.

(m) Whether the submission of Merino's and Gray's CERS Reports to AA Corporate Security department were subject to qualified privilege.

(n)  Whether the internal transmission of Merino's and Gray's CERS Reports and/or the IRL Packet within AA's Corporate Security department was subject to qualified privilege.

(o)  Whether AA's internal storage (i.e., accessibility) of allegedly defamatory information constitutes publication or whether Clowdus must prove that identifiable persons outside the scope of AA's qualified privilege actually received and read the information. *See Granda-Centeno v. Lara*, 489 So. 2d 142 (Fla. 3d 1986) (publication requires that the documents be "**actually received and read**"—the fact that a defamatory writing was merely sent is insufficient to prove publication); *Owner's*

*Adjustment Bureau, Inc. v. Ott*, 431 So. 2d 695, 696 (Fla. 3d DCA 1983) (no publication in a libel action where the plaintiff failed to show that the libelous letter had been **actually "received or read by any other person"**); *Transunion LLC v. Ramirez,* 141 S. Ct. 2190, 2210-11 (2021) (no standing for future publication of stored information).

(p) Whether statements made with qualified privilege are cloaked with the legal presumption of good faith, which eliminates any presumption of malice, and places upon the plaintiff the burden of rebutting the presumption of good faith by showing express malice.

(q) Whether strong, angry or intemperate words alone show express malice or whether there must be a showing that the speaker used his position to gratify the speaker's malevolence.

(r) Whether express malice can only be demonstrated indirectly through a series of acts that, in their specific context or in light of the totality of the surrounding circumstances, are inconsistent with the premise of a reasonable person pursuing a lawful objective, but rather indicate a plan or course of conduct motivated by spite, ill will, or other bad motive.

(s) Whether Plaintiff's publication of AA's allegedly defamatory information to friends and family serves to reduce or preclude his recovery of damages for defamation *per se*.

(t) Whether an inadequate investigation into the CERS Reports submitted by Merino and Gray is sufficient to overcome the presumption of good faith inherent in AA's qualified privilege.

(u) Whether the existence of a general belief or suspicion as to the truth of the statement uttered lessens the degree of damages or lowers the degree of malice attached to the statement.

**9.     Trial Exhibits**

(a)     The Plaintiff's list of trial exhibits is attached hereto as Exhibit A.

(b)     The Defendants' list of trial exhibits is attached hereto as Exhibit B.

**10.    Trial Witnesses**

(a)     The Plaintiff's list of trial witnesses is attached hereto as Exhibit C.

(b)     The Defendant's list of trial witnesses is attached hereto as Exhibit D.

**11.    Estimated Trial Time**

The Defendant estimates 3-5 days, the Plaintiff estimates 5-7 days trial inclusive of voir dire, opening and closing.

**12.    Attorneys' Fees (where applicable)**

Not applicable.

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 6th of October 2022, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system. I further certify that I either mailed the foregoing document and the Notice of Electronic Filing by first class mail to any non CM/ECF participants and/or the foregoing document was served via transmission of Notice of Electronic Filing generated by CM/ECF to any and all active CM/ECF participants.

Respectfully submitted,

| | |
|---|---|
| */s/* William T Woodrow | */s/ Kelly H. Kolb* |
| William T. Woodrow III<br>250 West Main Street, Suite 201<br>Charlottesville, VA 22902<br>E-mail: will@stoneandwoodrowlaw.com<br><br>Rook Elizabeth Ringer, Esq.<br>LENTO LAW GROUP<br>222 San Marco Ave., Ste. C<br>St. Augustine, FL 32084<br>E-mail: reringer@lentolawgroup.com<br><br>David Pollack<br>POLLACK LAW FIRM<br>75 Valencia Avenue, Suite 100<br>Coral Gables, FL 33134<br>Tel: (305) 372-5900 / Tel: (855) 275-7378<br>Tel: (904) 602-9400 E-mail:<br>david@davidpollacklaw.com<br>*Counsel for Plaintiff* | Kelly H. Kolb, Esquire<br>Florida Bar Number: 0343330<br>Robert D. Pecchio, Esquire<br>Florida Bar Number: 1005955<br>**Buchanan Ingersoll & Rooney, PC.**<br>401 East Las Olas Boulevard, Suite 2250<br>Fort Lauderdale, Florida 33301<br>Telephone: (954) 468-2300<br>Facsimile: (954) 527-9915<br>Email: Kkolb@bipc.com<br>Email: Robert.pecchio@bipc.com |

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

## Exhibit List

| | |
|---|---|
| Case Name:<br><br>Troy Clowdus<br><br>vs.<br><br>American Airlines Inc., | Plaintiff's Attorney: William Woodrow, Esq. and David Pollack, Esq.<br><br>Defendant's Attorney: Kelly Kolb, Esq. and Robert D. Pecchio, Esq. |

| Docket No.:<br>1:21-CV-23155-KMM | Trial Dates:<br>October 24, 2022—November 4, 2022 | Courtroom Deputy: |
|---|---|---|
| Presiding Judge: K. MICHAEL MOORE | | Court Reporter: |

Party Offering Exhibits:

### Instructions
☐ Plaintiff's Exhibits are to be numbered and listed numerically with numbers preceded by a "P" or "D" indicating Plaintiff's or Defendant's Exhibits, respectively.
☐ Place the date of trial and case number on each exhibit label on each exhibit.
☐ Complete only the Exhibit Number, Stipulation, Objection, and Description Columns.
☐ A stipulation to the admission of the exhibit, should be indicated by marking the Stipulation column with "ADM". A partial stipulation should be indicated by an abbreviation indicating the nature of the stipulation, *e.g.* authenticity (AUTH), foundation (FND), relevance (REL), business record exception (BRE). If no stipulation has been reached, then leave blank.
☐ Objections should be noted by abbreviation or by reference to Federal Rules of Evidence, *e.g.* Relevance (REL or 402).

| Exhibit Number | Date Offered | Stipulation | Objection | Ruling (for use by Court) | Description | Notes (for use by Court) |
|---|---|---|---|---|---|---|
| P1 | | | | | June 10, 2021 CERS Report filed by Carlos Merino (AA 00039-42) | |
| P2 | | | | | June 10, 2021 CERS Report filed by Deon Gray (AA 00043-45) | |
| P3 | | | | | June 10, 2021 CERS Report filed by Jose Henriquez (AA 00008-9) | |
| P4 | | | H | | June 10, 2021 Tour Report written by Daniel Gonzalez (AA 00014) | |
| P5 | | | | | June 10 2021 Customer Complaints by Troy Clowdus (AA 00096-97) | |
| P6 | | | | | Internal Refuse List Packet, (AA 00028-47) | |
| P7 | | | R,UP (AA 12) | | AA emails to Plaintiff (AA 00010-13) | |
| P8 | | | R (AA 18-19) | | AA Inflight Manual (AA 00015-19, 56-62) | |
| P9 | | | | | Plaintiff Passenger Name Record (PNR) (AA 00020-26) | |
| P10 | | | | | AA Customer Service Manual (AA 00048-55) | |

| Exhibit Number | Date Offered | Stipulation | Objection | Ruling (for use by Court) | Description | Notes (for use by Court) |
|---|---|---|---|---|---|---|
| P11 | | | R | | Plaintiff's Travel History (AA 000106-109) | |
| P12 | | | Not depicted or produced | | Plaintiff's carry-on bag | |
| P13 | | | IN | | Plaintiff's Tickets (P0005) | |
| P14 | | | | | Impeachment Documents | |
| P15 | | | | | Any documents and materials properly listed on Defendant's Trial Exhibit list and disclosed during discovery | |
| P16 | | | | | Plaintiff's July 22, 2021 Affidavit | |
| P17 | | | R | | Form # JPIDR-M06-D01 (AA 00027) | |
| P18 | | | | | AAdvantage Elite Terms (AA 00063-71, 98-105) | |
| P19 | | | R, A, FND, confusion, no expert designated | | Airplane Schematics (AA 000110-117) | |
| P20 | | | R | | Cookson benefits (AA 000118-119, 139-41) | |
| P21 | | | | | Time stamps (AA 000144-145) | |
| P22 | | | R, UP | | Defendant's Answers to Plaintiff's First Interrogatories dated December 23, 2021 | |
| P23 | | | R, UP | | Defendant's Answers to Plaintiff's Second Set of Interrogatories dated February 10, 2022 | |
| P24 | | | H(AA 120-3) R,A,UP, FND (AA 124-125) H (AA 126-8) R,A,UP, FND (AA 129-143) | | Defendant's draft and signed passenger statements (AA 000120-138, 142-143) | |
| P25 | | | FND | | Video of 737-MAX seating (P0019) | |
| P26 | | | FND | | Video of 737-MAX seating (P0020) | |
| P27 | | | H,A, FND, not produced or depicted | | Depiction of competing airfares to Mexico and South America accessible via Kayak.com | |
| P28 | | | H | | Affidavit of Juan Ramirez dated May 27, 2022 | |
| P29 | | | H,R,UP | | Affidavit of Jairo Espinoza dated July 1, 2022 | |
| P30 | | | H,R,UP | | Email from Juan Ramirez dated June 8, 2022 | |
| P31 | | | H,R,IN | | Peccio Emails to Cookson dated April 27, 2022 (Cookson 000008-9) | |
| P32 | | | H,R | | June 10-11, 2021 texts between Cookson and Quintana (Cookson 000001-4) | |
| P33 | | | H,R,UP, not identified per Court order | | Any exhibits generated in conjunction with the Court's upcoming September 28, 2022 evidentiary hearing | |

| Exhibit Number | Date Offered | Stipulation | Objection | Ruling (for use by Court) | Description | Notes (for use by Court) |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Exhibit Number | Date Offered | Stipulation | Objection | Ruling (for use by Court) | Description | Notes (for use by Court) |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |

EXHIBIT B

_Modified_  ✎ AO 187 (Rev. 7/87) Exhibit List

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF FLORIDA

TROY CLOWDUS,

    Plaintiff,

       V.

AMERICAN AIRLINES, INC.,

    Defendant.

**DEFENDANTS' EXHIBIT INDEX**

Case Number: 1:21-CV-23155-KMM

| PRESIDING JUDGE K. MICHAEL MOORE | PLAINTIFF'S ATTORNEY William Woodrow, Esq. David Pollack, Esq. | DEFENDANT'S' ATTORNEY Kelly Kolb, Esq. Robert D. Pecchio, Esq. |
|---|---|---|
| **TRIAL DATE(S)** October 24, 2022—November 4, 2022 | **COURT REPORTER** | **COURTROOM DEPUTY** |

| PLF. NO. | DEF. NO. | DATE OFFERED | MARKED | OBJ. | ADM. | DESCRIPTION OF EXHIBITS* |
|---|---|---|---|---|---|---|
| | | | | | | _Defendant expects to offer the following exhibits_ |
| | 1 | | | H | | Plaintiff's July 22, 2021 Affidavit |
| | 2 | | | | | June 10, 2021 Customer Misconduct Report filed by Carlos Merino regarding Plaintiff's conduct onboard the airplane for flight #1303 (AA 00039-42) |
| | 3 | | | | | June 10, 2021 Customer Misconduct Report filed by Deon Gray regarding Plaintiff's conduct onboard the airplane for flight #1303 (AA 00043-45) |
| | 4 | | | | | June 10, 2021 Customer Misconduct Report filed by Jose Henriquez regarding Plaintiff's conduct onboard the airplane for flight #1303 (AA 0008-9) |
| | 5 | | | | | AA Customer Service Manual §4.03 (AA 00048-55) |
| | 6 | | | | | AA Conditions of Carriage (AA 00072-95) |
| | 7 | | | | | AA's AAdvantage™ Program Terms and Conditions (AA 00063-71) |

EXHIBIT LIST – CONTINUATION

*Defendant's Exhibit Index*
*CASE NO.* 1:21-CV-23155-KMM

| | | | | | |
|---|---|---|---|---|---|
| | 8 | | | | AA Inflight Manual §4-10-1 to 4-10-2 (AA 00015-19) |
| | 9 | | | | AA Inflight Manual §4-44-1 to 4-44-11 (AA 00056-62) |
| | 10 | | | | Plaintiff's Amended Response [sic] to AA's Second Set of Interrogatories |
| | 11 | | | | Plaintiff's Amended Answers to AA's First Set of Interrogatories |
| | 12 | | | | Plaintiff's June 10, 2021 Customer Complaint to AA (AA 00096) |
| | | | | | ***Defendant may offer the following exhibits*** |
| | 13 | | | A H | List of AA partner airlines, accessible via https://www.aa.com/i18n/aadvantage-program/miles/partners/partner-airlines.jsp |
| | 14 | | | A H | AA Redeem miles options, accessible via https://www.aa.com/i18n/aadvantage-program/miles/redeem/redeem-miles.jsp |
| | 15 | | | | AA IRL Packet (AA 00028-38) |
| | 16 | | | | AA Internal Refuse Checklist (AA 00047) |
| | 17 | | | | June 22, 2021 email to Plaintiff (AA 00013) |
| | 18 | | | UP IN | Depiction of what an AA ticketing agent will see should Plaintiff attempt to obtain a boarding pass for a ticketed flight (AA 00146) |
| | 19 | | | | List of Plaintiff's redemption of his AAdvantage™ miles for air travel on AA after June 10, 2021 |
| | 20 | | | | Screen shot of Plaintiff's AAdvantage™ account depicting |

EXHIBIT LIST – CONTINUATION

*Defendant's Exhibit Index*
*CASE NO. 1:21-CV-23155-KMM*

| | | | | | |
|---|---|---|---|---|---|
| | | | | | continue accrual of mileage credits and redemption of same |
| | 21 | | | | AA's AAdvantage™ Elite Status Terms and Benefits |
| | 22 | | | A<br>H<br>IN | Depiction of competing air fares to Mexico and South America, accessible via Kayak.com |
| | 23 | | | | Impeachment exhibits |
| | 24 | | | | |
| | 25 | | | | |
| | 26 | | | | |
| | 27 | | | | |
| | 28 | | | | |
| | 29 | | | | |
| | 30 | | | | |
| | 31 | | | | |
| | 32 | | | | |
| | 33 | | | | |
| | 34 | | | | |
| | 35 | | | | |
| | 36 | | | | |
| | 37 | | | | |
| | 38 | | | | |
| | 39 | | | | |
| | 40 | | | | |
| | 41 | | | | |
| | 42 | | | | |
| | 43 | | | | |
| | 44 | | | | |
| | 45 | | | | |

**EXHIBIT LIST ‒ CONTINUATION**

*Defendant's Exhibit Index*
*CASE NO.* 1:21-CV-23155-KMM

| | | | | | |
|---|---|---|---|---|---|
| 46 | | | | | |
| 47 | | | | | |
| 48 | | | | | |
| 49 | | | | | |
| 50 | | | | | |
| 51 | | | | | |
| 52 | | | | | |
| 53 | | | | | |
| 54 | | | | | |
| 55 | | | | | |
| 56 | | | | | |
| 57 | | | | | |
| 58 | | | | | |
| 59 | | | | | |
| 60 | | | | | |
| 61 | | | | | |
| 62 | | | | | |
| 63 | | | | | |
| 64 | | | | | |
| 65 | | | | | |
| 66 | | | | | |
| 67 | | | | | |
| 68 | | | | | |
| 69 | | | | | |
| 70 | | | | | |
| 71 | | | | | |
| 72 | | | | | |
| 73 | | | | | |
| 74 | | | | | |
| 75 | | | | | |
| 76 | | | | | |
| 77 | | | | | |

**EXHIBIT LIST – CONTINUATION**

*Defendant's Exhibit Index*
*CASE NO.* 1:21-CV-23155-KMM

| | | | | | |
|---|---|---|---|---|---|
| | 78 | | | | |
| | 79 | | | | |
| | 80 | | | | |
| | 81 | | | | |
| | 82 | | | | |
| | 83 | | | | |
| | 84 | | | | |
| | 85 | | | | |
| | 86 | | | | |
| | 87 | | | | |
| | 88 | | | | |
| | 89 | | | | |
| | 90 | | | | |
| | 91 | | | | |
| | 92 | | | | |

✎AO 187 (Rev. 7/87) Exhibit and Witness List

# UNITED STATES DISTRICT COURT

**EXHIBIT C**

_____   DISTRICT OF   _____

## WITNESS LIST

V.

Case Number: _____

| PRESIDING JUDGE | | | PLAINTIFF'S ATTORNEY | DEFENDANT'S ATTORNEY |
|---|---|---|---|---|
| TRIAL DATE (S) | | | COURT REPORTER | COURTROOM DEPUTY |

| PLF. NO. | DEF. NO. | | | | DESCRIPTION OF WITNESSES |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

\* Include a notation as to the location of any exhibit not held with the case file or not available because of size.

✎AO 187A (Rev. 7/87)                **EXHIBIT AND WITNESS LIST – CONTINUATION**

|  |  | VS. |  |  | CASE NO. |
|---|---|---|---|---|---|

| PLF. NO. | DEF. NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS AND WITNESSES |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

Page _____ of _____ Pages

EXHIBIT D

*Modified*  ✎ AO 187 (Rev. 7/87) Witness List

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

TROY CLOWDUS,

     Plaintiff,

       V.

AMERICAN AIRLINES, INC.

     Defendant.

**DEFENDANTS' WITNESS LIST**

Case Number: 1:21-CV-23155-KMM

| PRESIDING JUDGE<br>K. MICHAEL MOORE | PLAINTIFF'S ATTORNEY<br>William Woodrow, Esq.<br>David Pollack, Esq. | DEFENDANT'S ATTORNEY<br>Kelly Kolb, Esq.<br>Robert D. Pecchio, Esq. |
|---|---|---|
| TRIAL DATE(S)<br>October 24, 2022—November 4, 2022 | COURT REPORTER | COURTROOM DEPUTY |

| PLF.<br>NO. | DEF.<br>NO. | DESCRIPTION OF WITNESSES |
|---|---|---|
| | | *Defendant expects to present the following witnesses* |
| | 1 | Troy Powell Clowdus<br>c/o Plaintiff's counsel |
| | 2 | Fernando Bastos<br>c/o Defense counsel |
| | 3 | Nadege Colas<br>c/o Defense counsel |
| | 4 | Deon Gray,<br>c/o Defense counsel |
| | 5 | Jose Henriquez<br>c/o Defense counsel |
| | 6 | Elja Keizer<br>6470 SW 83 St<br>Miami, FL 33143<br>786-797-4889 |
| | 7 | Jae Won "Nicole" Kim, by deposition |

|   |    | Ecuador |
|---|----|---------|
|   | 8  | John Kirby<br>c/o Defense counsel |
|   | 9  | Captain N.J. Lakhani<br>c/o Defense counsel |
|   | 10 | Carlos Merino<br>c/o Defense counsel |
|   |    | ***Defendant may present the following witnesses*** |
|   | 11 | Shane Adelman, AA Senior Manager, Security Operations,<br>c/o Defense counsel |
|   | 12 | Angelica Cookson, by deposition<br>2833 West Avenue K12, 130,<br>Lancaster, California 93536<br>Telephone unknown |
|   | 13 | Jairo Espinoza<br>Calzada Zaragoza #503,<br>Colonia el Calvario, Atotonilco City<br>Hidalgo 43300<br>52-2221910692 |
|   | 14 | Daniel Santiago Gonzalez, AA Customer Care Management<br>c/o Defense counsel |
|   | 15 | Ronald Heyl, AA Premium Customer Service Coordinator/Admirals Club<br>c/o Defense counsel |
|   | 16 | Steven M. Kennedy, AA Manager, Travel Strategy and Services<br>c/o Defense counsel |
|   | 17 | Aristides Maldonado, AA Corporate Security Coordinator c/o<br>Defense counsel |
|   | 18 | Hilda Minaya, AA Premium Service Representative/Admirals Club<br> c/o Defense counsel |
|   | 19 | Federico Quintana, by deposition<br>Anillo Perif. Blvd., Adolfo López Mateos<br>5146, Pedregal de Carrasco Secc A,<br>Coyoacán, 04700 Ciudad de México,<br>CDMX, Mexico Departamento<br>2706 Torre B |

| | | |
|---|---|---|
| | | 786-514-7696 |
| | 20 | Juan Hernandez Ramirez<br>Piracanto No 4,<br>Puebla, MX 72520<br>52-2221910692 |
| | 21 | Linda Scammel, AAdvantage Fraud Analyst, Corporate Security<br>c/o Defense counsel |
| | | |
| | | |
| | | |
| | | |

Page 2 of 2 Page