UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:21-cv-23155-KMM

TROY CLOWDUS,

    Plaintiff,

v.

AMERICAN AIRLINES, INC.,

    Defendant.
_____/

**OMNIBUS ORDER**

**THIS CAUSE** is before the Court on Plaintiff Troy Clowdus's ("Plaintiff") Motion for Sanctions and Incorporated Memorandum of Law (ECF No. 55). Defendant American Airlines, Inc. ("Defendant") filed a response, which improperly incorporates a cross-motion for sanctions (ECF No. 61), to which Plaintiff filed a reply and an incorporated response (ECF No. 66). Also before the Court is Defendant's refiled Cross-Motion for Sanctions Against Plaintiff and Plaintiff's Counsel (ECF No. 83). Plaintiff filed a response to the Cross-Motion (ECF No. 93); Defendant did not file a reply. The matter has been referred to the undersigned by the Honorable K. Michael Moore, United States District Judge, pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, to take all necessary and proper action as required by law with respect to any and all pretrial discovery matters (ECF No. 5). The Court held an Evidentiary and Motions Hearing as to both Motions on October 3, 2022. Having reviewed the Motions, the briefing thereupon, the record as a whole, and with the benefit of the Parties' evidence and positions advanced at the hearing, Plaintiff's Motion for Sanctions (ECF No. 55) is

1

**GRANTED in part and DENIED in part**, and Defendant's Cross-Motion for Sanctions (ECF No. 83) is **DENIED** as further set forth below.[1]

## I.  BACKGROUND

This is an action for defamation arising under the Court's diversity jurisdiction, pursuant to 28 U.S.C. § 1332.  Plaintiff commenced this action in this Court on August 31, 2021, asserting the following claims: negligence; defamation; violation of the Transparency Improvements and Compensation to Keep Every Ticketholder Safe Act of 2018 ("TICKETS Act"), Pub. L. No. 115–254, Div. B, Title IV, § 425, 132 Stat. 3338; and two claims for breach of contract, the first for failure to honor Plaintiff's ticket for his flight from Miami, Florida to Mexico City, Mexico, and the second for suspending Plaintiff's frequent flier loyalty membership.  On March 7, 2022, Defendant filed a Motion for Judgment on the Pleadings (ECF No. 17), pursuant to Federal Rule of Civil Procedure 12(c), which the district court granted in part and denied in part (ECF No. 32).  As a result, Plaintiff's claims for negligence, violations of the TICKETS Act, and breach of contract were dismissed with prejudice; his claim for defamation was dismissed without prejudice and with leave to amend.

Plaintiff filed the First Amended Complaint for Defamation on May 12, 2022 (ECF No. 40), in which Plaintiff avers that after boarding an international American Airlines flight from Miami, Florida to Mexico City, Mexico, Defendant's flight attendant falsely accused Plaintiff of committing a felony (hitting the flight attendant with his bag), ultimately resulting in Plaintiff being banned for life from flying with American Airlines, as well as the suspension of Plaintiff's AAdvantage frequent flier loyalty program membership account.  Plaintiff contends that the flight

---

[1] Because the Court resolves Plaintiff's Motion for Sanctions in this Omnibus Order, Plaintiff's Motion to Compel (ECF No. 79), which is filed in connection with a discovery request that "is directly relevant to the defense raised by AAs Miami counsel in its Response to the Motion for Sanctions," is **DENIED as moot**.

attendant's false accusation, attributable to Defendant, is defamatory *per se*. Plaintiff alleges that the flight attendant's false accusation that Plaintiff hit him was published to Defendant's non-managerial employees through Defendant's internal computer system, and to other passengers seated around Plaintiff at the time the accusation was made and after the flight had taken off without Plaintiff.[2]

Defendant first moved for sanctions on May 9, 2022, when it filed its Expedited Motion for Sanctions Pursuant to Rule 30(d)(2) and Memorandum of Law in Support Thereof (ECF No. 34). Therein, Defendant accused Plaintiff's counsel of engaging in unprofessional "dog-attack tactics" that inhibited the fair examination of Federico Quintana, an unrepresented, non-party witnesses. Specifically, Defendant contended that Plaintiff's counsel, prior to and/or during the deposition of Mr. Quintana, had disparaged Defense counsel, provided counsel's personal opinion on Mr. Quintana's anticipated testimony, accused Mr. Quintana of dishonesty and perjury, threatened Mr. Quintana, and advanced a version of the facts of this case favorable to Plaintiff, all in violation of Federal Rule of Civil Procedure 30(d)(2). Defendant also alleged that Plaintiff's counsel had, among other things, threatened Angelica Cookson—another unrepresented, non-party deponent who is also Mr. Quintana's mother—by email, and disparaged Mr. Quintana.

The Court held a hearing on Defendant's Expedited Motion for Sanctions (ECF No. 47); the motion was denied in open court. At the hearing, the Court determined that it did not have sufficient basis to find, as Defendant urged, that the witness felt threatened. In reviewing the correspondence Defendant attached to the Expedited Motion, the Court indeed found communications from Plaintiff's counsel to the witnesses that were troublesome; the Court also observed that counsel for Defendant made speaking objections throughout the witness's deposition

---

[2] Pending before the Court are Defendant's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 51), and Defendant's Motion for Partial Summary Judgment (ECF No. 81).

capable of influencing a witness. While the Court ultimately denied Defendant's Motion for Sanctions, the Court admonished counsel on *both* sides for not conducting themselves with neutrality towards the unrepresented witnesses. A written Omnibus Order on Discovery Motions (ECF No. 49) followed on May 31, 2022, finding no basis to award sanctions after taking into account all the relevant circumstances.

Now, the Parties are again before the Court seeking sanctions. Pending before the Court are cross-motions in which the Parties seek to impose the most severe sanctions upon one another, disposing of this action through sanctions rather than on the merits. On October 3, 2022, the Court held an Evidentiary and Motions Hearing on the two motions for sanctions. The Court heard testimony from Jairo Espinoza, Ernesto Velarde, Mauricio Fernandez, Sonia San Martin, and Eduardo Muriel. This order follows.

**II.   DISCUSSION**

    **A.   Plaintiff's Motion for Sanctions**

In his Motion for Sanctions, Plaintiff contends that defense counsel violated this Court's Order which, without any hint of irony, Plaintiff notes resulted from *Defendant's* motion for sanctions against Plaintiff's counsel (ECF No. 34). Pursuant to Rule 37(b)(2)(A), Rule 41(b), and the Court's inherent authority, Plaintiff requests that the Court (1) impose monetary sanctions, including attorney's fees, against Defendant and its counsel; (2) strike Mr. Quintana's testimony; (3) preclude Defendant from using any passenger deposition or statements at trial and prohibit any passengers with whom Defendant had contact from testifying at trial; and (4) strike Defendant's defenses and enter a default judgment against Defendant. Curiously, and despite expressly requesting the relief above, Plaintiff asserts in a header that no lesser sanction than striking Defendant's pleading will be effective. Plaintiff seeks the foregoing relief for what he alleges is

4

an intentional disregard for the Court's instructions at the May 24, 2022 hearing regarding communications with unrepresented witnesses *and* for misleading the Court at that hearing.

According to Plaintiff, on June 2, 2022, mere weeks after the Court admonished counsel on both sides for their improper contact with unrepresented, non-party witnesses, and mere days after the Court entered its Omnibus Order, Defendant's local counsel in Mexico, Mauricio Fernandez, sent a WhatsApp message to an unrepresented witness, Juan Ramirez, asking Mr. Ramirez to contact him regarding "an important matter."  Plaintiff asserts that Mr. Fernandez messaged witness Ramirez three more times despite Mr. Ramirez expressing after the third message that he felt uncomfortable being involved in the case and that he was busy.  Plaintiff claims that Mr. Ramirez contacted Plaintiff's private investigator, Eduardo Muriel, who Mr. Ramirez had previously been in contact with, and provided Mr. Muriel with a copy of the messages exchanged between him and attorney Fernandez.  In his Motion, Plaintiff characterizes Defendant's interactions with Mr. Ramirez as "by far the most egregious example of its attempt to influence the testimony of non-party witnesses" because they occurred within days of the first sanctions hearing.  (ECF No. 55 at 6).  Plaintiff also characterizes defense counsel's representation at the May 24 hearing, that American will "back away" from seeking discovery from a customer who does not wish to participate in discovery, as misleading to the Court; Plaintiff's counsel argues that the interactions with Mr. Ramirez show the opposite.

Further, Plaintiff takes issue with the initial, unsigned drafts of declarations that Defendant's United States-based counsel prepared for Mr. Quintana and for another non-party, Elja Keizer.  He claims that the differences between the unsigned, initial drafts and the signed declarations suggest that Defendant's counsel attempted to influence these witnesses by putting words in their mouths.  Plaintiff further contends that the "blatant inconsistencies" between Mr.

5

Quintana's declaration and his deposition testimony suggest that defense counsel knew Mr. Quintana was being untruthful, yet failed to inform the Court. In a footnote, Plaintiff contends defense counsel delayed in providing Plaintiff with contact information for Mr. Quintana.

Defendant filed a response that improperly incorporated a cross-motion for sanctions, which necessitated the refiling of the Cross-Motion and triggered a renewed briefing period. Defendant argues that Plaintiff's Motion travels on factual inaccuracies that distort the communications between Mr. Fernandez and Mr. Ramirez. According to Defendant, Plaintiff's accusations rely on a single improper communication by Defendant's local counsel in Mexico, who was not authorized to communicate with Mr. Ramirez in the manner he did and whose communications contained that attorney's own, largely inaccurate understanding of Defendant's contentions in this action. Further, and the subject of the Cross-Motion, Defendant posits that *Plaintiff*, through his private investigator, has engaged in witness tampering, noting that the affidavits witnesses provided to Defendant differ materially from the affidavits witnesses later provided to Plaintiff's investigator; Defendant claims that the only plausible explanation is witness tampering. Moreover, Defendant asserts that Plaintiff's accusation that Defendant influenced Mr. Quintana, based on the discrepancies between his deposition testimony and his declaration, is speculation. Defendant counters that Plaintiff's exception to the delay disclosing Mr. Quintana's contact information is baseless.

Plaintiff replies that his Motion is factually accurate. He reiterates that sanctions are warranted even if Defendant's United States-based counsel was unaware of and did not approve the wording of the language its local counsel in Mexico used when contacting Mr. Ramirez. He suggests that the *only* reason for Defendant to hire local counsel in Mexico was to pressure Mr. Ramirez and Jairo Espinoza to testify. Plaintiff posits that Defendant hired local counsel in Mexico

6

the day after the May 24, 2022 hearing to permit Defendant to continue its inappropriate conduct by proxy.  Plaintiff attempts to characterize Defendant's violation of the Court's May 24, 2022 order as part of Defendant's broader efforts to intimidate and manipulate witnesses in this case, on account of its size and influence as one of the world's largest airlines.

The messages sent to Mr. Ramirez did, as with other communications in this case, suggest a biased version of the facts to a non-party witness.  Further, the messages followed shortly after the Court's May 24, 2022 instructions regarding contact with unrepresented third-party witnesses.  Moreover, the Parties do not dispute that Mr. Fernandez was defense counsel's agent in Mexico at the time the messages were sent.  To that end, I find upon review of the messages, that the messages sent by defense counsel's Mexico-based agent violated my prior admonitions and guidance regarding communications with unrepresented, non-party witnesses.

However, Plaintiff argues the inflammatory inferential leap that Defendant *must have* hired local counsel in Mexico to skirt the Court's May 24, 2022 instructions—this contention is not substantiated by the evidence in the record.  Defendant, for its part, categorizes attorney Fernandez's communications with Mr. Ramirez as a negligent failure to comply with the Court's May 24, 2022 instructions. (ECF No. 61 at 13).  I credit Defendant's United States-based counsels' proffer that they did not authorize or direct their Mexico-based agents to communicate with Mr. Ramirez the way in which Mr. Fernandez did.  This proffer is corroborated by the testimony of Mr. Fernandez and his supervising attorney, Ernesto Velarde, that they received no instructions from defense counsel to advance the biased version of the facts that were advanced to Mr. Ramirez, or any set of facts for that matter.  Rather, Mr. Fernandez testified that he assumed the circumstances surrounding the incident on the flight in his communications with Mr. Ramirez.  In fact, Mr. Fernandez conceded that he should have limited his communications to only inviting Mr.

Ramirez to sit for a deposition. And in any event, Plaintiff was unable to point to any actual prejudice he suffered as a result of the improper communications with Mr. Ramirez.

Plaintiff further takes issue with the initial, unsigned drafts of declarations that Defendant's United States-based counsel prepared for Mr. Quintana and for another non-party, Elja Keizer. But as I noted at the October 3, 2022 hearing, the import of the differences identified bears minimal weight without testimony from these witnesses. Further, that Mr. Quintana's deposition testimony differed from his declaration is not grounds for the sanctions Plaintiff seeks. It is not surprising that Mr. Quintana's eye-witness testimony differed from his declaration where the incident, of short duration and occurring months before, involved another passenger rows ahead of him being removed from an early-morning flight. *See United States v. Owens*, 682 F.3d 1358, 1360 (11th Cir. 2012) (Barkett, J., dissenting from the denial of rehearing *en banc*) ("The unreliability of eyewitness testimony is now widely recognized in the psychological literature and by law enforcement."). And in any event, Plaintiff's counsel was unable to articulate any actionable wrongdoing or point to any sanctionable conduct that warrants exclusion of Mr. Quintana's testimony.

Rather, Plaintiff's counsel conceded that the litigation of the two motions for sanctions has snowballed following the discovery of Defendant's Mexico-based counsel's messages to Mr. Ramirez. In this regard, the Motion for Sanctions is properly before the Court with respect to those messages. But I will not recommend striking Defendant's pleadings and entering a default, the only forms of relief Plaintiff contends would be effective, especially where there is no evidence in the record of the bad faith necessary to grant that relief; Mr. Fernandez was neither authorized nor directed to communicate as he did. *See Wallace v. Superclubs Properties, Ltd.*, No. 08-61437-CIV, 2009 WL 2461775, at *5 (S.D. Fla. Aug. 10, 2009) (observing that "in fashioning sanctions,

courts should ensure that the sanctions are 'just and proportionate to the offense'") (citing *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993)); *see also Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)) ("The key to unlocking a court's inherent power is a finding of bad faith.").

Notwithstanding, the Court has another sanction available to address the violation of its Order.  Federal Rule of Civil Procedure 37(b)(2)(C) permits the Court to order a "disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure" to obey a discovery order, "unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).  The Rule does not require a showing of prejudice resulting from disobedience as a precondition to the award of fees, but instead makes clear that an award of fees is mandatory.  *Jacobi v. Experian Info. Sols., Inc.*, No. 20-CV-60591, 2021 WL 8894465, at *2 (S.D. Fla. Aug. 20, 2021).

Here, the Court finds that an award of fees is warranted.  There is no genuine dispute that Defendant, via its Mexico-based agent, violated the Court's May 24, 2022 Omnibus Order admonishing the Parties and providing instructions regarding appropriate contact with unrepresented, presumptively neutral non-party witnesses.  Mr. Fernandez testified that he did exactly what he is accused of doing and that he had no oversight; Defendant only contends that its local counsel in Mexico was unauthorized to make the representations that Mr. Fernandez made and that Defendant's failure to comply was negligent.  I further note that Plaintiff was unable to articulate any meaningful prejudice resulting from Defendant's conduct.

Accordingly, Plaintiff will be awarded fees in connection with the briefing for his Motion for Sanctions.  To that end, I note that the Parties have informed the Court that they have come to

9

an agreement on Plaintiff's fees in connection with this Motion. The terms of that agreement are hereby **ADOPTED** and **INCORPORATED** to the extent they are not inconsistent with this Omnibus Order or law. Defendant is **ORDERED** to reimburse Plaintiff consistent with the Parties' settlement of Plaintiff's fees.

### B. Defendant's Cross-Motion for Sanctions

Defendant contends that there is "indisputable record proof" that Plaintiff or his counsel have engaged in witness tampering. Defendant avers that Plaintiff's private investigator, Eduardo Muriel, extracted affidavits from non-party witnesses (Mr. Ramirez and Mr. Espinoza) that contradict the statements or affidavits those witnesses had previously given to Defendant. Defendant's Cross-Motion attempts to paint Mr. Muriel as an intimidating figure who has investigated major crimes on behalf of the Mexican government. Defendant claims that Mr. Muriel was retained to "persuade" (Defendant's emphasis) the non-party witnesses in this case to provide accounts favorable to Plaintiff. Defendant asserts that Mr. Muriel successfully flipped Mr. Ramirez and Mr. Espinoza, getting them to contradict their earlier statements.[3] Defendant summarizes its theory as follows:

> It does not strain credulity to conclude that the simple fact of Muriel's introduction to Hernandez-Ramirez and Espinoza (without more) would have been sufficient impetus for these previously cooperative young witnesses to: 1) to discontinue cooperation with AA; 2) to cause Hernandez-Ramirez to misrepresent his desire not to be involved; and 3) to cause Hernandez-Ramirez to change his story 180 degrees on the one issue (publication) critical to the thin survival of Plaintiff's remaining claim.

(ECF No. 83 at 7).

Defendant also contends that Plaintiff violated the Parties' confidentiality agreement because Plaintiff's counsel shared Defendant's Fifth Amended Rule 26 Initial Disclosures with

---

[3] Defendant further accuses Mr. Muriel of attempting to entrap Mr. Quintana.

10

Mr. Muriel and filed that document on the docket in this case. Thus, Defendant argues that Plaintiff and his counsel have obstructed Defendant's access to evidence by effectively neutralizing Mr. Ramirez and Mr. Espinoza as witnesses; according to Defendant, these witnesses' credibility has been destroyed. To that end, Defendant requests that the Court invoke its inherent powers and dismiss this action. In the alternative, Defendant requests that the Court order Plaintiff to produce all communications between Mr. Muriel and Messrs. Ramirez and Espinoza.[4]

Plaintiff requests that the Court strike the Cross-Motion for impermissibly circumventing Local Rule 7.1, because it reproduces the cross-motion improperly incorporated into Defendant's Response to Plaintiff's Motion for Sanctions (ECF No. 55). The crux of Plaintiff's response is that Defendant's accusations of witness tampering are factually misleading, travel on speculation, and lack evidentiary support. Plaintiff also argues that his counsel did not violate the Parties' confidentiality agreement because the passenger names and contact information disclosed were not confidential information within the meaning of the confidentiality agreement, and in any event the disclosures was inadvertent.

First, the Court declines to strike the Cross-Motion from the docket.

Second, the Court resoundly rejects Defendant's position that merely hiring Mr. Muriel and introducing him to Mr. Espinoza and Mr. Ramirez is sufficient to support a finding of allegations as serious as witness tampering.

Third, the Court observes that the communications between Plaintiff and Mr. Muriel asking him to "persuade" the non-party witnesses, when read in context, do not read as nefarious as Defendant makes them out to be. Rather, the Cross-Motion travels on speculation that Mr. Muriel

---

[4] But also, at a minimum, Defendant requests that Plaintiff be precluded from using any declarations or affidavits obtained from witnesses by Plaintiff, his counsel, or Mr. Muriel; adverse jury instructions on obstruction; and permission for Defense counsel to read Mr. Espinoza's signed declaration and the portions of Mr. Ramirez's unsigned declaration that he adopted.

*must have* tampered with non-party witnesses in this case. The only witness who was allegedly tampered with who testified at the hearing, Mr. Espinoza, testified that he had never met or heard of Mr. Muriel. As to the change in Mr. Espinoza's attestations regarding the incident that is the subject of the Amended Complaint, Mr. Espinoza's testimony revealed that he lacked an appreciation for the import or intended use of the declaration he signed at Defendant's request in March of 2022. Specifically, Mr. Espinoza testified that he signed the English statement upon skimming it despite not being fully fluent in English, that he did not read or understand that there would be penalties for perjury, and that he authored his July statement after his friend and co-witness, Mr. Ramirez, informed him that false statement could cause him immigration-related problems with the United States government. I reject the allegation that Mr. Espinoza was tampered with.

Moreover, Mr. Ramirez (who did have contact with Mr. Muriel) did not testify at the hearing.[5] However, Mr. Muriel was called by the Defense to testify at the hearing. Mr. Muriel testified that his only contact with Mr. Ramirez was over the phone—the two never met in person. I note that Defendant failed to ask Mr. Muriel if he in any way threatened, suggested, enticed, or even implored any witness to alter their statements; on this record and upon my assessment of Mr. Muriel's demeanor throughout his testimony, there is no basis for me to conclude that Mr. Muriel was not credible and that he has in fact engaged in the conduct of which he is accused. The Cross-Motion is more speculative than factual.

Fourth, the Court also fails to see how names and contact information for passengers disclosed in Rule 26 Initial Disclosures is confidential within the meaning of the Parties' confidentiality agreement.

---

[5] Defendant opposed permitting Mr. Ramirez to testify by remote means. (ECF No. 112).

For these reasons, I will not recommend that Plaintiff's pleadings be stricken or that the case be dismissed. To that end, Defendant's Cross-Motion is denied.

### III. CONCLUSSION

For the foregoing reasons, Plaintiff Troy Clowdus's Motion for Sanctions and Incorporated Memorandum of Law (ECF No. 55) is **GRANTED in part** and **DENIED in part**, and Defendant American Airlines, Inc.'s Cross-Motion for Sanctions Against Plaintiff and Plaintiff's Counsel (ECF No. 83) is **DENIED**. It is further **ORDERED** that Plaintiff's Motion to Compel American Airlines, Inc. to Provide Better Responses to Plaintiff's Eighth Request for Production (ECF No. 79) is **DENIED as moot**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 7th day of October, 2022.

LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE

cc: Honorable K. Michael Moore
Counsel of Record